No. 15-3160

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

---

Keith D. Nelson,

Appellant,

vs.

United States of America,

Appellees.

---

On Appeal from the United States District Court
District of Arizona
Case No. 4:04-8005-cv-W (FJG)

---

**APPELLANTS EXHIBITS**
**TO MOTION FOR ISSUANCE OF**
**CERTIFICATE OF APPEALABILITY**

**Exhibit 19**

---


*/s/Paula K. Harms*
Jon M. Sands
Federal Public Defender
Paula K. Harms
Assistant Federal Public Defender
Capital Habeas Unit
850 W. Adams Suite 201
Phoenix, Arizona 85007
602-382-2816 telephone
602-889-3960 facsimile

*/s/ David A. Ruhnke*
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
973-744-1000 telephone
973-746-1490 facsimile
dr@ruhnkeandbarrett.com

# EXHIBIT 19

# Exhibit 28 Index
# Ex-Parte Motions and Orders

| Dkt. No. | Date | Description |
|---|---|---|
| 68 | 04-06-00 | Amended request to hire investigator/mitigation specialist |
| 70 | 04-25-00 | Order approving $20,000 for investigator/mitigation specialist |
| 90 | 06-09-00 | Order approving interim payments to Shull, Hunt and Grothaus |
| 125 | 06-07-00 | Motion for funds to hire psychiatrist (Peterson) |
| | 08-11-00 | Motion for funds to hire Dr. Peterson to conduct a psychiatric examination |
| | 09-25-00 | Order granting funds to hire Psychiatrist |
| 161 | 12-12-00 | Motion for funds to hire Frances as mitigation investigator |
| 163 | 12-12-00 | Motion for funds to hire Cunningham as mitigation specialist |
| 167 | 01-04-01 | Motion for funds to employ Dr. Dennis Cowan to conduct a neuropsychological examination |
| 174 | 01-11-01 | Motion for funds to employ Timothy Murphy as an investigator |
| 175 | 01-24-01 | Order approving funds for Cunningham, Frances, and Cowan |
| 180 | 01-30-01 | Motion for funds to hire Dr. Thomas l. Bennett to review the autopsy report |
| 210 | 03-13-01 | Order approving funds for Timothy Murphy |
| 211 | 03-13-01 | Order granting funds to hire Dr. Bennett to review the autopsy report |
| 274 | 09-17-01 | Motion for psych evaluation by Foster |
| 314 | 10-10-01 | Order granting adtl. Funds for Frances and Foster |
| | 07-30-00 | Continuance Motion |

CLERK U.S.DISTRICT COURT
Exhibits:
P 28
Case No. 4:04-CV-08005-FJG

**EX PARTE PLEADING—TO BE FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FILED Apr 6 2000 R. L. BRUNE, CLK. U.S. DISTRICT COURT WEST DISTRICT OF MISSOURI

UNITED STATES of AMERICA,

Plaintiff,

v.

KEITH DWAYNE NELSON,

Defendant.

Case No. 99-00303-01-CR-W-2

***DEFENDANT KEITH DWAYNE NELSON'S AMENDED REQUEST FOR FUNDS TO HIRE INVESTIGATOR/MITIGATION SPECIALIST, AND FOR APPROVAL TO EXCEED 21 U.S.C. 848(q)(10)(B) FUNDING LIMITS***

Comes now Defendant Keith Dwayne Nelson, by attorney, William E. Shull and pursuant to 21 U.S.C. 848(q)(9) and (10)(B), hereby requests that this Court approve funding for an investigator/mitigation specialist for purposes of acting on behalf of Defendant Nelson to develop evidence regarding the first phase of trial and also evidence pertaining to mitigating circumstances which might be germane to any penalty phase of trial. Defendant Nelson further requests that this Court approve interim payments to the investigator/mitigation specialist. Defendant Nelson also requests that authorization of funding in excess of $7,500.00 be made pursuant to the dictates of 21 U.S.C. 848(q)(10)(B). The grounds for this Motion will be set forth in the subsequent numbered subparagraphs.

1. In the above captioned cause, Defendant Nelson is charged in a two count Indictment. In Count One, Defendant Nelson is charged with the interstate transportation of a child who he had kidnapped and



ORIGINAL

#68

Appellate Case: 15-3160 Page: 4 Date Filed: 02/29/2016 Entry ID: 4372487

the death of the child In Count Two, Defendant Nelson is charged with the offense of travelling in interstate commerce for the purpose of engaging in a sexual act with a female child and the death of said child. The government intends to seek the death penalty against Defendant Nelson upon both counts.

2. Defendant Keith Dwayne Nelson is indigent, without the means and funds to bear the cost of an effective defense for himself. Defendant Nelson has already satisfied this Court of that fact, as this Court has appointed undersigned Counsel to represent him.

3. The United States Supreme Court has clearly indicated that, since the services of investigators and other experts may well be critical to effective presentation of a capital litigant's defense, such expenses may properly be paid by the Federal Courts per the dictates of 21 U.S.C. 848(q)(9); McFarland v. Scott, 114 S.Ct. 2568, 2572 [1994]).

4. In order to properly prepare this matter for trial, undersigned Counsel requires the services of an investigator to assist him to ferret out facts pertaining to this case. Payment for services of an investigator are generally recognized as proper per the dictates of 21 U.S.C. 848(q)(9); McFarland v. Scott, supra; In re Pruett, 133 F.3d 275, para 14 [4th Cir. 1997]). Particularly, in this District, payment for such services has been approved, pursuant to 21 U.S.C. 848(q)(9), for indigent defendants who were facing the death penalty.1

1 In the case of United States v. Dennis B. Moore, Sr., case number 94-00194-1/12-CR-W-9, the Honorable D. Brook Bartlett approved full funding for Defendant Moore to hire an investigator, and for Defendant Kevin Wyrick to

5. In order to effectively prepare and present evidence at the second or punishment phase in this case, the services of a mitigation specialist are necessary.

6. In a death penalty case, the scope of relevant issues may be quite broad in light of Lockett v. Ohio, 438 U.S. 586 (1978), which provides that the sentencer must be permitted to consider "any aspect" of the defendant's "background and character" which is offered in mitigation of punishment. There are also a number of cases in which lawyers have been found ineffective for failing to investigate penalty stage issues Parkus v. Delo, 33 F.3d 933 [8th Cir. 1994]; Antwine v. Delo, 54 F.3d 1357 [8th Cir. 1995]; Kenley v. Armontrout, 937 F.2d 1298 [8th Cir. 1994]). Counsel firmly believes that the services of a mitigation specialist are necessary for counsel to fulfill the obligation to provide Defendant Nelson with effective representation per the dictates of the applicable law outlined above.

7. "Mitigation specialists" are trained or experienced punishment investigators who perform the necessary leg work the law demands of appointed counsel . . . and at a lower hourly rate. In this sense, a motion for a punishment investigator is no different than the not uncommon request for a guilt/innocence investigator, which similarly must be granted upon a showing of reasonable necessity. See, e.g., Mason v. Arizona, 504 F.2d 1345, 1351 (9th Cir. 1974) ("effective assistance of counsel . . requires, when necessary . .. investigative expenses or appointment of investigative assistance

---

hire his own such expert. Such funding was also approved in United States v. Vest and United States v. Sinisterra.

. . ."). In every capital case, there is need to investigate statutory and non-statutory mitigating facts. Records must be gathered and interviews conducted. It seems the real question is who should perform these necessary tasks and at what rate of compensation. The case for employment of a mitigation specialist, that is, an experienced and/or trained penalty investigator, hinges on the superior product they produce but also on their cost effectiveness. In any case, a penalty investigator will perform necessary services less expensively than a lawyer.

8. Trial courts in state and federal capital cases arising under state or federal jurisdiction have uniformly recognized the need for effective defense counsel to employ the expertise provided by mitigation specialists. Particularly, in this District, in the case of United States v. Dennis B. Moore, Sr., supra, the Honorable D. Brook Bartlett approved full funding for Defendant Moore to hire such an expert, and for Defendant Kevin Wyrick to hire his own such expert. In fact, Federal district courts have appointed such specialists to assist counsel in every case, to counsel's knowledge, where it was requested.[2]

---

[2] See e.g., United States v. Davis (N.D. Ill. No. 89-CR-580); *United States v. Pretlow* (D.N.J. 90-CR-238); *United States v. Pitera* (E.D.N.Y. No. CR 90-024 (RR)); *United States v. Tipton* (E.D. Va. No. 3-92-CR-68); *United States v. Roane* (E.D. Va. No. 3-92-CR-68); *United States v. Thomas* (E.D. Va. No. 3-92-CR-68); *United States v. Green* (E.D. La. No. 92-46); *United States v. Molina* (E.D. Okl. No. 1:92-032-S); *United States v. McCullah* (E.D. Okl. No. 1:92-032-S); *United States v. Mathis* (M.D. Fla. No. 91-301-CR-T); *United States v. Williams* (M.D. Ga. No. 1:92-CR-142); *United States v. Jean Claude Oscar* (E.D. Va. 93-CR-131-Morgan); *United States v. Frantz Oscar* (E.D. Va. 93-CR-131-Morgan); *United States v. Reginald Brown* (E.D. Mich. No. CR-92-81127); *United States v. Michael Williams* (E.D. Mich. No. CR-92-

The same is increasingly true in state cases.[3]

9. Many capital cases, such as this one, involve life history investigation in both local and remote locations, including Missouri, Kansas, Texas and California. Counsel require assistance to fulfill their professional obligation to conduct such an investigation. The use of an investigator to assist in the acquisition of evidence outside the district where possible is more economical than utilizing the services of defense counsel.

10. From experience in other cases, counsel is well aware of the range of services a mitigation specialist may provide. Such services may well be the most important part of the defense in this matter as determined at the present time. The services that will be provided in this specific case include, *inter alia*, the following:

- Interviewing the client, family and friends regarding sensitive areas of mitigating evidence;
- Obtaining and evaluating birth, school, social welfare, employment, jail, medical and other records;

---

81127); *United States v. Michael Murray* (M.D. Penn. No. 1-CR-92-200); *United States v. Darryl Johnson* (W.D.N.Y. No. 92-CR-474); *United States v. Edward Alexander Mack* (93-0252-CR-Ungaro Benages); *United States v. Moore* (E.D. Va. Cr. No. 2:93CR162); *United States v. Walker* (N.D.N.Y. No. 94-CR-328); *United States v Paul Hardy* (E.D. La. No. 94-381) and *United States v. McVeigh* (W.D. Okl. No. M-94-98-H).

[3] As a matter of policy, for example, the Cook County, Illinois, Public Defender and the Philadelphia state defender employ the services of a mitigation specialist in all death penalty trials. Many other local public defender offices do likewise. In Ohio and Indiana, the State Public Defender each has a mitigation specialist section, as does the California Appellate Project.



Appellate Case: 15-3160 Page: 8 Date Filed: 02/29/2016 Entry ID: 4372487

- Analyzing any alcohol and drug history both as to the defendant as well as his parents and/or siblings;
- Working with family, community, and clergy in the development of other evidence favorable to the accused at the penalty phase;
- Suggesting testing in particular medical fields based on the mitigation investigation;
- Structuring the actual presentation of mitigation testimony at the sentencing hearing, including assisting in the identification, preparation and briefing of witnesses;
- Interviewing prior attorneys, probation officers and other individuals in the criminal justice system who may have had contact with the defendant;
- Assist in interviews and research concerning the prejudice that exists in the Kansas City area against the defendant and the necessity for a change of venue;
- Identify and locate individuals who have had contact in a business, social or professional capacity with the parents and siblings of the Defendant;
- Traveling to locations within and outside the Western District to interview witnesses as to the facts in the present offense, past offenses and for mitigation purposes;



Appellate Case: 15-3160 Page: 9 Date Filed: 02/29/2016 Entry ID: 4372487

- Utilizing past training and experience to review and make recommendations to defense counsel as to forensic reports and evidence;
- Utilizing past training and experience to review and make recommendations to defense counsel as to mitigation factors to be reviewed and considered;
- Utilizing past training and experience to review and make recommendations to defense counsel as to expert witnesses both as to the case in chief as well as the mitigation phase.

11. Undersigned counsel requires assistance to ferret out all types of potential mitigation. While some areas of mitigation may be self-evident, see, e.g., Stevens v. State, 552 So.2d 1082 (Fla. 1989) (drug and alcohol abuse); Perry v. State, 522 So.2d 817 (Fla. 1988) (cooperation with law enforcement officials); Caruthers v. State, 465 So.2d 496 (Fla. 1985) (remorse); Pope v. State, 441 So.2d 1073 (Fla. 1983) (military service), much is not. See, e.g., Hitchcock v. Dugger, 481 U.S. 393, 397 (1987) (Eighth Amendment requires consideration of evidence that capital defendant may have been suffered permanent brain damage from ingestion of gasoline fumes as a child). Other potential areas include the mental and physical conditions under which the defendant was raised, interaction with family, siblings and others, personal histories of other family members, including father and mother and grandparents, substance abuse



Appellate Case: 15-3160 Page: 10 Date Filed: 02/29/2016 Entry ID: 4372487

and addiction histories, conduct while incarcerated or hospitalized, etc.

12. Undersigned Counsel understands the need to get the maximum return for spending any funds which this Court might approve. Counsel has found that, to the extent that one person can be found who can wear both hats, as investigator and as mitigation specialist, duplication of time, travel and other effort is avoided, and maximum efficiency of time use is obtained. The only difficulty comes in finding a person who can effectively discharge the duties, both as investigator and as a mitigation specialist.

13. Counsel for Defendant Nelson has contacted Daniel Grothaus, and has requested that he serve in as investigator/mitigation specialist in the above captioned cause for Nelson. Mr. Grothaus will serve as investigator/mitigation specialist on behalf of Defendant Nelson. Mr. Grothaus and is uniquely qualified, by experience, background and expertise, to serve in this dual capacity. Mr. Grothaus has nearly twenty years of experience as a private investigator. Mr. Grothaus has also had substantial experience working in the area of development of mitigation evidence for those facing capital sentences in state and Federal Courts. Mr. Grothaus is willing to accept compensation at the rate of $45.00 an hour for his services. This is below Mr. Grothaus' normal rate of pay, and is at or below the prevailing hourly rate approved in other districts for such services.

14. Counsel for Defendant Nelson anticipates that expenses for the investigator/mitigation specialist will far exceed the $7,500

limit upon expert services costs set forth under 21 U.S.C. 848(q)(10)(B). The same section notes that such limit may be exceeded so long as ". . . payment in excess of that limit is certified by the court. . . as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit."

15. Also, since this matter is likely to go on for some time, and because this work is likely to take up a substantial portion of Mr. Grothaus' time and earning capacity, it is necessary that this Court permit interim payments to be made to Mr. Grothaus upon a monthly submission of vouchers by Mr. Grothaus. Mr. Grothaus is a sole proprietor and the payment of his compensation on a regular basis is critical to his continued involvement in the matter without irreparable economic hardship.

16. In the case of United States v. Moore, et al, previously referenced above, the Honorable D. Brook Bartlett as Trial Judge, and in addition the Chief Judge of the Eighth Circuit, both approved payments for investigation and mitigation services in excess of the $7,500 limit. Such approval was permitted for the investigator and mitigation specialist for Defendant Dennis B. Moore, Sr. and also, separately, for the investigator and mitigation specialist for Defendant Kevin Wyrick. Judge Bartlett also approved the making of interim payments to the investigators and mitigation specialists.

17. So that Counsel for Defendant Nelson may immediately begin proper preparation of this case for trial, he requests that this Court immediately approve funding for, and the making of interim payments



Appellate Case: 15-3160 Page: 12 Date Filed: 02/29/2016 Entry ID: 4372487

to, Mr. Grothaus, and immediately seek approval for excess payments from the Chief Judge of the Eighth Circuit. This will permit Counsel to begin expending of funds while the Court and Counsel await necessary approval for any expenditure of funds in excess of $7,500.

WHEREFORE, pursuant to 21 U.S.C. Section 848(q)(9) and (10), the Defendant Nelson prays that Honorable Court authorize the employment of a Daniel Grothaus as investigator/mitigation specialist for Defendant Nelson. Defendant Nelson further prays that this Court approve payment of Mr. Grothaus at a rate of pay of $45.00 per hour. Defendant Nelson further prays that this Court approve the making of interim payments to Mr. Grothaus. Defendant Nelson further prays that, pursuant to 21 U.S.C. 848(q)(10)(B), this Court certify that payments for investigative, expert or other services on behalf of Defendant Nelson are necessary to provide fair compensation for services of an unusual character or duration. Defendant Nelson further prays that this Court seek approval from the Chief Judge of the Eighth Circuit for such excess payments. Defendant Nelson additionally prays for any other and further relief which the Court may deem just and proper under the circumstances.

Respectfully submitted

William E. Shull No. 22544
104 West Kansas
Liberty, Mo. 64068
Phone: 816-792-4242
Fax: 816-792-0888
ATTORNEY FOR DEFENDANT



Appellate Case: 15-3160 Page: 13 Date Filed: 02/29/2016 Entry ID: 4372487

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FILED Apr 25 2000 P. L. BRUNE, CLK. U.S. DISTRICT COURT WEST DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 99-00303-01-CR-W-2 |
| | ) | |
| KEITH DWAYNE NELSON, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Pending before the Court is Defendant Nelson's Ex Parte Motion To Appoint Mitigation Specialist/Investigator. The Court finds that the request seeking funding for a mitigation specialist/investigator is reasonably necessary. The request is approved up to a maximum of $20,000. As requested in the ex parte motion this order shall be filed under seal.

IT IS SO ORDERED.

Sarah W. Hays

SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE

ORIGINAL

#70

FILED
JUN 7 2000
US DISTRICT
WEST DIST.
OF MISSOURI

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES of AMERICA,

Plaintiff,

v.

KEITH DWAYNE NELSON

Defendant

Case No. 99-00303-01-CR-W-82

**DEFENDANT NELSON'S EX PARTE MOTION FOR AUTHORIZATION TO MAKE FULL INTERIM PAYMENTS FOR APPOINTED COUNSEL WILLIAM E. SHULL AND SUSAN M. HUNT AND INVESTIGATOR DAN GROTHAUS**

COMES NOW Defendant Keith Dwayne Nelson, by attorneys, William E. Shull and Susan M. Hunt, and does move this Honorable Court, pursuant to 21 U.S.C. 848 and 18 U.S.C. 3006A(d)(1), that full interim payments be made to counsel. The grounds for this Motion will be set forth in the subsequent numbered subparagraphs.

1. In the above captioned cause, Defendant Nelson is charged in a two count Indictment. In Count One, Defendant Nelson is charged with the offense of kidnapping a child for the purpose of sexual abuse and the resulting death of said child. In Count Two, Defendant Nelson is charged with kidnapping a child with the intent to engage in a sexual act that resulted in the death of said child. The government is seeking the death penalty against Defendant Nelson upon both counts. Undersigned Counsel has been appointed by the Court to represent Mr. Nelson in connection with this matter pursuant to 21 U.S.C. 848(q)(4)(A).

2. Undersigned Counsel believe that this matter will be both complex and extended. Undersigned counsel have reached this



Appellate Case: 15-3160 Page: 15 Date Filed: 02/29/2016 Entry ID: 4372487

conclusion based upon their conduct of discussions with opposing Counsel and based upon their experience in similar cases. Counsel believe they must devote maximum time and effort to this case in order to protect the rights of the Petitioner, particularly since the possibility of a sentence of death is involved and because of the widespread publicity associated with the alleged offense. Counsel further believe that this maximum effort will be expected on every aspect of the case, including investigation, pretrial motions, and trial preparation, as well as the actual trial of the case.

3. Appointed Counsel for the defendant are both sole practioners and will be required to devote an extensive amount of their time and practice to the preparation and trial of this matter.

4. The billing rate previously approved by the court is below their normal and customary rate and it would work a grave economic hardship on them if the court withholds a portion of their payments.

5. The investigator previously approved herein, Dan Grothaus, also should be paid on a full basis because he is self-employed and this matter also will require the commitment of virtually all of his time and resources during many portions of the investigation and trial.

WHEREFORE, Defendant Keith Dwayne Nelson prays that this Honorable Court directing that interim payments be made to counsel and the investigator in full and without withholding or retention and for any other and further relief which the Court deems just and proper under the circumstances.



Appellate Case: 15-3160 Page: 16 Date Filed: 02/29/2016 Entry ID: 4372487

Respectfully submitted

WILLIAM E. SHULL
Mo.Bar No. 22544
104 West Kansas
Liberty, MO 64060
Phone: 816-792-4242
Fax: 816-792-0888
ATTORNEY FOR DEFENDANT NELSON



Appellate Case: 15-3160 Page: 17 Date Filed: 02/29/2016 Entry ID: 4372487

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

FILED JUN 9 2000 P. L. BRUNE, CLK. U.S. DISTRICT COURT WEST DISTRICT OF MISSOURI

United States of America, )
)
Plaintiff, )
)
vs. ) No. 99-00303-01-CR-W-2
)
Keith Dwayne Nelson, )
)
Defendant. )

## ORDER UNDER SEAL

Pending before this Court is the motion of defendant Keith Dwayne Nelson, pursuant to 21 U.S.C. Section 848(q)(10) and 18 U.S.C. 3006A(d)(1), to make full interim payments to appointed counsel and to their employed experts and investigators.

The Court finds that, for the reasons set forth in defendant Nelson's request, the relief sought in that request should be granted.

It is ordered that interim payments to Mr. Shull, Ms. Hunt and Dan Grothaus are hereby approved to be made in full and that said interim payments shall be made in full with no retention or withholding.

Fernando J. Gaitan, Jr.
United States District Judge

Dated: June 9, 2000
Kansas City, Missouri

ORIGINAL

#90

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FILED JUN 7 2000 ... BRUNE, CLK. ... DISTRICT COURT ... DISTRICT ... OF MISSOURI

UNITED STATES of AMERICA,

Plaintiff,

v.

KEITH DWAYNE NELSON,

Defendant.

Case No. 99-00303-01-CR-W-2

***DEFENDANT KEITH DWAYNE NELSON'S EX PARTE REQUEST FOR FUNDS TO HIRE PSYCHIATRIST AND FOR APPROVAL TO EXCEED 21 U.S.C. 848(q)(10)(B) FUNDING LIMITS***

Comes now Defendant Keith Dwayne Nelson, by attorney, William E. Shull and pursuant to 21 U.S.C. 848(q)(9) and (10)(B), hereby requests that this Court approve funding for an psychiatrist for purposes of acting on behalf of Defendant Nelson to develop pertaining to mitigating circumstances which might be germane to any penalty phase of trial.

Defendant Nelson further requests that this Court approve the expenditure of Twenty Thousand and no/100 dollars ($20,000) for the retention and payment of said psychiatrist and for interim payments to the retained expert. Defendant Nelson also requests that authorization of funding in excess of $7,500.00 be made pursuant to the dictates of 21 U.S.C. 848(q)(10)(B). The grounds for this Motion are as follows:

1. In the above captioned cause, Defendant Nelson is charged in a two count Indictment. In Count One, Defendant Nelson is charged with the interstate transportation of a child who he had kidnapped and



ORIGINAL #125

Appellate Case: 15-3160 Page: 19 Date Filed: 02/29/2016 Entry ID: 4372487

the death of the child In Count Two, Defendant Nelson is charged with the offense of travelling in interstate commerce for the purpose of engaging in a sexual act with a female child and the death of said child. The government intends to seek the death penalty against Defendant Nelson upon both counts.

2. Defendant Keith Dwayne Nelson is indigent, without the means and funds to bear the cost of an effective defense for himself. Defendant Nelson has already satisfied this Court of that fact, as this Court has appointed undersigned Counsel to represent him.

3. The United States Supreme Court has clearly indicated that, since the services of experts, including psychiatrists, may well be critical to effective presentation of a capital litigant's defense, such expenses may properly be paid by the Federal Courts per the dictates of 21 U.S.C. 848(q)(9); McFarland v. Scott, 114 S.Ct. 2568, 2572 [1994]).

4. In order to properly prepare this matter for trial, undersigned Counsel requires the services of a psychiatrist to conduct an examination of the defendant and report on any mitigating factors that exist as to his mental condition, status, history and standing.

5. In a death penalty case, the scope of relevant issues may be quite broad in light of Lockett v. Ohio, 438 U.S. 586 (1978), which provides that the sentencer must be permitted to consider "any aspect" of the defendant's "background and character" which is offered in mitigation of punishment. There are also a number of cases in which lawyers have been found ineffective for failing to investigate penalty stage issues Parkus v. Delo, 33 F.3d 933 [8th Cir. 1994]; Antwine v.

