No. 15-3160

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

Keith D. Nelson,

Appellant,

vs.

United States of America,

Appellees.

On Appeal from the United States District Court
District of Arizona
Case No. 4:04-8005-cv-W (FJG)

**APPELLANT'S REPLY TO OPPOSITION TO**
**MOTION FOR ISSUANCE OF CERTIFICATE OF APPEALABILITY**

**TABLE OF CONTENTS**

Table of Contents ........ i

I. Introduction ........ 1

II. The only issue at this stage of the proceedings is whether the issues presented are adequate to deserve encouragement to proceed further, not whether Mr. Nelson would ultimately prevail on appeal. ........ 2

III. The district court's resolution of the remanded ineffective assistance claims is debatable by jurists of reason because the district court adopted a fundamentally flawed approach in conducting the relevant *Strickland* inquiry. ........ 5

A. The district court erroneously held that, as a matter of law, the facts of the crime necessarily precluded a finding of *Strickland* prejudice. [*See* Motion for COA at 60-74] ........ 6

B. The district court committed *Porter* error by improperly failing to consider or unreasonably discounting mitigation evidence presented at the evidentiary hearing. [*See* Motion for COA at 74-87] ........ 10

C. The district court failed to properly consider how the uncontroverted evidence of Mr. Nelson's brain damage and mental illness might have affected the jury's sentencing deliberations. [*See* Motion for COA at 87-94] ........ 15

D. The district court committed *Tennard* error by improperly considering mitigation evidence based on whether it had a nexus to the crime. [*See* Motion for COA at 94-98] ........ 17

E. The district court applied the wrong legal standard in assessing trial counsel's performance under *Strickland.* [*See* Motion for COA at 98-108] ........ 19

F. The district court committed clearly erroneous factual errors in finding that the mitigation evidence presented at the § 2255 hearing was merely cumulative of the trial evidence. [*See* Motion for COA at 108-119] ........ 23

G. The district court's cumulativeness analysis was erroneous. ........ 27



Appellate Case: 15-3160 Page: 2 Date Filed: 08/18/2016 Entry ID: 4438934

IV. The district court's resolution of the ineffective assistance of trial and appellate counsel claims regarding the prosecutor's inflammatory and improper closing arguments is debatable by jurists of reason........................29

A. Reasonable jurists could disagree with the district court's ruling that the improper remarks were mitigated by defense counsel's argument and the court's jury instructions.................................................................29

B. The district court relied on inapposite caselaw to resolve the claim. .........31

C. The Government failed to address the debatability of the district court's resolution of the claim. ....................................................................33

D. Appellate counsel was similarly ineffective for failing to raise the issue of improper prosecutorial argument....................................................35

E. Trial counsel's failures in the mitigation presentation must be considered cumulatively with his failure to object to improper prosecutorial argument...........................................................................37

Conclusion ...........................................................................................................38



Appellate Case: 15-3160 Page: 3 Date Filed: 08/18/2016 Entry ID: 4438934

## I. Introduction

Mr. Nelson's request for a Certificate of Appealability (hereafter "Motion for COA") highlighted a number of ways in which the district court's resolution of his remanded § 2255 claims was debatable by jurists of reason. The district court's decision employed a flawed mode of legal analysis in its determination of the claims (e.g., by erroneously holding that certain crimes are so aggravated, one cannot, as a matter of law, establish *Strickland* prejudice) and relied on clearly erroneous factual findings (e.g., asserting that the mitigation evidence presented at the evidentiary hearing was merely cumulative to what was already presented at Mr. Nelson's trial, despite the fact that entirely new categories of mitigation – childhood sexual assault, brain damage, mental illness, social history information of the paternal side of the family – were never presented at trial.) These flaws in the district court's order demonstrate that its resolution of the claims is "debatable" and that appellate review of its decision is warranted.

In its Response, the Government failed to address any of the flaws in the district court's *Strickland* analysis which Mr. Nelson raised in his COA application. Instead, the Government's Response (hereafter "Gov't Resp.") merely summarized the district court's resolution of the claims and asserted that the order correctly decided the claims on the merits. The Government's pleading, however, is misguided and inapposite. The issue at this stage of the proceedings is not

whether Mr. Nelson can ultimately prevail on appeal; indeed, the COA standard of 28 U.S.C. § 2253(C)(2) expressly forbids this Court from conducting a merits review of the claims. The only issue before the Court at this stage is whether "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Given the myriad errors committed by the district court – identified in Mr. Nelson's COA application and unrebutted by the Government – that low bar for appellate review has been met, and a COA should therefore issue.

## II. The only issue at this stage of the proceedings is whether the issues presented are adequate to deserve encouragement to proceed further, not whether Mr. Nelson would ultimately prevail on appeal.

The purpose of the COA inquiry is to determine the threshold question of whether appellate review should be granted; it is not a merits review of the underlying claims. For that reason, the standard for obtaining a COA is low – Mr. Nelson need only make a showing that "jurists of reason could disagree with the district court's resolution" of the claims, or that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

The Government ignores the relevant COA standard and instead argues that a COA should not issue because Mr. Nelson cannot prevail on the merits. The Supreme Court has explicitly rejected that mode of legal analysis; the question of whether appellate review should be granted "does not require a showing that the



Appellate Case: 15-3160 Page: 5 Date Filed: 08/18/2016 Entry ID: 4438934

appeal will succeed." *Miller-El*, 537 U.S. at 337-38. Mr. Nelson need only show that the issues are "debatable" in order to prevail on his motion for a COA, not that he is assured of appellate relief. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (noting that the COA standard only requires a "showing that issues are debatable among reasonable jurists"); *see also Ragland v. United States*, 756 F.3d 597, 602 (8th Cir. 2014) (where case law was silent on the legal question at issue, more prudent course was to grant the request to expand the COA); *Bell v. Norris*, 586 F.3d 624, 632 (8th Cir. 2009) (expanding COA where the Court could find no implicit factual finding disposing of the claim). The intentionally low COA standard "would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail." *Miller-El*, 537 U.S. at 337. In fact, *Miller-El* specifically cautions that "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case received full consideration, that petitioner will not prevail." *Id.* at 338.

The Government's urging that this Court reach the merits of these claims, at this stage of the proceedings, contravenes the dictates of 28 U.S.C. § 2253(C)(2): the determination of whether the COA standard is met is a "threshold inquiry" that "does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Miller-El*, 537 U.S. at 327. When



Appellate Case: 15-3160 Page: 6 Date Filed: 08/18/2016 Entry ID: 4438934

deciding whether a COA should issue, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342. The Government cannot sidestep the COA process by asking this Court to "first decid[e] the merits of an appeal" because that is asking the court to "in essence decid[e] an appeal without jurisdiction." *Id.* at 336-37. The threshold COA inquiry is much less vigorous than the full-blown merits review engaged in by the Government and the COA process cannot be used as a substitute for a true appeal.

