No. 15-3160

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

Keith D. Nelson,

Appellant,

vs.

United States of America,

Appellees.

On Appeal from the United States District Court
for the Western District of Missouri
Case No. 4:04-8005-cv-W (FJG)

# APPELLANT'S PETITION FOR REHEARING/REHEARING *EN BANC*

**TABLE OF CONTENTS**


Table of Authorities .................... ii

Statement pursuant to FRAP 35(b)(1) .................... 1

I. Background.................... 1

II. The panel's decision contravened *Miller-El v. Cockrell*.................... 8

III. The panel's decision is in conflict with decisions of this Court and the Courts of Appeals .................... 9

Conclusion .................... 15

Certificate of Compliance .................... 17

Certificate of Service .................... 18

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Barefoot v. Estelle*, 463 U.S. 880 (1983) .................................................................. 15
*Bucklew v. Luebbers*, 436 F.3d 1010 (8th Cir. 2006) ............................................ 14
*Forrest v. Steele*, 764 F.3d 848 (8th Cir. 2014) ............................................. 12, 13
*Gomez v. Quarterman*, 529 F.3d 322 (5th Cir. 2008) ........................................... 15
*Holder v. United States*, 721 F.3d 979 (8th Cir. 2013) ......................................... 10
*Johnston v. Luebbers*, 288 F.3d 1048 (8th Cir. 2002) ........................................... 13
*Jones v. Delo*, 258 F.3d 893 (8th Cir. 2001) ......................................................... 11
*Kenley v. Armontrout*, 937 F.2d 1298 (8th Cir. 1991) ............................................. 5
*Kenley v. Bowersox*, 275 F.3d 709 (8th Cir. 2002) ................................................ 12
*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ................................................ 1, 2, 8, 9
*Nelson v. United States*, 97 F. Supp. 3d 1131 (W.D. Mo. 2015) ........................ 4, 6
*Nelson v. United States*, 297 F. App'x 563 (8th Cir. 2008) ..................................... 3
*Porter v. McCollum*, 558 U.S. 30 (2009) ................................................................... 5
*Ringo v. Roper*, 472 F.3d 1001 (8th Cir. 2007) .............................................. 11, 12
*Sears v. Upton*, 130 S. Ct. 3259 (2010) .............................................................. 6-7
*Sinisterra v. United States*, 600 F.3d 900 (8th Cir. 2010) ............................... 10, 11
*Tennard v. Dretke*, 542 U.S. 274 (2004) ................................................................... 6
*United States v. Barrett*, 797 F.3d 1207 (10th Cir. 2015) ...................................... 5
*Walbey v. Quarterman*, 309 F. App'x 795 (5th Cir. 2009) ...................................... 5
*Wooten v. Norris*, 578 F.3d 767 (8th Cir. 2009) .................................................... 14

### FEDERAL STATUTES

28 U.S.C. § 2255 ........................................................................................... *passim*

### STATE CASES

*State v. Johnston*, 957 S.W.2d 734 (Mo. 1997) ..................................................... 13
*State v. Kenley*, 693 S.W.2d 79 (Mo. 1985) ........................................................... 12



Appellate Case: 15-3160 Page: 3 Date Filed: 12/15/2016 Entry ID: 4480086

**STATEMENT PURSUANT TO FRAP 35(B)(1)**

The panel decision, denying a Certificate of Appealability ("COA") in this federal capital case, filed pursuant to 28 U.S.C. § 2255, conflicts with the Supreme Court's decision in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), which establishes a low bar for the issuance of a COA and prohibits merits review for claims upon which a COA is sought.[1]

This petition also presents a question of exceptional importance because it involves an issue on which the panel decision conflicts with the approach of this Court and other United States Courts of Appeals in capital cases where COAs have been granted in similar factual and legal circumstances. *See* Section III, *infra*. Review is necessary to maintain uniformity of this Court's decisions on the important question of when a COA should issue in capital habeas cases.