Delo, 54 F.3d 1357 [8th Cir. 1995]; Kenley v. Armontrout, 937 F.2d 1298 [8th Cir. 1994]). Counsel firmly believes that the services of a psychiatrist are necessary for counsel to fulfill the obligation to provide Defendant Nelson with effective representation per the dictates of the applicable law outlined above.

6. Many capital cases, including this one, involve extensive issues that deal with a defendant's mental and emotional condition at the time of the offense and subsequent times that must be presented to the jury during the penalty phase as to allow the jury to make a full and fair decision as to the death penalty sought by the government. This requires expertise that neither counsel nor the mitigation specialist previously appointed by the court possess since it deals with highly technical areas that will be unique to the training and experience of a medical doctor.

7. Counsel for Defendant Nelson has contacted Dr. Stephen E. Peterson M.D. and has requested that he serve in as the psychiatrist to conduct the examination and report of the defendant. Dr. Peterson is uniquely qualified, by experience, background and expertise, to serve in this capacity. A copy of his resume is attached hereto and made a part hereof as though more fully and completely set forth. Dr. Peterson has conducted an initial review of the facts and has estimated that he can provide the necessary services in this matter for the sum of twenty Thousand and no/100 Dollars ($20,000) based on his experience in other murder and capital murder case. This sum exceeds the $7,500 limit upon expert services costs set forth under 21 U.S.C. 848(q)(10)(B). The same section notes that such limit may be

exceeded so long as ". . . payment in excess of that limit is certified by the court. . . as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit."

17. So that Counsel for Defendant Nelson may immediately begin proper preparation of this case for trial, he requests that this Court immediately approve funding for, and the making of interim payments to, Dr. Peterson, and immediately seek approval for excess payments from the Chief Judge of the Eighth Circuit. This will permit Counsel to begin expending of funds while the Court and Counsel await necessary approval for any expenditure of funds in excess of $7,500.

WHEREFORE, pursuant to 21 U.S.C. Section 848(q)(9) and (10), the Defendant Nelson prays that Honorable Court authorize the employment of Dr. Stephen Peterson M.D. to conduct a psychiatric examination of the Defendant and that the approve the making of interim payments to Dr. Peterson. Defendant Nelson further prays that, pursuant to 21 U.S.C. 848(q)(10)(B), this Court certify that payments for investigative, expert or other services on behalf of Defendant Nelson are necessary to provide fair compensation for services of an unusual character or duration. Defendant Nelson further prays that this Court seek approval from the Chief Judge of the Eighth Circuit for such excess payments. Defendant Nelson additionally prays for any other and further relief which the Court may deem just and proper under the circumstances.

Respectfully submitted

William E. Shull No. 22544
104 West Kansas
Liberty, Mo. 64068
Phone: 816-792-4242
Fax: 816-792-0888
ATTORNEY FOR DEFENDANT



Appellate Case: 15-3160 Page: 23 Date Filed: 02/29/2016 Entry ID: 4372487

P28-0022



March 13, 2000

STEPHEN E. PETERSON, M.D.

Logan & Peterson, P.C.

911 Main, Suite 2330
Kansas City, Missouri 64105
Phone: (816) 842-2500
FAX: (816) 842-9980

and

3600 Burlingame, Suite 1A
Topeka, Kansas 66611-2097

**EDUCATION:**

July 1990 to June 1991 - Forensic Fellowship, Department of Law and Psychiatry, Karl Menninger School of Psychiatry, Box 829, Topeka, Kansas 66601.

July 1986 to June 1990 - Internship and Residency, Karl Menninger School of Psychiatry, C.F. Menninger Memorial Hospital.

July 1982 to June 1986 - Saint Louis University Medical School, Saint Louis, Missouri. Graduated in upper third, May 17, 1986.

July 1979 to June 1982 - Saint Louis University Graduate School, Department of Cellular and Molecular Biology.

September 1975 to June 1979 - University of California, Santa Barbara, Santa Barbara, California. Bachelor of Arts, Cellular Biology and Cellular Physiology.

September 1971 to June 1975 - Shasta High School, Redding, California. Honors program student.

**POST-RESIDENCY CONFERENCES AND COURSES:**

2000 Psychopharmacology Review: Current Clinical Practice from February 21 through February 25, 2000. This was sponsored by the University of Arizona and held in Tucson. (26.5 CME hours)

1998 AAPL Annual Meeting, New Orleans, Louisiana from October 22 through October 25, 1999.
Topics included: Presidential Address-Are the Mentally Ill Dangerous?, Sexually Abusing Clergy: What's An Expert To Do?, Post Dalbert Sexual Harassment Experts, Grappling with Sexual Predator Evaluations in Kansas, Confusion Multiplied: A Rational View of Multiple Personality Disorders in the Courtroom, A Study of Stalkers, Forensic Practice and Employment Cases, The Unabomber: Madman or Misanthrope, ADHD: Public Health View/Tax Payer View, Boundary Perceptions in Ohio Training Programs, Project Link: A Forensic Intervention Program, Surviving Inpatient Care in the Managed Care Era, Psychodevelopmental Descriptive Study of Adolescent Female Prostitution, Results of Long-term Exposure to Violence, Functional Brain Imaging and Criminal Behavior, Female Sex Offenders: A Comparative Study, Evaluation of Abel's Predictors of Child Molester Recidivism, Asperger's Disorder in Juveniles, MAO-Personality Profiles in Adolescent Substance Abusers, In the Valley of the Shadow of Death (young Texas forensic psychiatrist), Hypersensitivity in Sexual Harassment Claims, Dead Men Walking-A Journey by Sister Prejean, Forensic Evaluation of Paraphilic Stalkers, Psychiatric and Legal Perspectives of Stalking (24.75 CME Hours).

1997 AAPL Annual Meeting, Denver, Colorado from October 23 through 26, 1997.
Topics included: Sex Offender treatment after Hendricks, Reflections on the Criminal Justice System by Sol Wachtler, Competency to Stand Trial in Low I.Q. Juveniles, the Insanity Trial of John Dupont, Sexual Harassment Perspectives, Adult Recovered Memories: An Update, The Government's Response to Repeat Sex Offenders by Kansas Attorney General Carla Stoval, Ethics Law and Pre-arraignment Evaluations, Forensic Science: Past/Present/Future (AAFS), MAO-Inhibitors for Conduct-Disordered Adolescents, the California Sexually Violent Predator Law, Characterization of Symptoms in NGRI Patients, Race and Justice: A Cross Cultural Perspective by Chester M. Pierce, M.D., Standardized Assessment of Effort or Malingering, Sexual Commitment Laws: Clinical and Legal Issues, Organizational Pathology and Individual Disability. (24.25 CME hours)

1996 Psychopharmacology Update, October 1996, sponsored by Harvard Medical School, Boston Massachusetts (21 CME hours).

1996 Midwest AAPL "Challenges to the Thinking of Forensic Psychiatrists" April 19-20, St. Louis, Missouri (5.0 CME hours)

1994 AAPL Forensic Board Review Course, April 15-17, Atlanta, Georgia (22.5 CME hours).

1992 American Academy of Psychiatry and the Law (AAPL) Annual Meeting, Boston, Massachusetts from October 15 to 19, 1992 (20 CME hours).

1991 AAPL Annual Meeting, Orlando, Florida, October 17 to 20, 1991 (21 CME hours).

Mitigation Specialist Training in Saint Louis, Missouri by the National Legal Aid and Defense Association, October 10 and 11, 1991.

Terrorist Tactics and Negotiation Seminar, Northwestern University Traffic Institute, Evanston, Illinois, April 22 and 23, 1991.

United States Department of Justice, Bureau of Prisons, Mental Health Forensic Clinical Update from October 30 to November 1, 1990 in Rochester, Minnesota.

1990 AAPL Annual Meeting, San Diego, California from October 25 to 28, 1990 (17.5 CME hours).

1990 AAPL Forensic Board Review Course, October 19 to 24, 1990, San Diego, California.

Ritualistic Crimes, Cults, Occults, and Nontraditional Groups, June 12 and 13, 1990, taught by Paul S. Banner, Senior Criminology Instructor from the South Carolina Criminal Justice Academy.

Practical Reviews in Psychiatry 1992 to present (three CME hours per month).

May 1984, Forensic Pathology, a 20-hour course sponsored by the St. Louis University Department of Forensic and Environmental Pathology, St. Louis City and County Medical Examiners Office. Principal lecturer - George E. Gantner, M.D., Chief Medical Examiner.

**LICENSURES:**

Kansas State Board of Healing Arts - Medicine and Surgery #21932, issued July 1, 1987.

Missouri State Board of Registration of Healing Arts - Physician and Surgeon #MDR5P78, issued July 11, 1991.

United States Department of Justice Drug Enforcement Agency License to Dispense Controlled Substances from October 24, 1988 to present.

**BOARD CERTIFICATIONS:**

ABPN Added Qualifications in Forensic Psychiatry, October 11, 1994 #188

American Board of Psychiatry and Neurology, April 7, 1992 #35590

Diplomate of the National Board of Medical Examiners, July 1, 1987

**EMPLOYMENT:**

July 1993 - Vice President & Treasurer, Logan & Peterson, P.C. This psychiatric practice emphasizes Forensic, adult, and adolescent psychiatry. Evaluation and treatment of psychiatric disorders is provided. Opinions relevant to legal issues such as personal injury, workmen's compensation, disability, testamentary capacity, guardianship/conservatorship, malpractice, criminal competency, criminal responsibility, sentencing guidelines, mitigation and others are areas of specialty.

Consultations to both hospital and correctional settings include psychiatric evaluation, treatment, suitability for release, need for continued care, discharge planning, and others. Office practice includes psychotherapy and psychopharmacologic treatment.

Hospital consultation, residency supervision, and teaching are continued for The Menninger Clinic as well as the Karl Menninger School of Psychiatry.

July 1991 to July 1993 - Menninger Clinic, Department of Law and Psychiatry, Staff Psychiatrist. The position involved evaluation of referrals from attorneys regarding workmen's compensation, personal injury, malpractice, contested civil commitment, testamentary capacity, guardianship/conservatorship, child custody, employment evaluations, competency to stand trial, criminal responsibility, diminished capacity, sentencing and other issues.

Consultation is provided to state hospitals, federal hospitals, private hospitals, police departments, corrections systems, boards of healing arts, community corrections, and the Shawnee County Incest Diversion Program. Assist the Federal Court Monitor who supervises the progress of a class action suit.

Psychiatric Residents, Child Psychiatry Fellows, psychology interns, law students, and law enforcement trainees are provided training in Forensic Psychiatry. Court testimony, consultation and research is conducted. Psychotherapy and pharmocotherapy patients are treated in a direct-care caseload.

1988 to 1990 - Kansas Department of Corrections, Topeka, Kansas. Kansas State Reception and Diagnostic Center (10 hours per week, 385 inmate interviews).

1987 to 1988 - Colmery-O'Neil Veterans Administration Medical Center, Topeka, Kansas, paid House Officer, 10 hours per week. Duties included emergency room evaluations and first call for the entire 400-bed hospital.

1985 to 1986 - DePaul Hospital, Saint Louis, Missouri, Extern Admitting Physician and in-house night call for the Division of Psychiatry.

1981 to 1983 - Graduate teaching assistant, Medical student Biochemistry Laboratory, Saint Louis University Graduate School.

1982 to 1984 - Tutored Biochemistry to three freshman Saint Louis University medical students.

**PROFESSIONAL CONTRIBUTIONS:**

**Membership in Professional Organizations:**

American Academy of Psychiatry and the Law, 1990 to present.
American Psychiatric Association, July 1990 to present.
Western Missouri Psychiatric Association, 1992 to present.
Missouri State Medical Association, 1992 to present.
American Medical Association, 1989 to present.
Kansas Medical Society, 1989 to 1993.
American Association for the Advancement of Science, 1983 to present.
American Suicide Foundation, January 1994 to 1998.

**Hospital Affiliations:**

Larned State Hospital, Larned, Kansas 1992 to 1999.
Osawatomie State Hospital, Osawatomie, Kansas, 1992 to present.
United States Medical Center for Federal Prisoners, Springfield, Missouri, 1990 to present.
C.F. Menninger Memorial Hospital, Topeka, Kansas, 1986 to present.

**Consultations:**

Consultant to Shawnee County, Kansas Incest Diversion Program with the Menninger Clinic, 1989 to 1999.

Topeka Police Department evaluations of 32 new officer applicants, April to June 1994.

Topeka Police Department, Topeka, Kansas, June 1989 to July 1993 This involved case consultation, evaluation of recruits, evaluation of reserve applicants, evaluation of officers for special assignment (Response Team, Street Crime Team), In-service training, evaluation of officers in crisis, dispatcher stress management training, riding with officers, officer stress management training, supervision of the KMSP Residents assigned to the Police Department, and assistance with barricade of hostage negotiations. Crisis Counseling for college intern who observed an officer involved in shooting during July 1991. Observed presidential and senatorial security protection by Topeka Police, United States Marshals, and United States Secret Service (1990 and 1991).

C. F. Menninger Memorial Hospital, 1990 to present. Forensic and difficult-to-treat patient consultations. Consultations have included evaluation of criminal responsibility, evaluation of traumatic brain injury, and consequences of frontal lobe tumor in the shooting of a spouse.

to treatment, competency to stand trial, and insanity defense. Mock trial and case examples for the trial have been coordinated each year up to 1992.

Interviewer of KMSP Residency applicants for academic years 1990, 1991, and 1992.

Lectured to psychology interns at the United States Medical Center for Federal Prisoners in Springfield, Missouri on police liaison psychiatry and Post-traumatic Stress Disorder during April 1991.

Taught a combined "Law and Psychiatry" Colloquium to KMSP residents and Washburn Law Clinic students with Professor Nina Tarr in February 1991.

Lectured KMSP PGY-IV residents and Child Psychiatry Fellows on the role of the Forensic Expert, October 1990.

Presentation of Menninger Referral Development Team in September 1990.
Lectured KMSP PGY-I and II residents on Emergency Psychiatry, July 24, 1990.

Presentation on Brief Psychotherapy to KMSP PGY-IV residents, February 1990 and February 1991.

Presentations:

October 17, 1997, UMKC-School of Law, Continuing Legal Education Seminar entitled "Worker's Compensation." This was co-presented with William S. Logan, M.D. Topics covered included General Information Regarding Worker's Compensation, Practical Issues for Evaluations and Report Preparation, Potential Pitfalls, Overcoming Pitfalls in Assessment and Treatment, and Commonly Encountered Diagnoses.

April 11, 1996, University of Missouri-Kansas City-School of Law: Annual Sexual Harassment Program entitled: "New Strategies in Sexual Harassment Litigation: Dealing with Wal-Mart and Gary v. Long Cases", presentation and panel discussion, Kansas City, MO.

April 19, 1996, Criminal Law Seminar, "The Insanity Defense" overview and role of the psychiatrist, presented with William S. Logan, M.D. to members of the Kansas Trial Lawyers Association.

October 5, 1995, CME lecture to medical staff of Larned State Hospital, Topic: Treatment with Lithium (2.0 hours).

Panel Participant, March 18, 1994, University of Missouri-KC Law School Workshop "New Supreme Court Rules on Sexual Harassment." Panel addressed assessment and opinion regarding sex harassment accusations using a videotape vignette and Harris v. Forklift, 1993 WL 453611 (U.S.).

The Battered Woman's Defense, to Shawnee Criminal Defense Bar on March 25, 1993.

Lectured to Washburn Law School Evidence Class about the relevancy of the Frye Test in psychiatric evaluations on September 25, 1992.

Co-lecturer with William S. Logan, M.D. on March 30, 1992, "Mind of the Terrorist" to the Tenth Annual C. F. Menninger Military Psychiatry Conference.

Dispatcher Stress Management for the Topeka Police Department Telecommunications Division, 1989 to 1993. This is a semi-annual four-hour presentation to fire and police dispatcher trainees.

Appellate Case: 15-3160 Page: 28 Date Filed: 02/29/2016 Entry ID: 4372487

Topeka Police Department inservice training lecture on Interviewing given April 17, 1991.

Northeast Kansas Major Case Squad annual training, January 1991, Stress Management lecture for law enforcement officers.

1988 to 1992 - Lecturer, Hospital Treatment of Post-traumatic Stress Disorder, Karl Menninger School of Psychiatry.

1988 - Lectured with Robert Athey, Ph.D., Research Topics in Psychiatry, Karl Menninger School of Psychiatry.

1985 to 1986 - Teaching Faculty for Working with Dying Patients and Their Families, a Saint Louis University Medical School course.

**PUBLICATIONS:**

1993 Menninger Perspective, Law & Psychiatry, Vol 24:2, Interviewed for an article describing the relationship between attorney and psychiatric expert.

1993 Participant - A Strange Partnership: The incest Perpetrator and the Mental Health Professional. This videotape introduces concepts essential to diagnosis and treatment of both incest perpetrators and their families.

October 1998 Grappling with Sexually Violent Predator Evaluations in Kansas: Kansas v Hendricks by Roy B. Laucoursiere, MD; William S. Logan, MD, and Stephen E. Peterson, MD. Submitted February 1998 and accepted June 1998 for the October meeting. Participation at the meeting included answering questions about the topic.

**HONORS:**

Shawnee County Criminal Defense Bar Certificate of Appreciation, March 25, 1993. Topic: Battered Woman's Defense.

United States Department of Justice Certificate of Appreciation. December 31, 1991.

November 1990 Menninger Delegate to the Concepts of Depression in the 90's, Orlando, Florida.

July 1989 Miles Seeley Fellow in Psychiatry, based on superior residency performance with selection by the Karl Menninger School of Psychiatry Management Committee.

Spring 1977 Deans List Honor Roll, University of California Santa Barbara, Santa Barbara, California.

June 1975 American Legion Scholar Award, Live Oak Junior High School, Redding, California.

# TESTIMONY LIST

## STEPHEN E. PETERSON, M.D.

1. Jennifer H. Jones v. Howard Bixler - this May 11, 1998 plaintiff's expert deposition testimony was obtained by the defense. Testimony discussed whether prolonged sexual abuse could have induced borderline personality disorder, marital difficulties, sexual difficulty, parental difficulties, and career maturation problems. This was the first of two deposition sessions and the case settled before the second session.

2. Estate of Aaron Wolfe v BMA-this April 21, 1998 plaintiff's expert deposition testimony took place as part of a psychologic autopsy. The deposition addressed whether the events, which caused 12-year-old Aaron Wolfe's death, were due to accident, suicide, or unknown causes. Aerospace research about the impact of hypoxy on brain functioning and clinical research on strangulation were reviewed.

3. Angie Griffin Howell v Kansas Neuman College-this April 14, 1998 plaintiff's trial testimony took place during lawsuit against the college for negligence. Ms. Howell had survived having been hit by a pickup truck that was going 35 to 40 miles per hour, but was suffering depression, neuropsychologic deficits, and traumatic personality changes.

4. Charles Moore v. Missouri - this March 27, 1998 petitioner's expert trial testimony was given during a death penalty appeal. The testimony discussed whether PCP (phencyclidine), a dissociative anesthetic, could have rendered Mr. Moore incompetent to make a statement to the police and diminished his criminal responsibility.

5. In the Matter of: Joseph Lemberger v. KCP&L, et al - This defendant's deposition testimony addressed persisting Post-traumatic Stress Disorder, depression, and treatment recommendations. Mr. Lemberger had been shocked by more than 600 volts of electricity during May 1991. Mr. Lemberger had filed suit, asserting negligence by KCP&L and others that resulted in his workplace injury.

6. Kansas v. Garen Stockwell - this December 2, 1997 prosecution's expert civil trial testimony addressed major depression, paraphilia, and pedophilia. Mr. Stockwell had been evaluated in March of 1995. The information was subpoenaed by the Shawnee County Kansas District Attorney's office during a civil proceeding to determine whether Mr. Stockwell was a sexually violent predator.

7. Angie Griffin-Howell versus Kansas Newman College and Mr. Dennis Calvert - this plaintiff's deposition took place on August 14 and November 25, 1997. Mrs. Griffin-Howell asserted that Kansas Newman College was negligent during a basketball team run. During that run, Angie Griffin-Howell was struck from behind by a pickup truck driven by Mr. Calvert.

8. USA v Amanda Butterfield - this July 31, 1997 defense expert testimony was provided during a criminal sentencing for charges of fraudulent diversion of funds.

9. Kansas v Rheinhardt Greb - this July 29, 1997 defense testimony was provided during sentencing of Mr. Greb. Mr. Greb was charged with Aggravated Assault. The defense was diminished capacity.

10. Kansas v Jerry Braswell - this July 15, 1997 prosecution testimony took place during release review hearing. Mr. Braswell had been found Not Guilty by Reason of Insanity and was petitioning for a less restrictive environment.

11. Edith King v Herbert Meltzer, MD - this July 2, 1997 defense expert deposition took place during a malpractice lawsuit against Dr. Melzter. The issue was whether Dr. Meltzer performed surgical and pain management services below the Standard of Care.

12. Kansas v Curtis Jones - this prosecution testimony on June 25, 1997 took place during Mr. Jones' annual release review. Mr. Jones had been found Not Guilty by Reason of Insanity and had petitioned for transfer to a less restrictive environment.

13. In the Matter of FC - this testimony for the Missouri State Board of Healing Arts addressed Dr. C's quality of care.

14. Nebraska v Dennis Ryan - this defense expert testimony on April 15, 1997 addressed dangerousness for release.

15. Kansas v Rheinhart Greb - this March 27, 1997 defense expert testimony addressed whether Mr. Greb was competent to stand trial.

16. Missouri v. Eddie Clyde Harris (CR495-1131FX and CR495-1135FX) - this February 19, 1997 defendant's expert jury trial testimony addressed legal sanity for charges of attempted rape, sodomy, and assault. Evaluation and testimony was requested by DeWayne Perry of the Missouri State Public Defender, Joplin Office.

17. Sheila M. Bailey v. Togo D. West, Secretary of the US Army (195-2147-EEO) - this January 14, 1997 defendant's expert jury trial testimony addressed a claim of sexual harassment by civilian personnel on contract to the United States Army in Ft. Leavenworth, Kansas. The evaluation and testimony was requested by Mr. Robert Olsen, Assistant U.S. Attorney, Kansas District.

18. Missouri v. Eddie Clyde Harris (CR495-1131FX and CR495-1135FX) - this December 4, 1996 defendant's expert hearing testimony addressed competency to stand trial for charges of assault, attempted rape, and sodomy. Evaluation and testimony were requested by DeWayne Perry of the Missouri State Public Defender, Joplin Office.

19. In the Matter of the Marriage of Christy R. Kelly and Patrick J. Kelly (94-C-13717) - this November 26, 1996 Johnson County Kansas Plaintiff's expert testimony addressed parenting ability of a woman accused of Parental Alienation Syndrome.

20. Missouri v. Clinton Jackson (CR95-0801) - this November 15, 1996 defense expert hearing testimony addressed competency to stand trial by defendant with Dementia. Evaluation and testimony was requested by Mr. Tom Shanahan of the Missouri State Public Defender, Kansas City Trial Division.

21. USA v. Sean Winston (94-0143H-01) - this November 8, 1996 Federal Sentencing Hearing focused on diminished criminal capacity due to Bipolar Disorder. Evaluation and testimony was requested by defense attorney James Speck.

22. Kansas v. Curtis H. Jones (88CR-1561) - this October 31, 1996 expert hearing testimony addressed current mental disease and dangerous of an NGRI acquittee. Evaluation and testimony was requested by the Assistant Wyandotte District Attorney, Tom Telthorst.

23. USA v. Melissa O. O'Neal - this October 17, 1996 defendant's expert federal hearing testimony addressed mitigation of penalty. Testimony focused on contribution of acute decompensation, personality disorder, and low-grade depression to criminal responsibility for bank robbery and check forgery. Evaluation and testimony was requested by Assistant Public Defender, Marilyn Trubey, Kansas Office.

24. Larry and Sharon Norris v. Stephen Huk, M.D. - this September 24, 1996 Plaintiff's expert trial testimony addressed standard of psychiatric care provided by Dr. Huk. Evaluation and testimony was requested by Plaintiff's Attorney, David Morris of the McCleod Law Firm.

25. Sheila Bailey v Togo West, Secretary of the US Army - this September 12, 1996 plaintiff deposition of defense expert addressed a claim of sexual harassment at Ft. Leavenworth.

26. Missouri State Board of Healing Arts v Robert Butcher, MD - this September 4, 1996 complainant expert hearing addressed Dr. Butcher's stimulant prescribing practices, adequacy of medical care, and medical record keeping.

27. Braswell, Jerry v. State of Kansas - this June 21, 1996 defense expert testimony addressed ongoing dangerousness of an insanity acquitee and efficacy of treatment.

28. The Estate of Frank Bernard Cassara v. The State of Illinois et al - this March 8, 1996 plaintiff's expert affidavit addressed standard of inpatient care after Mr. Cassara strangled himself in a state facility.