The Government's brief does not contest that the issues are debatable. Indeed, the very fact that the Government goes right to the merits of the claims demonstrates that "the issues presented are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.1 (1983), *see also Randolph v. Kemna*, 276 F3d 401, 405 n.1 (8th Cir. 2002) (describing the COA standard as a modest one).

Finally, the Government does not contest that: a) the prior COA grant remains in effect, or b) that there is no authority for the proposition that an adverse ruling by the district court following a remand nullifies the circuit court's original COA or otherwise deprives the circuit court of post-remand jurisdiction. In sum,

the Government has failed to make any compelling argument for why appellate review should be denied.[1]

## III. The district court's resolution of the remanded ineffective assistance claims is debatable by jurists of reason because the district court adopted a fundamentally flawed approach in conducting the relevant *Strickland* inquiry.

The district court consistently misconstrued the *Strickland* standard and used a fundamentally flawed mode of legal analysis to assess the reasonableness of trial counsel's performance and/or the prejudice that flowed from trial counsel's deficient performance. These flaws in the district court's *Strickland* inquiry were enumerated in Mr. Nelson's application for a COA, yet the Government failed to address them, opting instead to argue that the district court's opinion was correct on the merits. The relevant legal question at this stage of the proceedings, however, is whether the district court's resolution of Mr. Nelson's § 2255 claims is debatable by jurists of reason given the following errors in its *Strickland* analysis, as identified in the request for a COA:

---

[1] The Government also mischaracterizes the nature of the relief sought by Mr. Nelson. It contends that Mr. Nelson wants this court "to reconsider its ruling denying and finding no merit on all of the other allegations Mr. Nelson raised in his original § 2255 motion." Gov't Resp. at 6, 13. This is simply untrue. Mr. Nelson only asks for a COA on those issues this Court already remanded for a hearing, as is clearly stated in the Motion. Motion for COA at 6-7.



Appellate Case: 15-3160 Page: 8 Date Filed: 08/18/2016 Entry ID: 4438934

### A. The district court erroneously held that, as a matter of law, the facts of the crime necessarily precluded a finding of *Strickland* prejudice. [*See* Motion for COA at 60-74]

The district court unequivocally found trial counsel's performance deficient for failing to investigate and present readily available mitigating evidence about Mr. Nelson's brain damage, cognitive impairments, and mental illness. 97 F. Supp. 3d at 1149. Nevertheless, the district court denied Mr. Nelson's claims because "*[n]o amount* of mental health evidence or testimony relating to brain damage and difficult upbringing" could overcome the facts of the crime. *Id*. at 1157 (emphasis added). In other words, the district court held that, as a matter of law, the facts of the crime alone necessarily precluded a finding of *Strickland* prejudice.

The Government argues that the district court "utilized the proper prejudice review standard," Gov't Resp. at 49, but that contention is not supported by the actual ruling of the district court. The court did not hold that Mr. Nelson simply failed at the § 2255 hearing to proffer sufficient mitigating evidence to outweigh the aggravating evidence. Rather, the district court held that it would be *impossible* for Mr. Nelson to make such a proffer because *no amount* of mitigating evidence could ever satisfy the test for *Strickland* prejudice in his case given the facts of the crime. But established caselaw and empirical evidence in federal



Appellate Case: 15-3160 Page: 9 Date Filed: 08/18/2016 Entry ID: 4438934

capital cases[2] both rebut the underlying premise of the district court's prejudice analysis – *i.e.*, that some crimes are "too overwhelming" to be mitigated, and therefore *Strickland* prejudice can never be met.

Indeed, this mode of legal analysis – what the Fifth Circuit has derisively referred to as the "brutality trumps" approach to assessing *Strickland* prejudice[3] – has been rejected by numerous courts, including this one. *See* Motion for COA at 64- 67, 71-73 (collecting cases). The fact that so many courts have disagreed with this type of *Strickland* prejudice analysis clearly establishes that "jurists of reason could disagree with the district court's resolution" of Mr. Nelson's claims, thus warranting the issuance of a COA. Moreover, as in Mr. Nelson's case, the relevant law involves cases where a district court erroneously emphasized the aggravating facts of the crime to the exclusion of all mitigating evidence about *brain damage and mental impairments*. *Id*. at 65- 67. As this Court has long recognized, mental health evidence is a unique category of mitigation evidence because it can often help a jury "put the aggravating evidence in context." *Kenley v. Armontrout*, 937 F.2d 1298, 1307-08 (8th Cir. 1991). In other words, because "evidence of mental

---

[2] Mr. Nelson's COA cited *seventeen different examples of federal capital cases* where federal juries have returned life verdicts, despite the fact that the relevant crimes – many of which involved the killing of a minor – were equal to or more aggravated than the crime for which Mr. Nelson was convicted. *See* Motion for COA at 68-71. The Government did not respond to any of these cases.

[3] *Walbey v. Quarterman*, 309 Fed. Appx. 795, 804 (5th Cir. 2009).



Appellate Case: 15-3160 Page: 10 Date Filed: 08/18/2016 Entry ID: 4438934

impairments is exactly the sort of evidence that garners the most sympathy from jurors, and … this is especially true of evidence of organic brain damage," *United States v. Barrett*, 797 F.3d 1207, 1231 (10th Cir. 2015) (internal citations and quotation marks omitted), the district court's contrary holding – that *no amount* of such evidence would make a difference to the *Strickland* prejudice inquiry – is plainly debatable by jurists of reason.

Rather than respond to the COA issue raised by Mr. Nelson, the Government spends much of its brief arguing that trial counsel was intentionally deficient in his failure to investigate and present evidence of Mr. Nelson's brain damage and mental impairments in order to lay the groundwork for a future habeas claim. This argument is a red herring; the district court clearly found that Mr. Nelson established the deficient performance prong of *Strickland*. Moreover, the Government's argument begs the question: is it objectively reasonable trial strategy to fail to investigate and present uncontroverted evidence of brain damage and mental illness at trial after securing funding for that purpose in the hopes that one day different habeas counsel might raise this as an IAC claim in a § 2255 proceeding? The answer is clearly "no." Such a "strategy" would involve having to investigate, develop and present such evidence in a forum where succeeding on the merits requires: (1) satisfying various procedural requirements before the claim can even be considered on the merits, (2) obtaining an evidentiary hearing that is



Appellate Case: 15-3160 Page: 11 Date Filed: 08/18/2016 Entry ID: 4438934

not otherwise guaranteed, (3) securing post-conviction funds to hire the requisite experts (also not guaranteed), and (4) proving not only the underlying evidence of brain damage and mental illness, but also proving both prongs of *Strickland* in order to even have the underlying evidence weighed as part of the case. And even if habeas counsel did prevail, the remedy would simply be a resentencing hearing before a jury; in other words, trial counsel would have needlessly condemned his client to death in the hopes that one day Mr. Nelson could do what trial counsel already had the opportunity to do back at the time of trial – present mental health evidence to a jury.