## I. BACKGROUND

Keith Nelson was sentenced to death in the Western District of Missouri for interstate kidnapping resulting in death. Eight months prior to trial, Nelson received substitute counsel (Patrick Berrigan) who was responsible for

[1] A similar question is pending before the Supreme Court in *Buck v. Davis*, No. 15-8049, which raises the issue of whether the Fifth Circuit, in a capital case, imposed an improper and unduly burdensome COA standard that contravenes Supreme Court precedent.

investigating mitigating evidence for the penalty phase. Exhibit ("Exh.") 4 at 50, 181-82.[2] Berrigan devoted little time to Nelson's case. *Id*. at 191. Between his appointment and the trial, he spent six weeks trying a capital case in Kansas; traveled the country in preparation of a complex medical malpractice case that settled on the eve of Nelson's trial; handled Supreme Court litigation in two capital cases where his clients were under warrant and facing execution; underwent quintuple bypass surgery weeks before Nelson's trial; accepted an appointment in another challenging death penalty case in Kansas; and was actively engaged as lead counsel in another pending federal capital case that eventually resulted in a death sentence – later set aside on a § 2255 challenge on a finding that Berrigan had rendered ineffective assistance in part because he devoted too little time to preparation.[3] *Id*. at 181, 183-87, 207, 233).

Predecessor counsel left Berrigan a memorandum regarding "red flags" to investigate, including that Nelson may have been sexually abused as a child and that he might suffer from organic brain damage and mental illness. Exh. 21. Despite this roadmap, Berrigan failed to request a continuance to complete the necessary mitigation investigation; nor did he avail himself of investigative

---

[2]All "Exh" citations are to exhibits to Nelson's Application for COA, filed on 2/29/16.

[3]*See Johnson v. United States*, 860 F. Supp. 2nd 663, 884 (N.D. Iowa 2012).



Appellate Case: 15-3160 Page: 5 Date Filed: 12/15/2016 Entry ID: 4480086

resources previously ordered by the court. Exh. 4 at 196-97; Exh 11; Exh 13 at 205-06. For example, the court authorized funds for a neuropsychologist to evaluate Nelson, but after filing his appearance, Berrigan canceled the already-scheduled examination and never re-scheduled it. Exh. 4 at 196-97.

Berrigan proceeded to trial without having conducted the investigation and preparation required by the Sixth Amendment. Although Nelson's §2255 motion detailing his counsel's myriad ineffectiveness was originally denied without an evidentiary hearing by the district court in a two-page order, a panel of this Court granted Nelson's request for a COA and, without any request for merits briefing, remanded his case to the district court for an evidentiary hearing on six ineffective assistance of counsel ("IAC") claims principally concerning trial counsel's failure to investigate and present mitigating evidence. *Nelson v. United States*, 297 Fed. Appx. 563 (8th Cir. 2008).

On remand, Nelson presented unrebutted evidence:

1. He was sexually abused as a child and this negatively affected his emotional, psychological and social development. Exh. 44 at 15-16.

2. He suffered from organic brain damage. Neuropsychological testing – including that of the Government's expert – placed Nelson's executive functioning (which is responsible for planning, decision-making, and impulse control) in the bottom percentile of the population. Similarly, neuroimaging evidence (MRI and PET scan) corroborated damage to the frontal lobes (responsible for executive functioning) as well as parts of the brain that regulate impulsivity and sexual appetites. Exh. 7 at 673-74, 678-



Appellate Case: 15-3160 Page: 6 Date Filed: 12/15/2016 Entry ID: 4480086

81; Exh. 34; Exh. 6 at 560-66, 577, 583-84. The Government's expert conceded this would be mitigating as to penalty. Exh. 7 at 657-58.

3. He suffered from mental illness, including psychosis, and impaired psychological functioning due to chronic exposure to trauma from years of abuse and neglect at the hands of his caretakers and others to whom he was exposed while housed in juvenile detention facilities. Exh. 39 at 2; Exh. 44 at 8-14, 16-17, 24-25.

4. The paternal side of his family was rife with mental health issues, substance abuse, and physical and emotional abuse. Exh. 29 at 5-12.

The district court denied the §2255 motion, despite finding that counsel's performance was constitutionally deficient for failing to investigate Nelson's mental impairments. *Nelson v. United States*, 97 F.Supp.3d 1131, 1149 (W.D. Mo. 2015). The district court held that given the facts of the crime, involving the murder of a minor, "no amount of mental health evidence or testimony relating to brain damage and a difficult upbringing" could legally satisfy the *Strickland* prejudice standard. *Id.* at 1157. With respect to counsel's failure to investigate and present other mitigating evidence, the district court held counsel's performance was not deficient because the postconviction evidence was duplicative of the trial evidence. *Id.* at 1144. The district court denied a COA on all claims.