29. Kenneth Kenley v. State of Missouri - this April 4, 1996 appellant's expert testimony addressed post death-penalty conviction mitigation evidence.

30. Larry and Sharon Norris v. Stephen Huk, M.D. - this October 15, 1995, November 13, 1995 and March 29, 1996 plaintiff's expert Missouri deposition addressed standard of care provided by Dr. Huk in the suicide of Ryan Norris.

31. Bryan O'Hare v. Oak Grove R6 School and Van Liner Insurance Company - this February 1, 1996 Missouri Workmen's Compensation Court defendant's deposition addressed claim of work place induced paralysis.

32. Jeri Wreath v. United States of America - this January 8, 1996 defendant's expert trial testimony addressed a claim of sexual harassment on a U. S. Army facility.

33. Bette Nelson v. Sunrise Manor and Church Mutual Insurance Company - this December 1, 1995 Nebraska Workmen's Compensation Court defendant's expert deposition addressed claim of post-traumatic stress disorder resulting from a slashing by a psychotic nursing home patient.

34. Willie Simmons v. State of Missouri - this November 27, 1995 appellant's expert testimony addressed rebuttal of state certification for competency to stand trial during post death-penalty conviction hearing.

35. Abraham Orr v. State of Kansas - this November 4, 1995 defendant's expert testimony addressed effectiveness of trial counsel. This issue arose during appeal of a murder conviction.

36. United States of America v. Louis Jones - this October 31, 1995 defense expert testimony presented mitigating evidence during a federal death penalty sentencing procedure.

37. Sheila Rouse v. Boehringer Mannheim U. S. Holdings, Inc., et al - this July 21, 1995 plaintiff's expert telephone testimony discussed if employment discrimination could cause psychiatric illness.

38. Willie Simmons, Jr. v. Missouri - this June 20 and 21, 1995 plaintiff's expert hearing testimony addressed criminal responsibility, competency to stand trial, and mitigation during post-conviction review of Mr. Simmons' two capital murder convictions.

39. Carroll Noel, Jr. v. Kansas - this June 14, 1995 respondent's expert hearing testimony addressed ongoing dangerousness of an NGRI acquitee.

40. Paul Kreutzer v. Missouri - this May 30, 1995 plaintiff's expert hearing testimony discussed the factors related to mitigation of the death penalty during post-conviction review of Mr. Kreutzer's homicide conviction.

41. Scott C. Burnett v. Western Resources, Inc. - this May 8, 1995 respondent's expert trial testimony discussed alleged injuries from a job-related electrical contact. This was a retrial.

42. Linda D. Lowman v. Thomas M. Lowman - this March 3, 1995 respondent's expert trial testimony addressed accusation of child sexual abuse during a child custody dispute in Kansas.

43. J. J. Bryant Estate v. All Temperature Insulation, et al - this February 15, 1995 plaintiff's expert trial testimony discussed psychological autopsy, chronic depression, and causation of suicide regarding a 1992 work-site accident.

44. Missouri State Board for the Registration of Healing Arts v. Wayne Williamson, D.O. - this November 29, 1994 plaintiff's expert video deposition addressed accusations regarding Dr. Williamson's narcotic prescription pattern, prescribing of Nubain, and his standard of clinical practice.

45. J. J. Bryant Estate v. All Temperature Insulation, et al - this November 2, 1994 Wyandotte County, Kansas plaintiff's expert deposition addressed psychological autopsy of Mr. Bryant's suicide as related to an industrial injury.

46. Kansas v. Sarah Orr - this October 31, 1994 Douglas County, Kansas prosecution's expert trial testimony addressed rebuttal of battered women's defense and criminal responsibility in an aggravated escape attempt.

47. In the matter of the Estate of William J. Sinkula - this September 10, 1994 proponent's expert deposition discussed testamentary capacity and undue influence during the making of a will.

48. Scott C. Burnett v. Western Resources, Inc. - this August 17, 1994 defense expert's deposition discussed alleged injuries from an electrical contact on the job.

49. Kansas v. Donna L. Picolet - this August 15, 1994 defense expert's sentencing testimony discussed wife battering, abusive relationships, and alcohol abuse in relationship to a voluntary manslaughter plea.

50. Theresa H. Oliphant v. Perkins - this July 17, 1994 defense expert's deposition discussed on-the-job gender harassment.

51. Kerry Jo Jordan v American Home Products - this May 13, 1994 defense expert affidavit addressed claim of brain damage caused by a contraceptive product.

52. Texas v. Joe Lee Guy - defense trial testimony on April 27, 1994 regarding mitigating circumstances during a capital murder trial.

53. Missouri v. Phillips - this was deposition testimony on November 17, 1993 while I was retained as the defense expert regarding allegations of child sexual abuse and repressed memories.

54. Julie Morgan v. Julie Riggert, et al - this August 28, 1993 deposition testimony in Iowa involved plaintiff's expert testimony regarding sexual molestation.

55. Estate of Fidencio Fira, Jr. v. Stanton County, Kansas, et al - this July 28, 1993 plaintiff's expert deposition testimony discussed whether Fidencio Fira, Jr.'s civil rights had been violated in regard to a jail suicide.

56. Kenneth Webb v. Arby's - this plaintiff's expert deposition testimony in Topeka, Kansas discussed a workmen's compensation claim on behalf of Kenneth Webb.

57. Marty Kenyon v. Kansas Power & Light - this August 19, 1992 defense expert's testimony in Leavenworth, Kansas addressed whether the plaintiff had suffered permanent injury from an electrocution accident.

58. Kansas v. Illace Jean Davis - this June 16, 1992 defense expert trial testimony in Topeka, Kansas regarded an annual treatment release-review of this patient who had been found not guilty by reason of insanity.

59. Kansas v. Eric Dean Sims - this 1992 prosecution rebuttal of defense expert's sentencing recommendations took place in Shawnee County, Kansas and discussed treatability of a sex offender.

60. Kansas v. Janet Creamer - this defense trial testimony took place in Garden City, Kansas during which the battered women's defense was countering a first-degree murder charge. That testimony took place either in late 1991 or early 1992.

61. Missouri v. Jahn Henri Parker - this defense trial testimony discussed mitigating circumstances in the capital murder sentencing of Jahn Henri Parker. This testimony occurred sometime around September 1991.

62. United States of America v. Gregory K. Monroe - this prosecution criminal responsibility expert testimony took place in Sherman, Texas during 1991.

63. In Re Goldie Lane - this April 10, 1991 plaintiff trial testimony in Topeka, Kansas regarded this woman's need for guardianship.

64. United States of America v. Gerald Brisco - this prosecution In Camera hearing testimony took place in Wichita, Kansas and discussed sentencing recommendations for a presidential threatener.

65. Kansas v. Michael Curry - this defense expert sentencing testimony in Wichita, Kansas addressed whether this patient suffered dissociative/multiple personality disorder.

66. United States of America v. Earl B. Barnes, Jr. - this prosecution trial testimony discussed criminal responsibility and sentencing at the U. S. District Court located in Lubbock, Texas.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FILED
AUG 11 2000
P. L. BRUNE, CLK.
U.S. DISTRICT COURT
WEST DISTRICT
OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 99-00303-01-CR-W-6-2 |
| | ) | |
| KEITH DWAYNE NELSON, | ) | |
| | ) | |
| Defendant. | ) | |

## EX PARTE AND UNDER SEAL SUPPLEMENTAL SUGGESTIONS IN SUPPORT OF MOTION FOR FUNDS TO DR. PETERSON TO CONDUCT A PSYCHIATRIC EXAMINATION OF DEFENDANT

COMES NOW defendant, by and through appointed counsel, and hereby submits the following Supplemental Suggestions in support of his Motion for funds to hire Dr. Peterson to conduct a psychiatric examination:

1. Defendant previously filed a Motion for funds to hire Dr. Peterson to conduct a psychiatric examination of defendant. That motion requested $20,000. For his work and testimony at trial.

2. Counsel for defendant has provided Dr. Peterson with more details regarding the information currently possessed by counsel and the information counsel is in the process of gathering. Dr. Peterson would have to review this information in order to make an informed diagnosis and present his findings at trial.

3. To date the government has provided approximately 1,600 pages of discovery. This discovery, which encompasses police reports and witness statements would have to be reviewed by Dr. Peterson.

4. Investigation has revealed that defendant has an extensive juvenile record.

Counsel is in possession of defendant's complete juvenile file which over a thousand pages thick. These documents contain police reports, confinement reports and several mental examinations. All of this information would have to be reviewed by Dr. Peterson.

5. Investigation has also revealed that two of defendant's brothers have been diagnosed as schizophrenic. Counsel has some mental health records of these individuals and is in the process of gathering other documents. All of these docents would have to reviewed.

6. Counsel is in possession of most of defendant's school records, including records of his special education classes. This information would have to be reviewed.

7. Defendant has several family members and friends in the community, who Dr. Peterson needs to interview.

8. Finally, counsel has obtained all records relating to defendant's incarcerations in the Missouri Department of Corrections and is current incarceration at CCA on this case, again, all these records need to be reviewed by Dr. Peterson.

9. After having been advised of the above information, Dr. Peterson as prepared the attached estimate of time and expense for work on this case.

WHEREFORE for the above stated reasons and the reasons stated in defendant's previous Motion for Funds, defendant respectfully requests this Honorable Court authorize $20,000 in funds so defendant can hire Dr. Peterson, as an expert consultant and witness.

Respectfully submitted:

Susan M. Hunt
819 Walnut, Ste. 308
Kansas City, MO. 64106
Phone: (816) 221-4588



Appellate Case: 15-3160 Page: 37 Date Filed: 02/29/2016 Entry ID: 4372487

# LOGAN & PETERSON, PC

FORENSIC, ADOLESCENT AND ADULT PSYCHIATRY

WILLIAM S. LOGAN, MD
STEPHEN E. PETERSON, MD

☒ 911 MAIN, SUITE 2330
KANSAS CITY, MISSOURI 64105
TELEPHONE: (816) 842-2500
FAX: (816) 842-9980

☐ 7733 FORSYTH, SUITE 1450
CLAYTON, MISSOURI 63105
TELEPHONE: (314) 236-4914
FAX: (314) 236-4990

3600 BURLINGAME, SUITE 1A
TOPEKA, KANSAS 66611

August 10, 2000

William E. Shull
Attorney at Law
104 West Kansas
Liberty, Missouri 64068-2359
Office: 816-792-4242
Fax: 816-792-0888

**Re: Initial Estimate of Fees for Mental Evaluation of Keith Nelson**

Dear Mr. Shull:

Thank you for your July 31, 2000 letter asking for an estimate of fees by activity. These are obviously estimates.

| | | |
|---|---|---|
| 1. | Review of law enforcement records | 10.00 hours |
| 2. | Review of available medical records | 25.00 hours |
| 3. | Collateral source interviews | 15.00 hours |
| 4. | Psychiatric interview of Mr. Nelson | 10.00 hours |
| 5. | Travel time (CCA) - 2 trips | 6.00 hours ($100.00/hr) |
| 6. | Psychologic testing (paper-and-pencil) | $ 200.00 |
| 7. | Conference with attorney | 8.00 hours |
| 8. | Report preparation | 10.00 hours |
| 9. | Mileage (CCA) 240.00 mileage x .325/mi | $ 78.00 |
| 10. | Preparation for court testimony | 12.00 hours |

| | | |
|---|---|---|
| 11. | Court testimony | 5.00 hours |
| | Total | 95.00 |

| | |
|---|---|
| Interim Estimate @ 200/hr (95.00) | $19,000.00 |
| @ 100/hr (6.00 driving time) | 600.00 |
| Fixed cost $278.00 | 278.00 |
| | $19,878.00 |

Mr. Nelson's capacity to participate in the evaluation, time for review of law enforcement records, time for a review of medical records, review of any additional medical records discovered during the assessment, and other activities may greatly change this initial estimate.

If you need any clarification about these estimated charges, do not hesitate to contact me.

Sincerely,

Stephen E. Peterson MD

Stephen E. Peterson, MD
Diplomate, American Board of Psychiatry and Neurology 1992
ABPN Subspecialty in Forensic Psychiatry 1994

SEP/sg

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FILED SEP 25 2000

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 99-00303-01-CR-W-2 |
| | ) | |
| KEITH DWAYNE NELSON, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Pending before the Court is Defendant Nelson's Ex Parte Request for Funds to Hire a Psychiatrist and a pleading entitled Ex Parte and Under Seal Supplemental Suggestions In Support of Motion for Funds to Hire Dr. Peterson to Conduct a Psychiatric Examination of Defendant. The Court finds that the request seeking funding for a psychiatric examination is reasonably necessary. The request is approved up to a maximum of $20,000.

IT IS SO ORDERED.

Sarah W. Hays
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE

Date: September 25, 2000
Kansas City, Missouri

FILED DEC 12 2000 P. L. BRUNE, CLK. US DISTRICT COURT WEST DISTRICT OF MISSOURI

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 99-00303-01-CR-W-6 |
| | ) | |
| KEITH DWAYNE NELSON, | ) | |
| | ) | |
| Defendant. | ) | |

## EX PARTE MOTION FOR FUNDS TO EMPLOY T. S. FRANCIS & ASSOCIATES AS A MITIGATION INVESTIGATOR

COMES NOW defendant, by and through appointed counsel, and moves this Honorable Court, pursuant to the ***fifth, sixth and eighth amendments to the United States Constitution and 18 U.S.C. § 3006A(e)(1)***, for funds to employ T. S. Francis & Associates as a Mitigation Investigator in this case.

### Suggestions in Support of Motion

1. Defendant has been charged with kidnaping and murdering a ten year old girl. The government is seeking the death penalty. In its Notice of Aggravating factors, the government listed several factors regarding the circumstances of the crime and further alleges aggravating factors relating to future dangerousness such as escape and assault of prison guards.

2. Defendant has been ruled indigent and the undersigned have been appointed under the Criminal Justice Act to represent him. Initially, the Federal Public Defender of the Western District of Missouri was also appointed in this case.

3. Counsel initially decided that the Public Defender would be responsible for

ORIGINAL #161

developing the mitigation phase of this trial. This responsibility included the majority of the mitigation investigation, employing a mitigation specialist and the presentation of this evidence at trial. Within the office of the Public Defender was an experienced investigator, Ron Ninemire, who had substantial experience and knowledge of mitigation phases of capital cases. The undersigned counsel also obtained approval from this Court to employ Dan Grouthaus as a mitigation investigator.

4. Defendant was primarily raised in the Fresno, California area and in White Settlement, Texas. The initial thought was that Mr. Grouthaus would investigate the facts relating to the guilt and innocence phase of this case and also investigate the mitigation evidence in the Kansas City area. The defense team would then have the Public Defender, specifically their investigator Ron Ninemire, conduct the mitigation investigation in California and Texas. They would also bear the costs of any mitigation specialist necessary for analyzing the mitigation evidence and providing expert and testimony in this case. Counsel believed that proceeding in this manner would be the most cost efficient manner for the courts. As a result, Mr. Ninemire began the mitigation investigation of this case in the Fort Worth, Texas area, and Mr. Grouthaus began the fact and mitigation investigation in the Kansas city area.

5. In September the Court allowed the Public Defender to withdraw from this case, due to a conflict. As a result, the defense team lost their primary mitigation investigator, their potential mitigation specialist and the attorney who would be responsible for handling the mitigation phase of this case.

6. After the public defender was allowed to withdraw, the undersigned reviewed the information that had been gathered by the Public Defender and determined how to best



Appellate Case: 15-3160 Page: 42 Date Filed: 02/29/2016 Entry ID: 4372487

fill the tremendous loss of expert, investigative and attorney services.

7. Counsel contacted and interviewed several mitigation specialists. Counsel finally decided on employing Mark D. Cunningham, Ph.D., as a potential mitigation specialist in this case. (See Motion for Funds to Employ Mark D. Cunningham, Ph.D.). Dr. Cunningham suggested counsel contact Tina Francis of T. S. Francis & Associates and discuss with her the mitigation investigation that needs to be accomplished in this case. A meeting was then arranged between counsel, Dr. Cunningham and Tina Francis to discuss the mitigation phase of this case. As a result of that meeting counsel believes Tina Francis will be an excellent mitigation investigator in this case. Attached to this Motion is her affidavit and resume. As the Court can see Ms. Francis has substantial experience in this area and has worked with Dr. Cunningham in the past. Additionally, most of the mitigation investigation that needs to be completed is in the Fort Worth area, which is withing the metropolitan area of Ms. Francis' office. Utilizing her services will eliminate the need for travel expenses for the mitigation investigator in this case. Moreover, because T. S. Francis & Associates charges substantially less than Dr. Cunningham does for her work, counsel believes it will be cost effective for the Court to approve funds for T. S. Francis & Associates to gather the records needed, to locate and interview potential witnesses and organize this material for Dr. Cunningham's review.

8. Attached to this Motion is a fee schedule of T. S. Francis & Associates. Counsel believes $15,000.00 is necessary to complete the mitigation investigation in this case and organize and summarize that information for Dr. Cunningham's review.

9. Defendant asserts these funds are necessary to accomplish the investigation that needs to be done in this case. Defendant assets that this type of expert assistance is not

only reasonably necessary, it is contemplated by the United States Constitution and authorized under the Criminal Justice Act.

In ***Powell v. Alabama***, 287 U.S. 45, 71 (1932), the Supreme Court had before it the notorious case of the "Scottsboro boys". Recognizing that death penalty cases are different, the Court held that indigent capital defendants have the right to court-appointed counsel. It is now well established, not surprisingly in a capital case, that the Sixth Amendment requires more than just nominal counsel, rather it demands a lawyer with "such skill and knowledge" in capital litigation who can ensure that the trial is "a reliable adversarial testing process ..." ***Strickland v. Washington***, 466 U.S. 668, 686-88 (1984). In certain circumstances, such as the instant, counsel can not possess the necessary "knowledge" without expert assistance.

7. While defendant relies upon the ***fifth, sixth and eighth amendments to the United States Constitution***, he also relies upon ***18 U.S.C. § 3006A(e)(1)*** which states, in pertinent part:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court ... shall authorize counsel to obtain the services.

8. When considering this application for funds for a Mitigation Investigator, this Court should consider it's duty to ensure that the kind of trial a person gets does not depend on his or her financial resources. ***See generally Griffin v. Illinois***, 351 U.S. 12 (1956). This right is derived from the right to equal protection of law and due process under the fifth amendment to the United States Constitution, ***Griffin v. Illinois, supra***, and the sixth



Appellate Case: 15-3160 Page: 44 Date Filed: 02/29/2016 Entry ID: 4372487

amendment right to effective assistance of counsel. ***Argersinger v. Hamlin***, 407 U.S. 25 (1972); ***Powell v. Alabama,*** 287 U.S. 45 (1932). Because this is a capital case, the eighth amendment is also implicated.

9. Equal protection of law requires that indigent persons be provided with the "basic tools of an adequate defense when those tools are available for a price to other persons." ***Britt v. North Carolina***, 404 U.S. 226 (1971). "The right to counsel is meaningless if the lawyer is unable to make an effective defense, because he has not funds to provide the **specialized testimony** the case requires." ***Bush v. McCollum, 231 F.Supp***. 560 (N.D. Tex. 1964), ***aff'd,*** 344 F.2d 672 (5th Cir. 1965) (emphasis added).

10. The Supreme Court's decision in ***Ake*** applies to all experts reasonably necessary for an effective defense. Because of the nature of this case and the extent of aggravating factors asserted by the government, counsel believes a qualified Mitigation Investigator is essential to effective representation in the sentencing phase of this trial.

WHEREFORE for the above stated reasons, defendant respectfully requests this Honorable Court authorize funds so defendant can employ T. S. Francis & Associates as a Mitigation Investigator in this case.

Respectfully submitted:

Susan M. Hunt
819 Walnut, Ste. 308
Kansas City, MO. 64106
Phone: (816) 221-4588
Fax: (816) 221-2551



Appellate Case: 15-3160 Page: 45 Date Filed: 02/29/2016 Entry ID: 4372487

William E Shall by Sm
William E. Shall
104 West Kansas
Liberty, Mo. 64068
Phone: (816) 792-4242
Fax: (816) 792-0888

*Tena S. Francis*
*T.S. Francis & Associates*
*Criminal Defense / Mitigation Investigations*
*P.O. Box 443*
*Wylie, Texas 75098*
*(972) 442-0837*

---

**EDUCATION**

**Master of Science, Criminal Justice,** Eastern Kentucky University, 1992
**Bachelor of Science, Police Administration,** Eastern Kentucky Univ., 1985

**PROFESSIONAL EXPERIENCE**

**1995 - present**

**Owner, T.S. Francis & Associates,** Wylie, Texas; TX P.I. Lic. A08158
Work exclusively with attorneys representing capital case defendants in various state and federal courts at both pre-trial and post conviction. Supervise and train staff of up to eight people. Services provided include:

- conduct extensive psycho-social history investigations through records collection, witness interviews and literature research
- conduct fact investigations for guilt innocense phase of proceeding
- assess the need for, identify, and work closely with expert witnesses
- prepare evidence for presentation to court authority

**1994 - 1995**

**Investigator, Texas Appellate Practice and Educational Resource Center (TRC),** Houston, Texas
Planned and performed investigative assignments for attorneys representing death row inmates during state and federal habeas litigation; supervise and train less experienced staff attorneys, investigators, paralegals, and mitigation specialists; and develop training materials. Investigation tasks performed include:

- review trial record and prepare investigation plan
- locate and interview witnesses
- conduct extensive social history investigations
- prepare reports for expert witnesses
- prepare witness affidavits for inclusion in legal briefs
- prepare training materials for in-house training
- conduct training programs for in-house training

**1991 - 1994**

**Owner, Francis Investigations,** Lexington, Kentucky
Provided investigative and other legal support services to criminal defense attorneys. Services provided include all those listed above.

**1992 - 1994** **Adjunct Faculty, Eastern Kentucky University,** Fort Knox, Kentucky
Taught Police Admin. and Security courses to students of Criminal Justice

**1987 - 1991** **Investigator Senior, Department of Public Advocacy,** Frankfort, Kentucky (State public defender agency)
Planned and performed investigative services as outlined above for trial level criminal cases ranging from misdemeanors to capital murder

## CAPITAL LITIGATION EXPERIENCE

**T. S. Francis & Associates -** provided investigative services for more than one hundred capital cases in various state and federal courts in both the pre-trial and the post-conviction stages. Conducted investigations into both the innocence/guilt and the punishment phases of capital cases.

**Texas Resource Center -** provided investigative services for more than twenty post-conviction capital cases on a state-wide basis. Provided investigative services for one trial-level capital case. Conducted investigations into both the innocence/guilt and the punishment phases of capital cases.

**Department of Public Advocacy -** assigned to the Capital Trial Unit (CTU), which litigated capital cases on a state-wide basis. Conducted investigations into both the innocence/guilt and the penalty phases of capital cases during the pre-trial stage.

## TOPICS OF ADVANCED TRAINING

- Life in the Balance -- various topics related to capital litigation (1999)
- Life in the Balance -- various topis related to capital litigation (1997)
- Homicide Investigations (1996)
- Investigating the Client's Life (1996, 1995)
- Identifying and Investigating Childhood Trauma Issues (1996, 1995)
- Working With A Chemically Dependant Client (1996, 1989)
- Interviewing Jurors (1995)
- Investigating and Litigating State Misconduct Claims (1994)
- Race Claims (1994)
- Juror Misconduct Investigation and Litigation (1994)
- Crime Scene Investigation (1994)
- Ford Claims (1994)
- Mental Health Issues (1994)

**Topics of Advanced Training, cont.**

- Litigating False Confessions (1994)
- Capital Litigation Issues (1994)
- Developing Mental Health Claims (1994)
- Mitigation Investigation (1993)
- Capital Litigation Issues (1993)
- Death Penalty Post-Conviction (1993)
- Battered Woman Defense (1993)
- Understanding and Working With Mentally Ill Clients (1993)
- Defense of Child Abuse Cases (1993)
- Neuropsychology (1993)
- DNA Fingerprinting (1992)
- Questioned Document Analysis (1992)
- Serology Analysis (1992)
- Child Sexual Abuse Defenses (1992)
- Kinesic Interviewing and Interrogation Techniques (1991)
- Crime Scene Photography (1987)

**PROFESSIONAL MEMBERSHIPS**

National Legal Aid Defender Association
National Defender Investigator Association
Alpha Phi Sigma (Criminal Justice Honorary)
College of Law Enforcement Alumni Association

**REFERENCES**

Supplied upon request

*T. S. Francis & Associates*
*Criminal Defense / Mitigation Investigations*
*P.O. Box 443*
*Wylie, Texas 75098*
*(972) 442-0837*

---

## FEE SCHEDULE

**Hourly rate:** $60.00 per hour

**Services included in hourly rate:**

Review pre-trial discovery (or trial record, in the case of an appeal) and prepare investigation plan;

Conduct extensive psycho-social history investigations through records collection, witness interviews and literature research;

Identify, locate and interview witnesses;

Conduct extensive background investigations with regard to witnesses, as applicable;

Assess the need for, identify, and work closely with expert witnesses;

Prepare reports for attorneys and expert witnesses;

Prepare evidence for presentation to court authority; and

Prepare witness affidavits for inclusion in legal briefs, when applicable.