Without a citation to the record, the Government also asserted that "[c]ounsel furthermore chose not to utilize the monies approved for a neuropsychologist and to move forward with the trial as scheduled, believing that ample mitigation evidence had been collected." Gov't Resp. at 4. This is misleading, as it appears to assert that trial counsel strategically chose to abandon a plan to have a neuropsychologist evaluate his client. Trial counsel testified that although he recognized that evidence of brain impairments is compelling mitigation in capital cases and intended to employ a different neuropsychologist from the one already hired by prior counsel, he failed to do so in the short time before trial out of neglect, not out of purposeful choice or strategy. Exh. 4 to Motion for COA (TR 4/14/14) at 199-200, 219-20.



Appellate Case: 15-3160 Page: 12 Date Filed: 08/18/2016 Entry ID: 4438934

### B. The district court committed *Porter* error by improperly failing to consider or unreasonably discounting mitigation evidence presented at the evidentiary hearing. [*See* Motion for COA at 74-87]

In *Porter v. McCollum*, 558 U.S. 30 (2009) (*per curiam*), the Supreme Court held that under a proper *Strickland* prejudice analysis, a district court cannot simply credit the conclusion of the prosecution's experts and "discount entirely" the impact that the testimony of the defense experts might have had on the jury. *See* Motion for COA at 74-75 (discussing district court's *Porter* error). And yet, that is precisely what the district court did in Mr. Nelson's case. In ruling on Mr. Nelson's § 2255 claims, the district court's analysis focused almost exclusively on the opinion of Dr. Daniel Martell, the Government expert who downplayed the significance of Mr. Nelson's mental impairments on his behavior, and the court discounted entirely any contrary evidence adduced at the hearing. The district court largely omitted from its *Strickland* analysis any detailed discussion of the overwhelming balance of the evidence presented at the hearing from Drs. Michael Gelbort, Rueben Gur, Xavier Amador, and Leslie Lebowitz that established the "convergent validity" of the evidence of Mr. Nelson's impairments – i.e., all of the neuropsychological testing, brain imaging, medical records and social history information came to the same conclusion: Mr. Nelson has pronounced damage to the area of the brain responsible for planning, decision-making, impulsivity and regulation of behavior. *See* Motion for COA at 75-87.



Appellate Case: 15-3160 Page: 13 Date Filed: 08/18/2016 Entry ID: 4438934

Although the Government contends that the district court "painstakingly reviewed" the evidence presented at the § 2255 hearing regarding organic brain damage and mental impairments, Gov't Resp. at 49, a comparison of the district court's order with the evidentiary hearing transcript demonstrates numerous significant omissions in its recounting of the evidence adduced at the hearing. Many examples of these omissions are discussed in Mr. Nelson's COA. *See* Motion for COA at 75-87 (summarizing evidence which the district court failed to discuss or consider in its *Strickland* prejudice analysis). Notably, the district court's order even conspicuously failed to mention that the some of the most robust evidence of Mr. Nelson's impairments *actually came from Dr. Martell's own neuropsychological testing*. *See* Motion for COA at 84-87 (discussing evidence elicited during Dr. Martell's cross-examination demonstrating that his ultimate opinion was unsupported by his own testing, which showed that Mr. Nelson's frontal lobe dysfunction was so severe that it placed him in the bottom percentile of the population).

Similarly, the district court extensively discussed Dr. Martell's conclusion that Mr. Nelson's conduct demonstrated planning as opposed to impulsivity and impaired frontal lobe functioning, yet the court literally made no mention of Dr. Gelbort's contrary testimony on this same topic. *See* Motion for COA at 76-77 (discussing Dr. Gelbort's opinion that Mr. Nelson's conduct was consistent with



Appellate Case: 15-3160 Page: 14 Date Filed: 08/18/2016 Entry ID: 4438934

impaired impulsivity and frontal lobe dysfunction rather than planned or premeditated behavior). Nor did the district court mention in its opinion that in another case of Dr. Martell's where his neuropsychological testing showed that the defendant was less impaired than Mr. Nelson, Dr. Martell nevertheless had opined that that defendant's behavior – which involved the armed robbery of a bank for which the defendant had prepared by purchasing firearms and body armor and studying a movie about a bank robbery – was the product of brain-impaired impulsivity, rather than planning and premeditation. *See* Motion for COA at 77. Indeed, despite the fact that every other expert besides Dr. Martell opined that Mr. Nelson's frontal lobe dysfunction was severe enough to impair his decision-making and regulation of his behavior and impulses, the district court gave no consideration to how the balance of the evidence might have impacted the jury's sentencing deliberation. Its decision to simply credit Dr. Martell's opinion was precisely the type of selective reliance on evidence prohibited by *Porter*.

Moreover, the district court's fact-finding with respect to Mr. Nelson's experts was based on the Government's brief rather than the evidence received at the hearing. For example, there is no evidence in the record that supports the district court's contention that the behavioral neuroimaging conducted by Dr. Gur provides "no useful information" because there is no "baseline comparison value." 97 F. Supp. 3d at 1146. This is simply an assertion that was "cut and pasted" from

the Government's post-hearing brief. *See* Motion for COA at 80 (comparing Government's post-hearing brief with district court's order). The Government's Response repeats this criticism, but provides no record support for its claim that Dr. Gur's neuroimaging is devoid of significance because of a lack of baseline comparison value. No such testimony was elicited from Dr. Gur on cross-examination, or otherwise proffered at the § 2255 hearing, and neither the Response nor the district court's order cites to any record evidence that supports this contention. Similarly, the Government fails to respond to the fact that even if one were to ignore the results of Dr. Gur's behavioral neuroimaging, there were still two other imaging results that independently corroborated Mr. Nelson's brain damage: the MRI and PET scan. The district court literally made no mention of these other corroborative brain scans, further demonstrating its selective reliance on the § 2255 record in violation of *Porter*.

It is abundantly clear that: 1) the district court unreasonably discounted the evidence that rebutted Dr. Martell's opinion, and 2) in conducting its prejudice analysis, the district court did not consider the impact that the testimony of Drs. Gelbort, Gur, Amador and Lebowitz might have had on the jury's sentencing deliberations. This one-sided consideration of the evidence constitutes clear *Porter* error, yet the Government did not even address it in its Response; it merely repeated the error by engaging in the same selective discussion of the evidence



Appellate Case: 15-3160 Page: 16 Date Filed: 08/18/2016 Entry ID: 4438934

presented at the § 2255 hearing that the district court did.[4] Indeed, both the Government and the district court treated as dispositive the fact that "Dr. Martell testified that none of these reports [from nine different experts that examined Mr. Nelson at the time of trial or as part of the § 2255 proceeding and whose opinions were contrary to Dr. Martell] changed his opinions regarding Nelson." 97 F. Supp. 3d at 1147; *see also* Gov't Resp. at 41. The relevant legal question under *Porter*, however, is not what effect the contrary evidence had on *Dr. Martell's* opinion, but rather what effect that evidence would have had on the sentencing jury. The district court did not even feign to conduct such a prejudice analysis.