Nelson's COA application to this Court noted that the district court's *Strickland* analysis was fundamentally flawed and identified numerous reasons that the resolution of his claims was "debatable by jurists of reasons," including:



Appellate Case: 15-3160 Page: 7 Date Filed: 12/15/2016 Entry ID: 4480086

1. The district court ruled it would be impossible for Nelson to proffer sufficient mitigation to outweigh the aggravating evidence because "no amount" of mitigation could ever satisfy the test for *Strickland* prejudice given the facts of the crime. But established caselaw[4] and empirical evidence in federal capital cases[5] rebut the underlying premise of the district court's prejudice analysis – that some crimes automatically preclude a finding of *Strickland* prejudice. Mental health evidence in particular is a unique category of mitigation evidence because it can often help a jury "put the aggravating evidence in context."[6] Given that "evidence of mental impairments is exactly the sort of evidence that garners the most sympathy from jurors, and … this is especially true of evidence of organic brain damage,"[7] the district court's contrary holding – that *no amount* of such evidence would make a difference to the *Strickland* prejudice inquiry – is plainly debatable by jurists of reason.

2. The district court violated, *Porter v. McCollum*, 558 U.S. 30 (2009) (*per curiam*), which held that under proper *Strickland* prejudice analysis, a district court cannot simply credit the conclusion of the prosecution's

---

[4]*See Walbey v. Quarterman*, 309 Fed. Appx. 795, 804 (5th Cr. 2009) (rejecting "'The State's stereotypical fall-back argument–that the heinous and egregious nature of the crime would have ensured assessment of the death penalty even absent [the error]–cannot carry the day here. . . . [O]ur decades of experience with scores of § 2254 cases from the death row of Texas teach an obvious lesson that is frequently overlooked: Almost without exception, the cases we see in which conviction of a capital crime has produced a death sentence arise from extremely egregious, heinous, and shocking facts. But, if that were all that is required to offset prejudicial legal error and convert it to harmless error, habeas relief based on evidentiary error in the punishment phase would virtually never be available, so testing for it would amount to a hollow judicial act.'") (citation omitted).

[5]Nelson's COA cited seventeen different federal capital cases where juries returned life verdicts, despite the fact that the relevant crimes were equal to or more aggravated than Nelson's. *See* attached Appendix A.

[6]*Kenley v. Armontrout*, 937 F.2d 1298, 1307-08 (8th Cir. 1991).

[7]*United States v. Barrett*, 797 F.3d 1207, 1231 (10th Cir. 2015) (internal citations and quotation marks omitted).



Appellate Case: 15-3160 Page: 8 Date Filed: 12/15/2016 Entry ID: 4480086

experts and "discount entirely" the impact the testimony of the defense experts might have had on the jury. The district court focused almost exclusively on the opinion of the Government expert, who downplayed the significance of Nelson's mental impairments on his behavior (while conceding the evidence would be mitigating as to punishment), and discounted entirely the balance of the evidence presented at the hearing from five other experts that established the "convergent validity" (the phrase employed by the Government's expert) of the evidence of Nelson's impairments. – i.e., all of the neuropsychological testing, brain imaging, medical records and social history information came to the same conclusion: Nelson has pronounced damage to the area of the brain responsible for planning, decision-making, impulsivity and regulation of behavior. Exh. 7 at 673-74.

3. The district court improperly imposed a "nexus requirement" on the mental health mitigation. *See* 97 F. Supp. 3d at 1146-47, 1156 (assessing such evidence based on whether it "explained why [Nelson] acted as he did," "played a role in him committing the crime," or otherwise provided a rationale for Nelson's criminal conduct). The Supreme Court has held that a capital defendant need not "establish a nexus between her mental capacity and her crime," and imposing any such "nexus requirement" in the context of a *Strickland* prejudice inquiry violates the Eighth Amendment. *Tennard v. Dretke*, 542 U.S. 274, 287 (2004).

4. The district court committed clearly erroneous factual errors in finding that the evidence presented at the § 2255 hearing was duplicative of the trial evidence. The record is clear that the jury heard no evidence about Nelson's rape as a child, organic brain damage, mental illness, or the social history of the paternal side of his family.

5. The district court engaged in an improper, truncated prejudice analysis: it concluded (incorrectly) that the § 2255 evidence was cumulative to the trial evidence, and then reasoned backward from that conclusion that trial counsel could not be deemed deficient in such circumstances. This flawed approach resulted in the court failing to conduct the mandated *Strickland* inquiry into whether trial counsel's omissions were objectively reasonable, and also contravened the holding in *Sears v. Upton*, 130 S. Ct. 3259, 3266 (2010) (*per curiam*) ("We have certainly never held that



Appellate Case: 15-3160 Page: 9 Date Filed: 12/15/2016 Entry ID: 4480086

counsel's effort to present *some* mitigation evidence should foreclose an inquiry into whether a facially deficient mitigation investigation might have prejudiced the defendant.") (emphasis added).