**Services provided at reduced hourly rate of $30.00 per hour:**

Prepare Life History Chronology and Social History Narrative, based on all of the records collected and witnesses interviewed, to be used by expert witnesses.

**Compensation for expenses:**

Expenses incurred during an investigation for which compensation will be requested include:

Mileage (at $0.30 per mile)
Airfare
Meals, during overnight travel
Lodging
Parking
Copying fees for records

STATE OF TEXAS }

COUNTY OF COLLIN }

**Affidavit of Tena S. Francis**

Comes the affiant, Tena S. Francis, after first being duly sworn, states the following.

1. I am a licensed private investigator in the state of Texas. I have provided criminal defense and mitigation investigative services to attorneys since 1987.

2. I graduated from Eastern Kentucky University in 1986 with a Bachelor of Science degree in Police Administration. I earned my Master of Science degree in Criminal Justice from the same university in 1990. Since that time I have continued my education by regular attendance of state and national training programs with topics pertaining to capital case litigation and forensic social work.

3. Since 1987, I have provided investigative services for more than 100 capital murder cases in both the pre-trial and post-conviction stages of prosecution. These cases have been litigated in both federal and state courts, including California, Kentucky, Georgia, Louisiana, Nevada, New Mexico, Texas, and Virginia. I have provided training to attorneys, law students, investigators, and mitigation specialists during the last several years regarding topics related to punishment phase preparation and social history investigation.

4. A capital case mitigation specialist assists the defense attorneys by conducting a comprehensive social history investigation. The information obtained during the social history investigation is important to each stage of the capital litigation: from pre-trial motions, to jury selection, to the development of the theory of defense at both stages of the trial proceeding, and to the possible negotiation of a plea agreement.

5. The significance of the social history investigation can be seen by noting the applicability of the information obtained. Information obtained during the social history investigation is used to identify factors in the client's background and current situation that indicate the need for expert assistance. After the investigation is complete, it is the role of the mitigation specialist to: assess the need for, identify, and consult with the appropriate expert witnesses. This same social history information is used by the expert witness for conducting evaluations.

6. Other roles of the mitigation specialist include: identifying and compiling information to be used by the attorneys when defending against aggravating circumstances and preparing the presentation of mitigation evidence. The presence of factors in the client's psycho-social history that may have had a direct bearing on his behavior at the time of the offense must be considered and developed for presentation to the sentencing authority. Themes of mitigation and defense are identified and developed in order to best present the mitigation to the sentencing authority. Witnesses are identified that can offer support to the testimony of the expert witnesses by illustrating particular points about the client. Demonstrative evidence may be prepared for use at trial.

7. Information is obtained for the social history investigation in three ways: through the collection of records that document and illustrate every aspect of the client's life, through witness interviews, and through research of literature that specifically pertains to the client's situation. Although the methods used to obtain social history information may be similar from one case to the next, the needs of each client are as individual as the clients themselves.

8. In essence, the social history investigation details every aspect of the client's life: pre-natal care, birth, medical and psychological histories, education / academic achievements, religious background, employment history, military service experience, criminal activity, incarceration history, incidents of substance abuse, family background information, cultural considerations, inter-personal relations, the development of social skills, and many other factors. It is necessary for the mitigation investigator to collect multi-generational data about the client and his family in order to identify patterns of behavior and medical history that influenced or affected the client development and behavior. records collected offer objective documentation about the client's life history. Witnesses to be interviewed not only include the client and close members of his family, but also persons who are/were in a position to be more objective about the client and his surroundings. Other witnesses contacted are those persons who are able to provide professional assessments of the client and his family situation.

9. The importance of the social history investigation cannot be overlooked. Because the information obtained during this investigation may impact defense theories and strategies at every stage of the proceeding, this investigation must be completed early into the representation of the client. The mitigation specialist must be given the time and resources required to conduct a comprehensive investigation. It is my professional opinion that the adequate investigation of a capital case requires at least 200 - 400 hours of work, or approximately five to ten weeks of non-

interrupted investigation. This figure does not include travel time which may be a necessary consideration if the client and witnesses are from out of state. The amount of time required for the investigation also depends on the amount of preparation done by the attorney and the extent of direction through memoranda prepared by the attorney.

I affirm that the foregoing paragraphs, numbered one through nine are true and correct to the best of my knowledge.

______________________________

Tena S. Francis

______________________________

Date

Subscribed to and sworn before me
by Tena S. Francis on this ____ day
of ____________________, 2000.

______________________________

Notary Public, State of Texas
My Commission expires: _________

FILED DEC 12 2000 R. F. CONNOR, CLERK U.S. DISTRICT COURT WEST. DIST. OF MO.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 99-00303-01-CR-W-6 |
| | ) | |
| KEITH DWAYNE NELSON, | ) | |
| | ) | |
| Defendant. | ) | |

## EX PARTE MOTION FOR FUNDS TO EMPLOY MARK D. CUNNINGHAM. Ph.D. AS A MITIGATION SPECIALIST

COMES NOW defendant, by and through appointed counsel, and moves this Honorable Court, pursuant to the ***fifth, sixth and eighth amendments to the United States Constitution and 18 U.S.C. § 3006A(e)(1)***, for funds to employ Mark D. Cunningham, Ph.D. as a Mitigation Specialist in this case.

### Suggestions in Support of Motion

1. Defendant has been charged with kidnaping and murdering a ten year old girl. The government is seeking the death penalty. In its Notice of Aggravating factors, the government listed several factors regarding the circumstances of the crime and further alleges aggravating factors relating to future dangerousness such as escape and assault of prison guards.

2. Defendant has been ruled indigent and the undersigned have been appointed under the Criminal Justice Act to represent him. Initially, the Federal Public Defender of the Western District of Missouri was also appointed in this case.

3. Counsel initially decided that the Public Defender would be responsible for

ORIGINAL #163

Appellate Case: 15-3160 Page: 54 Date Filed: 02/29/2016 Entry ID: 4372487

developing the mitigation phase of this trial. This responsibility included the majority of the mitigation investigation, employing a mitigation specialist and the presentation of this evidence at trial. Within the office of the Public Defender was an experienced investigator, Ron Ninemire, who had substantial experience and knowledge of mitigation phases of capital cases. The undersigned counsel also obtained approval from this Court to employ Dan Grouthaus as a mitigation investigator.

4. Defendant was primarily raised in the Fresno, California area and in White Settlement, Texas. The initial thought was that Mr. Grouthaus would investigate the facts relating to the guilt and innocence phase of this case and also investigate the mitigation evidence in the Kansas City area. The defense team would then have the Public Defender, specifically their investigator Ron Ninemire, conduct the mitigation investigation in California and Texas. They would also bear the costs of any mitigation specialist necessary for analyzing the mitigation evidence and providing expert and testimony in this case. Counsel believed that proceeding in this manner would be the most cost efficient manner for the courts. As a result, Mr. Ninemire began the mitigation investigation of this case in the Fort Worth, Texas area, and Mr. Grouthaus began the fact and mitigation investigation in the Kansas city area.

5. In September the Court allowed the Public Defender to withdraw from this case, due to a conflict. As a result, the defense team lost their primary mitigation investigator, their potential mitigation specialist and the attorney who would be responsible for handling the mitigation phase of this case.

6. After the public defender was allowed to withdraw, the undersigned reviewed the information that had been gathered by the Public Defender and determined how to best



Appellate Case: 15-3160 Page: 55 Date Filed: 02/29/2016 Entry ID: 4372487

fill the tremendous loss of expert, investigative and attorney services.

7. Counsel contacted and interviewed several mitigation specialists. Counsel finally decided on employing Mark D. Cunningham, Ph.D., as the mitigation specialist in this case. Susan M. Hunt, counsel for defendant heard Mr. Cunningham speak at a recent death penalty seminar. After that seminar, counsel contacted Dr. Cunningham and a meeting was arranged between both undersigned counsel and Dr. Cunningham. As a result of those discussions counsel believes Dr. Cunningham is well qualified to analyze and present the mitigation evidence in this case. In addition to his outstanding credentials, Dr. Cunningham's office is in Abilene, Texas. As previously stated most of the mitigation evidence and witnesses in this case are in the Fort Worth, Texas area. Counsel believes employing a mitigation specialist close to that area will conserve valuable judicial resources and provide the most cost efficient manner of proceeding.

8. Attached to this Motion is an affidavit of Dr. Cunningham. In that affidavit Dr. Cunningham provides his background and a list of cases in which he as provided mitigation specialist testimony. In addition, the government has filed aggravating factors asserting future dangerousness, assault of a prison guard and escape. Dr. Cunningham has done substantial research and work on this issue and has testified in several cases regarding future dangerousness and violence risk assessments, and is highly qualified in this area.

9. Dr. Cunningham estimates that his services will cost $24,150.00 for his review of the file, conducting the necessary interviews and testifying at trial. Dr. Cunningham charges $210.00 per hour for his services. This estimate assumes that the defense will also be able to employ a mitigation investigator who will gather the additional records necessary, locate and interview the additional witnesses and organize this material for Dr.



Appellate Case: 15-3160 Page: 56 Date Filed: 02/29/2016 Entry ID: 4372487

Cunningham's review. Because a mitigation investigator can accomplish these tasks at a much lesser hourly rate, counsel believes this would be the most cost efficient method or proceeding in this case. Counsel is also filing a Motion for a Mitigation Investigator to complete the investigation necessary.

6. Defendant recognizes that Dr. Cunningham's services are very costly. However, the preliminary mitigation investigation accomplished by the Public Defender has uncovered substantial mitigation evidence that needs to fully investigated, analyzed and presented at the sentencing phase of this trial. As a result, Defendant assets that this type of expert assistance is not only reasonably necessary, it is contemplated by the United States Constitution and authorized under the Criminal Justice Act.

In ***Powell v. Alabama***, 287 U.S. 45, 71 (1932), the Supreme Court had before it the notorious case of the "Scottsboro boys". Recognizing that death penalty cases are different, the Court held that indigent capital defendants have the right to court-appointed counsel. It is now well established, not surprisingly in a capital case, that the Sixth Amendment requires more than just nominal counsel, rather it demands a lawyer with "such skill and knowledge" in capital litigation who can ensure that the trial is "a reliable adversarial testing process ..." ***Strickland v. Washington***, 466 U.S. 668, 686-88 (1984). In certain circumstances, such as the instant, counsel can not possess the necessary "knowledge" without expert assistance.

7. While defendant relies upon the ***fifth, sixth and eighth amendments to the United States Constitution***, he also relies upon ***18 U.S.C. § 3006A(e)(1)*** which states, in pertinent part:



Appellate Case: 15-3160 Page: 57 Date Filed: 02/29/2016 Entry ID: 4372487

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court ... shall authorize counsel to obtain the services.

8. When considering this application for funds for a Mitigation Specialist, this Court should consider it's duty to ensure that the kind of trial a person gets does not depend on his or her financial resources. ***See generally Griffin v. Illinois***, 351 U.S. 12 (1956). This right is derived from the right to equal protection of law and due process under the fifth amendment to the United States Constitution, ***Griffin v. Illinois, supra***, and the sixth amendment right to effective assistance of counsel. ***Argersinger v. Hamlin***, 407 U.S. 25 (1972); ***Powell v. Alabama,*** 287 U.S. 45 (1932). Because this is a capital case, the eighth amendment is also implicated.

9. Equal protection of law requires that indigent persons be provided with the "basic tools of an adequate defense when those tools are available for a price to other persons." ***Britt v. North Carolina***, 404 U.S. 226 (1971). "The right to counsel is meaningless if the lawyer is unable to make an effective defense, because he has not funds to provide the **specialized testimony** the case requires." ***Bush v. McCollum, 231 F.Supp***. 560 (N.D. Tex. 1964), ***aff'd,*** 344 F.2d 672 (5th Cir. 1965) (emphasis added).

10. The Supreme Court's decision in ***Ake*** applies to all experts reasonably necessary for an effective defense. Because of the nature of this case and the extent of aggravating factors asserted by the government, counsel believes a qualified Mitigation Specialist is essential to effective representation in the sentencing phase of this trial.

WHEREFORE for the above stated reasons, defendant respectfully requests this



Appellate Case: 15-3160 Page: 58 Date Filed: 02/29/2016 Entry ID: 4372487

Honorable Court authorize funds so defendant can employ Mark D. Cunningham, Ph.D. as a Mitigation Specialist in this case.

Respectfully submitted:

Susan M. Hunt
819 Walnut, Ste. 308
Kansas City, MO. 64106
Phone: (816) 221-4588
Fax: (816) 221-2551

William E. Shull
104 West Kansas
Liberty, Mo. 64068
Phone: (816) 792-4242
Fax: (816) 792-0888

MARK D. CUNNINGHAM, PH.D.

CLINICAL & FORENSIC PSYCHOLOGY

*Diplomate in Forensic Psychology ♦ American Board of Professional Psychology*

Affidavit of Mark D. Cunningham, Ph.D.

**Re:** U.S. v Keith Dwayne Nelson, Case No. 99-00303-01-CR-W-2 in U.S. District Court for Western District of Missouri, Western Division

I, Mark D. Cunningham, Ph.D., hereby declare:

1. I am a clinical and forensic psychologist licensed and qualified to practice psychology in the states of Texas, Arkansas, Colorado, Idaho, Illinois, Indiana, Louisiana, Oregon, South Carolina, Tennessee, and New Mexico. I am over age 21. I have personal knowledge of the facts contained in this affidavit and am competent to testify about them.

2. I received a Bachelor's degree in Psychology from Abilene Christian College in 1973, a Master's degree in Psychology from Oklahoma State University in 1976, and a Ph.D. in Clinical Psychology from Oklahoma State University in 1977. I completed a one-year internship in Clinical Psychology at the National Naval Medical Center of Bethesda, Maryland. I subsequently served as an active duty clinical psychologist at the Naval Submarine Medical Center in Groton, Connecticut from 1978 to 1981. I was an assistant professor of psychology at Hardin-Simmons University in Abilene, Texas from 1981 to 1983. I have maintained a private practice in clinical and forensic psychology in Abilene, Texas since 1981.

3. I am a Diplomate of the American Board of Forensic Psychology, a subspecialty board of the American Board of Professional Psychology. This board certification follows an extensive continuing education and rigorous examination process, with a historic failure rate of 40% at the culminating oral exam. This credential is intended to signify the highest levels of expertise and practice in forensic psychology. Fewer than 200 psychologists in the United States currently hold this distinction. I have provided forensic evaluation services in over 375 cases. I have participated in extensive continuing education in the area of forensic psychology.

4. I have been recognized as a clinical and forensic psychology expert regarding sentencing determination issues including mitigation and future dangerousness in both state and federal courts. I have testified as a clinical and forensic psychology expert regarding sentencing determination issues in over 40 capital cases in various state and/or federal courts including:

**U.S. v Louis Jones, Jr.** (1995), Cause No. 5:95-CR-047-C in the U.S. District Court, Northern District of Texas. Sentencing Phase: Mitigation and Future Dangerousness - Testimony.

500 Chestnut, Suite 1735 ♦ Abilene, Texas 79602 ♦ 915/670-0545 ♦ Fax 915/670-0566

**U.S. v Paul Hardy,** (1996), Cause No. CR94-381"C" (4) in the U.S. District Court, Eastern District of Louisiana. Sentencing Phase: Mitigation and Future Dangerousness - Testimony.

**U.S. v Bruce Webster** (1996), Cause No. 4:94-CR121-Y in the U.S. District Court, Northern District of Texas. Sentencing Phase: Mitigation and Future Dangerousness - Testimony.

**U.S. v Trinity Ingle** (1997), Cause No. 96-60023 in the U.S. District Court, Western District of Arkansas, Hot Springs Division. Sentencing Phase: Mitigation and Future Dangerousness - Testimony.

**U.S. v Dean Beckford** (1997), Cause No. 3:96CR66-01 in the U.S. District Court, Eastern District of Virginia, Richmond Division. Sentencing Phase: Mitigation and Future Dangerousness - Testimony.

**U.S. v Darryl Johnson** (1997), Cause No. 96 CR 379-1 in the U.S. District Court, North District of Illinois, Eastern Division. Sentencing Phase: Future Dangerousness - Testimony.

**U.S. v Aquilia Marcivicci Barnette** (1998), Criminal Docket 3:97CR23-P in the District Court of the United States of the Western District of North Carolina, Charlotte Divion. Sentencing Phase: Future Dangerousness - Testimony.

**U.S. v LaFawn Bobbitt** (1998), Criminal No. 3:97CLR169 in the District Court of the United States for the Eastern District of Virginia, Richmond Division. Sentencing Phase: Future Dangerousness - Testimony.

**U.S. v Anthony Ayeni Jones** (1998), Cause No. CR-WMN-96-0458 in U.S. District Court for the District of Maryland. Sentencing Phase: Future Dangerousness - Testimony.

**U.S. v Marvin Holley** (1998), Cause No. CR96-B-0208-NE in U.S. District Court for the Northern District of Alabama. Sentencing Phase: Mitigation and Future Dangerousness - Testimony.

**U.S. v Saheem Johnson and Raheem Johnson** (1998), Criminal No. 97-00241-A in U.S. District Court for the Eastern District of Virginia, Alexandria Division. Sentencing Phase: Future Dangerousness - Testimony.

**U.S. v Daniel Lewis Lee** (1999), Case No. LR-CR-97-243(1) in U.S. District Court, Eastern District of Arkansas. Sentencing Phase: Mitigation - Testimony.

**U.S. v Christopher Andre Vialva** (2000), Criminal No. W-99-CR-070 in U.S. District Court, Western District of Texas, Waco Division. Sentencing Phase: Mitigation and Future Dangerousness – Testimony.

**U.S. v Willis Haynes** (2000), Criminal No. PJM 98 0520 in U.S. District Court for Districk of Maryland. Sentencing Phase: Mitigation – Testimony.

**U.S. v Daymon Smith (2000),** No. 1:909-CR-164(3) in U.S. District Court, Eastern District of Texas, Beaumont Division. Sentencing Phase: Mitigation and Future Dangerousness - Testimony.

5. I am the first author of a scholarly peer reviewed paper summarizing conceptualizations, research data, and practical applications of risk assessment in a capital context:

> Cunningham, M.D. & Reidy, T.J. (1998). Integrating base rate data in violence risk assessments at capital sentencing. Behavioral Sciences & the Law, 16, 71-95.

I am the first author of a peer reviewed scholarly paper summarizing conceptualizations, research data, and practical applications of Antisocial Personality Disorder and Psychopathy in sentencing determinations:

> Cunningham, M.D. & Reidy, T.J. (1998) Antisocial Personality Disorder and Psychopathy: Diagnostic dilemmas in classifying patterns of antisocial behavior in sentencing evaluations. Behavioral Sciences & the Law, 16, 333-351.

I am first author of a peer reviewed scholarly paper addressing common errors in capital sentencing violence risk assessment:

> Cunningham, M.D. & Reidy, T.J. (1999). Don't confuse me with the facts: Common errors in violence risk assessment at capital sentencing. Criminal Justice & Behavior, 26, 20-43.

I am first author of a peer reviewed scholarly paper addressing the psychological status and capabilities of death row inmates:

> Cunningham, M.D. & Vigen, M.P. (1999). Without appointed counsel in capital postconviction proceedings: The self-representation competency of Mississippi death row inmates. Criminal Justice & Behavior, 26, 293-321.

I am co-author of a peer reviewed scholarly paper that is currently in press regarding the disciplinary outcomes of commuted Indiana death row inmates:



Appellate Case: 15-3160 Page: 62 Date Filed: 02/29/2016 Entry ID: 4372487

Reidy, T.J., Cunningham, M.D., & Sorensen, J.R. (in press). From death to life: Prison behavior of former death row inmates in Indiana. Criminal Justice & Behavior.

6. The American Academy of Forensic Psychology is an association of Diplomates of the American Board of Forensic Psychology. At the request of the Academy I provided full day workshops under their auspices on "The role of the forensic psychologist in death penalty litigation" in Milwaukee, Wisconsin; Austin, Texas; and Monterey, California. These workshops emphasized research literature, statistics, and conceptualizations relevant to assessments of capital defendants.

7. I have familiarized myself with literature, federal documents, diagrams, and photographs of federal maximum-security facilities and outcomes at U.S.P. Marion and ADX Florence. On 11-3-97, I was given an orientation tour of ADX Florence. I have testified regarding federal prison custody options in multiple Federal capital sentencing proceedings.

8. The qualifications and experience detailed above provide me with unique expertise regarding violence risk assessments at capital sentencing. Specifically, there are a limited number of board certified forensic psychologists in the United States. I am aware of no other psychologist who has consulted or testified in federal capital proceedings regarding risk assessment in the range of defendant presentations or number of cases that I have. With the exception of my co-author Thomas J. Reidy, Ph.D., no psychologist, to my knowledge, has published literature reviews regarding research relevant to risk assessment at capital sentencing. My capital sentencing litigation workshop under the auspices of the American Academy of Forensic Psychology is singular in its focus on statistical approaches to capital risk assessment. In addition to the obvious benefits this established expertise provides the defense in my consultation and testimony, it is anticipated there would be cost savings to the court that would otherwise be associated with a less experienced expert familiarizing himself with an extensive and specialized research literature and methodology.

9. I have been contacted by Ms. Susan Hunt, defense counsel for Keith Dewayne Nelson, regarding my willingness to serve as a forensic psychology expert in evaluating the defendant and potentially testifying at trial regarding mitigation, future dangerousness, and other capital sentencing determinations.

10. If the examining psychologist is not allowed sufficient opportunity to develop comprehensive historical, developmental, medical, educational, family, community and neuropsychological data, the jury may be deprived of considering or giving weight to characteristics and circumstances of the defendant which could significantly affect deliberations of a sentence of less than death. Additionally, without the development of a comprehensive fact base regarding the defendant's life, the psychologist would have no basis for considering or testifying regarding psychological research relevant to the impact



Appellate Case: 15-3160 Page: 63 Date Filed: 02/29/2016 Entry ID: 4372487

of the undisclosed factors on the defendant's character and circumstances, again depriving the jury of testimony that might have given additional weight and credibility to the mitigating significance of these factors.

10a. It is important in capital sentencing evaluations for extended direct evaluation to take place between the defendant and the examining psychologist to allow:

(1) Opportunity to identify the presence of any mental disorder or defect that might be of mitigating significance;
(2) Opportunity for sufficient trust to develop between the defendant and the psychologist for the defendant to disclose history of trauma or other adverse experience that may be anxiety laden, accompanied by shame, or otherwise not easily elicited;
(3) Opportunity to obtain specific and detailed multigenerational family history, psychosocial history, medical history, and educational history as well as information about each traumatic or adverse experience and its subsequent life impact. A number of research studies demonstrate a disproportionately high incidence of childhood psychological trauma among violent offenders;
(4) Opportunity to allow a reasonable basis of direct observation for conclusions;
(5) Credibility of the testimony before the jury.

10b. In capital sentencing evaluations additional multiple direct interviews of third party individuals can be important in combination with other evaluations techniques to form reliable opinions. Relevant history of multigenerational, psychosocial, medical, educational and traumatic incident facts may be obtained from third party interviews that the defendant is unaware of or reluctant to disclose. Again extensive inquiry may be required to develop these facts.

10c. It is additionally customary in capital sentencing evaluations to personally and directly review instant offense records, school records, medical records, social service records, community records, juvenile and police records, etc. This comprehensive records review adds to the reliability of subsequent opinions. It is not unusual for capital sentencing cross examination to involve detailed and specific inquiry regarding these records and their implication thus requiring more than a casual review by the expert.

10d. Factors identified in the evaluation process may require a search of the psychological literature in addition to references and research findings I am already familiar with. A research literature base is important to provide a scientific basis for testimony, to meet evidentiary standards, and



Appellate Case: 15-3160 Page: 64 Date Filed: 02/29/2016 Entry ID: 4372487

to withstand expert assisted cross examination. As multiple distinct issues may be developed, the literature review involves corresponding multiple distinct searches.

10e. The complexity and extent of expert forensic psychology testimony regarding mitigation may require the preparation of testimony exhibits to assist the jury in understanding the evidence. Many of these exhibits must be customized to the individual case and require associated time and attorney consultation, conceptualization, and preparation.