When the § 2255 record is properly considered in its entirety, it is evident that, at the very least, reasonable jurists could disagree with the district court's

---

[4] The Government cites the fact that Mr. Nelson declined to be present at the evidentiary hearing as somehow relevant to the claim that trial counsel was ineffective for instructing Mr. Nelson not to submit to a mental health examination by the Government's expert. Gov't Resp. at 45. Again, this is a red herring. The district court clearly found that Mr. Nelson's decision to refuse to submit to a Government evaluation at trial was attributable to trial counsel, and that this constituted deficient performance. 97 F. Supp. 3d at 1151. The evidence adduced at the hearing was that Mr. Nelson acted pursuant to trial counsel's advice, and no contrary evidence was presented that Mr. Nelson would have refused to follow counsel's advice if counsel had instead advised him to submit to the evaluation. In fact, both of Mr. Nelson's trial counsel testified that if they had advised Mr. Nelson to cooperate with a government expert, he would have. Exh. 4 to Motion for COA (TR 4/14/14) at 68, 236. Moreover, Mr. Nelson's decision not to attend the hearing is irrelevant; the most germane evidence as to whether Mr. Nelson would cooperate with counsel's advice to submit to an evaluation is the fact that *Mr. Nelson did, in fact, submit to a Government evaluation as part of the § 2255 process on the advice of his counsel.*

resolution of the claims based on Dr. Martell's self-serving testimony, and could instead conclude that one or more jurors might have struck a different balance in the case based on the neuropsychological testing, brain imaging, medical records and social history information that substantiated Mr. Nelson's claims of organic brain damage and mental impairments. Thus, a COA is warranted.

### C. The district court failed to properly consider how the uncontroverted evidence of Mr. Nelson's brain damage and mental illness might have affected the jury's sentencing deliberations. [*See* Motion for COA at 87-94]

Part and parcel of the district court's *Porter* error was its failure to conduct the requisite fact-specific analysis to properly determine what impact the mitigating evidence regarding Mr. Nelson's brain damage and mental illness might have had on the jury's sentencing deliberation. Mr. Nelson's COA application provided numerous examples of how the trial presentation might have been different but for trial counsel's deficient performance, including the following:

- Due to trial counsel's failure to investigate the readily available evidence of Mr. Nelson's impairments, its trial presentation affirmatively misled the jury into believing that Mr. Nelson did not suffer from brain damage as a result of his complications at birth and that he made a full recovery. In fact, Mr. Nelson suffered such severe respiratory distress at birth that his infant body and limbs were blue in color because of the lack of oxygen in his blood, and readily available expert evidence establishes that the tremendous amount of stress placed on his infant brain by the bleeding and lack of oxygen had lasting effects on the organic structures of his brain, including the frontal lobes, which regulate behavior and impulse control.

- Trial counsel also affirmatively misled the jury into believing that Mr. Nelson was mentally sound and unimpaired, and that his conduct should be

understood in terms of "choices" that he made. This allowed the Government to hammer home to the jury that Mr. Nelson's conduct had no other explanation than his "choice" to be a "rotten human being" and "evil at his core." *See* Motion for COA at 89. In fact, Mr. Nelson's ability to regulate his behavior, engage in rational decision-making, and inhibit his impulsivity was significantly impaired by his organic brain damage and mental illness, but the jury was never informed of these impairments.

• The Government argued that the relative success achieved by Mr. Nelson's twin brother, Kenneth, undermined the relevance of any of the mitigation evidence offered because Kenneth lived a normal life despite being raised in the same environment as Mr. Nelson. In fact, Mr. Nelson's different trajectory was apparent from the moment of his birth; Kenneth did not suffer the same complications that resulted in Mr. Nelson's brain damage from deprivation of oxygen, nor did he have to bear the consequent burdens attendant to growing up with those deficits, including being singled out for ridicule and abuse by family members and peers, being taken advantage of by sexual predators, and struggling to manage brain impairments that affected his ability to think and plan, as well as regulate his behavior and impulsivity.

• The Government effectively argued to the jury that the sexually deviant nature of the crime demonstrated that Mr. Nelson was deserving of death. But for trial counsel's ineffectiveness, the jury would have learned that molestation and violence against women and children were the norm on both sides of the Nelson family, and that Mr. Nelson himself had been raped both as a young child and while incarcerated in a juvenile detention facility. The jury would have also been informed of expert evidence about how these early sexual traumas skewed Mr. Nelson's own sexual development, and that Mr. Nelson's brain damage included impairments to the part of the brain responsible for regulating sexual impulses. Although such evidence would not have legally excused Mr. Nelson's conduct, it could have taken some of the power away from the Government's aggravating evidence by shedding some light on what was otherwise unexplainable behavior.

In lieu of conducting a fact-specific *Strickland* prejudice analysis and answering the relevant legal question – *i.e.*, whether there is a reasonable probability that at least one juror would have struck a different balance but for trial

counsel's deficient performance – the district court obviated the need for a fact-specific inquiry altogether. In its view, the facts of the crime alone were legally dispositive of the issue of prejudice. Given that *no amount* of additional mitigation evidence could have changed the outcome of the trial proceedings, the district court's mode of analysis made the entire evidentiary hearing superfluous – the district court's resolution of the claims was predetermined solely by the immutable facts of the crime.

Jurists of reason could find debatable the district court's failure to conduct the requisite fact-specific inquiry to determine the impact that the unpresented mitigation evidence might have had in rebutting the Government's case for death, as well as reducing Mr. Nelson's moral culpability and providing an affirmative case for a life sentence. At the very least, this issue deserves encouragement to proceed further given that the district court appears to have circumvented this Court's remand order by prejudging Mr. Nelson's claims based on solely on the trial record and resolving them in a way that obviated the purpose of the evidentiary hearing. Accordingly, appellate review is merited and a COA should issue.

### D. The district court committed *Tennard* error by improperly considering mitigation evidence based on whether it had a nexus to the crime. [*See* Motion for COA at 94-98]

The district court analyzed the potential mitigating value of the mental

health evidence presented at the § 2255 hearing with an eye toward whether it had some nexus to the crime itself. *See* 97 F. Supp. 3d at 1146-47, 1156 (assessing such evidence based on whether it "explained why [Mr. Nelson] acted as he did," "played a role in him committing the crime," or otherwise provided a rationale for Mr. Nelson's criminal conduct). This is a plainly erroneous mode of analysis: the Supreme Court has long recognized that a capital defendant need not "establish a nexus between her mental capacity and her crime," and that imposing any such "nexus requirement" in the context of a *Strickland* prejudice inquiry violates the Eighth Amendment. *See* Motion for COA at 94-96 (discussing relevant Supreme Court precedent). The Government did not address the district court's plainly flawed prejudice analysis in its Response.