6. The district court, in violation of *Williams (Terry) v. Taylor*, 529 U.S. 362, 397-98 (2000), failed to assess whether the *totality* of the evidence adduced at the evidentiary hearing and the trial would have affected the outcome of the proceedings if it had been presented to the sentencing jury. Instead, the district court *subtracted* evidence that it deemed cumulative in its prejudice analysis. In so doing, it also failed to consider that the totality of the mitigation evidence: (1) rebutted the false assumption presented to the jury that Nelson suffered no mental impairments; (2) provided rich details of both the nature of the abuse and neglect that Nelson suffered, as well as the effect that his chronic exposure to trauma had on his emotional, social, and psychological development; and (3) established entire categories of mitigation – sexual assault, brain damage, and mental illness – that were never presented at trial.

A panel of this Court denied Nelson's COA application in a three-sentence order, stating in pertinent part: "The court has carefully reviewed the original file of the district court, and the application for a certificate of appealability is denied." *See* Appendix B. The order neither addressed the enumerated reasons that reasonable jurists could disagree with the district court's resolution of the claims, nor did it offer any legal analysis or explanation articulating why Nelson failed to meet the low threshold necessary for issuance of a COA.

Nelson respectfully submits this Petition for Rehearing and Rehearing En Banc should be granted because the panel's decision contravenes Supreme Court jurisprudence regarding the proper adjudication of a COA application, and



Appellate Case: 15-3160 Page: 10 Date Filed: 12/15/2016 Entry ID: 4480086

conflicts with other decisions of this Circuit, and other Courts of Appeals, which have granted COAs in other capital cases on comparable claims. Rehearing is necessary to maintain uniformity of this Court's decisions on the proper standard for determining whether to grant appellate review in capital habeas cases.

## II. THE PANEL'S DECISION CONTRAVENED *MILLER-EL V. COCKRELL*

The threshold COA inquiry is not a merits review of the underlying claims. For that reason, the standard for obtaining a COA is low – Nelson need only show "jurists of reason could disagree with the district court's resolution" of the claims, or that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

In determining whether an issue is debatable, the court is forbidden from conducting merits review. But that appears to be what happened here. The order denying the COA states the panel "carefully reviewed the original file of the district court." Which suggests it fully considered the factual and legal bases adduced in support of Nelson's claim. The panel's approach to the COA inquiry thus contravened the dictates of *Miller-El*: "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." 537 U.S. at 336. To the extent that the panel's decision to deny the COA was based on its assessment that Nelson was unlikely to succeed

on appeal – as informed by its careful review" of the "original file of the district court" – that also contravened *Miller-El*: "[A] COA does not require a showing that the appeal will succeed." *Id.* at 337.

The only issue before the Court at this stage is whether Nelson's sentence of death deserves appellate review. That threshold inquiry merely involves determining whether reasonable jurists might disagree with, or find debatable, the district court's resolution of his IAC claims. The panel failed to apply this low standard for appellate review; instead it engaged in a premature and improper merits review. Rehearing is warranted to ensure that the COA inquiry is properly conducted in accordance with the Supreme Court's dictates.

## III. THE PANEL'S DECISION IS IN CONFLICT WITH DECISIONS OF THIS COURT AND THE COURTS OF APPEALS

When reviewing COA applications, this Court has been mindful not to conflate the question of whether a case presents issues that are "debateable" with whether the issues are likely to succeed on appeal. "Debatability" is an intentionally low standard; the COA inquiry is not intended to "weed out" cases that appear to have been properly denied on the merits by districts courts. Indeed, capital habeas petitioners in this Circuit have received COAs on similar – yet demonstrably weaker – IAC claims than Nelson's, even where there was ample



Appellate Case: 15-3160 Page: 12 Date Filed: 12/15/2016 Entry ID: 4480086

reason to believe success on appeal was unlikely. For example:[8]