11. There is conceptual and research literature regarding violence risk assessments, and violence risk assessments of capital offenders that may have significant implications to the jury both in avoiding misconceptions and error, and in approaching the capital sentencing risk assessment task with a greater degree of scientific understanding. This literature may not be well known to psychologists who are not routinely practicing in this particular risk assessment context. There are indications in the research that the potential for future violence is a concern of the jury at capital sentencing even if not overtly presented as an issue of consideration.

11a. Risk assessment in capital sentencing evaluations is assisted by direct evaluation of the defendant by the examining psychologist in order to provide:

(1) Opportunity to identify the presence of any mental disorder or defect;
(2) Opportunity to allow a reasonable basis of direct observation for conclusions;
(3) Opportunity to identify patterns, converging factors, and/or unique circumstances associated with past violent behaviors;
(4) Opportunity to explore and clarify any disciplinary incidents or violence which may have occurred during incarceration, as this incarceration context is most relevant should the defendant face an extended capital sentence;
(5) Credibility of the testimony before the jury.

11b. In capital sentencing risk assessments multiple direct interviews of third party individuals can be important in combination with other evaluation techniques to form reliable opinions.

11c. It is additionally customary in capital sentencing risk assessments to personally and directly review instant offense records, school records, social service records, community records, juvenile and police records, etc. This comprehensive records review adds to the reliability of subsequent opinions. It is not unusual for capital sentencing cross examination to involve detailed and specific inquiry regarding these records and their implication thus requiring more than a casual review by the expert.



Appellate Case: 15-3160 Page: 65 Date Filed: 02/29/2016 Entry ID: 4372487

11d. Factors identified in the capital risk assessment process may require a search of the psychological literature in addition to references and research findings I am already familiar with. A research literature base is important to provide a scientific basis for testimony, to meet evidentiary standards, and to withstand expert assisted cross examination. As multiple distinct issues may be developed, the literature review involves corresponding multiple distinct searches. This research base can be combined with historical information regarding the defendant to give the court important particularized perspectives regarding the likelihood of the defendant's probability of continuing criminal violence in the federal Bureau of Prisons.

11e. The complexity and extent of expert forensic psychology testimony regarding future dangerousness may require the preparation of testimony exhibits to assist the jury in understanding the evidence. Many of these exhibits must be customized to the individual case and require associated time and attorney consultation, conceptualization, and preparation.

12. After discussion with defense counsel and based on my customary evaluation in capital cases, I estimate my evaluation would require the following:

| | |
|---|---|
| Interview and direct examination of defendant | 12 hours |
| Interview of third parties | 8 hours |
| Records review | 15 hours |
| Literature review | 8 hours |
| Attorney consultation | 10 hours |
| Consultation with other experts | 4 hours |
| Exhibit preparation | 12 hours |
| Testimony preparation | 10 hours |
| Travel - 1 round trip to Kansas City (4 hours each way) | 8 hours |
| **Evaluation and Preparation Hours @ $210/hr.** | **87 Hours** |
| **87 Hours @ $210/hr.** | **$18,270.00** |
| Travel for trial - 1 round trip to Kansas City (4 hours each way) | 8 hours |
| Trial observation, wait, testimony, and consultation: | |
| 2 Days @ 10 hours per day | 20 Hours |
| **28 Hours @ $210/hr.** | **$5,880.00** |
| **TOTAL ESTIMATED SERVICES** | **$24,150.00** |

12a. The above professional services are billed at $210 per hour.



Appellate Case: 15-3160 Page: 66 Date Filed: 02/29/2016 Entry ID: 4372487

12b. It is anticipated that one trip to Kansas City would be required for evaluation and one trip for court testimony. Efforts will be made to minimize travel time cost when feasible by engaging in billable activities during travel.

12c. If held over from day to day waiting to testify, no billings accrue after court is adjourned for the day unless attorney conference services or additional testimony review and preparation occurs. Other reimbursable expenses include pass through literature search and graphics production, $.30 per mile for travel by private automobile, coach airfare if applicable, mid-size rental car or taxi charges, parking fees, reasonable meals allowance, and, standard grade hotel accommodations.

12d. The Total Estimated Services is considered a best guess as factors may arise which necessitate more extensive services. I understand that approval of the court would be obtained before proceeding beyond what may be authorized.

12e. Listed below is a sample of professional fees/expenses and court approvals in other federal capital cases in which I have been involved:

**U.S. v Paul Hardy** (1996: New Orleans, LA) - Billings of $34,763.86 and the court paid $34,763.86.

**State of CO v Frank Rodriguez** (Federal Habeas 1997: Denver, CO) - Billings of $26,045.47 and the court paid $26,045.47.

**U.S. v Everett Spivey** (1997: Albuquerque, NM) - Billings of $23,594.87 and the court paid $21,986.87.

**U.S. v Trinity Ingle** (1997: Hot Springs, AK) - Billings of $22,864.62 and the court paid $21,949.63.

**U.S. v Dean Beckford** (1997: Richmond, VA) - Billings of $34,581.61 and the court paid $34,581.61.

**U.S. v Darryl Johnson** (1998: Chicago, IL) - Billings of $23,827.26 and the court paid $23,825.26.

**U.S. v Marvin Holley** (1998: Birmingham, AL) - Billings of $31,357.39 and the court paid $31,102.39.

13f. Should I be appointed in this case, it is my understanding that the defendant is indigent and that my professional fees will be borne by the court.



Appellate Case: 15-3160 Page: 67 Date Filed: 02/29/2016 Entry ID: 4372487

**Affidavit**
**Re: Keith Dewayne Nelson**
**11-15-00**

I hereby declare under the penalty of perjury of the laws of the State of Texas that the foregoing is true and correct to the best of my knowledge.

Dated this 15th day of November, 2000 at Abilene, Texas.

Mark D. Cunningham, Ph.D.
Clinical and Forensic Psychologist
Diplomate in Forensic Psychology
American Board of Professional Psychology

**ACKNOWLEDGMENT**

STATE OF TEXAS

COUNTY OF TAYLOR

Before me, Linda Knight, a notary public, on this day personally appeared Mark D. Cunningham, PhD., known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purpose and consideration therein expressed. Given under my hand and seal of office this 15th day of November, 2000.

SEAL

NOTARY PUBLIC STATE OF TEXAS
LINDA KNIGHT
Notary Public, State of Texas
My Commission Exp 09-29-03

Linda Knight
Notary Public



Appellate Case: 15-3160 Page: 68 Date Filed: 02/29/2016 Entry ID: 4372487

FILED JAN 4 [illegible]

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 99-00303-01-CR-W-~~0~~2 |
| | ) | |
| KEITH DWAYNE NELSON, | ) | |
| | ) | |
| Defendant. | ) | |

## EX PARTE MOTION FOR FUNDS TO EMPLOY DR. DENNIS G. COWAN TO CONDUCT A NEUROPSYCHOLOGICAL EXAMINATION OF DEFENDANT

COMES NOW defendant, by and through appointed counsel, and moves this Honorable Court, pursuant to the ***fifth, sixth and eighth amendments to the United States Constitution and 18 U.S.C. § 3006A(e)(1)***, for funds to employ Dr. Dennis Cowan to conduct a neuropsychological examination of defendant for use during the mitigation phase of this trial.

### Suggestions in Support of Motion

1. Defendant has been charged with kidnaping and murdering a ten year old girl. The government is seeking the death penalty. In its Notice of Aggravating factors, the government listed several factors regarding the circumstances of the crime and further alleges aggravating factors relating to future dangerousness such as escape and assault of prison guards.

2. Defendant has been ruled indigent and the undersigned have been appointed under the Criminal Justice Act to represent him. Initially, the Federal Public Defender of

ORIGINAL #167

the Western District of Missouri was also appointed in this case.

3. Counsel initially decided that the Public Defender would be responsible for developing the mitigation phase of this trial. This responsibility included the majority of the mitigation investigation, employing a mitigation specialist, arranging for any psychological examinations of the defendant which were deemed necessary and, the presentation of this evidence at trial.

4. Investigation to date has revealed that Defendant was born prematurely and spent the first four months of his life hospitalized with breathing difficulties. This fact combined with other factors raise the suspicion that defendant may have organic brain defects which may led to mitigation evidence in this case.

5. Defendant initially sought approval for a psychiatric examination. Approval was given, however defendant has never pursued that examination. Defendant believes that a neuropsychological examination is warranted under the circumstances of this case.

7. Counsel seeks approval to employ Dr. Dennis Cowan to conduct the neuropsychological examination. Dr. Cowan's resume and fee schedule are attached to this Motion. Counsel is initially seeking approval for $2,500.00 for the examination and will seek approval of funds for Dr. Cowan's testimony at a later date if those funds are needed.

8. Defendant asserts that this type of expert assistance is not only reasonably necessary, it is contemplated by the United States Constitution and authorized under the

WHEREFORE for the above stated reasons, defendant respectfully requests this Honorable Court authorize funds so defendant can employ Dr. Dennis Cowan to conduct a neuropsychological examination in this case.

Respectfully submitted:

Susan M. Hunt
819 Walnut, Ste. 308
Kansas City, MO. 64106
Phone: (816) 221-4588
Fax: (816) 221-2551

William E. Shull
104 West Kansas
Liberty, Mo. 64068
Phone: (816) 792-4242
Fax: (816) 792-0888



Appellate Case: 15-3160 Page: 71 Date Filed: 02/29/2016 Entry ID: 4372487

Dennis G. Cowan, Ed.D.
NEUROPSYCHOLOGY CONSULTING SERVICES
400 East Red Bridge Road
Suite 212
Kansas City, Missouri 64131-4016
Office: 816-941-3883
Fax: 816-941-3331

November 15, 2000

Mr. Bill Shull
Attorney-at-Law

Sent via fax: 816-792-0888

Dear Mr. Shull:

As per your request, please find enclosed a copy of my Curriculum Vita as well as a copy of my Payment & Fee Schedule.

I have been practicing in the profession of performing neuropsychological evaluations since 1983. The current practice of Neuropsychology Consulting Services was founded in 1986. As a shared with you on the telephone today, approximately 85% of my practice is involved in conducting neuropsychological evaluations within the legal system. In this capacity, I am asked to perform neuropsychological evaluations and provide testimony in cases involving personal injury, workman's compensation, disability determinations, competency and criminal matters. I attempt to maintain a balance with 50% of the time being retained by plaintiff and defense counsel. With regard to the criminal matters, I am routinely retained by the Missouri Public Defenders Office and also by the Kansas Death Penalty Defense Unit so as to perform a neuropsychological examination in a capital litigation matter.

I was trained and practice, in the field of neuropsychology, by utilizing a "fixed battery approach" in which each patient (no matter what the referral question may be) is administered the same comprehensive and standardized battery of neuropsychological tests. The routine battery of neuropsychological tests utilized consists of:

- Halstead-Reitan Neuropsychological Battery
- Memory Assessment Scale
- Wechsler Adult Intelligence Scale-Revised
- Wisconsin Card Sorting Test
- Paced Auditory Serial Addition Test
- Test of Memory Malingering
- Minnesota Multiphasic Personality Inventory-II (when/if applicable)

The testing data obtained from these tests is then compared to multiple sets of normative data for analysis. Through the analysis of the data, the presence and degree of brain related dysfunction can be determined. As you may be aware, multiple neurological tests (i.e., CT-Scan, MRI) determine the presence of any structural brain abnormalities. The field of neuropsychology is the study of brain related behavior and is utilized to determine how a brain abnormality will effect the individual.

The battery of tests administered will typically take a period of 6-8 hours of actual test administration time. Time is then spent scoring the obtained testing data and then comparing the data to the published norms for analysis. Additional time is also spent reviewing all relevant medical records and records assessing the individual's previous capacities/functioning (i.e., educational records). In fact, I have a very long list of the types of records which I typically request and review, in each case.

As can be seen by the attached Payment & Fee Schedule, my hourly rate for performing this type of an evaluation is $125.00 per hour. In general and as a rough estimate (as variability depends upon the

amount of records to review and the time necessary to complete the test administration), my average fee is in the range of $2000-$2500.

If I can be of any assistance or respond to any questions which you may possess, please do not hesitate to contact me.

Sincerely,

Dr. Dennis G. Cowan
Licensed Psychologist
Neuropsychological Consultations

Enclosed: Curriculum Vita
Payment & Fee Schedule

Cc: File

DGC:lal

# PROFESSIONAL VITA OF
# DR. DENNIS G. COWAN


| | |
|---|---|
| Date of Birth: | January 11, 1956 |
| Place of Birth: | Burlington Iowa |
| Residence: | 11609 Pennsylvania<br>Kansas City Missouri 64114 |
| Business Address: | Neuropsychology Consulting Services<br>400 East Red Bridge Road<br>Suite 212<br>Kansas City Missouri 64131<br>Office: 816-941-3883<br>Fax: 816-941-3331 |


## EDUCATION

| | |
|---|---|
| 1974 – 1975 | Southeastern Iowa Community College<br>Burlington Iowa |
| 1975 – 1978 | Iowa Wesleyan College<br>Mt. Pleasant Iowa 52641<br>Degree: Bachelor of Arts<br>Majors: Psychology and Religion<br>Minor: Philosophy |
| 1978 – 1980 | Emporia State University<br>Emporia Kansas 66801<br>Degree: Masters of Science<br>Major Emphasis: Clinical Psychology |
| 1980 – 1983 | Western Michigan University<br>Kalamazoo Michigan 49008<br>Degree: Doctorate<br>Major Emphasis: Counseling Psychology |

| | |
|---|---|
| Predoctoral Psychology Internship | Kansas City V. A. Medical Center<br>APA Approved Site<br>Major Emphasis: Neuropsychology |
| Licensure: | State of Missouri: Licensure Number: PY01211<br>Doctoral Level Licensed Psychologist |

## PROFESSIONAL EXPERIENCES

12/1986 – Present Neuropsychology Consulting Services

This private neuropsychological consulting practice was developed to conduct specialized neuropsychological evaluations on individuals who have experienced a head injury, CVA, progressive dementing processes, tumors or other neurological disorders as well as for disability reasons and workman's compensation claims. The Halstead-Reitan Neuropsychological Battery is utilized. Referrals have come primarily from plaintiff, defense and criminal attorneys. Expert testimony is provided. Additionally, outpatient neuropsychological consultations are also provided for those afflicted with Fibromyalgia and Chronic Fatigue Syndrome. Brief outpatient psychotherapy is conducted. Inpatient psychological and neuropsychological consultations are provided at area hospitals where privileges are maintained. Full time private practice was initiated in 8/1999.

06/1987 – 08-1999 Medical Center of Independence
Clinical Director: HELP Center

Full time employment for psychological/neuropsychological services were provided through this community-based medical center. Neuropsychological and psychological consultations were provided to both an inpatient and outpatient population. Short-term follow-up psychotherapy was provided. The Fibromyalgia Clinic of the Medical Center of Independence was developed through this Department. Additional duties included the development and maintenance of the Department's operating budget, supervision of Departmental Staff as well as completing annual employee performance evaluations. In addition, approximately 25-40 community-based lectures were conducted annually.

06/1987 – 08/1999 Medical Center of Independence
Neuropsychologist: Rehabilitation Unit

Neuropsychological services were provided on this acute inpatient rehabilitation unit serving those suffering from neurological disorders, CVA's, head injuries as well as those who have undergone orthopedic procedures. Duties included performing consultations on patients, working with a multidisciplinary treatment team, attending and participating in the multidisciplinary treatment planning sessions, working with the families, assisting the patient's to develop acceptance of any limitations.

09/1983 – 06/1987 Western Missouri Mental Health Center
Staff Psychologist

This position consisted of serving as an integral member of a multidisciplinary treatment team on an acute inpatient psychiatric unit. Duties included individual/group psychotherapy, serving as a primary therapist for an inpatient caseload, providing supervision to predoctoral psychology interns and serving in the capacity as the Team Leader in the absence of the staff psychiatrist. Supervision was provided weekly by a staff psychologist and staff psychiatrist.

09/1983 – 06/1987 Western Missouri Mental Health Center
Neuropsychology Service Coordinator

This position consisted of serving as a neuropsychological consultant to four acute inpatient psychiatric units, two long-term psychiatric units, outpatient departments, aftercare clinics and to the forensic department. Consultations were also provided to Truman Medical Center-West. Supervision was provided to predoctoral psychology interns interested in the area of neuropsychological assessment. An eight-month course was taught to these interns as well as other professional staff in the area of neuropsychological assessment.

Appellate Case: 15-3160 Page: 77 Date Filed: 02/29/2016 Entry ID: 4372487

| | |
|---|---|
| 10/1984 – 06/1987 | University of Missouri – Kansas City<br>School of Medicine: Associate Professor |

This position consisted as the coordinator of WMMHC Psychology Staff who instructed medical students and those completing their residency in psychiatry. Additional classes were taught to these students on the fundamentals of neuropsychology and neuropsychological assessment.

## HOSPITAL PRIVILAGES

| | |
|---|---|
| Medical Center of Independence | 1987 – Present |
| Two Rivers Psychiatric Hospital | 1987 – Present |
| Research Psychiatric Center | 1991 – Present |
| Lee's Summit Community Hospital | 1991 – Present |
| St. Joseph Health Center | 1995 – Present |
| Research Medical Center | 1995 – Present |

## PROFESSIONAL MEMBERSHIPS

| | |
|---|---|
| American Psychological Association | 1979 – Present |
| American Psychological Association Division of Clinical Neuropsychology | 1984 – Present |
| National Academy of Neuropsychology | 1987 – Present |
| National Register of Health Service Providers in Psychology | 1989 – Present |
| National Chronic Fatigue Syndrome & Fibromyalgia Association | 1990 – Present |

## CURRENT RESEARCH

- *Neuropsychological assessment of patients suffering from Chronic Fatigue Syndrome*
- *Comparison of neuropsychological functioning of patients suffering from Chronic Fatigue Syndrome, Lymes Disease and Fibromyalgia.*

## COMMITTEES and BOARDS

| | |
|---|---|
| Training Committee: Psychology Internship Program – Western Missouri Mental Health Center | 1983 – 1987 |
| Medical Student Task Committee Western Missouri Mental Health Center | 1985 – 1986 |
| Quality Assurance Committee Western Missouri Mental Health Center | 1986 – 1987 |
| Board of Directors Kansas City Eye Bank | 1992 – 1994 |
| Medical Staff Ethics Committee Medical Center of Independence | 1996 – 1999 |
| National Chronic Fatigue Syndrome & Fibromyalgia Association Medical Advisory Committee | 1990- Present |

Listing of Publications and Papers available upon request.

References available upon request.

Dennis G. Cowan, Ed.D.
NEUROPSYCHOLOGY CONSULTING SERVICES
400 East Red Bridge Road
Suite 212
Kansas City, Missouri 64131-4016
Office: 816-941-3883
Fax: 816-941-3331

Payment & Fee Schedule

Hourly Rates for Service

**Neuropsychological & Psychological Evaluations:**

| | |
|---|---|
| Review of Records: | $125.00 per hour |
| Clinical Interview: | $125.00 per hour |
| Test Administration: | $125.00 per hour |
| Scoring/Data Interpretation: | $125.00 per hour |
| Report Writing: | $125.00 per hour |
| Travel Time: | $125.00 per hour |
| Deposition: | $300.00 per hour |
| Court Testimony: | $350.00 per hour |
| Deposition/Testimony Preparation: | $125.00 per hour (Billing to individual/agency requesting testimony) |
| No Show/Cancel w/o 24 hr notice: | $ 62.50 per hour (Per hour of allocated time set aside to conduct evaluation) |

**Counseling/Psychotherapy:**

| | |
|---|---|
| Review of Records: | $125.00 per hour |
| Counseling/Psychotherapy Session: | $100.00 per hour |
| Deposition: | $300.00 per hour |
| Court Testimony: | $350.00 per hour |
| No Show/Cancel w/o 24 hour notice: | $ 50.00 per scheduled hour (Billing for no show or no notice will be directly to patient) |

Initial retainer of $300.00 is required for all forensic/legal cases.

Balances are due upon receipt of statement. Any unpaid balance after 30 days from initial statement will be charged a late fee.

09-01-99

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FILED
JAN 11 2001
P. L. GRUNE, CLK.
U.S. DISTRICT COURT
WEST DISTRICT
OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 99-00303-01-CR-W-2 |
| | ) | |
| KEITH DWAYNE NELSON, | ) | |
| | ) | |
| Defendant. | ) | |

## EX PARTE MOTION FOR FUNDS TO EMPLOY TIMOTHY MURPHY AS AN INVESTIGATOR

COMES NOW defendant, by and through appointed counsel, and moves this Honorable Court, pursuant to the ***fifth, sixth and eighth amendments, United States Constitution and 18 U.S.C. § 3006A(e)(1)***, for funds to employ Timothy Murphy as an investigator in this case.

### Suggestions in Support of Motion

1. Defendant has been ruled indigent by this Court and counsel has been appointed to represent him.

2. Defendant is currently charged with kidnaping and sexual assault which resulted in murder. The United States Attorney's Office is seeking the death penalty.

3. Due to the nature of this crime and the severity of the possible punishment, counsel feels that it is reasonable and essential to investigate defendant's background and all the circumstances surrounding this case. Counsel previously received funds to hire Daniel Grothaus as an investigator. Mr. Grothaus has completed the background investigation of many of the government's witnesses, has

ORIGINAL #174

Appellate Case: 15-3160 Page: 81 Date Filed: 02/29/2016 Entry ID: 4372487

tracked down numerous leads, and has interviewed various government witnesses. Counsel now wishes to replace Mr. Grothaus with Mr. Murphy. Counsel needs Mr. Murphy to obtain numerous records involving both the defendant and the circumstances of this case. In addition, several government witnesses still need to be interviewed. Finally, Mr. Murphy can work in conjunction with the mitigation investigator that has been hired in Texas and can obtain background records on defendant with will be necessary for the mitigation phase of this case.

4. Mr. Murphy has had extensive experience as an investigator for the Jackson County Prosecutor's Office. Counsel believes that experience will enable Mr. Murphy to efficiently locate government and agency records. Counsel believes Mr. Murphy's contacts with law enforcement agencies in this area will allow him to efficiently complete the required investigation. For those reasons, counsel intends to replace Mr. Grothaus with Mr. Murphy to complete the necessary investigation in this case. Mr. Murphy's resume is attached to this Motion.

5. Counsel is requesting $10,000 in funds to hire Mr. Murphy. Counsel is also requesting that Mr. Murphy be paid at the rate of $45.00 per hour and be allowed to submit his vouchers monthly. Finally, like Mr. Grothaus, counsel requests that Mr. Murphy be paid the full amount of the monthly vouchers, without the 1/3 being held back until the completion of this case.

6. Defendant asserts this request is reasonably necessary to properly complete the necessary investigation in this case.

7. Defendant assets that this type of investigative assistance is not only reasonably

necessary it is contemplated by the United States Constitution and authorized under the Criminal Justice Act.

8. While defendant relies upon the ***fifth, sixth and eighth amendments to the United States Constitution***, he also relies upon ***18 U.S.C. § 3006A(e)(1)*** which states, in pertinent part:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court ... shall authorize counsel to obtain the services.

9. When considering this application for funds for an investigator, this Court should consider it's duty to ensure that the kind of trial a person gets does not depend on his or her financial resources. ***See generally Griffin v. Illinois***, 351 U.S. 12 (1956). This right is derived from the right to equal protection of law and due process under the fifth amendment to the United States Constitution, ***Griffin v. Illinois, supra***, and the sixth amendment right to effective assistance of counsel. ***Argersinger v. Hamlin***, 407 U.S. 25 (1972); ***Powell v. Alabama,*** 287 U.S. 45 (1932). Because this is a capital case, the eighth amendment is also implicated.

WHEREFORE for the above stated reasons, defendant respectfully requests this Honorable Court authorize funds so defendant can employ Timothy Murphy to complete the investigation in this case.