The district court's resolution of Mr. Nelson's claims was not merely "debatable," it was legally erroneous. Prevailing precedent establishes that the evidence of Mr. Nelson's brain damage, cognitive impairments, mental illness, and traumatic upbringing need not have offered any explanation for why he committed the offense or have been proven to have a played a role in his criminal conduct in order for it to have influenced the jury's assessment of Mr. Nelson's moral culpability; even absent a nexus to the crime, such evidence can independently form the basis of a "reasoned moral response" that a person with such characteristics is not deserving of a death sentence. *See Simmons v. Luebbers*, 299



Appellate Case: 15-3160 Page: 21 Date Filed: 08/18/2016 Entry ID: 4438934

F.3d 929, 939 (8th Cir. 2002) ("a vivid description of [the defendant's] poverty stricken childhood, particularly the physical abuse, and the assault…, may have influenced the jury's assessment of his moral culpability."). Thus, Mr. Nelson has plainly established that jurists of reason could disagree with the district court's legally erroneous application of a nexus consideration in its assessment of the mitigating value of the mental health evidence, and accordingly a COA is warranted.

### E. The district court applied the wrong legal standard in assessing trial counsel's performance under *Strickland.* [*See* Motion for COA at 98-108]

When this Court remanded Mr. Nelson's case for an evidentiary hearing, it did so because the extant record was inadequate for the district court to properly assess the claims pertaining to trial counsel's effectiveness. Many of these claims concerned *omissions* by trial counsel in their investigation and presentation of mitigation evidence. The district court's task was to make findings about the reasonableness of counsel's omissions, particularly with respect to counsel's limited investigation and presentation of mitigation evidence at trial. The district court failed to comply with this Court's mandate, and instead utilized a fundamentally flawed analysis in its *Strickland* inquiry into trial counsel's performance.

Under *Strickland* and its progeny, a court must look at each alleged omission



Appellate Case: 15-3160 Page: 22 Date Filed: 08/18/2016 Entry ID: 4438934

by trial counsel and consider whether trial counsel's failure to investigate and/or present particular mitigating evidence is reasonable. In other words, the decision to limit an investigation must flow from a "reasoned strategic judgment" rather than "inattention" or ignorance. *Wiggins*, 538 U.S. at 526. Here, however, the district court failed to conduct the relevant inquiry and conduct findings as to each claimed omission by trial counsel. For example, trial counsel failed to investigate and present readily available evidence that Mr. Nelson was raped as a child. The district court made no findings as to whether this omission was reasonable, and if so, what evidence in the record demonstrated that trial counsel's failure to pursue such an investigation was based on an informed strategic judgment, rather than inattention. Indeed, this is true of nearly every alleged omission by trial counsel; the district court simply failed to make the requisite findings as required under *Strickland* in order to conduct a proper inquiry into the reasonableness of trial counsel's limited investigation and presentation of mitigation evidence.

Instead, the district court turned the relevant *Strickland* analysis on its head: it looked at the mitigation evidence that was presented at trial in a vacuum and subjectively decided that it was "sufficient" and "more than adequate," 97 F. Supp. 3d at 1144, without ever inquiring as to the reasonableness of counsel's alleged omissions. In effect, the district court engaged in a truncated prejudice analysis: it concluded (incorrectly) that the § 2255 evidence was cumulative to the trial

evidence, and then reasoned backward from that conclusion that trial counsel could not be deemed deficient in such circumstances. *See* 97 F. Supp. 3d at 1144 (holding that trial counsel's mitigation case was "more than adequate" because "habeas counsel has not uncovered any 'powerful' new evidence. Rather, habeas counsel has simply discovered a larger quantity of mitigation evidence."). The district court plainly did not conduct the mandated *Strickland* inquiry into the reasonableness of trial counsel's omissions. Rather, it simply decided that such fact-finding was unnecessary because it deemed the mitigation presentation at trial "more than adequate."

The Government argues that the evidence presented at the § 2255 hearing should be discounted because § 2255 counsel "simply had more time and therefore uncovered a greater volume of evidence[.]" Gov't Resp. at 23. First, to the extent that the Government is arguing that trial counsel could not have developed this same evidence prior to trial because of a lack of time, that merely proves Mr. Nelson's remanded IAC claim that trial counsel was ineffective for failing to request a continuance in order to conduct an adequate mitigation investigation prior to trial. Second, the relevant inquiry is simply whether the post-conviction evidence was readily available at the time of trial; the uncontroverted evidence at the § 2255 hearing is that all of this evidence was, in fact, readily available at the time of Mr. Nelson's trial had trial counsel simply pursued it. Indeed, the



Appellate Case: 15-3160 Page: 24 Date Filed: 08/18/2016 Entry ID: 4438934

Government essentially conceded this point in its Response when it noted that prior to the FPD's withdrawal from Mr. Nelson's case, its investigator Ron Ninemire prepared a detailed "to do" list for Mr. Nelson's remaining trial counsel that flagged many of the same areas of mitigation that § 2255 counsel followed up on but which trial counsel unreasonably failed to pursue. Gov't Resp. at 24-25.

Besides the fact that the district court contravened the mandate of this Court by failing to make the requisite findings as to the reasonableness of trial counsel's omissions, the Supreme Court has specifically rejected the mode of analysis the district court used to resolve the relevant *Strickland* inquiry. *See Sears v. Upton*, 130 S. Ct. 3259, 3266 (2010) (*per curiam*) ("We have certainly never held that counsel's effort to present *some* mitigation evidence should foreclose an inquiry into whether a facially deficient mitigation investigation might have prejudiced the defendant.") (emphasis added). Indeed, even on its own terms, the district court's conclusion that the mitigation presentation was "more than adequate" and "sufficient" is plainly debatable: the district court acknowledged *in the very same order* that trial counsel's mitigation investigation was facially deficient for unreasonably failing to investigate and present readily available evidence about Mr. Nelson's organic brain damage and mental illness.

Given the district court's failure to make findings to support the reasonableness of trial counsel's omissions, as well as it use of a mode of

*Strickland* analysis that was clearly rejected by the Supreme Court in *Sears*, Mr. Nelson has met the low threshold necessary to show that the district court's resolution of his claims is debatable by jurists of reason.

**F. The district court committed clearly erroneous factual errors in finding that the mitigation evidence presented at the § 2255 hearing was merely cumulative of the trial evidence. [*See* Motion for COA at 108-119]**

The district court denied Mr. Nelson's claims that his trial counsel were ineffective for failing to investigate and present readily available mitigation evidence on the grounds that "Nelson's habeas counsel has not uncovered any 'powerful' new evidence. Rather, habeas counsel has simply discovered a larger quantity of mitigation evidence." 97 F. Supp. 3d at 1144. This ruling, however, was clearly erroneous; Mr. Nelson *did*, in fact, present evidence at the § 2255 hearing about entirely new categories of mitigation evidence that had *never* been presented for the jury's consideration at trial. This evidence included:

1. Evidence that Mr. Nelson was raped as a child. *See* Motion for COA at 109-112.

2. Expert evidence that Mr. Nelson is brain damaged. *See* Motion for COA at 112-114.

3. Expert evidence that Mr. Nelson is mentally ill and suffers from the effects of chronic exposure to trauma. *See* Motion for COA at 114-116.