- In *Holder v. United States*, 721 F.3d 979 (8th Cir. 2014), a COA was granted on a claim that counsel was ineffective for failing to hire a trauma expert to opine on the defendant's brain damage, even though counsel already had his client examined by two qualified psychologists who found no evidence of brain damage. *Id*. at 984-85, 995. The debatability of Nelson's IAC – that counsel unreasonably failed to retain any expert – is clearly stronger than one alleging that counsel unreasonably failed to hire a *third* expert after already getting the opinion of two others.
- In *Sinisterra v. United States*, 600 F.3d 900 (8th Cir. 2010), a COA was granted on claim that counsel failed to present mental health mitigation, even though the record established counsel had retained a psychiatrist who evaluated the defendant pre-trial and told him the defendant had no mental

[8]Most of the following are state habeas cases, where prisoners are afforded a lawyer of appellate review in state court before entering federal court. Nelson's cases is wholly federal; absent a COA, the denial of his § 2255 claims will never receive any form of appellate review. This fact implicates this Court's oversight duty to ensure that federal capital defendants in this Circuit receive the effective assistance of trial counsel. Section 2255 is the only remedy available to federal prisoners who have been denied their Sixth Amendment right to effective counsel, so it is imperative that review of IAC claims is robust – including the opportunity for appellate review of a district court's erroneous resolution of such claims.



Appellate Case: 15-3160 Page: 13 Date Filed: 12/15/2016 Entry ID: 4480086

problems. *Id*. at 905-08.[9] By contrast, Nelson's counsel testified that his omission was not strategic, he simply failed to reschedule the relevant evaluation. Exh. 4 at 199-200.

- In *Jones v. Delo*, 258 F.3d 893 (8th Cir. 2001), a COA was granted on a claim regarding failure to present evidence of organic brain damage, that was substantially weaker than Nelson's; unlike Nelson, who was born with a compromised brain and suffered life-long damage,[10] the *Jones* petitioner had a head injury whose effects resolved themselves after about 18 months. *Id*. at 897-98.

- In *Ringo v. Roper*, 472 F.3d 1001 (8th Cir. 2007), a COA was granted on the claim that counsel unreasonably failed to pursue a neuropsychologist's "mild" suggestion that the defendant be evaluated by a clinical psychologist for possible PTSD. *Id*. at 1003, 1006. Nelson's IAC claim is at least as worthy of review, given that his counsel failed to to

---

[9]In *Sinisterra*, a COA was also granted on an IAC claim regarding failure to object to the prosecutor's "send a message" arguments in closing. *Id*. at 906, 910-911. This same claim is at issue in Nelson's case; there is no principled reason why he was denied a COA on it, especially given that this Court specifically found in *Sinisterra* that extant precedent at the time of the trial (which was prior to Nelson's trial) would have placed a reasonably competent attorney on notice that "send a message" arguments were improper. *Id*. at 911.

[10]Exh. 6 at 519-20; Exh. 5 at 434-35.



Appellate Case: 15-3160 Page: 14 Date Filed: 12/15/2016 Entry ID: 4480086

pursue any investigation of brain damage, despite having been authorized funds by the court to do so. And unlike the *Ringo* case, where the postconviction evidence of PTSD was contested, *id.* at 1006, every expert at Nelson's hearing – including the Government's – agreed Nelson had brain damage.

- In *Kenley v. Bowersox*, 275 F.3d 709 (8th Cir. 2002), a COA was granted[11] on a claim that counsel failed to present evidence of organic brain damage, despite the fact that the record established that counsel's omission was strategic because "additional testing might have confirmed the conclusions of the state's expert or might even have provided other more damaging evidence." *Id.* at 713. By contrast, Nelson's counsel simply "dropp[ed] the ball" in hiring a neuropsychologist, and every expert's testing-including the Government's-established that Nelson had brain damage. Exh. 4 at 199-200; Exh. 7 at 673-74.

- In *Forrest v. Steele*, 764 F.3d 848 (8th Cir. 2014), a COA was

[11]COA was granted despite the egregiousness of the defendant's conduct; in the course of 90 minutes, the petitioner murdered one person, attempted to shoot and kill seven others, and kidnapped and tried to rape two women. *State v. Kenley*, 693 S.W.2d 79, 80-81 (Mo. 1985).

granted[12] on a claim about counsel's failure to conduct a PET scan to bolster evidence of brain damage. This issue was deemed "debatable" even though such evidence was clearly cumulative: three mental health experts testified at the original trial, including a neuropsychologist who testified that the defendant was brain damaged. *Id.* at 850-52. Moreover, trial counsel testified he had a strategic reason for not obtaining a PET scan; state law prevented him from moving *ex parte* to have the test conducted. *Id.* at 854-55.