Respectfully submitted:



Appellate Case: 15-3160 Page: 83 Date Filed: 02/29/2016 Entry ID: 4372487

Susan M. Hunt
819 Walnut, Ste. 308
Kansas City, MO. 64106
Phone: (816) 221-4588
Fax: (816) 221-2551



Appellate Case: 15-3160 Page: 84 Date Filed: 02/29/2016 Entry ID: 4372487

**TIMOTHY LEO MURPHY**

---

**ADDRESS:** 215 W. 18th, Kansas City, Missouri

**Phone:** (816) 527-0036
Mobile: (816) 519-9044

**FAMILY STATUS:** Married (20 years), eight children

**EDUCATIONAL BACKGROUND:** 1984-1989 attended The University of Missouri-Kansas City and graduated with a degree in the Administration of Justice
1977-1979 attended Central Missouri State University
1975-1977 attended Penn Valley Junior College

**CURRENT EMPLOYMENT:** 1999-Present-Self Employed/Private Investigator

**PROFESSIONAL EXPERIENCE:** 1981 to 1999- Criminal Investigator for the Prosecutor's Office. I worked on cases ranging in seriousness from traffic accidents to homicides

- From 1985 to 1992 I was assigned as the Arson Investigator the office. While assigned to this duty, I was on-call 24 hours a day and responded to calls from the Fire Department to go to all 2nd alarm an fatal fires
  - In 1985 I received training as a Fire Investigator at the National Fire Academy in Emmitsburg, Maryland
  - In 1986 I received training as a Fire Investigator at the National Law Enforcement Training Center in Glynco,Georgia
  - In 1990 I received training as an Investigator from National College of District Attorneys in New Orleans, Louisiana

1992- 1995 I was assigned to the Drug Unit
1995- 1999 Assigned to the Prosecutors Office Drug Abatement Response Team (DART)

1990- present I have worked in a private capacity, for numerous Kansas City Law Firms

- Taking statements take witness for

- served legal process in every area County for both Civil and Criminal case
- Conducting surveillance work
- Provided photographic services
- Diagram preparation
- General private investigative services
- Provided courtroom testimony

**PROFESSIONAL MEMBERSHIPS:** Member of International Association of Fire Investigators
Member of the Missouri Association of Fire and Fraud Investigators
Member of the Kansas City Arson Task Force

**ACTIVITIES:** While attending Lillis High School, I lettered in Varsity sports for three years. I attended Penn valley Junior College on a Basketball/Golf scholarship. While attended Central Missouri State University, I was a member of Sigma Phi Epsilon Fraternity. For the last 11 years I have managed a baseball team in the KCMO 3 & 2 Baseball league. I currently participate in recreational sports such as basketball and golf. I am a practicing Catholic and a member of the Knights of Columbus

**REFERENCES:** Provided upon request

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FILED JAN 24 2001 R. L. CRAKE, CLK. US DISTRICT COURT WEST DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 99-00303-01-CR-W-2** |
| **KEITH DWAYNE NELSON,** | ) | |
| **Defendant.** | ) | |

**ORDER**

Pending before the Court is Defendant Nelson's Ex Parte Motion for Funds to Employ Mark D. Cunningham PhD. As a Mitigation Specialist, Ex Parte Motion For Funds to Employ T.S. Francis and Associates as a Mitigation Investigator, and Ex Parte Motion For Funds to Employ Dr. Dennis G. Cowan to Conduct a Neuropsychological Examination of Defendant. These requests are approved in the following amounts not to exceed: $2500 for a neuropsychological examination; $15,000 for a mitigation investigator and $25,000 for a mitigation specialist. As requested by defendant in the his Ex Parte Motion for Funds to Employ Dr. Dennis Cowan to Conduct a Neuropsychological Examination of Defendant, the Court's previous approval for up to $20,000 for psychiatric services is hereby rescinded.

As requested in the ex parte motion this order shall be filed under seal.

IT IS SO ORDERED.

Sarah W. Hays
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE

ORIGINAL

#175

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FILED JAN 30 2001 U.S. DISTRICT COURT WEST DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 99-00303-01-CR-W-6 |
| | ) | |
| KEITH DWAYNE NELSON, | ) | |
| | ) | |
| Defendant. | ) | |

**EX PARTE MOTION FOR FUNDS TO HIRE DR. THOMAS L. BENNETT, M.D., AS AN EXPERT TO REVIEW THE AUTOPSY REPORT**

COMES NOW defendant, by and through appointed counsel, and moves this Honorable Court, pursuant to the ***fifth, sixth and eighth amendments, United States Constitution and 18 U.S.C. § 3006A(e)(1)***, for funds to hire Dr. Thomas Bennett, M.D., as an expert to review the autopsy report in this case..

**Suggestions in Support of Motion**

1. The discovery provided by the government to date includes the autopsy report, a subsequent report of the Medical Examiner, several crime scene photos, several autopsy photos and results of scientific testing.

2. The government is alleging that the victim in this case was sexually assaulted by the defendant prior to her death. (See count II of the Indictment) From a review of the evidence provided by the government counsel questions whether or not a sexual assault actually occurred. Counsel is seeking expert assistance in reviewing this material to determine if it in fact indicates evidence of a sexual assault.

3. Counsel has contacted Dr. Thomas Bennett, M.D. who has stated he will review

ORIGINAL #180

the discovery provided and consult with counsel regarding the evidence of sexual assault. Dr. Bennett a board certified forensic pathologist since 1983, has extensive experience in this area and is well qualified to review this evidence and form an opinion. Dr. Bennett's Curriculum Vitae is attached to this Motion.

4. Dr. Bennett charges $150.00 per hour to review the discovery and consult with counsel. Dr. Bennet estimates it will cost no more than $1,000.00 to complete his review of the evidence and consult with counsel on this issue.

5. Defendant assets that this type of expert assistance is not only reasonably necessary it is contemplated by the United States Constitution and authorized under the Criminal Justice Act. In ***Powell v. Alabama***, 287 U.S. 45, 71 (1932), the Supreme Court, recognizing that death penalty cases are different, held that indigent capital defendants have the right to court-appointed counsel. It is now well established, not surprisingly in a capital case, that the Sixth Amendment requires more than just nominal counsel, rather it demands a lawyer with "such skill and knowledge" in capital litigation who can ensure that the trial is "a reliable adversarial testing process ..." ***Strickland v. Washington***, 466 U.S. 668, 686-88 (1984). In certain circumstances, such as the instant, counsel can not possess the necessary "knowledge" without expert assistance.

6. While defendant relies upon the ***fifth, sixth and eighth amendments to the United States Constitution***, he also relies upon ***18 U.S.C. § 3006A(e)(1)*** which states, in pertinent part:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is



Appellate Case: 15-3160 Page: 89 Date Filed: 02/29/2016 Entry ID: 4372487

> financially unable to obtain them, the court ... shall authorize counsel to obtain the services.

When considering this application for funds, this Court should consider it's duty to ensure that the kind of trial a person gets does not depend on his or her financial resources. ***See generally Griffin v. Illinois***, 351 U.S. 12 (1956). The right to obtain all essential defense services is coextensive with the rights to an impartial jury and appointed counsel. These rights derive from the right to equal protection of law and due process under the fifth amendment to the United States Constitution, ***Griffin v. Illinois, supra***, and the sixth amendment right to effective assistance of counsel. ***Argersinger v. Hamlin***, 407 U.S. 25 (1972); ***Powell v. Alabama,*** 287 U.S. 45 (1932). Because this is a capital case, the eighth amendment is also implicated.

7. Equal protection of law requires that indigent persons be provided with the "basic tools of an adequate defense when those tools are available for a price to other persons." ***Britt v. North Carolina***, 404 U.S. 226 (1971). "The right to counsel is meaningless if the lawyer is unable to make an effective defense, because he has not funds to provide the **specialized testimony** the case requires." ***Bush v. McCollum, 231 F.Supp***. 560 (N.D. Tex. 1964), ***aff'd,*** 344 F.2d 672 (5th Cir. 1965) (emphasis added).

8. Refusal to supply an indigent with reasonably necessary defense tools has been held reversible error. ***See generally United States v. Durant,*** 545 F.2d 823 (2nd Cir. 1976); ***United States v. Bass***, 477 F.2d 723 (9th Cir. 1973); ***United States v. Tate,*** 419 F.2d 131 (6th Cir. 1969). The defense need not prove that funds for expert assistance are indispensable to the preparation of the defendant's case, but rather that such services are reasonably necessary. ***See generally Christian v. United States***, 398 F.2d 517 (10th Cir.

1968); ***United States v. Thierault***, 440 F.2d 713 (5th Cir. 1971), ***cert. denied***, 411 U.S. 984 (1973). ***See also United States v. Patterson***, 724 F.2d 1128 (5th Cir. 1984).

9. "The financial condition of the defendant is not to be a determining factor in his relationship to the criminal process ..." ***Britt v. North Carolina***, 404 U.S. 226 (1971); ***Ake v. Oklahoma***, 470 U.S. 68 (1985).

> [When a] question ... [is] likely to be a significant factor in his defense ... [the defendant is] entitled to the assistance of a[n expert] on this issue and ... the denial of that assistance deprive[s] him of due process.

470 U.S. at 86-87.

> Meaningful access to justice has been the consistent theme of [our] cases. We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the state proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense.

***Id***. at 77. ***See generally Griffin v. Illinois, supra*** [right to trial transcript]; ***Gideon v. Wainwright***, 372 U.S. 335 (1963) [right to counsel in state trial courts]; ***Douglas v. California***, 372 U.S. 353 (1963) [right to counsel on appeal]; **Roberts v. LaVallee**, 389 U.S. 40 (1967) [right to transcript of preliminary hearing]; ***Argersinger v. Hamlin***, 407 U.S. 25 (1972) [right to counsel for misdemeanor]; ***Bounds v. Smith,*** 430 U.S. 817 (1977) [right of prisoners to have access to law libraries or professional assistance in habeas corpus proceedings].

WHEREFORE for the above stated reasons, defendant respectfully requests this Honorable Court authorize funds for defendant to hire Dr. Thomas Bennett, M.D., as an expert to review the autopsy report and discovery associated with the autopsy in this case.

Respectfully submitted:

Susan M. Hunt
819 Walnut, Ste. 308
Kansas City, MO. 64106
Phone: (816) 221-4588
Fax: (816) 221-2551

**Thomas L. Bennett, M.D.**
**Forensic Medicine and Pathology**

## CURRICULUM VITAE – FEBRUARY 1999

**Current Appointments:**

Associated Montana State Medical Examiner (6/98 to present). Pathologist, St. Vincent's Hospital and Health Center, Billings, MT.

**Forensic Positions Held:**

Assistant Chief Medical Examiner, Office of the Chief Medical Examiner for North Carolina, Chapel Hill, NC (7/81-6/82).
Iowa State Medical Examiner, Des Moines and Sioux City, IA (3/83-4/85) and 10/86-10/97).
Mississippi State Medical Examiner, Jackson, MS (4/85-10/86).
Deputy Iowa State Medical Examiner, Des Moines, IA (10/97-5/98).

**Board Certification:** American Board of Pathology (6-4-83), in Anatomic Pathology, Clinical Pathology and Forensic Pathology.

**Licensure:** Iowa (#22399, 1979).
Nebraska (#18257, 1990).
Montana (# 8418, 1998).

**Academic Appointments:**

Instructor in Anatomy, University of Iowa College of Medicine, Iowa City, IA (1/79-6/79).
Teaching Fellow in Pathology, University Hospitals of Cleveland, Case-Western Reserve University, Cleveland OH (7/79-6/81).
Instructor in Pathology and Pathophysiology, Charles Bolton School of Dentistry, Case Western Reserve University, Cleveland, OH (7/79-6/81).
Instructor in Pathology and Pathophysiology, Frances Payne Bolton School of Nursing, Case Western Reserve University, Cleveland, OH (7/79-6/81).
Guest lecturer for Pulmonary Pathology series at Wright State University School of Medicine, Dayton, OH, (2/81-4/81).
Clinical Associate Professor of Pathology, University of South Dakota School of Medicine, Vermillion, SD (1982-1984).
Assistant Professor of Pathology, University of Mississippi College of Medicine, Jackson, MS (4/85-10/86).
Guest Lecturer on Forensic Pathology and Medicine, at the majority of Iowa's Community College schools for Nursing, Emergency Medical and Paramedic Classes (1983 to present).

Thomas L. Bennett, M.D.
Pathology Consultants, P.C., 2900 12th Avenue North, Suite 260W, Billings, MT 59101
Office 406-238-6373 Fax 406-238-6361 Pager (digital) 406-238-8639

Appellate Case: 15-3160 Page: 93 Date Filed: 02/29/2016 Entry ID: 4372487

**Thomas L. Bennett, M.D.**
**Forensic Medicine and Pathology**

Adjunct Professor of Law and Class Co-Director for "Forensics", a 3 credit hour class, Drake University College of Law, Des Moines, IA (6/96-6/98).

Director and Lecturer for "Medical Examiner Investigator Course", and twenty-hour course offered four times in Iowa for Death Investigators, allowing their certification. Pending course schedule in Montana.

**Professional Associations:**

American Academy of Forensic Sciences (AAFS), member: Program Director, Scientific Session for Annual Meeting, Seattle, 1993

National Association of Medical Examiners (NAME), Board of Directors member, 1986-1992, and member of board of editors for American Journal of Forensic Medicine of Pathology, 1989-1992.

College of American Pathologists (CAP), fellow.

American Society on the Abuse of Children (APSAC), member.

Association for the Advancement of Automotive Medicine (AAAM), member.

Montana Medical Association, member.

American Medical Association, member.

**Publications:**

"Chondromyxoid Fibroma of the Thoracic Spine: Case Reports and Review of the Literature", Spine, 1982.

Iowa State Medical Examiner Newsletter, started 1984. (published about bimonthly, and distributed to Medical Examiners, Law Enforcement and County Attorneys over Iowa and Eastern Nebraska).

Handbook for Iowa Medical Examiners, 1984, 1988, 1994, 1995, 1997 (5th ed.).

Handbook for Mississippi Death Investigators, 1985.

Mississippi Medical Examiner Newsletter, 1985-1986.

"Gunshot Fractures", Unfallchirurg 89:515-520, 1986.

"Serial Abuse in Children Who Are Shaken", AJDC 144:58-60, 1990.

"Incidence of Impact Trauma with Cranial Injuries Ascribed to Shaking", AJDC 144:724-726, 1990.

"Procurement and Preparation of the Aortic Valve Homograft", chapter 21 in The Aortic Valve, Emery, R.W. and Arom, K.V., editors, 1991.

"Medical Examiner Data in Injury Surveillance; A Comparison with Death Certificates", AmJEpidemiology 139(6):637-643, 1994.

**Work Experience:**

**Autopsies:** Over 4,000 performed personally (approximately 35% natural, 35% accidents, 10% suicides, 15% homicides and 5% undetermined).



Appellate Case: 15-3160 Page: 94 Date Filed: 02/29/2016 Entry ID: 4372487

# Thomas L. Bennett, M.D.
## Forensic Medicine and Pathology

**Lectures:** Hundreds of hours (about 4 to 8 hours per week), including:
Mass Disasters; Kinematics of Injuries; Gunshot Wounds; Blunt and Sharp Traumatic Injuries; Scene Investigation; Asphyxia Deaths; Suicides; Skeletal Remains; Child Abuse and Neglect; Shaken-Slammed Baby Syndrome; Munchausen Syndrome by Proxy; Deaths in Water; Motor Vehicle crash-Related Deaths; Decomposed Bodies; Burn Injuries; Sudden Infant Death Syndrome; Lung Cancer; Interstitial Lung Diseases; Pulmonary Pathophysiology; Medical Examiner Team Approach; X-rays in Forensics; etc.

**Child Protection Center:** Sioux City (4/93 to 1/96) and Des Moines (1987 to 1998), working directly with injured children to document and interpret their wounds, plus testify as needed. I have examined living children from infants to adolescents, including colposcopic examinations, for suspicious sexual injuries, plus dozens more for suspicious non-sexual injuries.

**State Child Death Review Team:** Chairman since creation, 1995, until October 1997. I have also served as consultant for regional child death review teams in Iowa and North Carolina.

**Courtroom Testimony and Depositions:** Over 1,000 appearances (approximately 90% for prosecution in criminal cases, 75% for defense in civil cases).

**Surgical Pathology:** I have examined thousands and thousands of surgical specimens, from gross to signout, including frozen sections.

**Cytology, Chemistry, etc.** – All the labs I've worked with have been in hospitals or private labs doing most of the work in-house, only rarely sending out for the esoteric tests. I would work as pathologist director with technologists and technicians for accreditation, standards, check samples, new tests, etc.

**Educational Background:**

High School in Columbus Junction, IA (graduated 1971).
College at Drake University, Des Moines, IA (B.A. in Biology, 1974).
University of Iowa College of Medicine, Iowa City, IA (M.D., 1978).
Externship in Anatomic Pathology, University of Iowa Hospitals and Clinics, Department of Pathology, (1976, twelve months).
Residency in Anatomic Pathology and Clinical Pathology, Institute of Pathology, University Hospitals of Cleveland, Cleveland, OH (1979-1981).
Fellowship in Forensic Pathology, Office of the Chief Medical Examiner, Chapel Hill, NC (1981-1982).
Residency in Clinical Pathology, Royal C. Johnson Veterans Administration Hospital, Sioux Falls, SD (1982-1983).

Thomas L. Bennett, M.D.
Pathology Consultants, P.C., 2900 12th Avenue North, Suite 260W, Billings, MT 59101
Office 406-238-6373 Fax 406-238-6361 Pager (digital) 406-238-8639

**Thomas L. Bennett, M.D.**
**Forensic Medicine and Pathology**

I have also attended innumerable seminars, both as speaker and attendee; including:
CAP-Annual Meetings; State Medical Examiner 20-hour course for non-physician death investigators with certification; NAME-Annual Meetings; AAFS-Annual Meetings; training at FBI Academy in Quantico, VA; Iowa Association of County Medical Examiners, etc.

**College Awards & Honors:**

Drake University National Alumni Scholarship (full ride scholarship, 1971).
Beta Beta Beta (honorary scholarship fraternity, 1973).
Phi Eta Sigma (scholastic honorary fraternity, 1973).
Phi Beta Kappa (Drake University, 1974).
Alpha Omega Alpha (honorary medical school fraternity).

**Personal:** Born 3-23-53, Iowa City, IA.
Married to Melodee Hanes.
Six Children (Mark-22; Scott-19; Jack-17; Nick-14; Kate-12; Joey-7)
Home address: 4549 Palisades Park Drive, Billings, MT 59106-1340.
Phone: 406-655-2378
Email: Doctor4N6@aol.com

Thomas L. Bennett, M.D.



Appellate Case: 15-3160 Page: 96 Date Filed: 02/29/2016 Entry ID: 4372487

CJA 30 DEATH PENALTY PROCEEDINGS — APPOINTMENT OF AND AUTHORITY TO PAY COURT APPOINTED COUNSEL

| 1. CIR./DIST./DIV. CODE | 2. PERSON REPRESENTED | VOUCHER NUMBER |
|---|---|---|
| MOW | Nelson, Keith | |

| 3. MAG. DKT./DEF. NUMBER | 4. DIST. DKT./DEF. NUMBER | 5. APPEALS DKT./DEF. NUMBER | 6. OTHER DKT. NUMBER |
|---|---|---|---|
| | 4:99-000303:001 | | |

| 7. IN CASE/MATTER OF (Case Name) | 8. TYPE PERSON REPRESENTED | 9. REPRESENTATION TYPE |
|---|---|---|
| United States v. Nelson | Adult Defendant | Federal Capital Prosecution |

10. OFFENSE(S) CHARGED (Cite U.S. Code, Title & Section) If more than one offense, list (up to five) major offenses charged, according to severity of offense.

1) 18 2241.F -- ACOMMIT RAPE W/IN SPEC MARITIME OR TERR SEXUAL ABUSE

11. ATTORNEY'S NAME (First Name, M.I., Last Name, including any suffix) AND MAILING ADDRESS

BERRIGAN, PATRICK
2500 HOLMES
KANSAS CITY MO 64108

Telephone Number: (816) 474-3350

12. COURT ORDER

- ☒ O Appointing Counsel
- ☐ F Subs For Federal Defender
- ☐ P Subs For Panel Attorney
- ☐ C Co-Counsel
- ☐ R Subs For Retained Attorney
- ☐ Y Standby Counsel

Prior Attorney's Name: ______

Appointment Date: ______

(A) Because the above-named person represented has testified under oath or has otherwise satisfied this court that he or she (1) is financially unable to employ counsel and (2) does not wish to waive counsel, and because the interests of justice so require, the attorney whose name appears in Item 11, who has been determined to possess the specific qualifications required by law, is appointed to represent this person in this case.

(B) The attorney named in Item 11 is appointed to serve as: ☐ LEAD COUNSEL ☐ CO-COUNSEL

Name of Co-Counsel or Lead Counsel: ______

Appointment Date: ______

(C) If you represented the defendant or petitioner in any prior proceeding related to this matter, attach to your initial claim a listing of those proceedings and describe your role in each (e.g., lead counsel or co-counsel).

☐ (D) Due to the expected length of this case, and the anticipated hardship on counsel in undertaking representation full-time for such a period without compensation, interim payments of compensation and expenses are approved pursuant to the attached order.

Sarah W. Hays
Signature of Presiding Judicial Officer or By Order of the Court

Feb 13, 2001
Date of Order

Nunc Pro Tunc Date

(E) Repayment or partial repayment ordered from the person represented for this service at time of appointment. ☐ YES ☐ NO

FILED FEB 13 2001 P. L. BRUNE, CLK US DISTRICT COURT WEST DISTRICT OF MISSOURI

13. NAME AND MAILING ADDRESS OF LAW FIRM (only provide per instructions)

Watson and Dameron
2500 Holmes
Kansas City MO 64108

## CLAIM FOR SERVICES AND EXPENSES

14. STAGE OF PROCEEDING

Check the box which corresponds to the stage of the proceeding during which the work claimed at Item 15 was performed even if the work is intended to be used in connection with a later stage of the proceeding. CHECK NO MORE THAN ONE BOX. Submit a separate voucher for each stage of the proceeding.

**CAPITAL PROSECUTION**
- a. ☐ Pre-Trial
- b. ☐ Trial
- c. ☐ Sentencing
- d. ☐ Other Post Trial
- e. ☐ Appeal
- f. ☐ Petition for the U.S. Supreme Court Writ of Certiorari

**HABEAS CORPUS**
- g. ☐ Habeas Petition
- h. ☐ Evidentiary Hearing
- i. ☐ Dispositive Motions
- j. ☐ Appeal
- k. ☐ Petition for the U.S. Supreme Court Writ of Certiorari

**OTHER PROCEEDING**
- l. ☐ Stay of Execution
- m. ☐ Appeal of Denial of Stay
- n. ☐ Petition for Writ of Certiorari to the U.S. Supreme Court Regarding Denial of Stay
- o. ☐ Other

HOURS AND COMPENSATION CLAIMED — FOR COURT USE ONLY

| 15. CATEGORIES (Attach itemization of services with dates) | HOURS CLAIMED | TOTAL AMOUNT CLAIMED | MATH/TECH ADJUSTED HOURS | MATH/TECH ADJUSTED AMOUNT | ADDITIONAL REVIEW |
|---|---|---|---|---|---|
| a. In-Court Hearings (Rate per Hour = $ ) | | | | IN COURT TOTAL (Category a) | IN COURT TOTAL (Category a) |
| b. Interviews and Conferences with Client | | | | | |
| c. Witness Interviews | | | | | |
| d. Consultation with Investigators and Experts | | | | | |
| e. Obtaining and Reviewing the Court Record | | | | | |
| f. Obtaining and Reviewing Documents and Evidence | | | | OUT OF COURT TOTAL (Categories b - j) | OUT OF COURT TOTAL (Categories b - j) |
| g. Consulting with Expert Counsel | | | | | |
| h. Legal Research and Writing | | | | | |
| i. Travel | | | | | |
| j. Other (Specify on additional sheets) | | | | | |
| Totals: Categories b thru j (Rate per hour = $ ) | | | | | |

CLAIM FOR TRAVEL AND EXPENSES (Attach itemization of expenses with dates)

| | | | | |
|---|---|---|---|---|
| 16. Travel Expenses (lodging, parking, meals, mileage, etc.) | | | | |
| 17. Other Expenses (other than expert, transcripts, etc.) | | | | |

GRAND TOTALS (CLAIMED AND ADJUSTED)

18. CERTIFICATION OF ATTORNEY/PAYEE FOR THE PERIOD OF SERVICE FROM ______ TO ______

19. APPOINTMENT TERMINATION DATE IF OTHER THAN CASE COMPLETION

20. CASE DISPOSITION

21. CLAIM STATUS ☐ Final Payment ☐ Interim Payment Number ______ ☐ Supplemental Payment

Have you previously applied to the court for compensation and/or reimbursement for this case? ☐ YES ☐ NO If yes, were you paid? ☐ YES ☐ NO

Other than from the court, have you, or to your knowledge has anyone else, received payment (compensation or anything or value) from any other source in connection with this representation? ☐ YES ☐ NO If yes, give details on additional sheets.

I swear or affirm the truth or correctness of the above statements.