4. Social history evidence regarding the paternal side of Mr. Nelson's family. *See* Motion for COA at 116-117.

The Government claims that "much, if not all of this 'new' mitigating



Appellate Case: 15-3160 Page: 26 Date Filed: 08/18/2016 Entry ID: 4438934

evidence, had actually been presented to the jury for its consideration" at the time of the original trial. Gov't Resp. at 14. That is plainly incorrect. Evidence of Mr. Nelson's childhood sexual assault, brain damage, mental illness, and social history information concerning the paternal side of his family was not presented at his trial. Nor was evidence of "the same type and tenor," Gov't Resp. at 23, previously presented at Mr. Nelson's trial. Indeed, the district court itself acknowledged that trial counsel was deficient for failing to present *any* evidence to the jury about two of the above enumerated categories: Mr. Nelson's organic brain damage and mental impairments. Indeed, as one circuit court has held, even where some mental health evidence has been presented to a sentencing jury, the failure to present readily available evidence of organic brain damage constitutes prejudicial *Strickland* error because evidence of organic brain damage is particularly unique and compelling mitigation as compared to other types of mental health mitigation. *See Littlejohn v. Trammel*, 704 F.3d 817, 864 (10th Cir. 2013); *Hooks v. Workman*, 689 F.3d 1148, 1205 (10th Cir. 2012). The fact that another circuit has specifically rejected the notion that evidence of organic brain damage can be considered cumulative to other types of mental health evidence is independently sufficient to show that reasonable jurists could disagree with the district court's resolution of Mr. Nelson's claims.

Moreover, no part of the trial record can be characterized as of "the same

type and tenor" as the § 2255 evidence that Mr. Nelson was raped as a small child, and then again when he was institutionalized in a juvenile detention facility. Nothing of the sort was presented to the jury at Mr. Nelson's trial, nor is it conceivable how the Government could suggest that evidence of Mr. Nelson's repeated sexual abuse as a minor was somehow fungible with the trial evidence. As noted in Mr. Nelson's COA, courts have long recognized that mitigation regarding childhood sexual assault is powerful and uniquely compelling to capital sentencing juries. *See* Motion for COA at 110-112. Moreover, such evidence would have been particularly critical in Mr. Nelson's case because the lifelong effects that his childhood rape had on his own psychological development and behavior would have helped put in context conduct that the Government otherwise characterized as evidence of sexual deviance that aggravated the crime. *Id*. at 111-12.

The Government argues that Mr. Nelson presented "some mental health evidence" at trial through Dr. Mark Cunningham. Gov't Resp. at 42-43. The Government significantly mischaracterizes the record. Dr. Cunningham's trial testimony touched on some social service records, but it was not remotely comparable to expert mental health testimony. Indeed, Dr. Cunningham was specifically forbidden from addressing Mr. Nelson's mental health impairments because of counsel's decision to advise Mr. Nelson not to cooperate in a



Appellate Case: 15-3160 Page: 28 Date Filed: 08/18/2016 Entry ID: 4438934

government examination. Because of this ill-fated decision of counsel, Dr. Cunningham's testimony was extremely limited; he was not allowed "to explore [his] opinions regarding the defendant's mental health, his psychological profile, any mental health diagnoses or any other psychological testimony pertaining specifically to the defendant." Reply Exh. 1 at 4. Without an ability to testify regarding Keith Nelson's mental health and brain damage, Dr. Cunningham's testimony was of a generic nature that was not particularly compelling or effective. Moreover, there was no evidence presented at trial that was even remotely comparable to the evidence presented at the § 2255 hearing, which included the results of neuropsychological testing, neuroimaging, a detailed assessment of Mr. Nelson's birth complications and the effects of chronic exposure to trauma throughout his childhood, and an evaluation for major mental illness. The Government's suggestion that Dr. Cunningham's trial testimony might have somehow covered the evidence presented at the § 2255 hearing has absolutely no support in the record.

Reasonable jurists could disagree with the district court's conclusion that trial counsel's investigation and presentation of mitigating evidence was not deficient. This is especially so given that the central rationale of the district court's resolution of the claim – that trial counsel presented the same type of evidence that was presented at the § 2255 hearing – *is demonstrably false.* At the very least, Mr.

Nelson has demonstrated that this issue is adequate to deserve encouragement to proceed further.

### G. The district court's cumulativeness analysis was erroneous.

As the Supreme Court has made clear, a proper *Strickland* analysis requires that a court look at both the "new" evidence adduced at a post-conviction hearing, along with the evidence previously presented at the trial, to determine whether the *totality* of the evidence would have affected the outcome of the proceedings if it had been presented to the sentencing jury. *Williams (Terry) v. Taylor*, 529 U.S. 362, 397-98 (2000). The fact that some of the post-conviction evidence may be of the same type as what was presented at trial does not permit a court to simply discount the post-conviction evidence; rather, a court must also consider the *qualitative* differences between the trial evidence and the post-conviction evidence to determine whether trial counsel's failure to present that evidence was unreasonable. *See, e.g.*, *Outten v. Kearney*, 464 F.3d 401, 421 (3d Cir. 2006) ("Simply because some mitigating evidence regarding [petitioner's] abusive childhood was introduced to the jury… it does not follow that the jury was provided a comprehensive understanding of [petitioner's] abusive relationship with his father or other aspects of his troubled childhood.").

The district court's failure to conduct a fact-specific comparative review of the evidence and to inquire whether there was a reasonable probability that the

outcome of the sentencing would have been different based on the *totality* of the mitigation evidence was erroneous. Indeed, contrary to the approach adopted by other courts, the district court failed to inquire whether the totality of the evidence: (1) corrected or rebutted an assumption of which the jury was inaccurately led to believe during sentencing; (2) provided details of a period of the defendant's life referenced only in passing during the trial; or (3) demonstrated mitigating factors not present at trial or not known to the fact-finders. *See* Motion for COA at 118-119. The relevant legal question is not whether the new evidence is "of the same type or tenor" as the trial evidence, but whether the totality of the evidence provides the jury with a more comprehensive understanding of the defendant's background, human frailties, and moral culpability than the trial evidence alone.

Reasonable jurists could disagree with the district court's resolution of the claims. This is especially so because the district court failed to take into account the fact that the totality of the mitigation evidence: (1) rebutted the false assumption presented to the jury that Mr. Nelson suffered no mental impairments; (2) provided rich details of both the nature of the abuse and neglect that Mr. Nelson suffered, as well as the effect that his chronic exposure to trauma had on his emotional, social, and psychological development; and (3) established entire categories of mitigation – childhood sexual assault, brain damage, and mental illness – that were never presented at trial. The district court's holding that trial



Appellate Case: 15-3160 Page: 31 Date Filed: 08/18/2016 Entry ID: 4438934

counsel's performance was not deficient is thus debatable, and a COA is merited.

## IV. The district court's resolution of the ineffective assistance of trial and appellate counsel claims regarding the prosecutor's inflammatory and improper closing arguments is debatable by jurists of reason.