- In *Johnston v. Luebbers*, 288 F.3d 1048 (8th Cir. 2002), a COA was granted[13] on a claim that counsel unreasonably failed to present mental health testimony, even though the record established that the omission was strategic: counsel consulted with experts, but chose not to present their testimony because of inconsistencies in their reports and the potential to open the door to other unfavorable information about the defendant. *Id.* at

---

[12]COA was granted even though the crime was a triple murder, including the killing of a Sheriff's deputy. *Id.* at 850.

[13]COA was granted despite the murder being gruesome. The petitioner beat his wife until her heart and lungs collapsed. *State v. Johnston*, 957 S.W.2d 734, 740 (Mo. 1997). The victim's blood and hair was stuck to his steel-toed motorcycle boot after kicking her like he was kicking a football, and stomping on her as if he were trying to flatten a tin can. *Id.* at 739-40. The jury included torture as one of the reasons for the death penalty. *Id.* at 741.



Appellate Case: 15-3160 Page: 16 Date Filed: 12/15/2016 Entry ID: 4480086

1054-55.

- In *Bucklew v. Luebbers*, 436 F.3d 1010 (8th Cir. 2006), a COA was granted[14] on a claim that it was unreasonable for counsel to summarize his neuropsychologist's findings through a different testifying expert, rather than call the neuropsychologist himself to the stand. Appellate review was granted despite the fact that counsel provided a strategic reason for is decision: putting the neuropsychologist on the stand might have opened the door to damaging evidence about the client's personality characteristics. *Id.* at 1019. By contrast, not only was no mental health evaluation presented at Nelson's trial, his counsel conceded he had no strategic reason for this omission.

- In *Wooten v. Norris*, 578 F.3d 767 (8th Cir. 2009), a COA was granted on a claim regarding failure to present evidence of organic brain damage, even though the claim was procedurally barred.[15] Nelson seeks appellate review of an identical IAC claim; there is no principled reason why his claim is less deserving of a COA than one where success on appeal was

---

[14]COA was granted even though the crime was heinous: the defendant fired at a six year-old child but missed, killed his father right in front of him, and took a woman hostage and raped her. *Id*. at 1013-15.

[15]The claim was unexhausted, so this Court held that it as "a case for which the federal courts can provide no relief." 578 F.3d at 785.

foreclosed by a procedural bar.

The panel's failure to grant a COA on Nelson's IAC claims is not only inconsistent with this Court's orders in other cases, it conflicts with the approach of every other Court of Appeals. As the attached table indicates, Appendix C, other Circuits routinely grant COAs on IAC claims comparable to those raised by Nelson. Given the factual and legal similarity of the issues, the frequency with which other Courts grant COA on such claims demonstrates that Nelson's claims are clearly debatable by jurists of reason and worthy of appellate review.

The issuance of COAs in these cases also illustrates the Supreme Court's directive that "in a capital case, the nature of the penalty is a proper consideration" in deciding to issue a COA. *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983); *see also Gomez v. Quarterman*, 529 F.3d 322, 326 (5th Cir. 2008) ("In death penalty cases, any doubts as to whether the COA should issue are resolved in favor of the petitioner."). Similarly, Nelson urges rehearing of his COA application, and doubts about whether the COA should issue should be resolved in his favor because he is a capital petitioner whose IAC claims concern his death sentence.

## CONCLUSION

This case should be reheard *en banc* on the question of whether it was proper to deny a COA in this capital case, filed pursuant to 28 U.S.C. § 2255.

Respectfully submitted this 15th day of December, 2016.


*/s/Paula K. Harms*
Jon M. Sands
Federal Public Defender
Paula K. Harms
Assistant Federal Public Defender
Capital Habeas Unit
850 W. Adams Suite 201
Phoenix, Arizona 85007
602-382-2816 telephone
602-889-3960 facsimile

*/s/ David A. Ruhnke*
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
973-744-1000 telephone
973-746-1490 facsimile
dr@ruhnkeandbarrett.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1. This document complies with the word limit of Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,895 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 (version 14.0.7173.5000) in 14-point font size and Times New Roman type style.

Dated: December 15, 2016

By */s/Paula K. Harms*
Attorney for Keith Nelson



Appellate Case: 15-3160 Page: 20 Date Filed: 12/15/2016 Entry ID: 4480086

**CERTIFICATE OF SERVICE**

I hereby certify that on, December 15, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

By Robin Stoltze
Legal Assistant
Capital Habeas Unit



Appellate Case: 15-3160 Page: 21 Date Filed: 12/15/2016 Entry ID: 4480086