Signature of Attorney: ______ Date: ______

APPROVED FOR PAYMENT — COURT USE ONLY

| 22. IN COURT COMP. | 23. OUT OF COURT COMP. | 24. TRAVEL EXPENSES | 25. OTHER EXPENSES | 26. TOTAL AMT. APPROVED |
|---|---|---|---|---|
| ORIGINAL | | | DOCUMENT | |

| 27. SIGNATURE OF THE PRESIDING JUDICIAL OFFICER | DATE | 27a. JUDGE CODE |
|---|---|---|
| | | |

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FILED
MAR 13 2001
P. L. BRUNE, CLK
U.S. DISTRICT COURT
WEST DISTRICT
OF MISSOURI

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. ) Case No. 99-00303-01-CR-W-2
)
KEITH DWAYNE NELSON, )
)
Defendant. )

ORDER

Pending before the Court is Defendant Nelson's Ex Parte Motion For Funds to Employ Timothy Murphy as an Investigator. The Court finds that the request seeking funding for an investigator to investigate the defendant's background and all the circumstances surrounding the case is reasonably necessary. The request is approved up to a maximum of $20,000. As requested in the ex parte motion this order shall be filed under seal.

IT IS SO ORDERED.

Sarah W. Hays

SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE

Date: March 13, 2001
Kansas City, Missouri

ORIGINAL

#210

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FILED MAR 13 2001 CLERK, U.S. DISTRICT COURT WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>KEITH DWAYNE NELSON,<br>Defendant. | ) | Case No. 99-00303-01-CR-W-2 |

ORDER

Pending before the Court is Defendant Nelson's Ex Parte Motion For Funds to Hire Dr. Thomas L. Bennett, M.D., as an Expert to Review the Autopsy Report. The Court finds that the request seeking funding for an expert to review the autopsy report, a subsequent report of the Medical Examiner, several crime scene photos, several autopsy photos and results of scientific testing is reasonably necessary. The request is approved up to a maximum of $1,000. As requested in the ex parte motion this order shall be filed under seal.

IT IS SO ORDERED.

Sarah W. Hays
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE

Date: March 13, 2001
Kansas City, Missouri

P28-0098

FILED SEP 7 2001 P.L. BRUNE, CLERK U.S. DISTRICT COURT WEST. DIST. OF MISSOURI

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 99-00303-01-CR-W-2 |
| | ) | |
| KEITH D. NELSON, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT KEITH D. NELSON'S EX PARTE**
**MOTION FOR EXPERT SERVICES AND SUGGESTIONS IN SUPPORT**

Defendant Keith D. Nelson, pursuant to 21 U.S.C. § 848(q)(9) and (10)(B), respectfully requests that this Court approve funding for a forensic psychological evaluation. Defendant also requests that authorization of funding for expert services of $7,500.00 be made pursuant to 21 U.S.C. § 848(q)(10)(B). The grounds for this Motion are set forth below.

**AND SUGGESTIONS IN SUPPORT**

In support of this motion, counsel states as follows:

1. Keith D. Nelson stands charged by Indictment in two counts with kidnapping resulting in death. The government is seeking the death penalty. Trial is set for October 29, 2001.

2. The defendant intends to present psychological testimony at the mitigation phase of his case, if it gets to that point, which would perhaps mitigate against a sentence of death and for life imprisonment. Expert assistance is necessary to present this testimony.

3. Defendant desires to retain the expert services of Dr. Dan Foster, Ph.D., a licensed psychologist experienced in death penalty litigation and the issues surrounding mental health evidence in the penalty phase of a capital murder trial. Dr. Foster's CV is attached. For his work

ORIGINAL #274

on this case, Dr. Foster would bill the government $125.00 per hour. The defense estimates a total cost, including expenses for Dr. Foster, at approximately $7,500.00.

4. Pursuant to 21 U.S.C. § 848(q), an indigent defendant is entitled to expert services, which are reasonably necessary for the defendant's representation. A psychological evaluation is needed in order to properly prepare this case for trial. The results of such an evaluation will be vital to providing Mr. Nelson with an effective defense at the penalty phase of this case. Information about Mr. Nelson's state of mind, mental capacity, and overall mental functioning will be necessary for effective representation, particularly when presenting mitigation evidence at the penalty phase.

WHEREFORE, defendant Keith D. Nelson prays of this Court an Order approving payment to Dr. Foster, Ph.D. for a psychological evaluation of Mr. Nelson and possible trial testimony about the evaluation, and for authorization of funding for expert services of $7,500.00.

Respectfully submitted,

Patrick J. Berrigan, Bar #34321
Watson & Dameron, LLP
2500 Holmes Street
Kansas City, Missouri 64108
(816) 474-3350
(816) 221-1636 (FAX)

and

Susan M. Hunt by PJB
Susan M. Hunt, Bar #36130
Law Office of Susan M. Hunt
819 Walnut, Suite 308
Kansas City, Missouri 64106
(816) 221-4588
(816) 221-2551 (FAX)
**ATTORNEYS FOR DEFENDANT**



Appellate Case: 15-3160 Page: 101 Date Filed: 02/29/2016 Entry ID: 4372487

# CURRICULUM VITAE
# DANIEL V. FOSTER, PSY.D.

Office: Mental Health Department
Blackfeet Community Hospital
Browning, Montana
(406) 338-6147

Home: P.O. Box 1429
Browning, MT. 59417
(406) 226-4210

Education/Certification

| | | |
|---|---|---|
| B.S. | (1975) | Psychology, Social Science, Education, Willamette University, Salem, Oregon 97301 |
| | (1975/1976) | Graduate work in Psychology and Education, Oregon College of Education, Monmouth, Oregon 97361 |
| Psy.D. | (1980) | Doctor of Psychology (Clinical), Baylor University, Waco, Texas 76703 |
| License/Certification | | Licensed Psychologist : Ohio, License #3347 (1983-1994); Missouri, License #RIO55 (1984-1990); Minnesota, License #LP 1493 (1988-1994); Montana, License #274 1994 - Present |

| | |
|---|---|
| Full Certification | Montana Certification as a Mental Health Professional Person (Required for Forensic Evaluations) Certificate #MHF-314 (1995-Present) |
| | Diplomate: American Board of Psychological Specialties Clinical (1996- Present), Forensic (1997-Present) |
| | Diplomate: American Board of Forensic Examiners (1997-Present) |
| | Council for the National Register of Health Providers in Psychology , member number 34254 (1986-Present) |

**Current Employment:**

| | |
|---|---|
| 1994-Present | Clinical and Forensic Psychologist, Mental Health Department, Blackfeet Service Unit Indian Health Service. Director, Behavioral Health, 1994-1998. Provide individual, family and group therapy to members of the Blackfeet Tribe. Other responsibilities include consultation with the Blackfeet Chemical Dependency Program, Psychological, Neuropsychological, Competency, Commitment and Custody Evaluations, Forensic evaluations for Tribal, State and Federal Courts, work with sexual offenders and their victims, hospital on-call and consultation, coleading an anger management group for Blackfeet Tribal Court, and other duties as assigned. |
| 1993-1994 | Assistant Professor, University of North Dakota, Psychology and Counseling Departments (INPSYDE Program- Indians in Psychology Doctoral Education Program) |
| 1990-1993 | Chief of Psychology, Federal Medical Center, U.S. Bureau of Prisons, Rochester, Minnesota. Clinical supervision of other psychologists. Cost Center Manager and Administrator of Psychology Services. Member of local and Bureau wide Strategic Planning Groups and Task Forces. Provide Expert Testimony nationwide to Federal Courts. Responsible for Viet Nam Veterans PTSD Program, Suicide Prevention Program, Employee Assistance Program. Staff Training, Forensic and Neuropsychological Evaluations, Inpatient and Outpatient Drug Abuse Programs, Doctoral Internship Training for Psychologists (APA |

FOSTER: Page 3

approved), Post-Doctoral Forensic Training for Psychologists and Psychiatrists (Mayo Clinic), Staff Consultation, supervision, and provision of clinical services as needed to the Mental Health Forensic, D&O, Medical/Surgical, and General Population Units; Team Leader, Hostage Negotiation Team, Mental Health Strategic Planning chairman, member of various Medical Staff Committees, including the Medical Staff Executive Committee. Other duties as assigned. JCAHO and CARF accredited. Dr. Ruth Westrick, Supervisor. Rochester, Minnesota, 55903.

| | |
|---|---|
| 1989-1990 | Clinical and Forensic Psychologist, Federal Medical Center. Mike Furlong, Ph.D., Supervisor (Federal Bureau of Prisons, Rochester, Minnesota). |
| 1989-1993 | Adjunct Associate Professor, St. Mary's College, Rochester Center, Rochester, Minnesota. |
| 1989, February-July | Director, Drug Abuse Programs, Bureau of Prisons, Central Office, Washington, D.C. 20534, Dr. Curt Toler, Supervisor. |
| 1987-1989 | Chief of Psychology, Federal Medical Center, Rochester. Ruth Westrick. M.D., Supervisor. Rochester, Minnesota 55903 (Federal Bureau of Prisons). |
| 1986-1994 | Medical Advisor, Social Security Administration. Provide consultation and expert opinion for SSA disability hearings. |
| 1986-1987 | Clinical Psychologist, St. John's Regional Health Center. In addition to Clinical and Forensic services, worked as a team member in Rehabilitation Services (with special focus on neuropsychological assessment) and coordinated Cognitive Re-Training. Staff training, consultation, and other services also provided. Cliff Ameduri, M.D., Supervisor. Springfield, Missouri 65804-2262. |

**FOSTER: Page 4**

| | |
|---|---|
| 1984-1986 | Clinical Psychologist, Forensic Unit, U.S. Medical center for Federal Prisoners. Duties included preparing psychological evaluations for Federal Courts. In addition to reports, expert testimony at the Courts, crisis intervention, individual treatment as needed, supervision of psychological testing, neuropsychological testing, staff training and supervision, and other duties as assigned were provided. Springfield, Missouri 65808, Dr. Mary Alice Conroy, Supervisor (Federal Bureau of Prisons). |
| 1985-1987 | Clinical Professor: Forest Institute of Professional Psychology, Springfield, Missouri 65807, Richard Cox, Ph.D., Dean. |
| 1983-1984 | Clinical Supervisor/Psychologist for Emerge Ministries, Inc. Conducted individual and group therapy, provided hospital services, testing and evaluation services, supervised Counselors and the testing program. Provided staff training, conducted workshops, seminars, and retreats Integrating psychology with theological foundations. Also served as adjunct faculty for Ashland Seminary (Pastoral Counselor Training Program). Akron, Ohio 44313. Dr. Richard Dobbins, Supervisor. |
| 1982-1983 | Program Director/Psychologist for Drug Abuse Program Unit, U.S. Penitentiary, Lompoc, California. Responsible for development, implementation and evaluation of educational/therapeutic treatment program for 100 inmates. Program certified by the U.S. Department of Justice, Federal Prison system. Additional duties included forensic Evaluations for the institution and the Courts, staff training, the Employee Assistance Program, Director-Suicide Prevention Program, and rotation as the Executive Duty Officer. Mr. James Finley, Unit Supervisor, Dr. C. Scott Moss, Clinical Supervisor (Federal Bureau of Prisons). |
| 1980-1981 | Program Director/Psychologist, Yukon-Koyukuk Mental Health Program, Alaska 99741. Developing, implementing, coordinating and supervising community mental health services for seven Koyukan-Athabaskan villages in bush Alaska (Galena, Ruby, Nulato, Koyukuk, Kaltag, Huslia and Hughes). In addition, worked with the University of Alaska Rural Education in developing/teaching classes, training indigenous mental health paraprofessionals. Responsible for testing and services to individuals, families, school districts, staff training and supervision, program evaluation, and grants. Flora Sweetsir, Clinic Supervisor. (Post-Doctoral Supervision, Dr. Mike Graf, supervisor). |

**FOSTER: Page 5**

| | |
|---|---|
| 1979-1980 | Psychologist Intern, Terminal Island Federal Correctional Institution, San Pedro, California 90731. Provided forensic, psychological and neuropsychological evaluations, individual and group therapy, educative rehabilitative programs, worked as a member of several unit management teams, as well as with the Youth Corrections Act, Drug Abuse Program, Special Alcohol Program Unit and the Hospital. Dr. Emry Varhely, Supervisor (Internship) (Federal Bureau of Prisons). |
| 1978-1979 | Psychologist Technician, V.A. Medical Center, Waco, Texas 97301. Performed neuropsychological evaluations (Halstead-Reitan Battery) and standard psychological evaluations, group and individual therapy, intake screening, etc., while functioning as a staff team member in a 1200 bed neuropsychiatric hospital. Drs. C. Knape, Joseph Geiger, Jack Gold, and Richard Spinn, Supervisors. (Practicum Assignment). |
| 1977-1978 | Baylor Consulting Team, Corsicana I.S.D., Corsicana, Texas. Dealt with school desegregation tasks, developed behavior management programs for students, developed Individualized Education Programs for special education students, worked with teachers, students, and parents. Provided psychological assessments/evaluations as requested. Dr. David Kopplin, Baylor University Supervisor. (Practicum Assignment). |
| 1976-1978 | McLennan County Adult Probation Department, Waco, Texas. Provided psychological evaluations for the Court, facilitated drug/alcohol treatment programs, and conducted individual, group, and family therapy at a halfway house and at the Probation Department's Media center. Dr. Les Moser, Baylor University, Supervisor. (Practicum Assignment). |
| 1977-1979 | Youth Director: Central Presbyterian Church, Waco, Texas. |
| 1975-1976 | Youth Director: Trinity Convenant Church, Salem, Oregon. |

| | |
|---|---|
| 1974-1976 | Willamette University, Salem, Oregon 97301: Head Resident, Doney Hall (1974-1976), Assistant Football Coach (Linebackers, Defensive Ends) (1975), Assistant Wrestling Coach (1975-1976), Team Handball Coach (1974-1976). |
| 1969-1971 | Sergeant, U.S. Army (Military Police). |
| 1963-1976 | Farm and ranch labor, farm equipment operator, truck driver. |

**Other Activities/Honors**

Serve as a consultant for schools, universities, social service organizations, courts and individuals regarding issues in the areas of: forensic, cross-cultural, and clinical psychology. This has included the development and presentation of numerous workshops covering a range of topics (1974-Present).

Assistant Football Coach (Linebackers), Evangel College, Springfield, Missouri (1984).

Finished in one of the top four (Team Handball) at the U.S. National Team Handball Championships serving as a player or a player/coach (1971, 1974*, 1975*, 1976, 1978, 1979,1980, 1983,1985*, 1986*, 1987, 1990*, 1992, 1996*, 1997, 1998), (*denotes first place).

Member of various United States National Teams (Team Handball), including competitions at and/or against National Teams from Switzerland, France, Poland, Japan, Russia, West Germany, Denmark, Iceland, Spain, Canada, Mexico, Argentina, Chile, Paraguay, Cuba, etc. (1971-1982).

Coach*, Player/Coach, Official**, U.S. Olympic Sports Festival (Team Handball).

Minneapolis, Minnesota (1990)**
Oklahoma City, Oklahoma (1989)**
Raleigh-Durhan, North Carolina (1987)**
Houston, Texas (1986)*
Baton Rouge, Louisiana (1985)**
Syracuse, New York, (1981)
Colorado Springs, Colorado(1979)
Colorado Springs, Colorado (1978)

Assistant Coach, Saudi Arabia National Team (Team handball), Montreal Olympics, Springfield College International Sports Program (1976).

Letterman, Willamette University: Football (Linebacker, Punter) Wrestling (Team Captain) (1973-1975).

Alternate, United States Olympic Team (Team Handball), Munich, Germany (1972).

US Olympic Committee Project Gold-training for leadership of women and minorities. Leroy Walker President, Dick Shultz Exec. Director (1996).

Numerous additional athletic awards and activities.

Board member, Galena City School, Galena, Alaska (1980-1981).

Southwest Missouri Indian Center (1985-1987, Board Vice Chairman).

Member of Bureau of prisons Crisis Response Team- prison hostage crisis at Oakdale, Lousiana, and Atlanta, Georgia. Fall, 1987.

Member of Psychology Department AID'S Task Force-Bureau of Prisons, 1988.

Member of the EEO Task Force-Bureau of Prisons, 1992.

Native American Center of Southeast Minnesota, (1988-1993, Board Member).

Consultant-American Indian Jail Suicide Project, National Center for American Indian and Alaska Native Mental Health Research, university of Colorado health Sciences Center, Denver, Colorado. Chris Duclos, M.A., Clinical Coordinator. (1991- 1994).

Consultant-American Indian Vietnam Veterans project. National Center for American Indian and Alaska Native Mental Health research, University of Colorado Health Sciences Center, Denver, Colorado. Lynn C. Warlde, M.A., Clinical Coordinator (1993-1996).

Advisory Board Member, Native American sports Council, A Member of the U.S. Olympic Committee, Gene Keluche, Chairman, 1994-Present.

Member-Attorney General's Task Force: Youth and Violence. Joe Mazurak, Montana State Attorney General. 1995-1996.

Advisory Board Member, Indians in Psychology Doctoral Education (INPSYDE), University of North Dakota, 1997-Present.

Advisory Board Member, Indians in Psychology Doctoral education (INPSYCH), University of Montana, 1998-Present.

Advisory Board Member, Mental Health Oversight Advisory Council, State Senator Bob Keenan, Chair, Mark Racicot, Governor, State of Montana, 1999-Present.

<u>Honors</u>

Psi Chi (National Honor Society for Psychology Majors). Willamette University, 1974.

Omicron Delta Kappa (National Leadership Honor Society). Willamette University, 1974.

Leonard J. Jaqua Memorial Scholarship. Willamette University, 1973-1975.

Mary L. Collins Graduate Scholarship. Oregon College of Education, 1975-1976.

Herbert J. Reynolds Memorial Scholarship. Baylor University, 1977-1979.

Outstanding Young Man of America Award (endorsed by U.S. Jaycees), 1979.

Various Bureau of Prison Awards including: GYNCO Honor Graduate, 1983; National Awards for Excellence in Institution Familiarization and Excellence in Internship and Student Development Program Awards, 1992.

<u>Memberships</u>

The American Psychological Association, (1979-Present) member of:

Division 12-Clinical Psychology
Division 40-Neuropsychology
Division 41-American Psychology-Law Society
Division 45-The Study of Ethnic Minority Issues

The American Society of Indian Psychologists (1979-Present)

The American College of Forensic Psychology, Fellow, (1985-1994) Advisory Board Member (1987-1994).

Council for the National Register of Health Service Providers in Psychology, Member number 34254 (1986-Present).

**Workshops/Continuing Education**

Group leadership Training Program (focus on working with minority population). Drs. Bob Lee, Norm Chambers, and Carl Rogers. Summer of 1974 and 1975, University of California-San Diego.

Training in Clinical Applications of Hypnosis. Drs. Krasleneck and Hall. Spring of 1978, Baylor University. Fall of 1982, USP-Lompoc. Dr. C. Scott moss.

Correctional Psychology. Drs. Bob Powitzky, Joan Garner, and Homer Keeney. Fall of 1978, Baylor University.

Systems and Family Therapy. Dr. Al Serrano. Fall of 1978, Baylor University.

Neuropsychology: Brain-Behavior Relationship and Assessments. Dr. Thomas Bolles. Spring of 1979, Baylor University.

Gestalt Therapy- History, Theory and Applications. Dr. Irv Gadol, Summer of 1979, Baylor University.

Training of Trainers. National Institute of Drug Abuse. FCI-Terminal Island, Fall of 1979.

White Cloud Research Center Seminar- Focus on the Strengths of the Native American/Eskimo Family. Summer of 1980, University of Oregon, Medical School, Portland, Oregon.

Annual School on Alcohol and Addiction Studies. University of Alaska, Anchorage. Summer of 1981.

Basic/Advanced Certification in Clinical Hypnosis. Associate Trainers in Clinical Hypnosis. Summer of 1981, Seattle, Washington.

U.S. Department of Justice- Bureau of Prisons Psychologist Training. Spring of 1982, Denver, Colorado.

U.S. Department of Justice- Bureau of Prisons. Introduction to Correctional Techniques. Summer of 1982, Federal Law Enforcement Training Center, Glynco, Georgia (Honor Graduate).

Human Sexuality for Health Professionals. Fall of 1982, Dr. David Bullard. University of California, Santa Barbara.

U.S. Department of Justice- Bureau of Prisons. Introduction to Correctional Management and Supervision. Spring of 1983. USP, Lompoc, California.

Innovations in Clinical Practice: A Source Book ,Volumes I, II, & III, Edited by Drs. Peter Keller and Lawrence Ritt. Summer of 1984, 1985, and 1986, Home Study.

American College of Forensic Psychology, Symposium, in Psychology and Law. Spring of 1985. Newport Beach, California.

Expert Witness-Federal Court. A Menninger Foundation Workshop. Drs. Menninger and Logan. Spring of 1985. U.S. Medical Center for Federal Prisoners, Springfield, Missouri.

Prediction of Dangerousness. A Menninger Foundation Workshop. Drs. Walter Menninger and William Logan. Fall of 1985. U.S. Medical Center for Federal Prisoners, Springfield, Missouri.

Thought Disorder in Schizophrenia- Conceptualized by Cognitive and Neuroscience. Terry Patterson, Ph.D., The Menninger Foundation, December of 1985. The Forest Institute, Springfield, Missouri.

American Psychological Association Annual Convention. Workshops attended foucused on Forensic, Religious, Neuropsychological and Cross-Cultural Issues. Los Angeles, California. August of 1985.

American College of Forensic Psychology: Spring of 1986, Second Annual Symposium on Psychology and the Law: Sanibel Island, Florida (Presenter).

A Vision of the Future. Fifth Annual National Symposium. National Head-Injury Foundation Conference. Fall of 1986. Chicago, Illinois.

Dallas Rehabilitation Institute- Second Annual Head- Injury Symposium; Dallas, Texas. Spring of 1987.

FOSTER: Page 11

American College of Forensic Psychology: Third Annual Symposium on Psychology and the Law; Monterey, California. Spring, 1987 (Presenter).

Crime Control Act Conference- 1987: Conference outlining Legal/Treatment Implications of the 1984 Crime Control Act; Springfield, Missouri, Fall 1987 (Presenter).

Treatment of the Dangerous Patient/Inmate: Modalities, Facilities, and Authorities. Presented by Minnesota and Wisconsin Forensic Facilities and Departments of Correction; Bloomington, Minnesota, Fall of 1987.

Death Penalty Defense Seminar. Sponsored by California Attorneys for Criminal Justice and California Public Defenders Association; Pacific Grove, California, Winter of 1988.

American College of Forensic Psychology: Fourth Annual Symposium on Psychology and Law; Palm Springs, California; Spring 1988, (Presenter).

The Vermont Conference of Primary Prevention- Psychological Approaches to the Prevention of AIDS. Burlington, Vermont Dr. George Albee, et. al.; Summer 1988.

Bureau of Prisons – 1988 Chief Psychologist Conference, Annapolis, Maryland, Summer 1988 (Presenter).

American Psychological Association Annual Convention- Atlanta, Georgia, Summer 1988 (Presenter).

American College of Forensic Psychology: Fifth Annual Symposium on Psychology and Law; San Diego, California; Spring 1989 (Presenter).

Assessment and Treatment of Juvenile and Adult Sexual Offenders. Forensic Mental Health Associates. Drs. Nicholas Groth, Fred Berlin, and Linda Sanford, L.S.W., Summer, 1989, Minneapolis, Minnesota.

American Psychological Association Annual Convention. New Orleans, Louisiana, Summer 1989 (Presenter).

Healing…Another Step, Another tradition. American Indian Drug and Alcohol Seminar. Federal Medical Center, Rochester, Minnesota. Summer, 1989 (Organizer, Presenter).

The Healing Journey: A Return to the Circle. National Conference of Native American ACOA's. Missoula, Montana. Fall, 1989.

**FOSTER: Page 12**

Circle of Wisdom. Reflections From Counselors of American Indian people. Wilder Forest Education Center, Stillwater, Minnesota. Fall, 1989 (Presenter).

Treatment issues Regarding Sexual Abuse and Substance Abuse in the American Indian Community. Minneapolis Indian health Board, Minneapolis, Minnesota. Winter, 1989.

The MMPI-2 Workshop. University of Minnesota, Minneapolis, Minnesota. Drs. Butcher and Graham. Winter, 1989.

Mayo Clinic: Department of Psychiatry and Psychology Lecture Series. Rochester, Minnesota. Winter, 1989 (Presenter).

Minnesota Psychological Association Annual Convention. Minnetonka, Minnesota. Spring, 1990 (Presenter).

Bureau of Prisons—1990 Chief Psychologists Conference. Phoenix, Arizona, Summer 1990.

Compulsive Disorders: The "have to" Merry-Go-Round. Mayo Clinic's St. Mary's Hospital Nurses Conference. Fall 1990 (Keynote Speaker).

Mental Health Forensic Clinical Update 1990. Co-Sponsored by the Bureau of Prisons and the Mayo Foundation. Rochester, Minnesota. Fall, 1990 (Presenter).

The Healing Journey: Living in Harmony. 2nd Annual National Native American Children of Alcoholics Conference. Seattle, Washington. Fall, 1990.