### A. Reasonable jurists could disagree with the district court's ruling that the improper remarks were mitigated by defense counsel's argument and the court's jury instructions.

The Government's improper comments in this case were not isolated or fleeting. *See* Motion for COA at 120-22) (cataloguing improper remarks in initial and rebuttal arguments). They permeated the entirety of the Government's closing, especially its closing rebuttal argument – the last word the jury heard on how it should reach the decision of whether Mr. Nelson should live or die. *See United States v. Johnson*, 968 F.2d 768, 771 (8th Cir. 1992) ("Prejudice sufficient to warrant reversal may result from the cumulative effect of repeated improper comments by the prosecutor."). Indeed, the district court, in its analysis, presumed that Mr. Nelson was prejudiced by the Government's arguments. 97 F. Supp. 3d at 1159.[5] It denied the claim, however, because it held that trial counsel mitigated the effects of the improper statements in his own argument, and that the jury was otherwise properly instructed. *Id*. at 1159-60. The district court's resolution of this claim is debatable by jurists of reason.

[5] Even the Government appears to at least partially concede that its arguments were improper: "some of these remarks may have been phrased colorfully, and a few straddle or cross the line of propriety." Gov't Resp. at 53.

In *Newlon v. Armontrout*, 885 F.2d 1328 (8th Cir. 1989), this Court described three factors that comprise the test for prejudice with respect to a claim of prosecutorial misconduct in closing argument: (1) whether the prosecutor attempted to cure his earlier misconduct; (2) whether defense counsel entered an objection, either contemporaneous with the prosecutor's argument or in defense counsel's own argument; and (3) whether the trial court *sua sponte* responded to the improper argument or later gave a curative instruction. 885 F.2d 1337. None of those things occurred at Mr. Nelson's sentencing hearing to cure the prejudice from the improper argument.

It was practically impossible for defense counsel to mitigate the effect of the prosecutor's argument because the bulk of these improper remarks were made during the prosecutor's closing rebuttal, *after* defense counsel had already given his closing. Moreover, as the Supreme Court itself has noted, there is an inherent imbalance in the way that jurors perceive prosecutors versus defense counsel; by virtue of their roles as public servants, the remarks of prosecutors "are apt to carry much weight against the accused when they should properly carry none." *Berger v. United States*, 295 U.S. 78, 88 (1935). Indeed, the prosecutor who made the bulk of the improper remarks in Mr. Nelson's case has been noted as an especially powerful orator, so it was even more unlikely defense counsel could erase the sting of his remarks with his own. *See United States v. Johnson*, 713 F.Supp.2d 595,



Appellate Case: 15-3160 Page: 33 Date Filed: 08/18/2016 Entry ID: 4438934

638 (E.D. La. 2010) (granting new penalty phase after improper arguments by the same prosecutor who delivered the closing rebuttal in Mr. Nelson's case and noting his skills as an orator).

Also, the jury in Mr. Nelson's case did not receive a *curative* instruction after the prosecutor's improper closing arguments; it merely received the standard general instruction that arguments by counsel do not constitute evidence. 97 F.Supp.3d at 1160. Such standard generic instructions are not sufficient to cure the error of improper comments like these. *Johnson*, 968 F.2d at 772 (*citing Newlon*, 885 F.2d at 1337).

The pervasiveness of the Government's misconduct and the absence of any curative action by defense counsel or the district court raise the reasonable probability that at least one juror might have weighed the case differently but for the prosecutor's improper and inflammatory remarks. At the very least, the issue is debatable by jurors of reason.

### B. The district court relied on inapposite caselaw to resolve the claim.

The district court relied on caselaw which has little relevance when determining the effect of improper argument in the *penalty phase* of a capital trial. *Kennedy v. Kemna*, 666 F.3d 472 (8th Cir. 2012), *James v. Bowersox*, 187 F.3d 886, 869 (8th Cir. 1999), and *Evans v. King*, No. 10-4045 (SRN/SER), 2012 WL 4128682 (D. Minn. July 30, 2012), all dealt with the prejudicial effect of improper

argument when that argument was delivered in the *guilt phase*. *Kemna*, 666 F.3d at 481, *Evans,* 2012 WL at **17; *James*, 187 F.3d at 870. Similarly, every single prosecutorial misconduct case cited by the Government involved whether the *conviction* should be overturned based upon improper arguments. When evidence of guilt is overwhelming, most prosecutorial remarks will not be so prejudicial that they have a reasonable probability of affecting the verdict. However, when the question is whether the remarks created a reasonable probability of improper influence upon the decision to impose death, the remarks cannot be so easily dismissed by simply relying on the strength of the evidence of guilt. *See Weaver v. Bowersox*, 438 F.3d 832 (8th Cir. 2006) (noting that improper "send a message" arguments are particularly prejudicial when made in the penalty phase of a capital case because they violate the defendant's Eighth Amendment right to an individualized sentencing determination).

In addition, *Kemna*, *Evans* and *James* were all decided under the deferential lens of the AEDPA and the limits on relief for state habeas cases in 28 U.S.C. § 2254. *Kemna*, 666 F.3d at 476 (noting the case was governed by the AEDPA provisions of § 2254); *Bowersox*, 187 F.3d at 869 ("AEDPA mandates a deferential review of state court decisions."); *Evans*, 2012 WL at *2 (noting that case was governed by § 2254). Given that the bulk of the improper arguments in Mr. Nelson's case were delivered by a federal prosecutor who specializes in capital



Appellate Case: 15-3160 Page: 35 Date Filed: 08/18/2016 Entry ID: 4438934

trials, the federal bench owes no such double deference and has an independent duty to ensure that federal capital trials are conducted fairly. This is especially true given the noted tendency of this very prosecutor to cross the line and to do so in a highly effective, and thus prejudicial, manner. *See* Motion for COA at 124-125 (*citing Johnson*, 713 F.Supp.2d 595, 630-38 (granting new penalty phase after improper arguments by the same prosecutor who delivered the closing rebuttal in Mr. Nelson's case)). The district court's reliance on inapposite caselaw further makes its resolution of the claim debatable by jurists of reason.

### C. The Government failed to address the debatability of the district court's resolution of the claim.

The Government appears to argue that the standard of review for this issue is plain error. Gov't Resp. at 53. This is simply wrong. The only issue at this stage is whether the district court's resolution of the claim is debatable by jurists of reason; the Government has not even attempted to argue that Mr. Nelson has not met this very low standard for the issuance of a COA.

Even as to the substantive underlying claim, however, the Government is incorrect; ineffective assistance of counsel claims are governed by the *Strickland* standard, not plain error review. Moreover, jurists of reason could conclude that trial counsel's failure to object to the improper remarks was objectively unreasonable, especially in the context of the trial record, which reflects a reasonable probability that the district court would have sustained any such

objections.