Holism, Conventional Medicine, and Alternative Therapies: A Guide to the perplexed. Martin A. Adson, M.D., Coordinator. Mayo Medical School, Rochester, Minnesota. Spring, 1991 (Presenter).

Uniting Our Concerns: A Conference on Mental Health Issues for the Emotionally Disturbed North American Indian Child and Adolescent. Minneapolis, Minnesota, Spring, 1991. (Presenter).

American Psychological Association Annual Convention. San Francisco, California, Summer 1991 (Presenter).

Circle of Wisdom: Reflections from Counselors of American Indian People. Wilder Forest Conference Center, Minnesota, Fall 1991 (Presenter).

The Healing Journey: Honoring our Kinship. 3rd Annual National Native American Children of Alcoholics Conference. Denver, Colorado, Fall 1991.

Mayo Alumni Association, 56th International Meeting. Mayo Clinic, Rochester, Minnesota, Fall 1991 (Presenter).

The Third Annual Circle of Wisdom Conference. Wilder Forest Education Center, Stillwater, Minnesota, Fall 1991 (Presenter).

Continuing Education Seminar, Section of Psychology. Mayo Clinic, Rochester, Minnesota, Winter 1992 (Presenter).

Native American Forum: Strategies to Address Youth Violence as a Public Health Issue. U.S. Center for Disease Control, Atlanta, Georgia, Spring 1992 (Task Force member).

National Organization of Forensic Social Work Annual Convention. St. Louis, Missouri, Spring 1992 (Presenter).

15th Annual Indian School: "Renewing Our Spirit." Sponsored by the American Indian Training Institute. Milwaukee, Wisconsin, Spring 1992 (Presenter).

Bureau of Prisons- 1992 Chief Psychologists Conference. Baltimore, Maryland, Spring 1992 (Presenter).

Diagnosis and Treatment Use of the MCMI in Forensic and Substance Abuse Correctional Settings. Theodore Millon, Ph.D. Baltimore, Maryland, Spring, 1992.

Managing Suicide in Corrections. Alan Berman, Ph.D. Baltimore, Maryland, Spring, 1992.

Behavioral Assessment of Crimes, Criminals, and Crime Scenes. Alan Brantley, M.A. Baltimore, Maryland, Spring, 1992.

American Psychological Association Annual Convention. Washington, D.C., Summer, 1992.

National Association of Catholic Chaplains Annual Convention. Pittsburgh, Pennsylvania, Summer, 1992 (Presenter).

Minnesota Indian Education Association, Eighth Annual Conference, "Celebrating Our Values and Traditions- Walking Effectively in Two Worlds". Rochester, Minnesota, Fall, 1992 (Spiritual Advisor).

Minnesota Department of Human Services Annual "Youth in Transition" Conference. Riverwood Conference Center, Minnesota, Fall, 1992 (Presenter).

**FOSTER: Page 14**

Fourth Annual Native American Children of Alcoholics Conference. "The Healing Journey: History as a Healer-Rebuilding Relationships. Minneapolis, Minnesota, Fall, 1992.

Rochester Whole Life Lecture Series "The Blessings of Diversity", Rochester, Minnesota Winter, 1993 (Presenter).

United States District Court, District of Minnesota, U.S. Probation and U.S. Pretrial Staff, "Nonviolent Crisis Intervention, "Minneapolis, Minnesota, Winter, 1993 (Presenter).

16th Annual Indian School on Alcohol and Other Drug Related Problems: "Walking in Balance in Two Worlds", Sponsored by the American Indian Training Institute, Albuquerque, New Mexico, Spring, 1993 (Presenter).

2nd Annual Indian Into Medicine Health Conference, "American Indians in the Battle Against AIDS". University of North Dakota, Grand Forks, North Dakota, Spring, 1993 (Presenter).

The North American Indigenous Male Conference, Sponsored by the American Indian Health Care Association, St. Paul, Minnesota, Summer, 1993 (Presenter).

The Minnesota American Indian Mental Health Care Professionals Annual Conference, Duluth, Minnesota, Summer, 1993 (Presenter).

First National Multi-Cultural School on Addictive Disorders, "Rebuilding Our Cultural Heritage: Renewing Hope and Vision", American Indian Training Institute, Sponsor, Milwaukee, Wisconsin, Fall, 1993 (Presenter).

United States District Court, District of Minnesota, Probation Office, Associate Staff Conference " Non Violent Crisis Resolution", Rochester, Minnesota, Spring, 1994 (Presenter).

Wahpeton Indian School, Red Road Approaches to Therapeutic Community, Staff Training Conference, Wahpeton, North Dakota, Summer, 1994 (Presenter).

6th Anuual NANACOA Conference "The Healing Journey: Expanding Our Vision." Sponsored by National Association of Native American Children of Alcoholics, University of Oklahoma's American Indians Institute and Assembly of First Nations Health. Montreal, Canada, Fall, 1994 (Presenter).

Community Health Representative Introductory Training. Indian Health Service, Nashville, Tennessee Fall, 1994 (Presenter/Instructor).

"Addressing Community Violence", Billings Indian Health Board and Indian Health Service Sponsors. Winter, 1994.

**FOSTER: Page 15**

"Journey Home, Journey Onward-Training of Trainers Alcohol and Drug Prevention Project." Sponsored by NANACOA and CSAP (Center for Substance Abuse Prevention), Seattle, Washington. Winter, 1995.

8th Annual Conference of American Indian Psychologists, Sponsored by Utah State University and Indian Health Service, Logan, Utah, Summer, 1995 (Presenter).

"Traditional Wellness Methods/ Practices in Contemporary Times." Elders-Youth Conference. Sponsored by Sisseton-Wahpeton Buffalo Lake Sundance Society and Indian Health Service. Sisseton, South Dakota, Summer, 1995.

5th Montana Conference of HIV/AIDS Rural Perspectives on Prevention and Care. Sponsored by Montana State University and Montana Department of Public Health and Human Services. Bozeman, Montana. Spring, 1996 (Presenter).

9th Annual Convention of American Indian Psychologists, Sponsored by IHS and Utah State University, Logan Utah. Summer, 1996. (Presenter).

Training of Trainers-Conducting Native Community for Substance Abuse/Violence Recovery and Prevention. Sponsored by Indian Health Service (IHS) and Center for Substance Abuse Prevention. Fall, 1996.

Cadre of Experts-Integrating Alcohol, Substance Abuse, and Violence Prevention Across Tribal Programs. Sponsored by NANACOA and ANA. Seattle, Washington> Winter, 1997.

Current Issues in Psychiatric Pharmacotherapy. Sponsored University of Montana School of Pharmacy and Rocky Mountain College Physician Assistant Program. Billings, Montana. Spring, 1997.

Montana Psychological Association Spring Continuing Education Conference. "Philisophical Foundations of Treatment from an American Indian Perspective." Helena, Montana . Spring, 1997. (Presenter).

10th Annual Convention of American Indian Psychologists. Sponsored by USU and IHS. Logan, Utah. Summer, 1997.

Camp Chapparel: Tradional Indian Approaches of Prevention and Healing for Combat Related Trauma. Sponsored by Yakama Nation Veterns Program and Veteran's Administration Northwest Consortium. Mt. Adams, Washinton Summer, 1997, 1998, 1999, 2000.

21st Annual Indian School on Alcohol and Other Drug Related Problems. Conducted by AITI, Alburqueque, New Mexico. Spring, 1998. (Presenter)

Conflict Management and Violence Prevention for Native American Youth. Sponsored by Blackfeeet Community College. Browning, Montana. Spring, 1998. (Presenter).

11th Annual Convention of American Indian Psychologists. Sponsored by USU and IHS. Logan, Utah Summer 1998 (Conference Staff)

22nd Annual Indian School on Alcohol and Other Drug Related Problems. Sponsored by AITI. Alburqueque, New Mexico. Spring, 1999. (Presenter).

Psychopharmacology in Psychological Practice. Montana Psychological Association Fall Continuing Education. Fairmont Hot Spring, Montana. Fall, 1999.

Forensic Interviewing of Children. Sponsored by IHS and BIA (Bureau of Indian Affairs). Billings, Montana. Spring, 2000.

13th Annual Convention of American Indian Psychologists. Sponsored by USU and IHS. Logan, Utah. Summer, 2000. (Conference Staff).

## PUBLICATIONS

Foster, Daniel V.
"Consideration of Treatment Issues with American Indians in the Federal Bureau of Prisons;" Psychiatric Annals, Vol. 18, No. 12, pp. 698-701, December, 1988.

Foster, Daniel V.
"Treatment Issues with American Indians;" Minnesota Psychologist, Vol. 39, No. 4, pp. 3-7, July, 1990.

Daniel V. Foster, Psy.D.
Clinical and Forensic Psychologist
P.O. Box 1429
Browning, MT. 59417

Exhibits: (D) 136
Case No. 99-00303

Consultant for the Defendant

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

United States of America,
Plaintiff

vs. CASE NO. 99-00303-01-CR-W-2

Keith Dwayne Nelson
Defendant

I, Daniel V. Foster, Psy.D., Clinical Psychologist and Forensic Psychologist, being duly sworn upon my oath deposes and states as follows:

BACKGROUND: Keith Nelson was charged by Indictment on October 21, 1999 with two counts: Kidnapping Resulting in Death and Sexual Abuse Resulting in Death. On October 25, 2001, Mr. Nelson pled guilty to the first count, Kidnapping Resulting in Death. This psychologist met with Mr. Nelson for approximately one hour the afternoon of October 5, 2001, and for approximately eight hours on Saturday, October 6, 2001. In addition to the interviews, background information specific to his crime and his formative history was reviewed. Since our meeting, Mr. Nelson secreted multiple dosages of two antidepressants medications, Trazadone and Elavil, and attempted suicide by overdose on October 28, 2001.

CLERK U.S.DISTRICT COURT
Exhibits:
P 8
Case No. 4:04-CV-08005-FJG

The Court then addressed the issue of competency. William Logan, M.D. reviewed some materials, met with Mr. Nelson for three hours and opined that he was chronically depressed, probably as long as a year before his incarceration, and was depressed as of November 7, 2001. In the absence of psychological testing (Mr. Nelson has been reported as refusing testing or assessment in the past), Dr. Logan found him to be presently competent, though recommended supportive psychiatric counseling and monitoring to assist his sentencing. The Court concurred with Dr. Logan, found Mr. Nelsen to be presently competent, and took Dr. Logan's recommendation for supportive counseling and professional monitoring throughout the penalty phase under advisement.

Of note is Dr Logan's concern that Mr. Nelsen could quickly deteriorate without observable clear signs, lose concentration, and/or become suicidal. Mr. Nelson is able to present different signs and symptoms of his psychological status to persons viewing him over the same period of time. On October 30, 2001, Dr. Hucke noted Mr. Nelson resisted self-disclosure but seemed "depressed, angry and impulsive." Both he and Dr. Logan suggested psychotropic medications to reduce anxiety and depression. His treating Internist (following his suicide attempt, October 29th-31st, 2001), Dr. Whitlow, found him to be "...very depressed, probably more than any inmate I've seen in the past." Dr. Whitlow shares extensive experience treating inmates since 1990 through the present. He goes on to state " If he were a civilian patient, I would seek to have him voluntarily incarcerated in an institution for further evaluation and treatment. If he did not consent to voluntary treatment, I would seek to involuntarily commit him..." On October 31, 2001, Dr. Fodare noted " There may be some depressive symptoms at this time but they are not overt." (Dr. Fodare had interviewed him for the purposes of a mental status evaluation at least once previously, on October 18, 1999).

FINDINGS: Mr. Nelson is somewhat of an enigma for competent, intelligent professionals. The Court, at his Competency Hearing, appeared to dismiss or discount multiple inconsistencies on the part of Mr. Nelson's self-report ("no prior psychiatric/psychological assessment, care or treatment," checked off on a screening form", psychiatric treatment all the time- Admission intake form, Crisis Stabilization Unit, SW Missouri Mental Health Center, August of 1995). Mr. Nelson's not self-disclosing or trusting of prison staff, and perhaps of most authority figures. The Court further satisfied its obligation for determining his competency by asking questions which required a "yes" or " no" response and observing his social appropriateness and interaction with his attorney during formal hearings.

By way of brief background, this psychologist worked with the McClennan County Adult Probation Office (State of Texas) while a doctoral student in Clinical Psychology at Baylor University in Waco, Texas from 1976-1978. I was later employed in various capacities as a psychologist for the federal Bureau of Prisons. These positions included Director, Drug abuse Program, U.S. Penitentiary, Lompoc, California; Forensic

Psychologist, U.S. Medical Center, Springfield, Missouri, Chief of Psychology, Federal Medical Center, Rochester, Minnesota; and Director, Drug Abuse Programs, Bureau of Prisons, Washington, D.C. I have provided and supervised assessment, forensic evaluations, treatment and care for hundreds of felons over a period of many years.

Had I been allowed to further evaluate and subsequently testify, numerous additional factors clarifying Mr. Nelson's current mental status could have been presented to the triers of fact and determiners of fact and determiners of sentence. For instance, Mr. Nelson has an extensive history of mental health intervention and family services intervention dating back to his early childhood. He was raised under conditions of severe abuse, neglect and deprivation. He struggled in school, repeating early elementary grades, and displayed multiple signs and symptoms of both learning impairments and psychological problems. He lacked nocturnal bladder control past the age of ten, sleeping in a maggot infested bed and was forced to attend class without bathing or clean clothing-having to bear the taunts of his peers and distain/concern of his teachers. Multiple other instances of trauma, abuse, neglect and their psychological impact would have been presented. He was taken from his home repeatedly, only to be returned. He was shuttled from Foster homes, to his mother, to Group Homes, back to his mother, to Juvenile Facilities and at a young age, to prison. The abuse, neglect and and violent conditions he experienced in his mother's home was matched and exceeded as he was sent from place to place. He witnessed, experienced and was personally victimized by rapes, assaults and riots. That this affected him through the present time is documented and supported by the reports of many who witnessed and attempted to lessen some of the effect of the trauma to which he was subjected throughout his formative years.

His subsequent acting out and intermittent psychological instability were at times met with treatment though on most occasions with indifference or confinement. At an early age he found sanctuary in the idealized world of his own private thoughts and dreams. It was his misfortune to be confined as a juvenile in Texas facilities. The Texas Department of Corrections was performing experimental frontal lobotomies on Conduct Disordered (Antisocial) teenagers as recently as the late 1960's as an experimental form of "treatment".

He had psychotic breaks by his late teens and has had at least one since his confinement at the pre-trial facility in Leavenworth. He long ago learned to not trust adults or authority and continues to avoid assistance and intervention, however well intended and competently provided, through the present time. That he would prefer death to the life he has known and anticipates is no surprise to the Court or this writer, though we interpret this through different perspectives, each with facts and evidence to support our views.

That he meets the criteria for Antisocial Personality Disorder is something we agree on. As a child he was delayed developmentally in multiple ways. Had his mother stayed in one location long enough for the social and family services system to gather sufficient information, the intervention and protection he needed possibly would have occurred. As

a child he met current criteria for Pervasive Developmental Disorder, Not Otherwise Specified and currently he meets DSM-IV-TR criteria for Post Traumatic Stress Disorder- Chronic, Severe, Major Depressive Disorder-Recurrent, as well as the personality disorder already identified.

While Sexual Sadism is strongly suggested by the facts of his crime, we were unable to complete an evaluation. Our time was primarily spent in trust building and history taking. These conditions are treatable, and the latter manageable in an adult prison.

He has remorse. He has a conscience, despite often functioning emotionally as the child he was never allowed to be. These findings could have been presented in greater detail, giving a context to his heinous act. Had the Court taken the opportunity to pursue a more thorough evaluation of competency and responsibility at a facility such as the Federal Medical Center in Rochester, Minnesota, where he would have received compassionate care as well as a thorough psychiatric and psychological forensic evaluation, it is likely that this recent and future suicide attempts would not occur.

For the last seven years, this writer has been seeking to modify the present and future of young men and women raised similarly to Mr. Nelson in the difficult conditions prevalent on the Blackfeet Reservation in Montana. Of the twenty five plus years of forensic experience and training this examiner has, Mr. Nelson's history of trauma, abuse and neglect are among the most severe. It is believed that the presentation of this history, the residual strengths and values that he nevertheless possesses, and the availability of a facility where he could heal and make what amends a life lived incarcerated could offer, would be factors relevant for a jury of his peers.

Given the irreversibility of a death penalty, it would seem essential that the jury hear of the formative stressors, lifelong impairment and psychiatric care facilities available where a life sentence could be served. His current competency is unstable at best and questionable at worst. Given the potential irreversibility of the sentencing outcome and the availability of secure federal psychiatric facilities (USFMCFP, Springfield, Missouri; FMC, Rochester, Minnesota and FMC, Butner, North Carolina) it is surprising that the Court did not choose to "err on the side of caution" and send Mr. Nelson for evaluation and treatment as indicated to assure his appropriate participation in this critical hearing. With or without such treatment, his sentencing jury would surely have welcomed consideration of these essential psychological components of Mr. Nelson.

Respectfully submitted the 23rd day of November, 2001.

Daniel V. Foster Psy.D

Daniel V. Foster, Psy.D.
Clinical and Forensic Psychologist

On this 23rd day of November, 2001, before me a Notary Public for the State of Montana, personally appeared Daniel V. Foster, Psy.D., known to me to be the person whose name is subscribed to this instrument and acknowledged to me that he executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year first above written.

Notary Public for the State of Montana
Residing at Browning, Montana
My Commission expires on 05/31/2004

FILED
OCT 10, 2001
P. L. BRUNE, CLK
U.S. DISTRICT COURT
WEST DISTRICT
OF MISSOURI

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 99-00303-01-CR-W-2 |
| | ) | |
| KEITH DWAYNE NELSON, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Pending before the Court is Defendant Nelson's ex parte motion for additional funds for Tena Francis of Capital Punishment Investigations and Educational Services for mitigation investigation, and Ex Parte Motion for Expert Services of Dr. Dan Foster, Ph.D., to present psychological testimony at the mitigation phase of this case. These requests are approved in the following amounts not to exceed: $15,000 for a mitigation investigator and $7,500 for expert services.

As requested in the ex parte motion this order shall be filed under seal.

IT IS SO ORDERED.

Sarah W. Hays
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE

ORIGINAL

#314

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FILED
JUL 30 2000
P. L. FAUNCE, CLK.
US DISTRICT COURT
WEST. DISTRICT
OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 99-00303-01-CR-W-6 |
| | ) | |
| KEITH DWAYNE NELSON, | ) | |
| | ) | |
| Defendant. | ) | |

**EX PARTE UNDER SEAL SUPPLEMENTAL SUGGESTIONS IN SUPPORT OF CONTINUANCE MOTION**

**COMES NOW** Defendant, by and through appointed counsel, and hereby submits these ex parte under seal supplemental suggestions in support of his Motion for Continuance of the current trial setting.

**SUPPLEMENTAL SUGGESTIONS**

1. A review of the discovery revealed that the FBI has investigated several leads, from various sources, indicating that the victim's mother had some involvement in the kidnaping. While the FBI has done some investigation of these various leads, they seemed to have stopped and have not fully pursued all leads contained in the discovery. The defense investigators are currently pursuing these leads. That investigation has been made more difficult by the redacted discovery provided to the defense. As a result of all the witness



Appellate Case: 15-3160 Page: 124 Date Filed: 02/29/2016 Entry ID: 4372487

identification information and investigative leads being redacted out, considerable time is being spent tracking down that information in order to fully investigate the information.

2. From the investigation to date it appears that there are major problems with the way the crime scene was processed and the evidence collected. The chain of custody provided by the government for the crucial item of evidence, the victim's panties, appears to be incomplete and defective. The log sheets from the crime scene search are blank as to the location of that item of evidence at the crime scene. Further, no photographs were taken of the item, nor was the location documented by measurements. Counsel also has reason to believe the item has been contaminated, which may impact the DNA testing done by the FBI laboratory. For these reasons, defendant will be filing a motion for expert assistance to consult with counsel on the chain of custody, crime scene collection and preservation.

Preliminary discussions with Cell Mark Laboratories regarding the DNA analysis performed by the FBI on the panties indicates that they results may be flawed, requiring independent testing. That testing will take approximately 6-8 weeks.

From the investigation to date counsel believes it is necessary to travel to Washington D.C. and physically view all the physical evidence collected in this case. The location of the alleged seminal stain on the panties of the victim is



Appellate Case: 15-3160 Page: 125 Date Filed: 02/29/2016 Entry ID: 4372487

crucial for determining if in fact a sexual assault occurred. The reports provided by the government concerning this item of evidence are totally devoid of any description of the alleged stain or its location on the panties. For this reason it is necessary to physically view the evidence. The government is maintaining all the evidence at the FBI laboratory in Washington, and has consented to allowing the defense, in their presence, to view that evidence. All this forensic investigation will be time consuming and requires additional time.

3. Counsel has had the autopsy report reviewed by a ObGyn surgeon at K.U. Medical Center, who has formed the preliminary conclusion that, contrary to the opinion of the medical examiner, there is no evidence of a sexual assault. As a result of this preliminary investigation, counsel needs to retain an expert on child sexual assault to completely review this report and determine if in fact the victim was sexually assaulted.

4. Extensive mitigation investigation needs to be done in order to prepare this case for trial. Defendant lived most of his life outside of the Kansas City area, requiring the defense team and investigators to travel to California and Texas in order to interview witnesses, and gather documents for use in the mitigation phase of this trial. To date, counsel for defendant have made trips to Texas and California to gather information, and several more trips will be necessary to complete this investigation.

Defendant was born in Kansas City and spent his first two months of life



Appellate Case: 15-3160 Page: 126 Date Filed: 02/29/2016 Entry ID: 4372487

hospitalized with breathing difficulties. Records of that hospitalization need to be gathered and the services of a neurologist may be needed to determine if the lack of oxygen caused organic brain damage. There is also an indication that fetal alcohol syndrome may be an issue in this case. More time is needed to investigate this issue.

Defendant's mother fled to California when he was 2-3 years old, to escape from his abusive father. Investigation to date has revealed that defendant's's father found them in California and held them hostage for a week. In addition, defendant's mother was severely beaten in California and the family lived for a period of time in two different battered women's shelters. Defendant needs time to find those shelters and obtain any records which may still exist. Counsel may also be requesting funds to hire an expert to discuss the effects of domestic violence and abuse on a young child.

Counsel also has information which indicates that defendant or his siblings may have been hospitalized in California as a result of abuse. All of this information needs to be investigated which will require several trips to California to gather records and interview potential mitigation witnesses.

After the defendant's father found the family in California, they fled to Texas. Defendant lived may years in Texas and attended grade school, junior high and part of high school. To date, the defense has located one of his teachers and the grade school principal who have provided information about

the family and leads to other potential mitigation witnesses. Further, the investigation to date has revealed that defendant may have been sexually abused as a young child by a boyfriend of his mother. The defense is pursing leads on that issue and more time is required to determine if that information is true and to obtain expert assistance in presenting that issue at trial.

Defendant also spent time in various juvenile institutions while residing in Texas. Counsel has obtained voluminous records of these juvenile proceedings which need to indexed and reviewed. Once that review is complete counsel needs time to attempt to contact several juvenile officers and interview them as potential mitigation witnesses.

There is a family history of schizophrenia. Two of defendant's brothers suffer from the illness and are under constant medication. Because that illness is genetic, counsel has requested funds for a psychiatrist to do a complete mental evaluation of defendant. That request is currently pending and once it is approved those evaluations will occur. In addition to a mental evaluation the defense is in the process of preparing a complete social history of the defendant for the psychiatrists use. That social history is not yet complete and will require additional time and trips out of town in order to gather the relevant records and information.

Appellate Case: 15-3160 Page: 128 Date Filed: 02/29/2016 Entry ID: 4372487

Appellate Case: 15-3160 Page: 129 Date Filed: 02/29/2016 Entry ID: 4372487

WHEREFORE, for the above stated reasons and the reasons stated in the Motion for Continuance, defendant respectfully requests this Honorable Court grant his request for continuance and continue the trial of this case until April 2001.

Respectfully submitted:

Susan M. Hunt
819 Walnut, Ste. 308
Kansas City, MO. 64106
Phone: (816) 221-4588
Fax: (816) 221-2551

Larry Pace
Assistant Federal Public Defender
818 Grand, Suite 300
Kansas City, MO. 64106
Phone: (816) 471-8282
Fax: (816) 471-8008

William E. Shull
104 West Kansas
Liberty, Mo. 64068
Phone: (816) 792-4242
Fax: (816) 792-0888

Daniel Franco
1621 Baltimore
Kansas City, MO. 64108
Phone: (816) 472-0408
Fax: (816) 471-4883