At one point during closing, in characterizing the mitigation the defense attorneys presented as a “guilt trip,” the prosecutor stated “[y]ou’re not killing anybody. You’re making a recommendation of the death penalty.” Exh. 2 to Reply (TR 11/28/01) at 1125. Defense counsel objected to this attempt to diminish the jury’s sense of responsibility for the death sentence by characterizing it in this manner. *Id.* The court agreed, sustained the objection, and asked the prosecutor to restate his comments so as to not give the impression to the jury that they were not actually responsible for the death sentence. *Id.* at 1126. The prosecutor, however, ignored the court’s admonition and *again told the jury*: “You’re not killing anybody. The United States government will be the entity responsible for putting the defendant to death.” *Id.* at 1127. Instead of waiting for defense counsel to object, the court itself asked counsel to approach the bench and admonished the prosecutor:

> I don’t think you’ve gone far enough, Mr. Whitworth.[6] I think the instructions tell them that they are imposing the death penalty, and you can’t say it any different from that. And I think you have. Now, I mean, you can correct it or I’ll correct it.

*Id.*

With this exchange, the court signaled to defense counsel that he understood

[6]The prosecutor who delivered the initial closing arguments was Mr. Whitworth. The rebuttal closing was delivered by Mr. Miller. *Id.* at 1154 (indicating Mr. Miller presented the Government’s closing rebuttal).

this prosecutor was willing to overstep the bounds of proper argument and that he would take heed of a proper objection. This is why it is even more puzzling that defense counsel remained silent when time after time, the prosecutor crossed the line when arguing for death. Defense counsel agreed this failure was not at all strategic. Exh. 4 to COA (TR 4/14/14) at 243; Exh. 3 to Reply (TR 4/14/14) at 241. Thus, but for trial counsel's deficiency, there is a reasonable probability that the prosecutor would have been precluded from making the improper remarks in the first place.

### D. Appellate counsel was similarly ineffective for failing to raise the issue of improper prosecutorial argument.

The Government asserted, without citation to the record, that appellate counsel strategically chose to not raise issues regarding improper prosecutorial argument. Gov't Resp. at 5. This is an incorrect statement of appellate counsel's testimony and at odds with the district court's finding below. Appellate counsel agreed the prosecution's closing argument was improper in several different respects and that this was a significant and obvious issue which was stronger than some of those actually raised in the brief. Exh. 4 to Motion for COA (TR 4/14/14) at 118-19, 123-26. Appellate counsel testified that she did not make a strategic choice to omit these issues and agreed they should have been raised on appeal. *Id.* at 126. The district court specifically credited this testimony. 97 F. Supp. 3d at 1162.



Appellate Case: 15-3160 Page: 38 Date Filed: 08/18/2016 Entry ID: 4438934

The district court denied this claim, however, because it held that the underlying appellate claim regarding improper closing arguments would have been "meritless." *Id.* The district court's own order, however, makes this resolution of the claim debatable: earlier in the order, the district court conceded that given the inflammatory nature of the prosecutor's remarks, prejudice against Mr. Nelson should be *presumed*. *Id*. at 1159. If the comments could be presumed to be prejudicial, then an appellate issue based on those comments cannot be considered meritless.

To the extent that the district court's assessment of merit was based on its finding that defense counsel's argument and the court's instructions mitigated the impact of the improper arguments, that does not make Mr. Nelson's claim here any less debatable by jurists of reason. As noted above, the bulk of the improper comments came in the Government's rebuttal, making it impossible for defense counsel to tailor his argument to cure the taint of the prosecutor's powerful, but improper, messages to the jury. Additionally, the district court issued a generic standard instruction, not one designed to cure the error of the prosecutor's remarks.

Given the favorable case law that was available to appellate counsel at the time of Mr. Nelson's direct appeal, *see* Motion for COA at 123 (collecting cases), as well as appellate counsel's concession that the failure to raise this issue was not strategic, there is a reasonable probability that Mr. Nelson could have prevailed on



Appellate Case: 15-3160 Page: 39 Date Filed: 08/18/2016 Entry ID: 4438934

appeal if counsel had properly raised the issue. At the very least, jurists of reason could disagree with the district court summarily concluding that such an appeal would be "meritless."

### E. Trial counsel's failures in the mitigation presentation must be considered cumulatively with his failure to object to improper prosecutorial argument

Each error of counsel should not be considered in a vacuum; the effect of counsel's failure to properly object and prevent further prejudicial prosecutorial remarks must be considered cumulatively with the failure to investigate and present mitigation. It is the sum total of the effect of counsel's errors that *Strickland* is concerned with. *See Strickland*, 466 U.S. at 687, 693, 694 (noting it is the effect of counsel's errors, plural, on a verdict that determine prejudice); *see also Sanders v. Ryder*, 342 F.3d 991, 1001 (9th Cir. 2003) ("[s]eparate errors by counsel at trial and sentencing should be analyzed together to see whether their cumulative effect deprived the defendant of his right to effective assistance"). Because counsel failed to fully investigate his client's background and mental health in an effort to humanize his client and rebut the Government's case, the jury was left with a skewed picture which was only exacerbated by the prosecutor's inflammatory arguments in this case. When considered cumulatively, it is clear that but for the totality of trial counsel's errors, there is a reasonable probability that at least one juror might have struck a different balance in Mr. Nelson's case.

At the very least, jurists of reason could find debatable that the outcome of the proceeding might have been different if trial counsel had presented all the readily available mitigation evidence – including evidence of organic brain damage, mental illness, chronic exposure to trauma such as being raped as a child – to a jury whose judgment was not improperly influenced by repeated inflammatory remarks in closing.

**Conclusion**

The Government has erroneously argued that a COA should not issue on Mr. Nelson's remanded claims because he cannot ultimately prevail on the merits. That is not the standard that Mr. Nelson must meet in order for a COA to issue; in fact, the COA statute forbids this Court from reviewing the merits at this stage. Mr. Nelson need only demonstrate that the district court's resolution of his claims is debatable by jurists of reason and that the issues deserve encouragement to proceed further. Given the numerous flaws in the district court's application of *Strickland* to his remanded claims, the low threshold for the issuance of a COA has been met. Accordingly, appellate review on the merits is warranted and this Court should grant a COA on all six of the previously remanded claims of ineffective assistance of trial and appellate counsel.



Appellate Case: 15-3160 Page: 41 Date Filed: 08/18/2016 Entry ID: 4438934

Respectfully submitted this 18th day of August, 2016.


*/s/Paula K. Harms*
Jon M. Sands
Federal Public Defender
Paula K. Harms
Assistant Federal Public Defender
Capital Habeas Unit
850 W. Adams Suite 201
Phoenix, Arizona 85007
602-382-2816 telephone
602-889-3960 facsimile

*/s/ David A. Ruhnke*
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
973-744-1000 telephone
973-746-1490 facsimile
dr@ruhnkeandbarrett.com

**CERTIFICATE OF SERVICE**

This will certify that, on today's date, August 18, 2016, Appellant's counsel served this reply upon the United States by filing the documents via this Court's ECF system.

By Robin Stoltze
Assistant Paralegal
Capital Habeas Unit



Appellate Case: 15-3160 Page: 43 Date Filed: 08/18/2016 Entry ID: 4438934