IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| Keith Nelson,<br>Appellant,<br><br>v.<br><br>United States of America,<br>Appellees. | No. 15-3160<br>Civil No. 4:04-8005-cv-W (FJG)<br><br>**UNOPPOSED MOTION TO HOLD APPEAL IN ABEYANCE**<br><br>**Death-Penalty Case** |

---

Keith Nelson, by and through counsel, respectfully requests that this Court hold this case in abeyance until the United States Supreme Court proceedings conclude in *Buck v. Davis*, No. 15-8049 (2016).[1] The issue presented in *Buck* – whether the circuit court imposed an improper and unduly burdensome Certificate of Appealability ("COA") standard that precluded merits review of a claim that trial counsel was constitutionally ineffective – is the same as the issue presented in Mr. Nelson's Petition for Rehearing and Rehearing *En Banc* (hereafter "Petition"). *See* Docket Entry ID: 4480086 (filed 12/15/16). Because the dispositive issue is identical, the decision in *Buck* will likely provide guidance to this Court in deciding Nelson's Petition and, if decided in Nelson's favor, may require this Court to rehear his case. To avoid the possibility of a grant-vacate-remand order,

[1]Oral argument in *Buck* was heard on October 5, 2016.

and in the interests of judicial economy, Nelson respectfully requests that this Court hold his appeal in abeyance pending the decision in *Buck.* Undersigned counsel has conferred with counsel for the United States, and the Appellees are in agreement that abeyance is appropriate and do not oppose this motion.[2]

Nelson's Petition asks for rehearing on the basis that the district court and panel applied an improper COA standard that was contrary to settled law on the low bar for the issuance of a COA and specifically cited to *Buck v. Davis* in support of review. Docket Entry ID. 4480086 at 1, n.1. In *Buck v. Davis*, the question presented directly addresses the appropriate standard for a COA:

> [D]id the United States Court of Appeals for the Fifth Circuit impose an improper and unduly burdensome Certificate of Appealability (COA) standard that contravenes this Court's precedent and deepens two circuit splits when it denied Mr. Buck a COA on his motion to reopen the judgment and obtain merits review of his claim that his trial counsel was constitutionally ineffective . . . .

Exh. A at 1. Recently, in another capital case in this Court, the panel *sua sponte* issued an order holding the case in abeyance until a decision is reached in *Buck v. Davis*. Exh. B.

This Court has inherent power to grant stays in pending appellate proceedings. *See Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 880 n.6 (1998)

---

[2] The United States' response to Mr. Nelson's Petition is currently due on January 13, 2017. *See* Docket Entry ID: 4485763 (Order) (filed 01/03/17).

(quoting *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) (stating that the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants")). Granting a stay would also be consistent with the actions of this Circuit in other cases where an abeyance was granted based upon pending relevant litigation in the United States Supreme Court. *See, e.g.*, *United States v. Knowles*, 812 F.3d 1095 (appeal held in abeyance pending the Supreme Court's resolution of *Lockhart v. United States*, 136 S. Ct. 958 (2016)); *United States v. Taylor*, 803 F.3d 931 (8th Cir. 2015) (appeal held in abeyance pending the Supreme Court's resolution of *Johnson v. United States*, 135 S. Ct. 2551 (2015)); *United States v. Racy*, 493 Fed. Appx. 812, 813 (8th Cir. 2012) (appeal held in abeyance pending the Supreme Court's resolution of *Dorsey v. United States*, 132 S. Ct. 2321 (2012)); *United States v. Duncan*, 684 F.3d 1363 (8th Cir. 2012) (petition for rehearing and rehearing en banc held in abeyance pending the Supreme Court's resolution of *Dorsey v. United States*, 132 S. Ct. 2321 (2012)); *United States v. Mapp*, 682 F.3d 1059, 1060 (8th Cir. 2012) (same)); *Danforth v. Crist*, 624 F.3d 915, 918 (8th Cir. 2010) (appeal held in abeyance pending the Supreme Court's resolution of *Danforth v. Minnesota*, 552 U.S. 264 (2008)).

Here, a stay would be an equitable remedy that furthers the interest of



Appellate Case: 15-3160 Page: 3 Date Filed: 01/11/2017 Entry ID: 4489112

judicial economy, the resources of counsel, and the public interest in the fair administration of justice. Because the Supreme Court opinion in *Buck* will directly address the key issue in this case, abeyance is the appropriate remedy.

## CONCLUSION

In the interest of judicial economy and based upon the agreement of the parties, the Petition for Rehearing and Rehearing En Banc should be held in abeyance pending the Supreme Court decision in *Buck v. Davis*, No. 15-8049 (2016).

Respectfully submitted this 11th day of January, 2017.

Jon M. Sands
Federal Public Defender

By *<u>/s/ Paula Harms</u>*
Paula K. Harms (Arizona Bar No. 022489)
Assistant Federal Public Defender
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
Telephone (602) 382-2816
Facsimile (602) 889-3960
Paula_Harms@fd.org

Ruhnke & Barrett

By: *<u>/s/ David A. Ruhnke</u>*
David A. Ruhnke
47 Park Street
Montclair, New Jersey 07042
Telephone (973)744-1000
Facsimile (973)746-1490
dr@ruhnkeandbarrett.com

**Certificate of Service**

I hereby certify that on January 11, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/Robin Stoltze
Assistant Paralegal
Capital Habeas Unit

# EXHIBIT A

EXHIBIT A

*Nelson v. United States of America*, No 15-3160
Unopposed Motion to Hold Appeal in Abeyance

2016 WL 4073689 (U.S.) (Appellate Brief)
Supreme Court of the United States.

**Duane** Edward **BUCK**, Petitioner,
v.
Lorie DAVIS, Director, Texas Department Of Criminal Justice, Correctional Institutions Division, Respondent.

No. 15-8049.
July 28, 2016.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

**Brief for Petitioner**

Kathryn M. Kase, Katherine C. Black, Texas Defender Service, 1927 Blodgett Street, Houston, TX 77004, kateblack@texasdefender.org, (713) 222-7788.

Samuel Spital, Benjamin R. Wilson, Holland & Knight LLP, 31 West 52nd Street, New York, NY 10019, samuel.spital@hklaw.com, (212) 513-3200.

Sherrilyn Ifill, Janai Nelson, Christina A. Swarns, Jin Hee Lee, Natasha M. Korgaonkar, Natasha Merle, NAACP Legal Defense & Educational Fund, Inc., 40 Rector Street, 5th Floor, New York, NY 10006, cswarns@naacpldf.org, (212) 965-2200, for petitioner.

***i** QUESTION PRESENTED

**Duane Buck's** death penalty case raises a pressing issue of national importance: whether and to what extent the criminal justice system tolerates racial bias and discrimination. Specifically, did the United States Court of Appeals for the Fifth Circuit impose an improper and unduly burdensome Certificate of Appealability (COA) standard that contravenes this Court's precedent and deepens two circuit splits when it denied Mr. Buck a COA on his motion to reopen the judgment and obtain merits review of his claim that his trial counsel was constitutionally ineffective for knowingly presenting an "expert" who testified that Mr. Buck was more likely to be dangerous in the future because he is Black, where future dangerousness was both a prerequisite for a death sentence and the central issue at sentencing?

West Headnotes (1)

**Habeas Corpus**⇐Certificate of probable cause

Did the United States Court of Appeals for the Fifth Circuit impose an improper and unduly burdensome Certificate of Appealability (COA) standard that contravened the Supreme Court's precedent and deepened two circuit splits when it denied the state prisoner a COA on his motion to reopen the judgment denying federal habeas relief and obtain merits review of his claim that his trial counsel was constitutionally ineffective at the penalty phase of the capital murder trial for knowingly presenting an "expert" who testified that the prisoner was more likely to be dangerous in the future because he is Black, where future dangerousness was both a prerequisite for a death sentence and the central issue at sentencing?

Cases that cite this headnote



Appellate Case: 15-3160 Page: 7 Date Filed: 01/11/2017 Entry ID: 4489112

*ii TABLE OF CONTENTS


| | |
|---|---|
| QUESTION PRESENTED | *i* |
| TABLE OF AUTHORITIES | *vi* |
| OPINIONS BELOW | 1 |
| JURISDICTION | 1 |
| RELEVANT CONSTITUTIONAL AND STATUTORY PROVISIONS | 1 |
| STATEMENT OF THE CASE | 3 |
| I. Introduction | 3 |
| II. The Capital Trial Proceedings | 4 |
| III. Post-Conviction Proceedings | 9 |
| A. Mr. Buck's Initial State Habeas Petition | 9 |
| B. Texas Concedes Error | 10 |
| C. Subsequent State Habeas Proceedings | 13 |
| D. Federal Habeas Proceedings | 13 |
| E. Mr. Buck's 2013 State Habeas Application and the *Trevino* Decision | 16 |
| ***iii** F. Mr. Buck's *Fost-Trevino* Federal Habeas Proceedings | 18 |
| SUMMARY OF THE ARGUMENT | 22 |
| ARGUMENT | 23 |
| I. Trial Counsel Rendered Ineffective Assistance by Presenting an "Expert" Opinion that Mr. Buck Is More Likely to be Dangerous in the Future Because He Is Black | 24 |
| A. The District Court Correctly Recognized that Counsel Performed Deficiently by Knowingly Exposing Mr. Buck to the Risks of Racial Prejudice | 26 |
| B. The District Court Erred by Concluding that Mr. Buck Was Not Prejudiced by His Trial Counsel's Constitutionally Deficient Performance | 33 |
| 1. Dr. Quijano's Race-as-Dangerous Opinion Was Highly Prejudicial | 34 |
| 2. The Facts of the Crime Do Not Eclipse the Prejudice Caused by Counsel's Recklessly Exposing Mr. Buck to Racial Bias | 39 |
| ***iv** II. Mr. Buck is Entitled to a COA Because Jurists of Reason Would Find the District Court's Ruling on | 44 |

Mr. Buck's 60(b)(6) Motion Debatable or Wrong.

A. Requirements for Relief Under Rule 60(b)(6) ..... 45

B. Mr. Buck's Case Is Extraordinary Within the Meaning of Rule 60(b)(6) ..... 47

1. The Risk of Injustice to Mr. Buck ..... 47

2. The Risk of Undermining Public Confidence in the Justice System and the Risk of Injustice in Other Cases ..... 49

3. The Probable Merit of Mr. Buck's Ineffectiveness Claim ..... 51

4. Texas's Interest in Finality ..... 52

5. Mr. Buck's Diligence ..... 53

6. Conclusion ..... 54

C. Reasonable Jurists Could Conclude that the Lower Courts' Denial of Mr. Buck's Application for Rule 60(b)(6) Relief Was Debatable or Wrong ..... 54

***v** CONCLUSION ..... 59

APPENDIX A ..... 1a

***vi** TABLE OF AUTHORITIES

CASES:

*Ackermann v. United States,* 340 U.S. 193 (1950) ..... 46

*Agostini v. Felton,* 521 U.S. 203 (1997) ..... 56

*Alba v. Johnson,* No. 00-40194, 2000 WL 1272983 (5th Cir. Aug. 21, 2000) ..... 12

*Albermarle Paper Co. v. Moody,* 422 U.S. 405 (1975) ..... 54

*Allison v. State,* 248 S.W.2d 147 (Tex. Crim. App. 1952) ..... 34

*Bobby v. Van Hook,* 558 U.S. 4 (2009) ..... 27

*Bruton v. United States,* 391 U.S. 123 (1968) ..... 34

*Bryant v. State,* 25 S.W.3d 924 (Tex. Ct. App. 2000) ..... 38

*Buck v. Thaler,* 132 S. Ct. 1085 (2012) ..... 15

***vii** *Buck v. Thaler,* 132 S. Ct. 32 (2011) ..... *passim*

*Buck v. Thaler,* 132 S. Ct. 69 (2011) ..... 15



Appellate Case: 15-3160 Page: 9 Date Filed: 01/11/2017 Entry ID: 4489112

*Buck v. Thaler*, 345 F. App`x 923 (5th Cir. 2009) .......... 15, 16, 30

*Buck v. Thaler*, 452 F. App`x 423 (5th Cir. 2011) .......... 15

*Buck v. Thaler*, 559 U.S. 1072 (2010) .......... 15

*Cofield v. State*, 82 S.E. 355 (Ga. Ct. App. 1914) .......... 37

*Coleman v. Thompson*, 501 U.S. 722 (1991) .......... 15

*Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384 (1990) .......... 54

*Cox v. Horn*, 757 F.3d 113 (3d Cir. 2014) .......... 58

*Davis v. Ayala*, 135 S. Ct. 2187 (2015) .......... 50, 57

***viii** *Derrick v. State*, 272 S.W. 458 (1925) .......... 25, 37

*Detrich v. Ryan*, 740 F.3d 1237 (9th Cir. 2013) .......... 46

*Dewberry v. State*, 4 S.W.3d 735 (Tex. Crim. App. 1999) .......... 41

*Dinklage v. State*, 185 S.W.2d 573 (Tex. Crim. App. 1945) .......... 37

*Ex parte Buck*, 418 S.W.3d 98 (Tex. Crim. App. 2013), *cert. denied*, 134 S. Ct. 2663 (2014) .......... 9, 17, 48

*Ex parte Medina*, 361 S.W.3d 633 (Tex. Crim. App. 2011) .......... 9

*Ex parte Williams*, No. AP-76455, 2012 WL 2130951 (Tex. Crim. App. June 3, 2012) .......... 42

*Flores v. Johnson*, 210 F.3d 456 (5th Cir. 2000) .......... 35

*Gardner v. Johnson*, 247 F.3d 551 (5th Cir. 2001) .......... 40-41

***ix** *Gideon v. Wainwright*, 372 U.S. 335 (1963) .......... 56

*Godfrey v. Georgia*, 496 U.S. 420 (1980) .......... 28

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) .......... *passim*

*Harrington v. Richter*, 562 U.S. 86 (2011) .......... 33

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) .......... 45

*Hinton v. Alabama*, 134 S. Ct. 1081 (2014) .......... 28

*In re Murchison*, 349 U.S. 133 (1955) .......... 51

*Irwin v. Dowd*, 366 U.S. 717 (1961) .......... 36

*JEB v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994) .......... 49, 50


WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works. 

Appellate Case: 15-3160 Page: 10 Date Filed: 01/11/2017 Entry ID: 4489112

*Johnson v. Rose,* 546 F.2d 678 (6th Cir. 1976) .......... 38

***x** *Jordan v. Fisher,* 135 S. Ct. 2647 (2015) .......... 21

*Kelly v. State,* 824 S.W.2d 568 (Tex. Crim. App. 1992) .......... 18

*Klapprott v. United States,* 335 U.S. 601 (1949) .......... 45, 55, 56

*Kyles v. Whitley,* 514 U.S. 419 (1995) .......... 44

*Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847 (1988) .......... 46-47, 51, 54

*Louisiana v. Bessa,* 38 So. 985 (La. 1905) .......... 37

*Mackey v. United States,* 401 U.S. 667 (1971) .......... 53

*Martinez v. Ryan,* 132 S. Ct. 1309 (2012) .......... *passim*

*McCleskey v. Kemp,* 481 U.S. 279 (1987) .......... 50

*Miller-El v. Cockrell,* 537 U.S. 322 (2003) .......... *passim*

***xi** *Miller-El v Dretke,* 545 U.S. 231 (2005) .......... 28, 39, 50

*Murray v. Carrier,* 477 U.S. 478 (1986) .......... 52

*North Carolina v. Parker,* 315 N.C. 249 (1985) .......... 42

*Parker v. Gladden,* 385 U.S. 363 (1966) .......... 44

*Plant v. Spendthrift Farm, Inc.,* 514 U.S. 211 (1995) .......... 45

*Porter v. Att'y Gen.,* 552 F.3d 1260 (11th Cir. 2008) .......... 39

*Porter v. McCollum,* 558 U.S. 30 (2009) .......... 39, 40

*Powell v. Alabama,* 287 U.S. 45 (1932) .......... 27

*Powers v. Ohio,* 499 U.S. 400 (1991) .......... 34, 49

*Ramirez v. United States,* 799 F.3d 845 (7th Cir. 2015) .......... 55, 58

***xii** *Reed v. Ross,* 468 U.S. 1 (1984) .......... 52

*Reed v. State,* 99 So. 2d 455 (Miss. 1958) .......... 37

*Romano v. Oklahoma,* 512 U.S. 1 (1994) .......... 28

*Roper v. Weaver,* 550 U.S. 598 (2007) .......... 49, 56

*Saldaño v. State,* 70 S.W.3d 873 (Tex. Crim. App. 2002) .......... 10

*Saldaño v. Texas,* 530 U.S. 1212 (2000) .......... 10

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works. 

Appellate Case: 15-3160 Page: 11 Date Filed: 01/11/2017 Entry ID: 4489112

*Satterwhite v. Texas*, 486 U.S. 249 (1988) ........ 35, 40

*Sears v. Upton*, 561 U.S. 945 (2010) ........ 40

*Slack v. McDaniel*, 529 U.S. 529 (2000) ........ 23-24

*Strauder v. West Virginia*, 100 U.S. 303 (1880) ........ 28

***xiii** *Strickland v. Washington*, 466 U.S. 668 (1984) ........ *passim*

*Taylor v. Kentucky*, 436 U.S. 478 (1978) ........ 34

*Texas Emp'rs Ins. Ass'n v. Guerrero*, 800 S.W.2d 859 (Tex. App. 1990) ........ 38

*Trevino v. Thaler*, 133 S. Ct. 1911 (2013) ........ passim

*Turner v. Murray*, 476 U.S. 28 (1986) ........ *passim*

*United States v. Cruz*, 981 F.2d 659 (2d Cir. 1992) ........ 34, 38

*United States v. Garza*, 608 F.2d 659 (5th Cir. 1979) ........ 36

*United States v. Haynes*, 466 F.2d 1260 (5th Cir. 1972) ........ 38

*United States v. Webster*, 162 F.3d 308 (5th Cir. 1998) ........ 48

*Walbey v. Quaterman*, 309 F. App'x 765 (5th Cir. 2009) ........ 40

***xiv** *Welch v. United States*, 136 S. Ct. 1257 (2016) ........ 53

*Wiggins v. Smith*, 539 U.S. 510 (2003) ........ 33

*Williams v. Taylor*, 529 U.S. 362 (2000) ........ 40

*Zant v. Stephens*, 462 U.S. 862 (1983) ........ 28

CONSTITUTIONAL PROVISIONS:

U.S. Const. amend. VI ........ 26, 53

STATUTES:

28 U.S.C.

§ 2253(c)(2) ........ 24

§ 2254(d)(1) ........ 40

RULES:

Fed. R. Civ. P. 60(b)(6) ........ *passim*

Tex. Code Crim. Proc. Ann. art. 37.071 § 2 (West 2013) ........ 5

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works. 

Tex. R. Evid. 705(c) ..... 18

*xv OTHER AUTHORITIES:

*ABA: Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, American Bar Association (1989), *available at* http://www.americanbar.org/content/dam/aba/migrated/2011_build/death_penalty_representation/1989guidelines.authcheckdam.pdf ..... 46

Eberhardt, Jennifer L., et al., *Looking Deathworthy: Perceived Stereotypicality of Black Defendants Predicts Capital Sentencing Outcomes* 384 (Cornell L. Fac. Publ'ns 2006), *available at* http://scholarship.law.cornell.edu/cgi/viewcontent.cgi?article=1040&context=lsrp_papers ..... 50

Kimberly, James, Death Penalties of 6 in Jeopardy: Attorney General Gives Result of Probe into Race Testimony, Hou. Chron., June 10, 2000, at A1, *available at* https://advance.lexis.com/api/permalink/0147fb80-a512-4a2b-88ff-9a6f07f184d9/?context=1000516; ..... 11

Liptak, Adam, *A Lawyer Known Best for Losing Capital Cases*, N.Y. Times, May 17, 2010, *available at* www.nytimes.com/2010/05/18/us/18bar.html ..... 5

***xvi** Monahan, J., et al., Rethinking Risk Assessment: The MacArthur Study of Mental Disorder and Violence, Oxford Univ. Press (2001) ..... 5

Swanson, J. W., et al., *Violence and Psychiatric Disorder in the Community: Evidence from the Epidemiologic Catchment Area Surveys,* 41 Hosp. & Comm. Psych., 761-770 (1990) ..... 5

11 Wright, C, A. Miller, & M. Kane, Federal Practice and Procedure § 2857 (2d ed. 1995 and Supp. 2004) ..... 47

Yardley, Jim, Racial Bias Found in Six More Capital Cases, N.Y. Times, June 10, 2000, *available at* http://www.nytimes.com/2000/06/11/us/racial-bias-found-in-six-more-capital-cases.html ..... 11

## *1 OPINIONS BELOW

The November 6, 2015 opinion of the Court of Appeals denying rehearing *en banc* (Joint Appendix ("JA") 288a) is available at 2015 WL 6874749 (5th Cir. Nov. 6, 2015). The August 20, 2015 panel opinion of the Court of Appeals denying Mr. Buck a COA (JA 274a) is reported at 623 F. App'x 668. The March 11, 2015 Order of the United States District Court for the Southern District of Texas denying Mr. Buck's motion to alter or amend that Court's prior judgment (JA 269a) is unreported. The August 29, 2014 Memorandum and Order of the United States District Court for the Southern District of Texas denying Mr. Buck's motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b) (JA 249a) is unreported. The July 24, 2006 Memorandum and Order of the United States District Court for the Southern District of Texas denying Mr. Buck's Petition for Writ of Habeas Corpus (JA 219a) is unreported.



Appellate Case: 15-3160 Page: 13 Date Filed: 01/11/2017 Entry ID: 4489112

## JURISDICTION

The Court of Appeals entered its judgment on November 6, 2015. This Court has jurisdiction under 28 U.S.C. § 1254(1).

## RELEVANT CONSTITUTIONAL AND STATUTORY PROVISIONS

This case involves a state criminal defendant's constitutional rights under the Sixth, Eighth, and Fourteenth Amendments. The Sixth Amendment provides in relevant part:

> ***2** In all criminal prosecutions, the accused shall enjoy the right to … have the assistance of counsel for his defense.

The Eighth Amendment provides:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

The Fourteenth Amendment provides in relevant part:

> [N]or shall any State … deny to any person within its jurisdiction the equal protection of the laws.

This case also involves the application of 28 U.S.C. § 2253(c), which states:
(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from

…

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;

…

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

## *3 STATEMENT OF THE CASE

### I. Introduction

This is an extraordinary case. **Duane Buck** is a Black man whose own attorneys presented an "expert" opinion that he is more likely to commit future acts of violence - and was therefore more deserving of a death sentence under Texas law - because of his race. The State of Texas conceded that this race-as-dangerousness testimony is constitutionally prohibited and undermines public confidence in the criminal justice system. Texas subsequently promised that it would not oppose new sentencing hearings in seven capital cases - including Mr. Buck's - that were corrupted by race-as-dangerousness testimony from the same expert. Texas kept its promise in six of those cases, but reneged on its promise to Mr. Buck alone. When Mr. Buck filed his federal habeas petition raising, *inter alia*, an ineffective assistance of counsel ("IAC") claim that challenged his trial counsel's presentation of the race-as-dangerousness "expert" opinion, Texas successfully argued that the claim was procedurally defaulted because Mr. Buck's state habeas counsel failed to raise the claim in a timely manner.

Intervening precedent from this Court establishes that the procedural default urged by Texas, and accepted by the District Court when it denied Mr. Buck's habeas petition, no longer prevents merits review of Mr. Buck's IAC claim. Yet, when Mr. Buck sought to reopen the judgment based on the confluence of circumstances that render his case extraordinary, the lower courts improperly denied relief and concluded that Mr. Buck was not even able to satisfy the threshold showing necessary for a ***4** Certificate of Appealability ("COA"). As a result, a death sentence tainted by egregious racial bias remains intact, and the legitimacy of our criminal justice system has been seriously undermined.

## II. The Capital Trial Proceedings

In 1996, Mr. Buck was charged with capital murder in connection with the shooting deaths of Debra Gardner and Kenneth Butler. The evidence at trial showed that in the early morning hours of July 30, 1995, Mr. Butler, his brother Harold Ebnezer, Mr. Buck's step-sister Phyllis Taylor, and Debra Gardner were gathered at Ms. Gardner's home. Mr. Buck had been in a romantic relationship with Ms. Gardner that ended two or three weeks earlier. Mr. Buck forced his way into the home, argued with and struck Ms. Gardner, stated that he was there to pick up his clothes, retrieved a few items, and then left. JA 250a-251a. Believing Ms. Gardner was sleeping with Mr. Butler, JA 251a, Mr. Buck returned to the home a few hours later with a rifle and a shotgun. He attempted to shoot Mr. Ebnezer but missed. Mr. Buck then shot Ms. Taylor and Mr. Butler. Ms. Gardner fled into the street. Mr. Buck followed, and shot her while her children were watching. Ms. Taylor survived but Mr. Butler and Ms. Gardner died from their wounds. JA 251a-252a. A police officer testified that after Mr. Buck was arrested at the scene, he laughed and stated, "The bitch deserved what she got." JA 252a, 262a.

At trial, Mr. Buck was represented by court-appointed counsel, Danny Easterling and Jerry Guerinot. Mr. Guerinot's history of providing inadequate representation to capitally charged clients is well ***5** documented: "Twenty of Mr. Guerinot's clients [were] sentenced to death." Adam Liptak, *A Lawyer Known Best for Losing Capital Cases*, N.Y. Times, May 17, 2010, *available at* www.nytimes.com/2010/05/18/us/18bar.html.

Prior to trial, Mr. Buck's counsel received a report from Dr. Walter Quijano, one of two psychologists retained by the defense, to assess, *inter alia*, whether Mr. Buck was likely to commit criminal acts of violence in the future. "Future dangerousness" is one of the "special issues" that a Texas jury must find to exist - unanimously and beyond a reasonable doubt - before a defendant may be sentenced to death. *See* Tex. Code Crim. Proc. art. 37.071 § 2 (West 2013). In his report, Dr. Quijano opined that being "Black" was a "statistical factor" that "Increased [the] probability" Mr. Buck would commit future acts of criminal violence. JA 18a-19a, 35a-36a; *see Buck v. Thaler,* 132 S. Ct. 32, 33 (2011) (Statement of Alito, J.). This purported link between race and future dangerousness had been discredited well before Mr. Buck's trial.[1]

Future dangerousness was the central disputed issue at the sentencing phase of Mr. Buck's trial. In an effort to make its case, the prosecution emphasized the facts of the capital crime and called Mr. Buck's ex-girlfriend, Vivian Jackson, to testify that Mr. Buck ***6** abused her, especially at the end of their relationship. JA 125a-127a. The prosecution presented no evidence that Mr. Buck had been violent outside the context of romantic relationships. Indeed, although the prosecution submitted records demonstrating that Mr. Buck had previously been convicted of delivery of cocaine and unlawfully carrying a weapon, JA 185a; Tr. 5-28, *Buck v. Stephens,* No. 4:04cv-03965 (S.D. Tex. June 24, 2005), ECF No. 5-111, pp. 17-40, none of Mr. Buck's prior convictions were for crimes of violence.

The defense presented testimony from Mr. Buck's father James Buck, his stepmother Sharon Buck, his sister Monique Winn, and Reverend J. C. Neal. Tr. 76-79, Buck, No. 4:04-cv-03965 (S.D. Tex. June 24, 2005), ECF No. 5-113, pp. 9-12. These witnesses, who had known Mr. Buck most, if not all, of his life, testified that they had never known Mr. Buck to be violent. In addition, the defense presented the testimony of psychologist Patrick Lawrence. Dr. Lawrence had previously appeared on behalf of both the prosecution and defense in Texas courts, and, over the prior 25 years, evaluated roughly 900 prisoners convicted of homicide. *See* Tr. 177, 182-186, 188-204, 205-06, *id.* at ECF Nos. 5-115, pp. 34, 39-41; 5-116, pp. 5-21.

Dr. Lawrence testified that Mr. Buck was not likely to be dangerous in the future. JA 193a, 223a. He based his opinion on, *inter alia*, the undisputed facts that: Mr. Buck was unlikely to develop a romantic relationship with a woman in prison, and Mr. Buck's records showed he "did not present any problems in the prison setting" and, indeed, had been held in minimum security custody. ***7** *See* Tr. 196, *Buck,* No. 4:04-cv-03965 (S.D. Tex. June 24, 2005), ECF No. 5-116, p. 13. Dr. Lawrence

also testified that intellectual testing revealed Mr. Buck has an IQ of 75, "which suggests that he functions within the borderline intellectual range of the population at about the 4 percentile." Tr. 189, *id.* at p. 6.

Despite the absence of evidence suggesting that Mr. Buck was likely to be dangerous outside of the context of a domestic relationship with a woman, defense counsel also presented Dr. Quijano's "expert" opinion that Mr. Buck was more likely to commit future crimes of violence because he is Black. Even though Dr. Quijano's report identified Mr. Buck's "race" as a "statistical factor" that increased his probability of being a future danger, defense counsel specifically asked Dr. Quijano to recount the "statistical factors or environmental factors" relevant to assessing the future dangerousness of a person "such as Mr. Buck." JA 145a-146a. Dr. Quijano's response tracked his report. He testified that "race" was among the "statistical factors he considered in deciding whether a person will or will not constitute a continued danger" because "[i]t's a sad commentary that minorities, Hispanics and black people, are over represented in the Criminal Justice System." JA 146a.

On cross-examination, the trial prosecutor exploited defense counsel's introduction of Dr. Quijano's race-as-dangerousness testimony:

Q: You have determined that the sex factor, that a male is more violent than a female because that's just the way it is, and that the race factor, black, increases the future dangerousness for various complicated reasons; is that correct?

***8** A: Yes.

JA 170a.

At defense counsel's request, and over the prosecution's objection, Dr. Quijano's report detailing his opinion ("Race. Black. Increased probability" of future dangerousness) was admitted into evidence and made available to the jury during deliberations. JA 151a-152a.

Future dangerousness was the focus of both the prosecution's and the defense's closing arguments. JA 187a-196a (defense closing); JA 196a-206a (prosecution closing). Indeed, the lead prosecutor urged the jury to rely on Mr. Buck's own expert to find that he was likely to be dangerous in the future: "You heard from Dr. Quijano, who had a lot of experience in the Texas Department of Corrections, who told you that there was a probability that [Mr. Buck] would commit future acts of violence." JA 198a.

The jury deliberated over the course of two days, during which time they sent out four notes seeking further instruction, as well as the opportunity to review, *inter alia,* Dr. Quijano's report. JA 209a. The jury ultimately found that Mr. Buck was likely to be a future danger, and he was sentenced to death. Mr. Buck's conviction and death sentence were affirmed on direct appeal. *Buck v. State,* No. 72,810 (Tex. Crim. App. 1999) (unpublished).

## *9 III. Post-Conviction Proceedings

### A. Mr. Buck's Initial State Habeas Petition

In March of 1999, Mr. Buck's newly appointed counsel, Robin Norris, filed his initial state habeas application. Like Mr. Buck's trial counsel, Mr. Norris has a troubling pattern of deficient representation of death-sentenced prisoners. In another capital case, the Texas Court of Criminal Appeals ("CCA") found that Mr. Norris threw his client "under the bus" by filing an initial state habeas application that was "only four pages long and merely state[d] factual and legal conclusions." *Ex parte Medina,* 361 S.W.3d 633, 635-36 (Tex. Crim. App. 2011). His representation of Mr. Buck was characterized by similar deficiencies.

As explained by three Judges of the CCA, Mr. Norris "filed only non-cognizable or frivolous claims in [Mr. Buck's] initial application." *Ex parte Buck,* 418 S.W.3d 98, 107 (Tex. Crim. App. 2013) (Alcala, J., joined by Price and Johnson, JJ.), *cert. denied,* 134 S. Ct. 2663 (2014). "[T]hree of the four claims ... were raised and rejected on direct appeal and, therefore, under the longstanding precedent of [the CCA], those claims were not cognizable on a post-conviction writ of habeas corpus." *Id.* at



Appellate Case: 15-3160 Page: 16 Date Filed: 01/11/2017 Entry ID: 4489112

102. The fourth claim was "wholly frivolous" because it asserted that "[Mr. Buck's] trial counsel [were] ineffective for failing to request a jury instruction based on a non-existent provision of the penal code." *Id.* Mr. Norris failed to challenge trial counsel's introduction of Dr. Quijano's "expert" opinion that Mr. Buck's race increased his likelihood of committing future acts of criminal violence.

***10 B. Texas Concedes Error.**

One year after the filing of Mr. Buck's state habeas application, another capital case involving Dr. Quijano's race-as-dangerousness opinion reached this Court. In *Saldaño v. Texas,* No. 99-8119, Dr. Quijano served as a prosecution witness and offered his "expert" opinion that a defendant's race or ethnicity is one of the "identifying markers" that increases the likelihood of future dangerousness. *Saldaño v. State,* 70 S.W.3d 873, 884-85 (Tex. Crim. App. 2002). After the CCA affirmed Mr. Saldaño's conviction and sentence, he filed a certiorari petition asking this Court to decide "[w]hether a defendant's race or ethnic background may ever be used as an aggravating circumstance in the punishment phase of a capital murder trial in which the State seeks the death penalty." *Saldaño,* 70 S.W.3d at 875.

Speaking through then-Attorney General John Cornyn, Texas conceded error. In its response to the petition, Texas acknowledged that the "infusion of race as a factor for the jury to weigh in making its determination violated [Mr. Saldaño's] constitutional right to be sentenced without regard to the color of his skin." JA 306a. Texas further recognized that " '[d]iscrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice,' " and that "the use of race in Saldaño's sentencing seriously undermined the fairness, integrity, or public reputation of the judicial process." JA 304a-305a. On June 5, 2000, this Court granted certiorari, vacated the CCA's judgment, and remanded for further consideration in light of Texas's concession. *Saldaño v. Texas,* 530 U.S. 1212 (2000).

***11** Four days later, then-Attorney General Cornyn issued a press release stating that his office had conducted "a thorough audit of cases" and identified six other capital cases involving Dr. Quijano's testimony that "are similar to that of Victor Hugo Saldano." JA 213a. The prisoners in those cases were: Gustavo Garcia, Eugene Broxton, John Alba, Michael Gonzales, Carl Blue, and **Duane Buck**. JA 215a-217a. The Attorney General did not distinguish between the cases in which Dr. Quijano was called by the prosecution or the defense. Indeed, in three of the cases identified by the Attorney General (Mr. Broxton's, Mr. Gonzales's, and Mr. Garcia's), the prosecution called Dr. Quijano; in the three other cases (Mr. Alba's, Mr. Blue's, and Mr. Buck's), Dr. Quijano was a defense witness. JA 215a. The Attorney General stressed that "it is inappropriate to allow race to be considered as a factor in our criminal justice system," and that the "people of Texas want and deserve a system that affords the same fairness to everyone." JA 213a-214a.

In a separate statement to the media, the Attorney General's spokesperson announced that Texas would not oppose federal habeas claims for relief based on Dr. Quijano's unconstitutional, race-based testimony in any of the similar-to-*Saldaño* cases;[2] acknowledged that ***12** some of the six cases might still be in state court (where the Attorney General is not responsible for litigating on the State's behalf); and promised that, if and when those cases reached the Attorney General's Office, they "will be handled in a similar manner as the Saldaño case." JA 281. At the time, only one of the six similar-to-*Saldaño* cases was still pending in state court: Mr. Buck's case.[3]

Prior to the Attorney General's admission of error, none of the six identified defendants had challenged the constitutionality of Dr. Quijano's testimony. Nonetheless, Texas kept its promise, waived all procedural defenses, conceded constitutional error, and agreed that a new sentencing hearing was required in each case *except Mr. Buck's.*[4]

***13 C. Subsequent State Habeas Proceedings**

In 2002 - two years after the Texas Attorney General's public statements regarding the similar-to-*Saldaño* cases - Mr. Norris filed a subsequent application for state habeas relief where he challenged, for the first time, trial counsel's introduction of Dr. Quijano's opinion that Mr. Buck was more likely to be a future danger because he is Black. Subsequent Appl. for Writ of Habeas Corpus, *Ex parte Buck,* No. WR-57,004-02 (Tex. Crim. App. Oct. 15, 2003), ECF No. 5-152, pp. 6, 9. In a consolidated order, the CCA dismissed the subsequent application as an abuse of the writ without considering the merits of



Appellate Case: 15-3160 Page: 17 Date Filed: 01/11/2017 Entry ID: 4489112

Mr. Buck's ineffectiveness claim, and denied the non-cognizable and frivolous claims that Mr. Norris presented in the initial (1999) application on their merits. Order, *Ex parte Buck,* No. WR-57,004-02 (Tex. Crim. App. Oct. 15, 2003) (unpublished).

**D. Federal Habeas Proceedings**

Represented by new counsel, Mr. Buck filed a federal habeas corpus petition in October 2004, asserting, *inter alia*, that Mr. Buck's federal constitutional rights to equal protection, due process, and the effective assistance of counsel were violated by the introduction of "expert" testimony and an "expert" report linking Mr. Buck's race to an increased likelihood of future dangerousness. Pet. for Writ of Habeas Corpus at 55-62, ***14** *Buck v. Cockrell,* No. 04-03965 (S.D. Tex. Oct. 14, 2004), ECF No. 1. However, despite Texas's promise to concede constitutional error in Mr. Buck's case - a promise that Texas kept in all five of the other similar-to-*Saldaño* cases - Texas reversed course and argued that federal review of Mr. Buck's ineffectiveness claim was foreclosed by state habeas counsel's default of that claim. In its answer to Mr. Buck's habeas petition, Texas stated:

> This Court is no doubt aware that the Director waived similar procedural bars and confessed error in other cases involving testimony by Dr. Quijano, most notably the case of Victor Hugo Saldano (collectively referred to as "the *Saldano* cases"). This case, however, presents a strikingly different scenario than that presented in Saldano - Buck himself, not the State offered Dr. Quijano's testimony into evidence. Based on this critical distinction, the Director deems himself compelled to assert the valid procedural bar precluding merits review of Buck's constitutional claims. And on this basis, federal habeas relief should be denied.

Respondent Dretke's Answer and Motion for Summ. J. with Brief in Support at 17, *Buck,* No. 4:04-cv-03965 (S.D. Tex. Sept. 6, 2005), ECF No. 7, p. 17 (citation omitted). Texas further maintained that "the former actions of the Director [in the other five cases] are not applicable and should not be considered in deciding this case." *Id.* at 20.

This account was highly misleading. Texas failed to disclose that, as described: (1) after a "thorough audit," then-Texas Attorney General Cornyn identified Mr. Buck's ***15** case as "similar to that of Victor Hugo Saldano," just like the other five cases in which Texas waived procedural bars and conceded error; and (2) in two of the other similar-to-*Saldaño* cases, Dr. Quijano was called as a defense witness. JA 213a.

Because Texas reversed course in Mr. Buck's case and raised a procedural defense, the District Court denied relief. Relying on *Coleman v. Thompson,* 501 U.S. 722 (1991), the court held that Mr. Buck's Quijano-related claims were procedurally defaulted because the state court had dismissed them on an independent and adequate state ground: state habeas counsel's failure to timely raise the claims. JA 237a-239a.

Between 2006 and 2012, Mr. Buck repeatedly sought review of the District Court's denial of his habeas petition. *See Buck v. Thaler,* 345 F. App'x 923 (5th Cir. 2009) (affirming denial of habeas relief and denying request for COA); *Buck v. Thaler,* 559 U.S. 1072 (2010) (denying certiorari); *Buck v. Thaler,* 452 F. App'x 423 (5th Cir. 2011) (denying stay of execution and motion for relief from judgment); *Buck v. Thaler,* 132 S. Ct. 69 (2011) (denying petition for writ of certiorari and motion for stay of execution); *Buck,* 132 S. Ct. 32 (2011) (denying certiorari); *Buck v. Thaler,* 132 S. Ct. 1085 (2012) (denying rehearing).

Mr. Buck did not seek further review of his IAC claim because *Coleman* foreclosed it. Mr. Buck instead challenged the prosecutor's reiteration of Dr. Quijano's race-as-dangerousness opinion on cross-examination and her reliance on Dr. Quijano's testimony in closing argument to urge the jury to find Mr. Buck a future danger. In response, Texas consistently asserted that Mr. Buck's trial ***16** counsel - rather than the prosecution - was responsible for placing Dr. Quijano's false and inflammatory opinion about race before the jury.[5] The Court of Appeals agreed with Texas. *Buck,* 345 F. App'x at 930.

In 2011, three Justices of this Court reached the same conclusion. In a statement regarding the denial of Mr. Buck's petition for certiorari challenging the trial prosecutor's conduct, Justice Alito - joined by Justices Scalia and Breyer - explained that responsibility for the introduction of "bizarre and objectionable" expert testimony linking Mr. Buck's race to an increased

likelihood of future dangerousness "lay squarely with the defense." *Buck,* 132 S. Ct. at 33, 35.

### E. Mr. Buck's 2013 State Habeas Application and the *Trevino* Decision

Mr. Buck filed a new state habeas application in March 2013. Application for Post-Conviction Writ of Habeas Corpus, *Ex parte Buck,* No. WR-57,004-03 (Tex. Crim. App. Mar. 28, 2013). In that petition, Mr. Buck challenged, *inter alia*, his trial counsel's ineffective failure to investigate, develop, and present available, mitigating evidence, including Phyllis Taylor's statement that on the night of the shooting, Mr. Buck was "different from the ***17** person [she] grew up with" due to his drug and alcohol intoxication. *Id.* at 89. A sharply divided CCA dismissed the application for "fail[ing] to satisfy the requirements of Article 11.071, § 5(a)." *Ex parte Buck,* 418 S.W.3d 98. In her dissenting opinion, Judge Alcala - joined by Judges Price and Johnson - explained that "[Mr. Buck's case] reveals a chronicle of inadequate representation at every stage of the proceedings, the integrity of which is further called into question by the admission of racist and inflammatory testimony from an expert witness at the punishment phase." *Id.* at 107.

While Mr. Buck's application was pending before the CCA, this Court created a new exception to the procedural bar on which Texas successfully relied to prevent federal habeas review of Mr. Buck's IAC claim. Specifically, in *Trevino v. Thaler,* 133 S. Ct. 1911 (2013), this Court held that *Martinez v. Ryan,* 132 S. Ct. 1309 (2012), applied to Texas. *Martinez* " 'modif[ied] the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default.' " *Trevino,* 133 S. Ct. at 1917 (quoting *Martinez,* 132 S. Ct. at 1315). *Martinez* and *Trevino* allow, for the first time, an opportunity for federal review of defaulted IAC claims where (1) the IAC claim is "substantial"; (2) there was no counsel or there was ineffective counsel during the initial state post-conviction review of the claim; and (3) state law effectively requires ineffective assistance of trial counsel claims to be litigated on initial collateral review. *Trevino,* 133 S. Ct. at 1918 (quoting *Martinez,* 132 S. Ct. at 1318-20). A "substantial" claim is one that "has some merit." *Martinez,* 132 S. Ct. at 1318 (citing *Miller-El v. Cockrell,* 537 U.S. 322 (2003) (describing standards for COA to issue)).

### *18 F. Mr. Buck's *Post-Trevino* Federal Habeas Proceedings

On January 7, 2014, immediately after the denial of the pending state habeas application, Mr. Buck filed a motion for relief from the District Court's denial of the IAC claim in his initial federal habeas petition. Rule 60(b)(6) Motion, *Buck,* No. 04-03965 (S.D. Tex. Jan. 7, 2014), ECF No. 49. In this motion, Mr. Buck detailed the following "extraordinary circumstances" justifying the reopening of a final judgment under Rule 60(b)(6) of the Federal Rules of Civil Procedure ("Rule 60(b)(6)" or "Rule 60(b)") and *Gonzalez v. Crosby,* 545 U.S. 524, 535 (2005):

1. Mr. Buck's trial attorney knowingly presented expert testimony to the sentencing jury that Mr. Buck's race made him more likely to be a future danger;

2. Although required to act as a gate-keeper to prevent unreliable expert opinions from reaching and influencing a jury, *see* Tex. R. Evid. 705(c); *Kelly v. State,* 824 S.W.2d 568 (Tex. Crim. App. 1992), the trial court qualified Dr. Quijano as an expert on predictions of future dangerousness, allowed him to present race-based opinion testimony to Mr. Buck's capital sentencing jury, and admitted Dr. Quijano's excludable hearsay report linking race to dangerousness;

3. The trial prosecutor intentionally elicited Dr. Quijano's testimony that Mr. Buck's race made him more likely to be a future danger ***19** on cross-examination, vouched for him as an "expert" in closing, and asked the jury to rely on Dr. Quijano's testimony to answer the future dangerousness special issue in the State's favor;

4. Mr. Buck's state habeas counsel did not challenge trial counsel's introduction of this false and offensive testimony - or Texas's reliance on it - in Mr. Buck's initial state habeas application;

5. The Texas Attorney General conceded constitutional error in Mr. Buck's case and promised to ensure that he received a new sentencing, but reneged on that promise after deciding that the introduction of the offensive testimony was trial counsel's fault;



Appellate Case: 15-3160 Page: 19 Date Filed: 01/11/2017 Entry ID: 4489112

6. Th[e District] Court ruled that federal review of Mr. Buck's trial counsel ineffectiveness claim was foreclosed by state habeas counsel's failure to raise and litigate the issue in Mr. Buck's initial state habeas petition, relying on *Coleman,* which has subsequently been modified by *Martinez* and *Trevino*;

7. The Fifth Circuit held Mr. Buck's trial counsel responsible for the introduction of Dr. Quijano's testimony linking Mr. Buck's race to his likelihood of future dangerousness;

8. Three Supreme Court Justices concluded that trial counsel was at fault for the introduction of Dr. Quijano's testimony;

***20** 9. Three judges of the CCA found that "because [Mr. Buck's] initial habeas counsel failed to include any claims related to Dr. Quijano's testimony in his original [state habeas] application, no court, state or federal, has ever considered the merits of those claims," *Buck,* 2013 WL 6081001, at *5;

10. Mr. Buck's case is the only one in which Texas has broken its promise to waive procedural defenses and concede error, leaving Mr. Buck as the only individual in Texas facing execution without having been afforded a fair and unbiased sentencing hearing; and,

11. Martinez and Trevino now allow for federal court review of "substantial" defaulted claims of trial counsel ineffectiveness.

JA 283a-285a.

In adjudicating Mr. Buck's Rule 60(b) motion, the District Court recognized that trial counsel "recklessly exposed [Mr. Buck] to the risks of racial prejudice and introduced testimony that was contrary to [Mr. Buck's] interests." JA 264a. Remarkably, however, the court concluded that trial counsel's introduction of an expert opinion that Mr. Buck's race made him more likely to commit future acts of criminal violence - and thus more deserving of a death sentence under Texas law - had only a "*de minimis*" effect on Mr. Buck's sentencing. JA 259a. The court held that Mr. Buck was not entitled to reopen the judgment because: (1) his case did not involve the extraordinary circumstances required by Rule 60(b)(6); and (2) in the alternative, Mr. Buck was not prejudiced by ***21** his trial counsel's constitutionally deficient performance. JA 259a-260a, 271a-272a. The District Court further determined that its rulings on these points were not debatable among jurists of reason, and thus Mr. Buck was not entitled to a COA. JA 264a-265a.

Without addressing the merits of Mr. Buck's IAC claim, the Fifth Circuit likewise denied a COA, declaring that "[Mr.] Buck has not made out even a minimal showing that his case is exceptional," within the meaning of Rule 60(b). JA 283a. The Fifth Circuit insisted that Mr. Buck's IAC claim "is at least unremarkable as far as IAC claims" and that Texas's "broken-promise ... makes [the case] odd and factually unusual," but not even debatably extraordinary. JA 285a-286a.

Dissenting from the denial of *en banc* review, Judge Dennis, joined by Judge Graves, concluded that Mr. Buck was clearly entitled to a COA, and that the panel's contrary decision was consistent with the Fifth Circuit's " 'troubling' habit" of applying an improper COA analysis. JA 290a (quoting *Jordan v. Fisher,* 135 S. Ct. 2647, 2652 n.2 (2015) (Sotomayor, J., joined by Ginsburg and Kagan, JJ., dissenting from the denial of certiorari). Judge Dennis explained that the panel " 'dismisse[d], miscast[], and minimize[d] [Mr. Buck's] evidence, diluting its full weight by disaggregating it and focusing the inquiry on determining whether each isolated piece of evidence, taken alone,' proves extraordinary circumstances." JA 292a. By contrast, a "proper, threshold inquiry into [Mr.] Buck's claim would have revealed that reasonable jurists could disagree with the district court's conclusions," because the factors presented by Mr. Buck "describe a situation that is at least debatably 'extraordinary.' " JA 293a-294a.

***22** SUMMARY OF THE ARGUMENT

Mr. Buck's trial counsel rendered ineffective assistance by knowingly presenting an expert opinion that Mr. Buck was more likely to commit future acts of violence because he is Black. That testimony was so directly contrary to Mr. Buck's interests, no competent defense attorney would have introduced it.

Counsel's constitutionally deficient performance powerfully undermines confidence in Mr. Buck's sentence of death. For over a century, courts have recognized that racially inflammatory statements presented during a criminal trial create a constitutionally intolerable risk that the jury will make its decision based on a quintessentially arbitrary factor (race), instead of the relevant evidence. These precedents apply *a fortiori* to Mr. Buck's case because Dr. Quijano's race-as-dangerousness opinion: (1) validated a uniquely pernicious stereotype; (2) was presented by a purported "expert" for the defense; and (3) was introduced at a capital sentencing hearing where the principal issue for the jury to decide was whether Mr. Buck was likely to be dangerous in the future. The prejudice to Mr. Buck from the introduction of this "expert" opinion - that Black men are predisposed to criminal violence - is especially clear because the prosecution's case in support of future dangerousness was not overwhelming, and the jury struggled to reach a decision.

Further, Texas's ordinary interest in finality is not compelling here because it promised not to rely on procedural defenses in a number of cases, including Mr. Buck's, in order to preserve the integrity of the rule of law, and then kept its promise in all of those cases except ***23** Mr. Buck's. The *sui generis* facts of this case (at, and after, trial) - combined with Mr. Buck's diligence and the change in law worked by *Trevino* and *Martinez* - establish the "extraordinary circumstances" required by Rule 60(b). The failure to reopen the District Court's judgment denying Mr. Buck's Sixth Amendment claim creates both a profound risk of injustice to Mr. Buck - who faces execution pursuant to a death sentence marred by racial bias - and a profound risk of harm to society's confidence in the integrity of the criminal justice system.

Under any standard of review, the lower courts' denial of Mr. Buck's Rule 60(b) motion was erroneous. The denial of a COA was even more improper. A COA is required so long as reasonable jurists could find the denial of relief debatable or the issues presented by the petitioner adequate to proceed further. Mr. Buck surely meets this threshold standard, and the Court of Appeals' failure to grant a COA reflects its failures to properly apply this Court's precedent and to acknowledge the plainly extraordinary circumstances of Mr. Buck's case.

## ARGUMENT

As this Court has stressed, a COA is required so long as a habeas petitioner makes a "threshold" showing that the District Court's decision was "debatable amongst jurists of reason." *Miller-El,* 537 U.S. at 336. Thus, "[a] court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief." *Id.* at 337. Instead, "a prisoner seeking a COA need only demonstrate 'a substantial showing' " that the district court erred in denying relief. *Id.* at 327 (quoting ***24** *Slack v. McDaniel,* 529 U.S. 473, 474, 484 (2000) and 28 U.S.C. § 2253(c)(2)). That standard is satisfied when reasonable jurists could either disagree with the district court's denial of relief, or determine that "the issues presented ... deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 327, 336.

Thus, Mr. Buck is entitled to a COA so long as the District Court's decision denying his Rule 60(b) motion was at least debatable among reasonable jurists. *Id.* at 342; *see also id.* at 348 (Scalia, J., concurring) (a COA must be granted if resolution of the petitioner's claims is not "undebatable"). Mr. Buck unquestionably meets that standard with respect to both the procedural issue of whether extraordinary circumstances exist and the underlying constitutional issue of whether his counsel were ineffective. *See Slack,* 529 U.S. at 484-85 (when a petition is dismissed on procedural grounds, determining whether a COA should issue requires consideration of whether reasonable jurists could debate both the underlying constitutional claims and the district court's procedural ruling). Because the facts supporting the underlying constitutional claim inform the extraordinary circumstances analysis in this case, Mr. Buck begins with his IAC claim.

### I. Trial Counsel Rendered Ineffective Assistance by Presenting an "Expert" Opinion that Mr. Buck Is More Likely to be Dangerous in the Future Because He Is Black.

The principal issue at the sentencing phase of **Duane Buck's** capital trial was whether he was likely to commit future acts of criminal violence if sentenced to life ***25** imprisonment. Under Texas law, an affirmative finding by the jury on this special issue was required for a death sentence. But the prosecution presented no evidence that Mr. Buck had been violent outside the context of romantic relationships with two women, and the jurors learned that he had adjusted well to prison. Consistent with

the lack of future dangerousness evidence, the jury struggled to determine the appropriate sentence and did not reach a verdict until the second day of deliberations.

Mr. Buck's own lawyers, however, tipped the balance in the prosecution's favor. They introduced an "expert" opinion that, because Mr. Buck is Black, he was more likely to be dangerous in the future. Put another way: Mr. Buck's lawyers presented evidence that Mr. Buck was more deserving of a death sentence under Texas law because of his race.

Introducing this false and prejudicial evidence was the epitome of ineffective assistance of counsel. As the CCA held in 1925, "[n]o lawyer could believe that" a question injecting racial bias into a criminal trial "could have been permissible in any state court, and the very asking of it was so repulsive to every idea of a fair trial as to cause us to have no hesitancy in holding it reversible error." *Derrick v. State,* 272 S.W. 458, 459 (1925). Yet, over 70 years later, Mr. Buck's lawyers not only injected racial bias into his capital trial, they appealed to the uniquely pernicious stereotype that "blacks are violence prone." *Turner v. Murray,* 476 U.S. 28, 35 (1986) (plurality opinion). Even worse, defense counsel did so through a clinical psychologist who was stamped with the imprimatur of an "expert," lending special weight to his opinion.

***26** No reasonable defense attorney would have presented Dr. Quijano's race-as-dangerousness opinion. Moreover, there is a reasonable probability that had his opinion not been presented, at least one juror would have reached a different conclusion about Mr. Buck's likelihood of committing future acts of violence. Mr. Buck has therefore satisfied both the deficient performance and prejudice prongs of the *Strickland* test. *See Strickland v. Washington,* 466 U.S. 668 (1984).

### A. The District Court Correctly Recognized that Counsel Performed Deficiently by Knowingly Exposing Mr. Buck to the Risks of Racial Prejudice.

As this Court explained in *Strickland,* "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." 466 U.S. at 684. "That a person who happens to be a lawyer is present at trial alongside the accused … is not enough to satisfy the constitutional command." *Id.* at 685. Rather, because the Sixth Amendment "envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results," a defendant "is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Id.* The Sixth Amendment right to counsel is therefore the right to the effective assistance of counsel, measured by the familiar two-part test of deficient performance and prejudice. *See id.* at 686-87.

Counsel's performance is deficient when it falls "below an objective standard of reasonableness," as measured "under prevailing professional norms." *Id.* at 688. ***27** Although that "standard is necessarily a general one," *Bobby v. Van Hook,* 558 U.S. 4, 7 (2009) (per curiam), the "[r]epresentation of a criminal defendant entails certain basic duties," *Strickland,* 466 U.S. at 688. These include the "overarching duty to advocate the defendant's cause" and the "duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.*

Mr. Buck's trial lawyers failed to satisfy these basic obligations. As the District Court noted, prior to trial, "Buck's counsel had received Dr. Quijano's expert report … clearly stating that Buck's race made him statistically more likely to be a future danger." JA 263a. In that report, Dr. Quijano discussed seven "Statistical Factors" that he deemed relevant to "Future Dangerousness," i.e., "Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." JA 18a, 35a. One of those factors was: "Race. Black: Increased probability. There is an over-representation of Blacks among the violent offenders." *Id.* at 19a, 36a. (emphasis in original).

No competent defense counsel would have presented Dr. Quijano's race-as-dangerousness opinion to the jury. This Court stated more than 50 years before *Strickland* that one of counsel's essential functions is to ensure the defendant is not "convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible." *Powell v. Alabama,* 287 U.S. 45, 69 (1932). Dr. Quijano's race-as-dangerousness opinion was prototypical "incompetent evidence" that had no place in a capital sentencing proceeding. The Constitution requires that "any decision to impose the death sentence ***28** be, and appear to be, based on reason rather than caprice or emotion," *Godfrey v. Georgia,* 496 U.S. 420, 433 (1980) (citation omitted), and such decisions must reflect an "individualized inquiry" into the defendant's moral culpability, *Romano v. Oklahoma,* 512 U.S. 1, 7 (1994) (citation omitted). Race is an arbitrary, emotionally charged factor that has nothing to do with individual moral culpability. Although it cannot be considered as an aggravating factor at capital sentencing, *Zant v.*

*Stephens,* 462 U.S. 862, 885 (1983), Dr. Quijano's opinion urged the jurors to do just that.

Injecting race into a capital sentencing proceeding is not only wholly improper, it poses a special risk of harm to the defendant. In 2005, this Court repeated an observation about race that it made in 1880: "It is well known that prejudices often exist against particular classes in the community, which sway the judgment of jurors, and which, therefore, operate in some cases to deny to persons of those classes the full enjoyment of that protection which others enjoy." *Miller-El v. Dretke,* 545 U.S. 231, 237 (2005) (quoting *Strauder v. West Virginia,* 100 U.S. 303, 309 (1880)). The risk of racial prejudice swaying the judgment of jurors is especially pronounced in a capital sentencing proceeding because "[f]ear of blacks, which could easily be stirred up by the violent facts of [the defendant's] crime, might incline a juror to favor the death penalty." *Turner,* 476 U.S. at 35 (plurality opinion).

Mr. Buck's court-appointed counsel had a duty to be aware of these principles. *Hinton v. Alabama,* 134 S. Ct. 1081, 1089 (2014) ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point ***29** is a quintessential example of unreasonable performance under *Strickland*"). As any competent counsel would have recognized, it was contrary to Mr. Buck's interests to present an expert opinion that Mr. Buck possesses an immutable characteristic that renders him prone to criminal violence. JA 19a, 36a. Further, anyone with even a passing knowledge of American history would understand that the immutable characteristic invoked by Dr. Quijano - Mr. Buck's race - was especially likely to bias the jury against him.

Yet, trial counsel not only "called Dr. Quijano to the stand," counsel specifically "elicited his testimony on this point." *Buck,* 132 S. Ct. at 33 (Statement of Alito, J.); *see also* JA 263a-264a (noting "Buck's counsel called Dr. Quijano as a witness and relied on his expert report, although counsel was fully aware of Dr. Quijano's inflammatory opinions about race").

Dr. Quijano began his testimony by discussing his credentials. JA 138a-141a. He then described his evaluation of Mr. Buck, testifying that Mr. Buck has both a dependent personality disorder - meaning he becomes obsessive in relationships and has a very difficult time letting go - as well as alcohol and cocaine dependence disorders. JA 141a-145a; *see also* JA 252a-253a.

Counsel then turned Dr. Quijano's attention to the issue of future dangerousness. Counsel first asked Dr. Quijano to confirm that he was "familiar with the capital murder punishment issues that jurors are given in a capital murder case at the punishment phase," and that he understood the first issue "is whether the State has proven beyond a reasonable doubt that there's a ***30** probability that the defendant would engage in future acts of violence which would constitute a continuing threat to society." JA 145a.

Counsel next asked Dr. Quijano to discuss his "professional opinion regarding Mr. Buck in relation to that issue," and specifically the "statistical factors or environmental factors" that Dr. Quijano found relevant to Mr. Buck's probability of future dangerousness. JA 145a-146a. Counsel did so despite knowing that one of the "statistical factors" Dr. Quijano considered was Mr. Buck's race.

Dr. Quijano's response mirrored his report. *See Buck,* 132 S. Ct. at 33 (Statement of Alito, J.). He described seven "statistical factors we know to predict future dangerousness," one of which was "Race." JA 146a. Dr. Quijano elaborated on the purported support for his opinion that race predicts future dangerousness: "It's a sad commentary that minorities, Hispanics and black people, are over represented in the Criminal Justice System." JA 146a. After identifying race and the other six statistical factors from his report, Dr. Quijano reiterated: "Those are the statistical factors in deciding whether a person will or will not constitute a continuing danger." JA 147a.

Having elicited Dr. Quijano's race-as-dangerousness opinion, defense counsel opened the door for the prosecution to have Dr. Quijano repeat it on cross-examination. *See Buck,* 345 F. App'x at 930. The prosecutor did precisely that, stressing the supposed causal link between race and dangerousness: "You have determined that the ... race factor, black, increases the future dangerousness for various complicated reasons; is that correct?" JA 170a. Dr. Quijano responded unequivocally: "Yes." *Id.*

***31** Trial counsel then presented Dr. Quijano's race-as-dangerousness opinion to the jury for a third time, offering Dr. Quijano's report into evidence. *See Buck,* 132 S. Ct. at 33 (Statement of Alito, J.). In his report, Dr. Quijano stated in no uncertain terms that Mr. Buck's race increased the probability of future violence: "Race. Black: Increased probability. There

is an over-representation of Blacks among the violent offenders." JA 19a, 36a. Although other portions of Dr. Quijano's report were redacted before it was submitted to the jury, his race-as-dangerousness opinion was not. *Id.*

In sum, "the responsibility for eliciting [Dr. Quijano's] offensive testimony lay[s] squarely with the defense." *Buck,* 132 S. Ct. at 35 (Statement of Alito, J.).

Texas, however, has sought to defend trial counsel's performance by asserting that Dr. Quijano did not say Mr. Buck's "race would make him more likely to be a future danger." Opposition to Petition for a Writ of Certiorari ("Cert. Opp'n") at 21, *Buck v. Stephens,* 136 S. Ct. 2409 (Mar. 21, 2016) (No. 15-8049) (mem.). Instead, according to Texas, Dr. Quijano's "brief remarks ... about 'minorities, Hispanics and blacks' being overrepresented in the criminal justice system are inherently mitigating." *Id.* at 21-22 (citation omitted). Those assertions are flatly untrue, and reflect an effort to sanitize the profoundly troubling record in this capital case.

There was nothing mitigating about Dr. Quijano's testimony about the overrepresentation of Blacks and Hispanics in the criminal justice system. Instead, Dr. Quijano relied on that overrepresentation as the justification for his repeated assertions - which Texas now ***32** refuses to acknowledge - that Mr. Buck's race made him more likely to be a future danger. To reiterate:

• On direct examination, Dr. Quijano testified that "race" is one of seven "statistical factors we know to predict future dangerousness." JA 146a.

• On cross-examination, Dr. Quijano agreed with the prosecution that the "race factor, black, increases the future dangerousness for various complicated reasons." JA 170a.

• In his report, which was submitted to the jury, Dr. Quijano stated that Mr. Buck's "Race. Black" created an "Increased probability" that he would commit future acts of violence. JA 19a, 36a.

By presenting the jury with an expert opinion that Mr. Buck was more likely to commit criminal acts of violence because he is Black, and was therefore more deserving of a death sentence under Texas law, trial counsel rendered deficient performance under *Strickland.* In the District Court's words:

> Buck's counsel recklessly exposed his client to the risks of racial prejudice and introduced testimony that was contrary to his client's interests. His performance fell below an objective standard of reasonableness, and the Court therefore finds that trial counsel's performance was constitutionally deficient.

JA 264a.

***33 B. The District Court Erred by Concluding that Mr. Buck Was Not Prejudiced by His Trial Counsel's Constitutionally Deficient Performance.**

The touchstone of *Strickland*'s prejudice prong is whether counsel's constitutionally deficient performance " 'deprive[d] the defendant of a fair trial, a trial whose result is reliable.' " *Harrington v. Richter,* 562 U.S. 86, 104 (2011) (quoting *Strickland,* 466 U.S. at 687). "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland,* 466 U.S. at 694. Although the mere possibility of a different outcome is insufficient, the prejudice prong is satisfied when there is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Harrington,* 562 U.S. at 112. Because Texas requires jury unanimity, a reasonable probability that one juror would have reached a different conclusion absent Dr. Quijano's race-as-dangerousness testimony is sufficient to establish prejudice. *See Wiggins v. Smith,* 539 U.S. 510, 537 (2003).

Mr. Buck easily satisfies this standard. Contrary to the District Court's assertion that "any harm caused by [Dr. Quijano's] objectionable testimony was *de minimis,*" JA 272a, it is well-settled that appeals to racial prejudice deprive the accused of his



Appellate Case: 15-3160 Page: 24 Date Filed: 01/11/2017 Entry ID: 4489112

right to a fair trial decided by an impartial jury. The appeals to racial prejudice in this case were particularly harmful because: (1) they invoked the stereotype that Black people are more likely to be violent criminals; (2) they were presented as the professional opinion of a defense expert who was "appointed by Judge ***34** Collins of the 208th District Court to do an evaluation on the defendant **Duane** Edward **Buck**" and was "paid by the County to do this work," JA 140a; and (3) the central disputed issue at sentencing was whether Mr. Buck was likely to be a future danger.

### *1. Dr. Quijano's Race-as-Dangerous Opinion Was Highly Prejudicial.*

When jurors are told that the defendant's race is associated with criminality, the harm to the defendant is obvious and substantial. Such statements not only " 'tend[] to create race prejudice,' " they " 'convey[] the imputation that the accused belonged to a class of persons peculiarly' " predisposed to criminal behavior. *Allison v. State,* 248 S.W.2d 147, 148 (Tex. Crim. App. 1952) (citation omitted). This deprives the defendant of his fundamental right to a fair trial, i.e., one in which the "jury consider[s] only relevant and competent evidence," *Bruton v. United States,* 391 U.S. 123, 131 n.6 (1968), "free from ethnic, racial, or political prejudice, or predisposition about the defendant's culpability,' " *Powers v. Ohio,* 499 U.S. 400, 411 (1991) (citations omitted). *Cf. Taylor v. Kentucky,* 436 U.S. 478, 487-88 (1978) (failure to provide a presumption of innocence instruction violated due process when, *inter alia*, the prosecutor's "repeated suggestions that petitioner's status as a defendant tended to establish his guilt created a genuine danger that the jury would convict petitioner on the basis of ... extraneous considerations"). As Judge Winter has explained, the "[i]njection of a defendant's ethnicity into a trial as evidence of criminal behavior is self-evidently improper and prejudicial...." *United States v. Cruz,* 981 F.2d 659, 664 (2d Cir. 1992).

***35** The prejudice arising from Dr. Quijano's race-as-dangerousness opinion was magnified for two reasons. First, it was presented at a capital sentencing hearing where the false stereotype that "blacks are violence prone" poses a special risk of biasing the jury in favor of a death sentence. *Turner,* 476 U.S. at 35. That is particularly true when, as here, the central question for the jury at sentencing was whether Mr. Buck was likely to be a future danger.

Second, as Texas noted in its brief in opposition to certiorari, trial counsel elicited testimony "emphasiz[ing] Dr. Quijano's extensive experience, especially his tenure as Chief Psychologist and Director of Psychiatric Services for the Texas Department of Criminal Justice." Cert. Opp'n at 9. Counsel also imbued Dr. Quijano with the imprimatur of the court by eliciting testimony that Dr. Quijano was appointed by the presiding judge in the case "to do an evaluation" and was being paid by the county "to do this work." JA 140a.

Counsel thereby ensured that Dr. Quijano's opinions would "stand[] out" to the jury. *Satterwhite v. Texas,* 486 U.S. 249, 259 (1988); *see also Flores v. Johnson,* 210 F.3d 456, 466 (5th Cir. 2000) (Garza, J., specially concurring) (noting that a future dangerousness expert's "title and education (not to mention designation as an 'expert') gives him significant credibility in the eyes of the jury as one whose opinion comes with the imprimatur of scientific fact"). And, because Dr. Quijano was a defense expert, any opinion that supported the prosecution (i.e., his race-as-dangerousness testimony) surely made an even greater impression on the jury.

***36** The District Court acknowledged that "[t]estimony like that of Dr. Quijano lends credence to any potential latent racial prejudice held by the jury." JA 264a. Nonetheless, the District Court determined that the introduction of Dr. Quijano's race-as-dangerousness opinion "was, in this case, *de minimis*" because he tendered that opinion only twice. *See* JA 259a, 272a.

The proffer by an "expert" of this racially-biased and discredited opinion before a jury even once would be sufficient to cause substantial harm. But, in this case, Dr. Quijano's race-as-dangerousness opinion was presented to the jury three times: once on direct examination, once on cross-examination, and once in Dr. Quijano's report that defense counsel submitted into evidence. That Dr. Quijano's opinion was not repeated a fourth time is hardly a reason to discount its significance. In the words of a juror who was later quoted by this Court: for certain things, " '[y]ou can't forget what you hear and see.' " *Irwin v. Dowd,* 366 U.S. 717, 728 (1961) (internal citation omitted). Or, as the Fifth Circuit has put it:

> [O]nce [certain] statements are made, the damage is hard to undo: Otherwise stated, one cannot unring a bell; after the thrust of the saber it is difficult to say forget the wound; and finally, if you throw a skunk into the jury box, you can't instruct the jury not to smell it.

*United States v. Garza,* 608 F.2d 659, 666 (5th Cir. 1979) (citation and internal quotations omitted).

For over a century, courts throughout this country have recognized that one cannot unring the bell with ***37** respect to statements expressly appealing to race bias against criminal defendants. For example, in *Derrick,* the CCA held that a single question by the prosecutor appealing to jurors' racial biases was reversible error. 272 S.W. at 458. The trial court sustained an objection before the question was answered, but the CCA forcefully explained: "[W]e do not hesitate to say that it was utterly impossible for the court to destroy the virus that was spread by the very asking of the question," which was "so repulsive to every idea of a fair trial as to cause us to have no hesitancy in holding it reversible error." *Id.* at 45. Similarly, over 100 years ago, the Louisiana Supreme Court observed that the effects of a racial appeal during a criminal trial "having been once made, … cannot be counteracted by mere cautionary words of sober reason that may be uttered by the judge." *Louisiana v. Bessa,* 38 So. 985, 987 (La. 1905).

Numerous other decisions are in accord. *See, e.g., Reed v. State,* 99 So. 2d 455, 456 (Miss. 1958) (single remark that the defendant's race suggested future dangerousness was prejudicial); *Dinklage v. State,* 185 S.W.2d 573, 575 (Tex. Crim. App. 1945) (the "harmful effect" of two statements emphasizing the defendant's ethnic heritage "could not have been obliterated by the instruction of the court"); *Cofield v. State,* 82 S.E. 355, 356 (Ga. Ct. App. 1914) (single racial reference was "so prejudicial to the defendant's right to a fair trial as to have required the grant of a mistrial" because it "cannot be held to be effectively cured by a mere instruction on the part of the court to the jury to disregard it").

The age of these precedents reflects the fact that express appeals to racial bias are no longer likely to be ***38** made in open court and are, for the most part, a relic of the past. But the principle that such appeals have no place in a fair trial must, of course, endure. Statements appealing to jurors' racial biases remain uniquely prejudicial, and they need not be repeated to require a new trial. *See, e.g., Bryant v. State,* 25 S.W.3d 924, 925 (Tex. Ct. App. 2000) (trial court abused its discretion in overruling a mistrial motion premised on a single question by a prosecutor that "would have served to aggravate any lingering prejudice against interracial couples among the jurors"); *Cruz,* 981 F.2d at 664 (1992) (reversing conviction based on, *inter alia,* "highly improper and prejudicial" expert testimony concerning the ethnic composition of an area in which drug transactions occurred); *Johnson v. Rose,* 546 F.2d 678, 679 (6th Cir. 1976) (granting writ of habeas corpus because brief racially-charged questions "so tainted the entire trial that it denied … defendants that fundamental fairness which is the essence of due process"); *United States v. Haynes,* 466 F.2d 1260, 1266-67 (5th Cir. 1972) (reversing conviction under plain error review based on a prosecutor's use of a racially-charged phrase during cross-examination; finding it was not enough that the district court had immediately instructed the jury to disregard the prosecutor's statement because of the likelihood that the jury could not disregard such a prejudicial and inflammatory remark).[6]

***39** In Mr. Buck's case, the false stereotype that "blacks are violence prone," *Turner,* 476 U.S. at 35, was expressly and repeatedly validated by a defense expert presented as worthy of appointment and compensation by the court. Far from having a "*de minimis*" effect, there is a reasonable probability that Dr. Quijano's race-as-dangerousness opinion " 'sway[ed] the judgment of jurors' " in favor of death. *Miller-El,* 545 U.S. at 237 (citation omitted).

### *2. The Facts of the Crime Do Not Eclipse the Prejudice Caused by Counsel's Recklessly Exposing Mr. Buck to Racial Bias.*

Equally unsupportable is the District Court's conclusion that the aggravating evidence overrides the harm caused by Dr. Quijano's race-as-dangerousness opinion. *See* JA 263a-265a, 272a-273a. The facts of the crime in this case are undeniably "horrific." JA 262a. Nevertheless, a death sentence was not a foregone conclusion.

This Court's precedent makes clear that a capital prisoner may establish *Strickland* prejudice even when a crime involves appalling facts. In *Porter v. McCollum,* 558 U.S. 30 (2009) (per curiam), Porter broke into his ex-girlfriend's home, shot and killed her and her new boyfriend, and pointed a gun at her daughter's head; Porter had repeatedly called his ex-girlfriend's family to tell them he would kill her. *See Porter v. Att'y Gen.,* 552 F.3d 1260, 1263 (11th Cir. 2008) (per curiam). Notwithstanding these egregious facts, this Court unanimously found that Porter was prejudiced by his counsel's deficient sentencing-phase performance, and that the state court's contrary conclusion was unreasonable within the meaning of ***40** 28

U.S.C. § 2254(d)(1) (an additional barrier to relief not present in Mr. Buck's case). *See Porter,* 558 U.S. at 40-44.

Similarly, in *Williams v. Taylor,* this Court found *Strickland* prejudice where the capital murder was " 'just one act in a crime spree that lasted most of Williams's life,' " 529 U.S. 362, 418 (2000) (Rehnquist, C.J., dissenting) (citation omitted); *see id.* at 367-69, 398-99 (majority opinion). Williams's lack of remorse was evident: in the months after the capital offense, he committed two violent assaults on elderly victims, leaving one in a vegetative state. *See id.* at 367-69; *see also Sears v. Upton,* 561 U.S. 945, 956 (2010) (per curiam); *id.* at 964 (Scalia, J., dissenting) (vacating decision finding no *Strickland* prejudice where the defendant's confession showed a lack of remorse); *Satterwhite,* 486 U.S. at 258-59 (improper future dangerousness testimony prejudicial notwithstanding petitioner's substantial prior history of violence, including shooting a relative and the testimony of eight police officers indicating his reputation for violence).

The Fifth Circuit has similarly recognized that the brutality of a capital crime does not preclude a finding of *Strickland* prejudice, and has elaborated on this principle in the context of Texas cases. In *Walbey v. Quarterman,* 309 F. App'x 795 (5th Cir. 2009), the Court of Appeals granted sentencing relief under *Strickland.* In rejecting Texas's " 'brutality trumps' " argument, the Court noted that it had reviewed " 'scores of § 2254 habeas cases from the death row of Texas,' " which " 'teach an obvious lesson that is frequently overlooked: Almost without exception, the cases we see in which conviction of a capital crime has produced a death sentence arise from extremely egregious, heinous, and shocking facts.' " ***41** *Id.* at 804 (quoting *Gardner v. Johnson,* 247 R3d 551, 563 (5th Cir. 2001)). The Court stressed, however, that Texas law does not permit the imposition of a " 'death sentence solely because the facts are heinous and egregious.' " *Id.* Rather, Texas law - consistent with federal constitutional requirements - channels the jury's discretion by focusing it on " 'the questions of deliberateness and future dangerousness.' " *Id.*

Here, the prosecution's case for death was not overwhelming under Texas law, as there was little record support for a finding that Mr. Buck would be dangerous if sentenced to life imprisonment. The prosecution presented no evidence that Mr. Buck had ever been violent outside the context of romantic relationships with two women, and jurors heard undisputed testimony that it was highly unlikely he would develop such a relationship in prison. *See* JA 73a, 75a; Tr. 192, *Buck,* No. 4:04-cv-03965 (S.D. Tex. June 24, 2005), ECF No. 5-150 p. 24. The prosecution stressed Mr. Buck's lack of remorse in the immediate wake of the crime, but that alone could not prove that he was likely to commit future acts of violence.[7] Moreover, jurors knew Mr. Buck had shown remorse after having time to reflect on his actions. *See* JA 182a-183a (questioning by defense counsel indicating Mr. Buck displayed remorse by crying when witnesses testified).[8] This is significant ***42** because "[r]arely does a defendant have remorse for a crime he is presently committing. Almost always remorse occurs, if at all, sometime after the commission when the defendant had an opportunity to reflect on his criminal deed." *North Carolina v. Parker,* 315 N.C. 249, 257 (1985); *cf. Ex parte Williams,* No. AP-76455, 2012 WL 2130951, at *15 n.76 (Tex. Crim. App. June 3, 2012) ("Remorse can be mitigating because it shows that the defendant has changed - which is a core issue in the future dangerousness inquiry.").

By contrast, Mr. Buck presented substantial evidence that he was not likely to be violent in prison. The jurors heard undisputed testimony from Dr. Lawrence that Mr. Buck's prison records showed that he "did not present any problems in the prison setting," and, indeed, that he had been held in minimum security without incident. Tr. 196, *Buck,* No. 4:04-cv-03965 (S.D. Tex. June 24, 2005), ECF No. 5-116, p. 13. Dr. Lawrence also testified without contradiction that every prison killing in Texas during the prior year was gang-related, and that there was no indication Mr. Buck had ever been a member of a gang or involved in any gang-related activity. Tr. 187, *id.* at p. 4.

The prosecution did not dispute any of this evidence. On cross-examination, the prosecutor elicited only that Dr. Lawrence "cannot guarantee ... that [Mr. Buck] Mali never commit other violent acts." Tr. 213-14, *id.* at 30-31. That, of ***43** course, is not the test, and it would have been irresponsible for any expert to make such a guarantee. The burden was on the prosecution to convince the jury - unanimously and beyond a reasonable doubt - that Mr. Buck was likely to commit future acts of criminal violence. The prosecution had little evidence on that point, which means a finding of prejudice due to trial counsel's deficient performance is more likely, not less. *See Strickland,* 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). Indeed, because there was little evidence that Mr. Buck was likely to be dangerous in prison, Dr. Quijano's false testimony that Black men are more likely to be dangerous was especially prejudicial.

The record of the jury's deliberations confirm that Mr. Buck was prejudiced by his counsel's deficient performance. It took



Appellate Case: 15-3160 Page: 27 Date Filed: 01/11/2017 Entry ID: 4489112

two days for jurors to reach a decision about the special issues, during which time they sent four notes to the trial judge. One of those notes asked: "[C]an we talk about parole with a life imprisonment?" JA 207a.[9] Another note requested the psychological and police reports submitted during the sentencing phase. *See* JA 209a. These included Dr. Quijano's report, which stated that Mr. Buck's "Race. Black" meant an "Increased probability" of future dangerousness. JA 19a, 36a. The jury's deliberations make clear that a death sentence was by no means a foregone conclusion. ***44** *See Parker v. Gladden,* 385 U.S. 363, 365 (1966) (26-hour jury deliberations "indicat[ed] a difference among" the jurors, and supported the conclusion that defendant was prejudiced by extraneous statements made by the bailiff to the jury).

*Strickland* prejudice turns on whether the defendant's trial was fundamentally fair, 466 U.S. at 696, and " 'fairness' cannot be stretched to the point of calling this a fair trial." *Kyles v. Whitley,* 514 U.S. 419, 454 (1995). A defense expert testified that Mr. Buck was more likely to commit future acts of criminal violence, and was therefore more deserving of a death sentence under Texas law, because he is Black. This Court cannot have confidence that the jury would have unanimously found future dangerousness absent Dr. Quijano's race-as-dangerousness opinion. At a minimum, these issues are debatable, requiring the issuance of a COA.

**II. Mr. Buck is Entitled to a COA Because Jurists of Reason Would Find the District Court's Ruling on Mr. Buck's 60(b)(6) Motion Debatable or Wrong.**

As detailed above, reasonable jurists would find the District Court's decision on Mr. Buck's underlying Sixth Amendment claim to be wrong or, at least, debatable. The remaining question is whether Mr. Buck has made the required showing under Rule 60(b)(6) to reopen the federal habeas judgment denying his IAC claim on procedural grounds. Because the facts and circumstances of Mr. Buck's case are uniquely extraordinary, he is entitled to 60(b)(6) relief. The District Court's conclusion to the contrary is wrong (and, at a minimum, debatable), and the Fifth Circuit erred in denying Mr. Buck a COA.

***45 A. Requirements for Relief Under Rule 60(b)(6)**

Rule 60(b)(6) allows a party to seek relief "from a final judgment, order, or proceeding" and request reopening of a case for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). This Rule "vests power in courts ... to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States,* 335 U.S. 601, 615 (1949). Indeed, Rule 60(b)(6) "reflects and confirms the courts' own inherent and discretionary power, 'firmly established in English practice long before the foundation of our Republic,' to set aside a judgment whose enforcement would work inequity." *Plant v. Spendthrift Farm, Inc.,* 514 U.S. 211, 233-34 (1995) (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 244 (1944)).

District courts have jurisdiction to consider Rule 60(b) motions in habeas proceedings where, as here, such motions "attack[] not the substance of the federal court's resolution of the claim on the merits, but some defect in the integrity of the federal habeas proceeding." *Gonzalez,* 545 U.S. at 532. Thus, a Rule 60(b)(6) motion that asserts that "a previous ruling, which precluded a merits determination was in error - for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations" - is proper. *Gonzalez,* 545 U.S. at 532 n.4.

Mr. Buck's Rule 60(b)(6) motion meets this jurisdictional prerequisite because he contends that the District Court's prior denial of his IAC claim on procedural default grounds was in error. Under *Martinez* and *Trevino,* the unreasonable failure of Mr. Buck's ***46** state habeas counsel to present the IAC claim in his initial state habeas application constitutes "cause" for overcoming the procedural default because trial counsel's error was so egregious that no reasonable post-conviction attorney could have overlooked it (much less waited two years after Texas publicly promised to concede error to raise such a claim). *See Detrich v. Ryan,* 740 F.3d 1237, 1246 (9th Cir. 2013) (post-conviction counsel's failure to raise a substantial claim establishes cause under *Martinez); see also ABA: Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases,* American Bar Association (1989) at 11.9.3(c), *available at* http://www.americanbar.org/content/dam/aba/migrated/2011_build/death_penalty_representation/1989guidelines.authcheckdam.pdf ("Postconviction counsel should seek to present to the appropriate court or courts all arguably meritorious issues ....").[10]



Appellate Case: 15-3160 Page: 28 Date Filed: 01/11/2017 Entry ID: 4489112

Because Mr. Buck's Rule 60(b)(6) motion is jurisdictionally proper, the question is whether he has shown " 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez,* 545 U.S. at 535 (quoting *Ackermann v. United States,* 340 U.S. 193, 199 (1950)). In evaluating extraordinariness, "it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." ***47** *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 866 (1988). This fact-intensive inquiry also involves an assessment of the applicant's diligence, the probable merit of the underlying claims, the interest in finality, and other equitable considerations. *See* 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2857 (2d ed. 1995 and Supp. 2004); *Gonzalez,* 545 U.S. at 540 (Stevens, J., dissenting) (collecting relevant factors).

Although this Court has noted that extraordinary "circumstances will rarely occur in the habeas context," *Gonzalez,* 545 U.S. at 535, as explained below - and previously recognized by Texas itself - this is one of those rare cases.

**B. Mr. Buck's Case Is Extraordinary Within the Meaning of Rule 60(b)(6).**

The eleven facts and circumstances proffered by Mr. Buck in his Rule 60(b) motion, JA 283a-285a, are precisely the type of equitable factors this Court has found to justify the reopening of a judgment. Mr. Buck has demonstrated that leaving the prior judgment against him intact risks a profound injustice in his case and undermines public confidence in the rule of law; that he has pursued his claims diligently; that his underlying constitutional claim has probable merit; and that the State's ordinary interest in the finality of a criminal judgment lacks force.

***1. The Risk of Injustice to Mr. Buck***

Mr. Buck faces execution pursuant to a death sentence whose legitimacy is undermined by expert testimony ***48** that Mr. Buck is more deserving of a death sentence under Texas law because he is Black; by "a chronicle of inadequate representation at every stage of the proceedings";[11] and by Texas's failure to keep its promise to concede error in Mr. Buck's case. It is hard to conceive of a set of circumstances more likely to produce an unjust outcome.

As detailed above, and found by the District Court, Dr. Quijano's race-as-dangerousness testimony "lends credence to any potential latent racial prejudice held by the jury." JA 264a. Because "a juror who believes that blacks are violence prone ... might well be influenced by that belief in deciding whether to impose death," *Turner,* 476 U.S. at 35, the introduction of Dr. Quijano's opinion at Mr. Buck's capital sentencing hearing creates a very real risk that the jury's future dangerousness decision - and, ultimately, Mr. Buck's death sentence - was based, at least in part, on a profoundly arbitrary and unconstitutional factor: race. The prospect of an execution tainted by racial bias is a quintessential example of injustice, and one that, respectfully, this Court cannot - and must not - tolerate. *See, e.g., United States v. Webster,* 162 F.3d 308, 356 (5th Cir. 1998) (recognizing that "a long line of Supreme Court precedent admonishes that the guillotine must be as color-blind as is the Constitution") (citations omitted).

The risk of injustice was compounded by the failures of Mr. Buck's trial and state post-conviction counsel. Mr. Buck's trial counsel turned the role of defense counsel on its head by introducing false and unconstitutional evidence ***49** that strongly supported the prosecution's case for death. And, although Mr. Buck's initial post-conviction counsel should have promptly presented trial counsel's error to the CCA for correction, he raised only meritless claims in the initial petition, and waited two years after the Attorney General publicly conceded error in Mr. Buck's case to raise an IAC claim based on the introduction of Dr. Quijano's opinion. By then, it was too late. As a result, no state court reviewed the merits of the IAC claim, and the federal habeas court that considered Mr. Buck's habeas petition in 2006 denied relief on procedural grounds.

Finally, after conceding error in this Court in *Saldaño,* Texas publicly promised to act similarly in six other cases, including Mr. Buck's, which it determined, after a thorough audit, were similar to Mr. Saldaño's. Texas kept its promise in every case except Mr. Buck's. It goes without saying that it is unjust for "virtually identically situated litigants [to be] treated in a needlessly disparate manner." *Roper v. Weaver,* 550 U.S. 598, 601 (2007). In Mr. Buck's case, such disparate treatment is extraordinarily unjust because Mr. Buck is now the only Texas prisoner to face execution pursuant to a death sentence that

Texas has acknowledged is corrupted by racial bias.

### *2. The Risk of Undermining Public Confidence in the Justice System and the Risk of Injustice in Other Cases*

This Court has repeatedly recognized that "active discrimination by litigants on the basis of [race] 'invites cynicism respecting the jury's neutrality and its obligation to adhere to the law.' " *JEB v. Alabama ex rel. T.B.*, 511 U.S. 127, 141 (1994) (quoting *Powers*, 499 U.S. at 412). ***50** When racial discrimination enters the judicial process, it "ratif[ies] and reinforce[s] prejudicial views of the relative" characteristics of Black people and white people, *JEB*, 511 U.S. at 140, and thereby puts "the very integrity of the courts [in] jeopard[y]" *Miller-El*, 545 U.S. at 238. *See also Davis v. Ayala*, 135 S. Ct. 2187, 2208 (2015) (racial discrimination undermines "public confidence in the evenhanded administration of justice").

Dr. Quijano's race-as-dangerousness opinion had exactly this effect. To have such an opinion expressed by a court-appointed "expert," presented by court-appointed defense counsel, suggests that the criminal justice system itself endorses the false but pervasive belief in a link between Black men and violence. The risk of injustice to other cases, and to the rule of law itself, is profound. That is especially true because, notwithstanding this Court's " 'unceasing efforts' to eradicate racial prejudice from our criminal justice system," *McCleskey v. Kemp*, 481 U.S. 279, 309 (1987) (citation omitted), research shows that the perceived link between race and dangerousness persists and continues to jeopardize the fundamental fairness of the criminal justice system. *See, e.g.*, Jennifer L. Eberhardt, et al., *Looking Deathworthy: Perceived Stereotypicality of Black Defendants Predicts Capital Sentencing Outcomes* 384 (Cornell L. Fac. Publ'ns 2006), *available at* http://scholarship.law.cornell.edu/cgi/viewcontent.cgi?article=1040&context=lsrp_papers (finding that after controlling for case and individual differences, "defendants whose appearance was perceived as more stereotypically Black were more likely to receive a death sentence than defendants whose appearance was perceived as less stereotypically Black").

***51** As noted above, in announcing its intention to concede error in Mr. Buck's case, Texas explained that "it is inappropriate to allow race to be considered as a factor in our criminal justice system," and declared that remedial action by the Attorney General was required because "[t]he people of Texas want and deserve a system that affords the same fairness to everyone." JA 213a. When, as here, the State reneges on its promise to correct a death sentence tainted by an "expert" opinion that Black men are more likely to be violent, and when the courts fail to intervene, the legitimacy of the justice system is demeaned. Moreover, permitting flagrantly disparate treatment of similarly-situated persons creates a serious risk of injustice in other cases. As the Court has stressed in discussing the circumstances warranting Rule 60(b)(6) relief: "We must continuously bear in mind that to perform its high function in the best way justice must satisfy the appearance of justice." *Liljeberg*, 486 U.S. at 864 (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)) (internal quotations omitted).

### *3. The Probable Merit of Mr. Buck's Ineffectiveness Claim*

As detailed above, Mr. Buck has presented a meritorious claim of ineffective assistance of counsel. The District Court recognized that Mr. Buck's trial counsel "recklessly exposed his client to the risks of racial prejudice and introduced testimony that was contrary to his client's interests." JA 264a. Mr. Buck was prejudiced by the introduction of this false and deeply inflammatory evidence because there is a reasonable probability of a different outcome had the jury not been tainted by it.

### ***52** *4. Texas's Interest in Finality*

Under the unique circumstances of this case, Texas does not have a strong interest in the finality of the judgment denying federal habeas review of Mr. Buck's IAC claim. Procedural default rules "serve vital purposes," *Murray v. Carrier, 411* U.S. 478, 490 (1986), including "promot[ing] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions," *id.* at 491 (quoting *Reed v. Ross*, 468 U.S. 1, 10-11 (1984)). However, those interests are diminished here for two reasons.

First, judicial review of ineffective assistance of trial counsel claims is essential to the integrity of the criminal justice system

because "[t]he right to the effective assistance of counsel [at trial] is ... the foundation for our adversary system." *Martinez,* 132 S. Ct. at 1317. Thus, this Court has held that equity allows federal habeas courts to overcome the State's interest in enforcing a procedural default if "the initial-review collateral proceeding ... with ineffective counsel[] may not have been sufficient to ensure that proper consideration [is] given to a substantial claim." *Id.* at 1318. Because these are precisely the circumstances presented by Mr. Buck, Texas's interest in the finality of the District Court's pre-*Trevino* denial of habeas relief is significantly diminished.

Second, as Texas itself previously recognized, this is the rare case in which the nature of the trial error - the introduction of express racial bias that not only denies Mr. Buck a fair trial but also compromises the rule of law - renders finality an insufficient ground upon which to justify reliance on procedural default. For these very reasons, Texas rightly promised to concede error in the ***53** six similar-to-Saldaño cases, and it waived procedural defenses in five of those cases. A state has no legitimate interest in a death sentence that it has recognized was corrupted by racial bias. *See Welch v. United States,* 136 S. Ct. 1257, 1266 (2016) (" '[T]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose.' ") (quoting *Mackey v. United States,* 401 U.S. 667, 693 (1971) (Harlan, J.)).

Even though Texas has now reneged on its promise, its sole articulated bases for that reversal of position are that (1) defense counsel (and not the prosecutor) were responsible for the introduction of the unconstitutional race-as-dangerousness testimony and expert report, and (2) initial post-conviction counsel failed to raise a timely Sixth Amendment challenge to trial counsel's conduct. Cert. Opp'n at 12, 16, 20-21. Putting aside the fact that Texas knew what happened at Mr. Buck's trial when it promised not to raise procedural defenses in his case, Texas simply relies on the very interests that *Martinez* holds can be overcome by the presentation of a "substantial" claim of trial counsel ineffectiveness, like the one in this case.

### *5. Mr. Buck's Diligence*

Mr. Buck has diligently pursued relief on his ineffective assistance of counsel claim. When *Trevino* was announced, Mr. Buck had a state habeas application pending before the CCA. Because, under Texas law, the immediate filing of a Rule 60(b) motion in federal court could have precipitated the dismissal of Mr. Buck's pending application, *see Ex parte Hernandez,* No. WR-63, 282-02 (Tex Crim. App. Nov. 25, 2009), Mr. Buck waited until the CCA adjudicated ***54** his application, and then promptly filed his Rule 60(b)(6) motion in federal court. This prompt filing demonstrates Mr. Buck's diligence.

### *6. Conclusion*

For all of the foregoing reasons, Mr. Buck's case presents exactly the kind of rare, unique and extraordinary circumstances for which Rule 60(b)(6) relief was intended.

## C. Reasonable Jurists Could Conclude that the Lower Courts' Denial of Mr. Buck's Application for Rule 60(b)(6) Relief Was Debatable or Wrong.

As the foregoing discussion demonstrates, Mr. Buck's case meets the requirements for Rule 60(b)(6) relief. Although the District Court's contrary conclusion is reviewed under the abuse-of-discretion standard, a district court necessarily abuses its discretion when its judgment is based on an error of law, *see Cooter & Gell v. Hartmax Corp.,* 496 U.S. 384, 386 (1990), or when its analysis is inconsistent with the objectives of the relevant statute or rule, *see Albermarle Paper Co. v. Moody,* 422 U.S. 405, 416 (1975). Here, the District Court made several errors of law, and its analysis is inconsistent with Rule 60(b)'s fundamental objective of providing a vehicle for vacating judgments when justice so requires. *See Liljeberg,* 486 U.S. at 864. At a minimum, reasonable jurists could so conclude, thereby warranting a COA.

First, the District Court addressed the circumstances identified by Mr. Buck individually, JA 257a-260a, but - contrary to the holistic, equitable inquiry mandated by ***55** Rule 60(b) - it never analyzed whether "collectively [Mr. Buck's evidence establishes] extraordinary circumstances." *Ramirez v. United States,* 799 F.3d 845, 851 (7th Cir. 2015); *see Klapprott,* 335 U.S. at 615 (analyzing circumstances collectively in concluding that reopening the judgment was appropriate under Rule



Appellate Case: 15-3160 Page: 31 Date Filed: 01/11/2017 Entry ID: 4489112

60(b)).

Second, although the District Court recognized that "[Mr.] Buck's counsel recklessly exposed his client to the risks of racial prejudice," JA 264a, the court concluded that counsel's conduct did not support Rule 60(b)(6) relief because it had only a "*de minimis*" impact at sentencing, JA259a. However, as detailed in Section I, *infra*, precedent from this Court and numerous other courts - dating back over a century - establishes that statements appealing to jurors' racial biases in a criminal trial are profoundly prejudicial. That prejudice is especially clear when, as here, race-as-dangerousness testimony by a defense expert at a capital sentencing proceeding is at issue.

Third, the District Court improperly disregarded the facts that Texas promised to concede constitutional error in six cases, including Mr. Buck's, and then broke that promise in only Mr. Buck's case. JA 260a. After a "thorough audit" of cases, Texas's Attorney General determined that Mr. Buck's case was one of six that were similar to *Saldaño,* meaning that Dr. Quijano's race-as-dangerousness testimony had fundamentally tainted his death sentence. JA 213a. The District Court erred by disregarding these extraordinary circumstances simply because Texas later changed its mind. Indeed, although Texas now contends there is a distinction between Mr. Buck's case and the others based on defense counsel's role in presenting Dr. Quijano's testimony, that distinction is ***56** irrelevant to the reason Texas identified as requiring it to concede error in the first place, i.e., ensuring public confidence that the judicial system will not tolerate death sentences tainted by racial bias. *See Roper,* 550 U.S. at 601 (noting that "virtually identically situated litigants" should not be "treated in a needlessly disparate manner").

Fourth, the District Court held that the fact that it had previously denied Mr. Buck's IAC claim as procedurally defaulted was immaterial to the Rule 60(b) analysis. JA 259a-260a. However, because "[t]he right to the effective assistance of counsel at trial is a bedrock principle in our justice system," the denial of review of a "substantial" claim of ineffective assistance of trial counsel is "of particular concern." *Martinez,* 132 S. Ct. at 1317 (citing *Gideon v. Wainwright,* 372 U.S. 335, 344 (1963)). This same principle is applicable in the Rule 60(b) context.

To be sure, not every case involving a viable *Martinez* claim may justify reopening the judgment under Rule 60(b). *See Agostini v. Felton,* 521 U.S. 203, 239 (1997) (noting "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)"). But *Martinez* is a relevant factor to be considered as part of the holistic review mandated by this Court's precedent. *See Klapprott,* 335 U.S. at 615; *see also Gonzalez,* 545 U.S. at 537 (examining both a change in decisional law and the distinctive facts of the case to determine whether the petitioner demonstrated an entitlement to 60(b)(6) relief).

In sum, reasonable jurists could surely find that the District Court's denial of Rule 60(b) relief rests on one or more legal errors, or otherwise constitutes an abuse ***57** of discretion. A COA was therefore required. *See Miller-El,* 537 U.S. at 340 ("In the context of th[is] threshold examination ...[,] the issuance of a COA can be supported by *any evidence* demonstrating an entitlement to relief.") (emphasis added).

The Fifth Circuit, however, denied a COA, insisting that Mr. Buck's "IAC claim ... is at least unremarkable as far as IAC claims go," and that the circumstances identified by Mr. Buck were "not extraordinary at all in the habeas context." JA 285a. It stretches credulity to characterize Mr. Buck's IAC claim as run-of-the-mill. To reach that conclusion, the Fifth Circuit had to ignore the racial bias at the heart of Mr. Buck's well as

this Court's repeated admonitions about the profoundly prejudicial nature of racial discrimination in the criminal justice system, which undermines "public confidence in the evenhanded administration of justice." *Davis,* 135 S. Ct. at 2208.

By failing to "give full consideration to the substantial evidence" of extraordinariness presented by Mr. Buck, the Fifth Circuit repeated an error in its COA analysis that this Court previously corrected. *See Miller-El,* 537 U.S. at 341; *see also* Appendix A at 3a (noting that, in the Fifth Circuit, over the last five years, a COA was denied on all claims in capital § 2254 cases by both the district court and the court of appeals 59% of the time; during that same period, a COA was denied on all claims by both the district court and court of appeals in only 6.25% of such cases in the Eleventh Circuit and 0% of such cases in the Fourth Circuit). Furthermore, the Fifth Circuit's denial of a COA conflicts with other evidence that reasonable jurists could disagree with the District Court's decision: ***58** specifically, two appellate courts have concluded that the change in procedural default law caused by *Martinez* and *Trevino* is a relevant factor under Rule 60(b)(6), *see Cox v. Horn,* 757 F.3d

113, 122 (3d Cir. 2014); *Ramirez,* 799 F.3d at 850; and two Justices of this Court previously concluded that a COA was warranted in Mr. Buck's case, *see Buck v. Thaler,* 132 S.Ct. at 37 (Sotomayor, J., joined by Kagan, J., dissenting).

The Fifth Circuit panel also improperly excluded Texas's broken promise from its extraordinariness analysis. Although it acknowledged that such evidence is "odd and factually unusual," it concluded that "extraordinary circumstances are not merely found on the spectrum of common circumstances to unique circumstances." JA 286a. The panel cited no support for this *ipse dixit*, and failed to acknowledge that the difference, if any, between an "odd and factually unusual" circumstance and an "extraordinary" circumstance is precisely the kind of issue that could be debated by reasonable jurists.

The panel further concluded that Mr. Buck failed to demonstrate detrimental reliance on the broken promise. *Id.* However, as explained above, "[i]rrespective of whether the evidence could prove sufficient to support" a claim for relief, *Miller-El,* 537 U.S. at 347, Texas's broken promise is, in and of itself, extraordinary. It leaves Mr. Buck as the only prisoner in Texas to face execution pursuant to a death sentence that Texas had declared to be illegitimate. Such a racially tainted death sentence calls the rule of law itself into question.

***59 CONCLUSION**

For all of the reasons detailed above, Mr. Buck's case is extraordinary, and he has demonstrated his entitlement to relief under Rule 60(b)(6). The lower courts' decisions to the contrary are in error or, at a minimum, debatable amongst jurists of reason. Mr. Buck is entitled to a COA.

***1A CERTIFICATES OF APPEALABILITY IN THE FOURTH, FIFTH AND ELEVENTH CIRCUIT CHART SINCE JANUARY 1, 2011**

**CERTIFICATE OF APPEALABILITY REVIEW**

Undersigned counsel, with research assistance from two students at Columbia Law School, Rachel M. Wagner and Andrew J. Simpson, reviewed electronically available opinions and orders from the United States Courts of Appeals for the Fourth, Fifth and Eleventh Circuits, published and unpublished, on or after January 1, 2011, in which a petitioner sought relief from his or her death sentence under 28 U.S.C. § 2254 and a motion for a Certificate of Appealability ("COA") was decided within the circuit.

Undersigned counsel used the Westlaw database, an online legal research service, to input search terms and retrieve the relevant cases. The first set of search terms were as follows: (1) (capital/s habeas) & 2254 & "certificate #of appealability"; (2) capital /25 2254 & "certificate #of appealability"; (3) (death/2 penalty) & 2254 & "certificate #of appealability"; (4) (capital/s habeas) & 2254/50 "COA"; (5) (capital /25 2254) /50 "COA"; and (6) (death /2 penalty) & 2254 /50 "COA." These searches were narrowed to the Fourth, Fifth and Eleventh Circuits and by the relevant time period.

To ensure an exhaustive search, undersigned counsel also ran a search within a collection of cases tagged by Westlaw as concerning Certificates of Appealability (Westlaw assigns these cases with an internal number - 197k818). Within this section, a broad search for the terms "capital ***2a** & 2254" and "death & 2254" was run in the Fourth, Fifth and Eleventh Circuit Courts, during the relevant time period. This uncovered a small number of additional cases.

After the cases were retrieved, undersigned counsel reviewed the cases to ensure they fit the criteria identified above (i.e., a capital case under 28 U.S.C. § 2254 in which the petitioner was under a death sentence and a motion for a COA was decided). Cases that were false hits were removed from consideration.

In the below chart, any case in which either the district court or the Court of Appeals granted a COA on any claim is listed as "Granted." If no court granted a COA on any claim, the case is listed as "Denied." If the Court of Appeals either granted a COA when the district court had denied a COA on all claims, or if the Court of Appeals expanded a COA granted by the district court, the case is described as "Granted, Circuit." If the district court is the only court that granted a COA, the case is

described as "Granted, District." When a petitioner sought a COA on more than one occasion during the course of his federal appeals and two separate opinions were issued by the Court of Appeals during the relevant time period, those cases are listed separately.

Our review was limited to the electronically available opinions issued by the Court of Appeals during the last five years; the district court rulings were determined based on the procedural history in the Court of Appeals' opinion. With respect to the time frame, the only consideration was whether the Court of Appeals issued its decision within the ***3a** last five years, regardless of whether or not the district court had also issued its decision within the last five years.

Based on the this review, a COA was denied on all claims in 58.9% (76 out of 129) of the cases arising out of the Fifth Circuit, while a COA was only denied in 6.3% (7 out of 111) and 0% of the cases arising out of the Eleventh and Fourth Circuits respectively.

**Fourth Circuit**

| **Name of Movant** | **Circuit** | **Case Citation** | **Granted, and if so by which court?** |
|---|---|---|---|
| Atkins, Randy | 4th | *Atkins v. Lassiter,* 502 F.App'x. 244, 245 (4th Cir. 2012) | Granted, Circuit |
| Barnes, William | 4th | *Barnes v. Joyner,* 751 F.3d 229, 232 (4th Cir. 2014) | Granted, District |
| Elmore, Edward | 4th | *Elmore v. Ozmint,* 661 F.3d 783, 788 (4th Cir. 2011), as amended (Dec. 12, 2012) | Granted, District |
| Fowler, Elrico | 4th | *Fowler v. Joyner,* 753 F.3d 446, 453 (4th Cir. 2014) | Granted, Circuit |
| Gray, Ricky | 4th | *Gray v. Zook,* 806 F.3d 783, 790 (4th Cir. 2015) | Granted, District |
| Gray, Ricky | 4th | *Gray v. Pearson,* 526 F.App'x 331, 332 (4th Cir. 2013) | Granted, District |
| Hurst, Jason | 4th | *Hurst v. Joyner,* 757 F.3d 389, 394 (4th Cir. 2014) | Granted, District |

| | | | |
|---|---|---|---|
| Johnson, Shermaine | 4th | *Johnson v. Ponton,* 780 F.3d 219, 222 (4th Cir. 2015) | Granted, District |
| Porter, Thomas | 4th | *Porter v. Zook,* 803 F.3d 694, 696 (4th Cir. 2015) | Granted, District |
| Prieto, Alfredo | 4th | *Prieto v. Zook,* 791 F.3d 465, 467 (4th Cir. 2015 | Granted, District |
| Richardson, Timothy | 4th | *Richardson v. Branker,* 668 F.3d 128, 137 (4th Cir. 2012) | Granted, District |
| Teleguz, Ivan | 4th | *Teleguz v. Pearson,* 689 F.3d 322, 325 (4th Cir. 2012) | Granted, Circuit |
| | | Total Granted: | 12 (100%) |
| | | Total Denied: | 0 (0%) |

***5a Fifth Circuit**[1]

| Name of Movant | Cir cui t | Case Citation | Granted, and if so by which court? |
|---|---|---|---|
| Adams, Beunka | 5th | *Adams v. Thaler,* 421 F.App'x 322, 324 (5th Cir. 2011) | Granted, District |
| Allen, Guy Len | 5th | *Allen v. Stephens,* 619 F.App'x 280, 281 (5th Cir. 2015) | Denied |
| Allen, Kerry Dimart | 5th | *Allen v. Stephens,* 805 F.3d 617, 622 (5th Cir. 2015) | Denied |
| Ayestas, Carlos Manuel | 5th | *Ayestas v. Thaler,* 462 | Denied |

 © 2016 Thomson Reuters. No claim to original U.S. Government Works. 

| | | | |
|---|---|---|---|
| | | F.App'x 474, 476 (5th Cir. 2012) | |
| Basso, Suzanne Margaret | 5th | *Basso v. Stephens*, 555 F.App'x 335, 337 (5th Cir. 2014) | Denied |
| Battaglia, John David | 5th | *Battaglia v. Stephens*, 621 F.App'x 781, 787 (5th Cir. 2015) | Denied |
| Beatty, Tracy Lane | 5th | *Beatty v. Stephens*, 759 F.3d 455, 458 (5th Cir. 2014) | Denied |
| Bigby, James Eugene | 5th | *Bigby v. Stephens*, 595 F.App'x 350, 351 (5th Cir. 2014) | Denied |
| Blue, Carl Henry | 5th | *Blue v. Thaler*, 665 F.3d 647, 670 (5th Cir. 2011) | Denied |
| Bower, Lester Leroy | 5th | *In re Bower*, 612 F.App'x 748, 750 (5th Cir. 2015) | Denied |
| Brawner, Jan Michael | 5th | *Brawner v. Epps*, 439 F.App'x 396, 398 (5th Cir. 2011) | Denied |
| Braziel, Alvin Avon Jr. | 5th | *Braziel v. Stephens*, No. 15-70018, 2015 WL 7729400, at *1 (5th Cir. Nov. 30, 2015) | Denied |
| Brown, Arthur | 5th | *Brown v. Thaler*, 684 F.3d 482, 486 (5th Cir. 2012) | Denied |
| Burton, Arthur Lee | 5th | *Burton v. Stephens*, 543 F.App'x 451, 453 (5th Cir. 2013) | Denied |
| Butler, Anthony | 5th | *Butler v. Stephens*, No. | Granted, Circuit |

| | | | |
|---|---|---|---|
| | | 09-70003, 2015 WL 5235206, at *4 (5th Cir. Sept. 9, 2015) | |
| Byrom, Michelle | 5th | *Byrom v. Epps*, 518 F.App'x 243, 244 (5th Cir. 2013) | Granted, District |
| Canales, Anibal | 5th | *Canales v. Stephens*, 765 F.3d 551, 559 (5th Cir. 2014) | Granted, District |
| Cantu, Ivan Abner | 5th | *Cantu v. Thaler*, 632 F.3d 157, 162 (5th Cir. 2011) | Granted, District |
| Carter, Tilon Lashon | 5th | *Carter v. Stephens*, 805 F.3d 552, 553 (5th Cir. 2015) | Denied |
| Charles, Derrick Dewayne | 5th | *Charles v. Stephens*, 736 F.3d 380, 383 (5th Cir. 2013) | Granted, District |
| Chester, Elroy | 5th | *Chester v. Thaler*, 666 F.3d 340, 356 fn. 7 (5th Cir. 2011) | Granted, District |
| Clark, Troy | 5th | *Clark v. Stephens*, No. 14-70034, 2015 WL 5730638, at *4 (5th Cir. Oct. 1, 2015) | Granted, Circuit |
| Clark, Troy | 5th | *Clark v. Thaler*, 673 F.3d 410, 413 (5th Cir. 2012) | Granted, District |
| Cobb, Richard Aaron | 5th | *Cobb v. Thaler*, 682 F.3d 364, 367 (5th Cir. 2012) | Granted, District |
| Coleman, Lisa Ann | 5th | *In re Coleman*, 768 F.3d 367, 369 (5th Cir. 2014) | Denied |
| Coleman, Lisa Ann | 5th | *Coleman v. Thaler*, 716 | Denied |

| | | | |
|---|---|---|---|
| | | F.3d 895, 898 (5th Cir. 2013) | |
| Craig, Dale Dwayne | 5th | *Craig v. Cain,* No. 12-30035, 2013 WL 69128, at *1 (5th Cir. Jan. 4, 2013) | Denied |
| Crawford, Charles Ray | 5th | *Crawford v. Epps,* 531 F.App'x 511, 516 (5th Cir. 2013) | Granted, District |
| Crutsinger, Billy Jack | 5th | *Crutsinger v. Stephens,* 576 F.App'x 422, 424 (5th Cir. 2014) | Denied |
| Doyle, Anthony Dewayne | 5th | *Doyle v. Stephens,* 535 F.App'x 391, 392 (5th Cir. 2013) | Denied |
| Druery, Marcus Ray Tyrone | 5th | *Druery v. Thaler,* 647 F.3d 535, 537 (5th Cir. 2011) | Denied |
| Eldridge, Gerald Cornelius | 5th | *Eldridge v. Stephens,* 608 F.App'x 289, 289 (5th Cir. 2015) | Granted, Circuit |
| Escamilla, Licho | 5th | *Escamilla v. Stephens,* 602 F.App'x 939, 940 (5th Cir. 2015) | Granted, Circuit |
| Escamilla, Licho | 5th | *Escamilla v. Stephens,* 749 F.3d 380, 383 (5th Cir. 2014) | Granted, Circuit |
| Feldman, Douglas Alan | 5th | *Feldman v. Thaler,* 695 F.3d 372, 377 (5th Cir. 2012) | Denied |
| Freeman, James Garrett | 5th | *Freeman v. Stephens,* 614 F.App'x 180, 181 (5th Cir. 2015) | Denied |

| | | | |
|---|---|---|---|
| Garcia, Humberto Leal | 5th | *Garcia v. Thaler*, 440 F.App'x 232, 233 (5th Cir. 2011) | Denied |
| Garcia, Gustavo Julian | 5th | *Garcia v. Stephens*, 793 F.3d 513, 515 (5th Cir. 2015) | Denied |
| Garcia, Juan Martin | 5th | *Garcia v. Stephens*, 757 F.3d 220, 221 (5th Cir. 2014) | Denied |
| Garza, Joe Franco | 5th | *Garza v. Stephens*, 575 F.App'x 404, 406 (5th Cir. 2014) | Denied |
| Garza, Manuel | 5th | *Garza v. Stephens*, 738 F.3d 669, 672 (5th Cir. 2013) | Denied |
| Garza, Robert Gene | 5th | *Garza v. Thaler*, 487 F.App'x 907, 908 (5th Cir. 2012) | Denied |
| Gates, Bill Douglas | 5th | *Gates v. Thaler*, 476 F.App'x 336, 337 (5th Cir. 2012) | Denied |
| Gonzales, Ramiro | 5th | *Gonzales v. Stephens*, 606 F.App'x 767, 768 (5th Cir. 2015) | Denied |
| Guevara, Gilmar Alexander | 5th | *Guevara v. Stephens*, 577 F.App'x 364, 366 (5th Cir. 2014) | Denied |
| Gutierrez, Ruben | 5th | *Gutierrez v. Stephens*, 590 F.App'x 371, 373 (5th Cir. 2014) | Denied |
| Hall, Justen | 5th | *Hall v. Thaler*, 504 F.App'x 269, 270 (5th Cir. 2012) | Denied |

| | | | |
|---|---|---|---|
| Harris, Robert Wayne | 5th | *Harris v. Thaler*, 464 F.App'x 301, 303 (5th Cir. 2012) | Denied |
| Haynes, Anthony Cardell | 5th | *Haynes v. Thaler*, 438 F.App'x 324, 326 (5th Cir. 2011) | Granted, Circuit |
| Hearn, Yokamon Laneal | 5th | *Hearn v. Thaler*, 669 F.3d 265, 267 (5th Cir. 2012) | Denied |
| Henderson, James Lee | 5th | *Henderson v. Stephens*, 791 F.3d 567, 577 (5th Cir. 2015) | Granted, District |
| Hernandez, Ramiro | 5th | *Hernandez v. Stephens*, 537 F.App'x 531, 533 (5th Cir. 2013) | Granted, District |
| Hines, Bobby Lee | 5th | *Hines v. Thaler*, 456 F.App'x 357, 358 (5th Cir. 2011) | Denied |
| Hoffman, Jessie | 5th | *Hoffman v. Cain*, 752 F.3d 430, 434 (5th Cir. 2014) | Granted, District |
| Holiday, Raphael Deon | 5th | *Holiday v. Stephens*, 587 F.App'x 767, 790 (5th Cir. 2014) | Denied |
| Ibarra, Ramiro Rubi | 5th | *Ibarra v. Thaler*, 691 F.3d 677, 679 (5th Cir. 2012) | Denied |
| Ibarra, Ramiro Rubi | 5th | *Ibarra v. Stephens*, 723 F.3d 599, 600 (5th Cir. 2013) | Granted, Circuit |
| Jackson, Henry Curtis | 5th | *Jackson v. Epps*, 447 F.App'x 535, 537 (5th Cir. 2011) | Granted, District |

| | | | |
|---|---|---|---|
| Jasper, Ray | 5th | *In re Jasper*, 559 F.App'x 366, 368 (5th Cir. 2014) | Granted, Circuit |
| Jasper, Ray | 5th | *Jasper v. Thaler*, 466 F.App'x 429, 430 (5th Cir. 2012) | Granted, District |
| Jennings, Robert Mitchell | 5th | *Jennings v. Stephens*, 537 F.App'x 326, 339 (5th Cir. 2013) | Denied |
| Johnson, Dexter | 5th | *Johnson v. Stephens*, 617 F.App'x 293, 295 (5th Cir. 2015) | Granted, District |
| Jones, Shelton Denoria | 5th | *Jones v. Stephens*, 612 F.App'x 723, 724 (5th Cir. 2015) | Granted, District |
| Jones, Shelton Denoria | 5th | *Jones v. Stephens*, 541 F.App'x 399, 400 (5th Cir. 2013) | Denied |
| Jordan, Richard | 5th | *Jordan v. Epps*, 756 F.3d 395, 398 (5th Cir. 2014) | Denied |
| Ladd, Robert Charles | 5th | *Ladd v. Stephens*, 748 F.3d 637, 639 (5th Cir. 2014) | Granted, District |
| Lewis, Rickey Lynn | 5th | *Lewis v. Thaler*, 701 F.3d 783, 785 (5th Cir. 2012) | Granted, District |
| Loden, Thomas Edwin | 5th | *Loden v. McCarty*, 778 F.3d 484, 493 (5th Cir. 2015) | Granted, District |
| Manning, Willie Jerome | 5th | *Manning v. Epps*, 688 F.3d 177, 180 (5th Cir. 2012) | Granted, District |
| Masterson, Richard Allen | 5th | *Masterson v. Stephens*, 596 F.App'x 282, 284 (5th Cir. 2015) | Denied |

 © 2016 Thomson Reuters. No claim to original U.S. Government Works. 

| | | | |
|---|---|---|---|
| Matamoros, John Reyes | 5th | *Matamoros v. Stephens,* 783 F.3d 212, 213 (5th Cir. 2015) | Granted, Circuit |
| Matamoros, John Reyes | 5th | *Matamoros v. Stephens,* 539 F.App'x 487, 489 (5th Cir. 2013) | Granted, Circuit |
| Mays, Randall Wayne | 5th | *Mays v. Stephens,* 757 F.3d 211, 212 (5th Cir. 2014) | Denied |
| McCarthy, Kimberly Lagayle | 5th | *McCarthy v. Thaler,* 482 F.App'x 898, 899 (5th Cir. 2012) | Denied |
| McCoskey, Jamie Bruce | 5th | *McCoskey v. Thaler,* 478 F.App'x 143, 145 (5th Cir. 2012) | Granted, District |
| McGowan, Roger Wayne | 5th | *McGowen v. Thaler,* 675 F3d 482, 503 (5th Cir. 2012) | Denied |
| Mendoza, Moises Sandoval | 5th | *Mendoza v. Stephens,* 783 F.3d 203, 209 (5th Cir. 2015) | Granted, District |
| Mitchell, William Gerald | 5th | *Mitchell v. Epps,* 641 F.3d 134, 139 (5th Cir. 2011) | Denied |
| Newbury, Donald Keith | 5th | *Newbury v. Stephens,* 756 F.3d 850, 853 (5th Cir. 2014) | Denied |
| Newbury, Donald Keith | 5th | *Newbury v. Thaler,* 437 F.App'x 290, 292 (5th Cir. 2011) | Denied |
| Osborne, Emerson | 5th | *Osborne v. King,* 617 F.App'x 308, 309 (5th Cir.) | Granted, District |



Appellate Case: 15-3160 Page: 42 Date Filed: 01/11/2017 Entry ID: 4489112

| | | | |
|---|---|---|---|
| Parr, Carroll | 5th | *Parr v. Thaler,* 481 F.App'x 872, 874 (5th Cir. 2012) | Denied |
| Panetti, Scott Louis | 5th | *Panetti v. Stephens,* 727 F.3d 398, 400 (5th Cir. 2013) | Granted, District |
| Paredes, Miguel | 5th | *In re Paredes,* 587 F.App'x 805, 807 (5th Cir. 2014) | Denied |
| Perez, Louis Castro | 5th | *Perez v. Stephens,* 784 F.3d 276, 278 (5th Cir. 2015) | Denied |
| Perez, Louis Castro | 5th | *Perez v. Stephens,* 745 F.3d 174, 176 (5th Cir. 2014) | Denied |
| Pruett, Robert Lynn | 5th | *Pruett v. Thaler,* 455 F.App'x 478, 479 (5th Cir. 2011) | Granted, District |
| Puckett, Larry Matthew | 5th | *Puckett v. Epps,* 641 F.3d 657, 658-59 (5th Cir. 2011) | Granted, Circuit |
| Quintanilla, John Manuel | 5th | *Quintanilla v. Thaler,* 443 F.App'x 919, 920 (5th Cir. 2011) | Denied |
| Rayford, William Earl | 5th | *Rayford v. Stephens,* 622 F.App'x 315, 316 (5th Cir. 2015) | Denied |
| Reed, Rodney | 5th | *Reed v. Stephens,* 739 F.3d 753, 760 (5th Cir. 2014) | Denied |
| Ripkowski, Britt Allen | 5th | *Ripkowski v. Thaler,* 438 F.App'x 296, 300 (5th Cir. | Granted, District |

| | | | |
|---|---|---|---|
| | | 2011) | |
| Rivas, George | 5th | *Rivas v. Thaler*, 432 F.App'x 395, 396 (5th Cir. 2011) | Denied |
| Roberson, Robert Leslie | 5th | *Roberson v. Stephens*, 614 F.App'x 124, 125 (5th Cir. 2015) | Granted, Circuit |
| Roberts, Donnie Lee | 5th | *Roberts v. Thaler*, 681 F.3d 597, 602 (5th Cir. 2012) | Granted, District |
| Ross, Vaughn | 5th | *Ross v. Thaler*, 511 F.App'x 293, 294 (5th Cir. 2013) | Denied |
| Ruiz, Rolando | 5th | *Ruiz v. Stephens*, 728 F3d 416, 418 (5th Cir. 2013) | Denied |
| Russeau, Gregory | 5th | *Russeau v. Stephens*, 559 F.App'x 342, 348 (5th Cir. 2014) | Granted, District |
| Sells, Tommy Lynn | 5th | *Sells v. Stephens*, 536 F.App'x 483, 484 (5th Cir. 2013) | Denied |
| Simmons, Donald Ray | 5th | *Simmons v. Thaler*, 440 F.App'x 237, 238 (5th Cir. 2011) | Granted, Circuit |
| Simmons, Gary Carl | 5th | *Simmons v. Epps*, 654 F.3d 526, 533 (5th Cir. 2011) | Granted, Circuit |
| Simon, Robert | 5th | *Simon v. Epps*, 463 F.App'x 339, 340 (5th Cir. 2012) | Granted, District |
| Sprouse, Kent William | 5th | *Sprouse v. Stephens*, 748 F.3d 609, 615 (5th Cir. | Granted, District |



Appellate Case: 15-3160 Page: 44 Date Filed: 01/11/2017 Entry ID: 4489112

| | | | |
|---|---|---|---|
| | | 2014) | |
| Storey, William | 5th | *Storey v. Stephens,* 606 F.App'x 192, 193 (5th Cir. 2015) | Denied |
| Swain, Mario | 5th | *Swain v. Thaler,* 466 F.App'x 393, 394 (5th Cir. 2012) | Granted, District |
| Tabler, Richard Lee | 5th | *Tabler v. Stephens,* 588 F.App'x 297, 298 (5th Cir. 2014) | Denied |
| Tamayo, Edgar Arias | 5th | *Tamayo v. Stephens,* 740 F.3d 991, 992 (5th Cir. 2014) | Denied |
| Tamayo, Edgar Arias | 5th | *Tamayo v. Stephens,* 740 F.3d 986, 987 (5th Cir. 2014) | Granted, District |
| Tercero, Bernardo Aban | 5th | *Tercero v. Stephens,* 738 F3d 141, 143 (5th Cir. 2013) | Denied |
| Threadgill, Ronnie Paul | 5th | *In re Threadgill,* 522 F.App'x 236, 238 (5th Cir. 2013) | Denied |
| Threadgill, Ronnie Paul | 5th | *Threadgill v. Thaler,* 425 F.App'x 298, 299 (5th Cir. 2011) | Granted, District |
| Trevino, Carlos | 5th | *Trevino v. Thaler,* 449 F.App'x 415, 416 (5th Cir. 2011) | Granted, District |
| Trottie, Willie Tyrone | 5th | *Trottie v. Stephens,* 720 F.3d 231, 237 (5th Cir. 2013) | Denied |



Appellate Case: 15-3160 Page: 45 Date Filed: 01/11/2017 Entry ID: 4489112

| | | | |
|---|---|---|---|
| Trottie, Willie Tyrone | 5th | *Trottie v. Stephens,* 581 F.App'x 436, 437 (5th Cir. 2014) | Denied |
| Turner, Edwin Hart | 5th | *Turner v. Epps,* 12 F.App'x 696, 698 (5th Cir. 2011) | Denied |
| Vasquez, Manuel | 5th | *Vasquez v. Thaler,* 505 F.App'x 319, 323 (5th Cir. 2013) | Denied |
| Villanueva, Jorge | 5th | *Villanueva v. Stephens,* 555 F.App'x 300, 309 (5th Cir. 2014) | Granted, Circuit |
| Ward, Adam Kelly | 5th | *Ward v. Stephens,* 777 F.3d 250, 253 (5th Cir. 2015) | Denied |
| Washington, Willie Terion | 5th | *Washington v. Stephens,* 551 F.App'x 122, 123 (5th Cir. 2014) | Granted, Circuit |
| White, Garcia Glenn | 5th | *In re White,* 602 F.App'x 954, 957 (5th Cir. 2015) | Denied |
| White, Garcia Glenn | 5th | *White v. Thaler,* 522 F.App'x 236, 238 (5th Cir. 2013) | Denied |
| Wilkins, Christopher Chubasco | 5th | *Wilkins v. Stephens,* 560 F.App'x 299, 301 (5th Cir. 2014) | Denied |
| Williams, Clifton Lamar | 5th | *Williams v. Stephens,* 761 F.3d 561, 565 (5th Cir. 2014) | Denied |
| Williams, Perry Eugene | 5th | *Williams v. Stephens,* 575 F.App'x 380, 382 (5th Cir. 2014) | Granted, District |

 © 2016 Thomson Reuters. No claim to original U.S. Government Works. 

| | | | |
|---|---|---|---|
| Wilson, Marvin Lee | 5th | *Wilson v. Thaler,* 450 F.App'x 369, 371 (5th Cir. 2011) | Granted, District |
| Wood, Jeffrey Lee | 5th | *Wood v. Stephens,* 619 F.App'x 304, 305 (5th Cir. 2015) | Granted, Circuit |
| Woodard, Robert Lee | 5th | *Woodard v. Thaler,* 414 F.App'x 675, 676 (5th Cir. 2011) | Denied |
| Young, Clinton Lee | 5th | *Young v. Stephens,* 795 F.3d 484, 490 (5th Cir. 2015), as revised (July 30, 2015) | Denied |
| Yowell, Michael John | 5th | *Yowell v. Thaler,* 545 F.App'x 311, 313 (5th Cir. 2013) | Denied |
| | | Total Granted: | 53 (41.1%) |
| | | Total Denied: | 76 (58.9%) |

***19a Eleventh Circuit**

| **Name of Movant** | **Circuit** | **Case Citation** | **Granted, and if so by which court?** |
|---|---|---|---|
| Adkins, Ricky D. | 11th | *Adkins v. Warden,* Holman CF, 710 F.3d 1241, 1243-44 (11th Cir. 2013) | Granted, Circuit |
| Anderson, Fred | 11th | *Anderson v. Sec'y, Fla. Dep't of Corr.,* 752 F.3d 881, 902 (11th Cir. 2014) | Granted, Circuit |
| Arthur, Thomas D. | 11t | *Arthur v. Thomas,* 739 | Granted, Circuit |

| | | | |
|---|---|---|---|
| | h | F.3d 611, 627 (11th Cir.) | |
| Banks, Chadwick | 11th | *Banks v. Sec'y, Fla. Dep't of Corr.*, 491 F.App'x 966, 969 (11th Cir. 2012) | Granted, District |
| Barwick, Darryl Brian | 11th | *Barwick v. Sec'y, Fla. Dep't of Corr.*, 794 F.3d 1239, 1243 (11th Cir. 2015) | Granted, Circuit |
| Bates, Kayle Barrington | 11th | *Bates v. Sec'y, Fla. Dep't of Corn,* 768 F.3d 1278, 1283 (11th Cir. 2014) | Granted, Circuit |
| Belcher, James | 11th | *Belcher v. Sec'y, Dep't of Corr.*, 427 F.App'x 692, 692 (11th Cir. 2011) | Granted, Circuit |
| Bell, Michael | 11th | *Bell v. Fla. Atty. Gen.*, 461 F.App'x 843, 845 (11th Cir. 2012) | Granted, District |
| Bishop, Joshua Daniel | 11th | *Bishop v. Warden, GDCP,* 726 F.3d 1243, 1253 (11th Cir. 2013) | Granted, Circuit |
| Blanco, Omar | 11th | *Blanco v. Sec'y, Fla. Dep't of Corr.*, 688 F.3d 1211, 1226 (11th Cir. 2012) | Granted, District |
| Bolin, Oscar Ray | 11th | *In re Bolin,* No. 1515710-P, 2016 WL 51227, at *7 fn. 4 (11th Cir. Jan. 4, 2016) | Granted, District |
| Booker, Stephen | 11th | *Booker v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1121, 1122 (11th Cir. 2012) | Granted, Circuit |
| Borden, Jeffrey Lynn | 11th | *Borden v. Allen,* 646 F.3d 785, 807 (11th Cir. 2011) | Granted, District |

| | | | |
|---|---|---|---|
| Boyd, Anthony | 11th | *Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1330 (11th Cir. 2012) | Granted, Circuit |
| Brannan, Andrew H. | 11th | *Brannan v. GDCP Warden*, 541 F.App'x 901, 902 (11th Cir. 2013) | Granted, Circuit |
| Brooks, Christopher Eugene | 11th | *Brooks v. Comm'r, Ala. Dep't of Corr.*, 719 F.3d 1292, 1299 (11th Cir. 2013) | Granted, Circuit |
| Burgess, Raymond | 11th | *Burgess v. Terry*, 478 F.App'x 597, 601 (11th Cir. 2012) | Granted, Circuit |
| Burns, Daniel | 11th | *Burns v. Sec'y, Fla. Dep't of Corr.*, 720 F.3d 1296, 1302 (11th Cir. 2013) | Granted, Circuit |
| Carrillo, Raul | 11th | *Carrillo v. Sec'y, Fla. Dep't of Corr.*, 477 F.App'x 546, 548 (11th Cir. 2012) | Granted, District |
| Chavez, Juan Carlos | 11th | *Chavez v. Sec'y Fla. Dep't of Corr*, 647 F.3d 1057, 1060 (11th Cir. 2011) | Granted, District |
| Conner, John Wayne | 11th | *Conner v. GDCP Warden*, 784 F.3d 752, 756 (11th Cir. 2015) | Granted, Circuit |
| Conner, John Wayne | 11th | *Conner v. Hall*, 645 F.3d 1277, 1286 (11th Cir. 2011) | Granted, Circuit |
| Connor, Seburt Nelson | 11th | *Connor v. Sec'y, Fla. Dep't of Corr.*, 713 F.3d 609, 611 (11th Cir. 2013) | Granted, Circuit |
| Consalvo, Robert | 11t | *Consalvo v. Sec'y for* | Granted, District |

| | | | |
|---|---|---|---|
| | h | *Dep't of Corr.*, 664 F.3d 842, 843 (11th Cir. 2011) | |
| Cook, Andrew Allen | 11t h | *Cook v. Warden, Ga. Diagnostic Prison*, 677 F.3d 1133, 1136 (11th Cir. 2012) | Granted, District |
| Cooper, Richard | 11t h | *Cooper v. Sec'y, Dep't of Corr.*, 646 F.3d 1328, 1330-31(11th Cir. 2011) | Granted, District |
| Cox, Allen W. | 11t h | *Cox v. McNeil*, 638 F.3d 1356, 1360 (11th Cir. 2011) | Granted, Circuit |
| Damren, Floyd | 11t h | *Damren v. Florida*, 776 F.3d 816, 820 (11th Cir. 2015) | Granted, District |
| Downs, Ernest Charles | 11t h | *Downs v. Sec'y, Fla. Dep't of Corr*, 738 F.3d 240, 256 (11th Cir. 2013) | Granted, Circuit |
| Evans, Paul H. | 11t h | *Evans v. Sec'y, Fla. Dep't of Corr.*, 699 F.3d 1249, 1255 (11th Cir. 2012) | Granted, Circuit[2] |
| Evans, Wydell | 11t h | *Evans v. Sec'y, Fla. Dep't of Corr.*, 681 F.3d 1241, 1251 (11th Cir.) | Granted, District |
| Everett, Paul Glen | 11t h | *Everett v. Sec'y, Fla. Dep't of Corr.*, 779 F.3d 1212, 1218 (11th Cir. 2015) | Granted, Circuit |
| Farina, Anthony Joseph | 11t h | *Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F.App'x 966, 970 (11th Cir. 2013) | Granted, Circuit |
| Ferguson, John | 11t h | *Ferguson v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 1315, 1330 (11th Cir. 2013) | Granted, District |



Appellate Case: 15-3160 Page: 50 Date Filed: 01/11/2017 Entry ID: 4489112

| | | | |
|---|---|---|---|
| Ferrell, Eric Lynn | 11th | *Ferrell v. Hall,* 640 F.3d 1199, 1222-23 (11th Cir. 2011) | Granted, Circuit |
| Floyd, Maurice Lamar | 11th | *Floyd v. Sec'y, Fla. Dep't of Corr.,* No. 13-13566, 2016 WL 231484, at *1 (11th Cir. Jan. 20, 2016) | Granted, Circuit |
| Fults, Kenneth Earl | 11th | *Fults v. GDCP Warden,* 764 F.3d 1311, 1312 (11th Cir. 2014) | Granted, Circuit |
| Gissendaner, Kelly Renee | 11th | *Gissendaner v. Seaboldt,* 735 F.3d 1311, 1316 (11th Cir. 2013) | Granted, District |
| Gore, Marshall Lee | 11th | *Gore v. Crews,* 720 F.3d 811, 814 (11th Cir. 2013) | Granted, District |
| Gonzalez, Ricardo | 11th | *Gonzalez v. Sec'y, Fla. Dep't of Corr.,* 629 F.3d 1219, 1220 (11th Cir. 2011) | Granted, District |
| Greene, Daniel | 11th | *Greene v. Upton,* 644 F.3d 1145, 1153 (11th Cir. 2011) | Granted, Circuit |
| Griffin, Michael Allen | 11th | *Griffin v. Sec'y, Fla. Dep't of Corr.,* 787 F.3d 1086, 1087 (11th Cir. 2015) | Denied |
| Grim, Norman Mearle | 11th | *Grim v. Sec'y, Fla. Dep't of Corr.,* 705 F.3d 1284, 1286 (11th Cir. 2013) | Denied |
| Gudinas, Thomas Lee | 11th | *Gudinas v. Sec'y, Dep't of Corr.,* 436 RApp'x 895, 896 (11th Cir. 2011) | Granted, Circuit |

| | | | |
|---|---|---|---|
| Hardy, John Milton | 11t<br>h | *Hardy v. Comm'r, Ala. Dep't of Corr.*, 684 F.3d 1066, 1073 (11th Cir. 2012) | Granted, District |
| Harvey, Harold Lee | 11t<br>h | *Harvey v. Warden, Union Corr. Inst*, 629 R3d 1228, 1237 (11th Cir. 2011) | Granted, District |
| Heath, Ronald Palmer | 11t<br>h | *Heath v. Sec'y, Fla. Dep't of Corr.*, 717 F.3d 1202, 1204 (11th Cir. 2013) | Granted, District |
| Henry, George Russell | 11t<br>h | *Henry v. Warden, Ga. Diagnostic Prison*, 750 F.3d 1226, 1230 (11th Cir. 2014) | Granted, District |
| Hitchcock, James | 11t<br>h | *Hitchcock v. Sec'y, Fla. Dep't of Corr.*, 745 F.3d 476, 480 (11th Cir. 2014) | Granted, Circuit |
| Hittson, Travis Clinton | 11t<br>h | *Hittson v. GDCP Warden*, 759 F.3d 1210, 1217 (11th Cir. 2014) | Granted, Circuit |
| Holland, Albert Jr. | 11t<br>h | *Holland v. Florida*, 775 F.3d 1294, 1305 (11th Cir. 2014) | Granted, Circuit |
| Holsey, Robert Wayne | 11t<br>h | *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1231 (11th Cir. 2012) | Granted, District |
| Howell, Paul A. | 11t<br>h | *Howell v. Sec'y, Fla. Dep't of Corn*, 730 F.3d 1257, 1260 (11th Cir. 2013) | Granted, District |
| Hunt, Gregory | 11t<br>h | *Hunt v. Comm'r, Ala. Dep't of Corr.*, 666 F.3d 708, 720 (11th Cir. 2012) | Granted, District |
| Israel, Connie Ray | 11t | *Israel v. Sec'y, Fla. Dep't* | Granted, District |

| | | | |
|---|---|---|---|
| | h | *of Corn,* 517 F.App'x 694, 695 (11th Cir. 2013) | |
| Johnson, Marcus Ray | 11th | *Johnson v. Warden, Ga. Diagnostic & Classification Prison,* 805 F.3d 1317, 1323 (11th Cir. 2015) | Denied |
| Johnson, Marcus Ray | 11th | *Johnson v. Warden,* 808 F.3d 1275, 1283 (11th Cir. 2015) | Denied |
| Johnson, Terrell M. | 11th | *Johnson v. Sec'y, Dep't of Corr.,* 643 F.3d 907, 911 (11th Cir. 2011) | Granted, Circuit |
| Jones, Brandon Astor | 11th | *Jones v. GDCP Warden,* 753 F.3d 1171, 1181 (11th Cir. 2014) | Granted, District |
| Jones, Randall Scott | 11th | *Jones v. Sec'y, Dep't of Corr.,* 644 F.3d 1206, 1208 (11th Cir. 2011) | Granted, Circuit |
| Kilgore, Dean | 11th | *Kilgore v. Sec'y, Fla. Dep't of Corr.,* 805 F.3d 1301, 1308-09 (11th Cir. 2015) | Granted, Circuit |
| Kuenzel, William Earnest | 11th | *Kuenzel v. Comm'r, Ala. Dep't of Corr.,* 690 F.3d 1311, 1314 (11th Cir. 2012) | Granted, District |
| Lambrix, Cary Michael | 11th | *Lambrix v. Sec'y, Fla. Dep't of Corr.,* 756 F.3d 1246, 1258 (11th Cir.) | Denied |
| Lawrence, Jonathan Huey | 11th | *Lawrence v. Sec'y, Fla. Dep't of Corr.,* 700 F.3d 464, 476 (11th Cir. 2012) | Granted, Circuit |
| Lee, Jeffrey | 11t | *Lee v. Comm'r, Ala. Dep't* | Granted, District |

| | | | |
|---|---|---|---|
| | h | *of Corr.*, 726 F.3d 1172, 1191 (11th Cir. 2013) | |
| Lucas, Harold Gene | 11t h | *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) | Granted, District |
| Lucas, Daniel Anthony | 11t h | *Lucas v. Warden, Ga. Diagnostic & Classification Prison*, 771 F.3d 785, 790 (11th Cir. 2014) | Granted, Circuit |
| Lugo, Daniel | 11t h | *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1201 (11th Cir. 2014) | Granted, Circuit |
| Lynch, Richard E. | 11t h | *Lynch v. Sec'y, Fla. Dep't of Corr.*, 776 F.3d 1209, 1217 (11th Cir. 2015) | Granted, Circuit |
| Madison, Vernon | 11t h | *Madison v. Comm'r, Ala. Dep't of Corr*, 677 F.3d 1333, 1335 (11th Cir. 2012) | Granted, Circuit |
| Madison, Vernon | 11t h | *Madison v. Comm'r, Ala. Dep't of Corr*, 761 F.3d 1240, 1241 (11th Cir. 2014) | Granted, Circuit |
| McNabb, Torrey Twane | 11t h | *McNabb v. Comm'r, Ala. Dep't of Corr.*, 727 F.3d 1334, 1335 (11th Cir. 2013) | Granted, District |
| McWilliams, James E. | 11t h | *McWilliams v. Comm'r, Ala. Dep't of Corr.*, No. 13-13906, 2015 WL 8950641, at *1 (11th Cir. Dec. 16, 2015) | Granted, Circuit |
| Melton, Antonio Lebaron | 11t h | *Melton v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1234, 1235 (11th Cir.) | Denied |

| | | | |
|---|---|---|---|
| Mendoza, Marbel | 11t<br>h | *Mendoza v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1213, 1215 (11th Cir. 2014) | Granted, Circuit |
| Morris, Robert | 11t<br>h | *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1125 (11th Cir. 2012) | Granted, Circuit |
| Morton, Alvin Leroy | 11t<br>h | *Morton v. Sec'y, Fla. Dep't of Corr*, 684 F.3d 1157, 1165 (11th Cir. 2012) | Granted, Circuit |
| Myers, Robin D. | 11t<br>h | *Myers v. Allen*, 420 F.App'x 924, 927 (11th Cir. 2011) | Granted, District |
| Owen, Donald Eugene | 11t<br>h | *Owen v. Fla. Dep't of Corn, 686* F3d 1181, 1191-92 (11th Cir. 2012) | Granted, District |
| Pietri, Norberto | 11t<br>h | *Pietri v. Fla. Dep't of Corr.*, 641 F.3d 1276, 1279 (11th Cir. 2011) | Granted, District |
| Ponticelli, Anthony John | 11t<br>h | *Ponticelli v. Sec'y, Fla. Dep't of Corr.*, 690 F.3d 1271, 1291 (11th Cir. 2012) | Granted, District |
| Pooler, Leroy | 11t<br>h | *Pooler v. Sec'y, Fla. Dep't of Corr.*, 702 F.3d 1252, 1268 (11th Cir. 2012) | Granted, District |
| Preston, Robert Anthony | 11t<br>h | *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 451 (11th Cir. 2015) | Granted, Circuit |
| Price, Christopher Lee | 11t<br>h | *Price v. Allen*, 679 F.3d 1315, 1319 (11th Cir. 2012) | Granted, Circuit |

| | | | |
|---|---|---|---|
| Puiatti, Carl | 11th | *Puiatti v. Sec'y, Fla. Dep't of Corr.*, 732 F.3d 1255, 1259 (11th Cir. 2013) | Granted, Circuit |
| Ray, Domenique | 11th | *Ray v. Ala. Dep't of Corr.*, No. 13-15673, 2016 WL 66534, at *3 (11th Cir. Jan. 6, 2016) | Granted, Circuit |
| Reese, John Loveman | 11th | *Reese v. Sec'y, Fla. Dep'tof Corr.*, 675 F.3d 1277, 1286 (11th Cir. 2012) | Granted, District |
| Roberts, David Lee | 11th | *Roberts v. Comm'r, Ala. Dep't of Corr.*, 677 F.3d 1086, 1088 (11th Cir. 2012) | Granted, Circuit |
| Rodriguez, Manuel Antonio | 11th | *Rodriguez v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1277, 1280 fn. 5 (11th Cir. 2014) | Granted, District |
| Rose, Milo A. | 11th | *Rose v. McNeil*, 634 F.3d 1224, 1240 (11th Cir. 2011) | Granted, Circuit |
| Rozzelle, Roger Allen | 11th | *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1009 (11th Cir. 2012) | Granted, District |
| Samra, Michael Brandon | 11th | *Samra v. Warden, Donaldson Corr. Facility*, No. 14-14869, 2015 WL 5204387, at *11 (11th Cir. Sept. 8, 2015) | Granted, Circuit |
| San Martin, Pablo | 11th | *San Martin v. McNeil*, 633 F.3d 1257, 1265 (11th Cir. 2011) | Granted, District |
| Smith, Joseph Clifton | 11t | *Smith v. Campbell*, 620 | Granted, Circuit |

| | | | |
|---|---|---|---|
| | h | F.App'x 734, 745 (11th Cir. 2015) | |
| Smith, Ronald Bert | 11th | *Smith v. Comm'r, Ala. Dep't of Corr.*, 703 F.3d 1266, 1268 fn. 1 (11th Cir. 2012) | Granted, Circuit |
| Smithers, Samuel | 11th | *Smithers v. Sec'y, Fla. Dep't of Corr.*, 501 F.App'x 906, 907 (11th Cir. 2012) | Granted, Circuit |
| Stewart, Kenneth A. | 11th | *Stewart v. Sec'y, Fla. Dep't of Corr.*, No. 14-11238, 2015 WL 9301490, at *3 (11th Cir. Dec. 22, 2015) | Granted, Circuit |
| Tanzi, Michael Anthony | 11th | *Tanzi v. Sec'y, Fla. Dep't of Corr.*, 772 F.3d 644, 650 (11th Cir. 2014) | Granted, Circuit |
| Taylor, Michael Shannon | 11th | *Taylor v. Gulliver*, No. 13-11179, 2015 WL 4645228, at *1 (11th Cir. Aug. 6, 2015) | Granted, Circuit |
| Taylor, Perry Alexander | 11th | *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1293 (11th Cir. 2014) | Granted, Circuit |
| Terrell, Brian Keith | 11th | *Terrell v. GDCP Warden*, 744 F.3d 1255, 1258 (11th Cir.) | Granted, Circuit |
| Trepal, George James | 11th | *Trepal v. Sec'y, Fla. Dep't of Corr., 684* F3d 1088, 1107 (11th Cir. 2012) | Granted, District |
| Troy, John | 11th | *Troy v. Sec'y, Fla. Dep't of Corr.*, 763 F.3d 1305, 1312 (11th Cir. 2014) | Granted, Circuit |

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works.


Appellate Case: 15-3160 Page: 57 Date Filed: 01/11/2017 Entry ID: 4489112

| | | | |
|---|---|---|---|
| Waldrip, Tommy Lee | 11th | *Waldrip v. Humphrey*, 532 F.App'x 878, 879 (11th Cir. 2013) | Granted, Circuit |
| Walls, Frank A. | 11th | *Walls v. Buss*, 658 F.3d 1274, 1277 (11th Cir. 2011) | Granted, District |
| Wellons, Marcus A. | 11th | *Wellons v. Warden, Ga. Diagnostic & Classification Prison*, 695 F.3d 1202, 1206 (11th Cir. 2012) | Granted, Circuit |
| White, Leroy | 11th | *White v. Jones*, 408 F.App'x 292, 293 (11th Cir. 2011) | Denied |
| Williamson, Dana | 11th | *Williamson v. Fla. Dep't of Corr.*, 805 F.3d 1009, 1015 (11th Cir. 2015) | Granted, District |
| Wilson, Marion Jr. | 11th | *Wilson v. Warden, Ga. Diagnostic Prison*, 774 F.3d 671, 677 (11th Cir. 2014) | Granted, District |
| Wright, Joel Dale | 11th | *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1260 (11th Cir. 2014) | Granted, District |
| Zack, Michael Duane | 11th | *Zack v. Tucker*, 666 F.3d 1265, 1267 (11th Cir. 2012) | Granted, District |
| | | Total Granted: | 104 (93.7%) |
| | | Total Denied: | 7 (6.3%) |

Footnotes

1 *See* J. W. Swanson et al., *Violence and Psychiatric Disorder in the Community: Evidence from the Epidemiologic Catchment Area*

*Surveys,* 41 Hosp. & Comm. Psych., 761-70 (1990) (when controlling for socioeconomic status, correlations between race and violence disappear); *see also* J. Monahan et. al., Rethinking Risk Assessment: The MacArthur Study of Mental Disorder and Violence, Oxford Univ. Press (2001) (same).

2 James Kimberly, Death Penalties of 6 in Jeopardy: Attorney General Gives Result of Probe into Race Testimony, Hou. Chron., June 10, 2000, at Al, *available at* https://advance.lexis.com/api/permalink/0147fb80-a512-4a2b-88ff-9a6f07f184d9/?context=1000516; Jim Yardley, Racial Bias Found in Six More Capital Cases, N.Y. Times, June 10, 2000, *available at* http://www.nytimes.com/2000/06/ll/us/racial-bias-found-in-six-more-capital-cases.html. Thus, contrary to the Fifth Circuit's suggestion, *see* JA 277a, the record makes clear that Texas promised to treat Mr. Buck's case similarly to *Saldaño,* i.e., a case in which it conceded error based on Dr. Quijano's testimony in federal habeas. Mr. Buck's Rule 60(b) motion pled these facts, thus any material factual disputes about the details of Texas's promise are properly addressed at an evidentiary hearing.

3 *See* Opinion and Order at 3, *Blue v. Johnson,* No. 4:99-cv-00350 (S.D. Tex. Sept. 29, 2000), ECF No. 29; Order at 1, *Alba v. Johnson,* No. 4:98-cv-221 (E.D. Tex. Sept. 25, 2000), ECF No. 31; Order at 1, *Garcia v. Johnson,* No. 1:99-cv-00134 (E.D. Tex. Sept. 7, 2000), ECF No. 36; Order at 3, *Broxton v. Johnson,* No. H-00-CV-1034, ECF No. 25; Order at 11, *Gonzales v. Cockrell,* No. 7:99-cv-00072 (W.D. Tex. Dec. 19, 2002), ECF No. 84.

4 *See* Opinion and Order at 15-17, *Blue v. Johnson,* No. 4:99-cv-00350 (S.D. Tex. Sept. 29, 2000), ECF No. *29; Alba v. Johnson,* No. 00-40194, 2000 WL 1272983, at *1 (5th Cir. Aug. 21, 2000); Order at 1, *Alba v. Johnson,* No. 4:98-cv-221 (E.D. Tex. Sept. 25, 2000), ECF No. 31; Order at 1, *Garcia v. Johnson,* No. 1:99-cv-00134 (E.D. Tex. Sept. 7, 2000), ECF No. 36; Resp. to Suppl. Pet. and Confession of Error by TDCJ-ID, *Garcia,* No. 1:99-cv-00134 (E.D. Tex. Aug. 18, 2000), ECF No. 35; *Broxton v. Johnson,* No. H-00-CV-1034, 2001 U.S. Dist. LEXIS 25715, at *15 (S.D. Tex. Mar. 28, 2001); Final J. at 1, *Gonzales v. Cockrell,* No. 7:99-cv-00072 (W.D. Tex. Dec. 19, 2002), ECF No. 84.

5 Respondent's Answer at 17-18, 20, *Buck v. Dretke,* No. 04-03965 (S.D. Tex. Sept. 6, 2005), ECF No. 6; Thaler's Reply to Buck's Mot. for Relief from J. and Mot. for Stay of Execution at 10, 16-17, 19-20, *Buck v. Thaler,* 04-03965 (S.D. Tex. Sept. 9, 2011), ECF No. 30; Resp. in Opp'n to Appl. for Cert, of Appealability at 22-25, 28-30, *Buck v. Thaler,* No. 11-70025 (5th Cir. Sept. 14, 2011), ECF No. 511602284; Br. in Opp'n at 12-13, 18-20, *Buck v. Thaler,* Nos. 11-6391 & 11A297 (U.S. Sept. 15, 2011).

6 The same principle has been recognized in the civil context. *See Texas Emp'rs Ins. Ass'n v. Guerrero,* 800 S.W.2d 859, 863 (Tex. App. 1990) ("While most improper jury arguments can be cured by objection and instruction to disregard, appeals to racial prejudice are one of the exceptional kinds of argument that are considered incurable.").

7 Lack of remorse evidence is relevant, but not dispositive, on the future dangerousness question under Texas law. *See, e.g., Dewberry v. State,* 4 S.W.3d 735, 743 (Tex. Crim. App. 1999) ("Future dangerousness may be supported in part by evidence of a lack of remorse or contrition.").

8 Mr. Buck's remorse is also confirmed by the declaration filed by another victim, his step-sister Phyllis Taylor, in state post-conviction proceedings. *See* Declaration of Phyllis Taylor, Exh. 76 to Application for Post-Conviction Writ of Habeas Corpus at 3, *Ex parte* ***Duane*** *Edward* ***Buck,*** No. WR-57004-03, 2013 WL 6081001 (Tex. Crim. App. Mar. 13, 2013). In her declaration, Ms. Taylor attests that, while awaiting trial, Mr. Buck sought and received her forgiveness.

9 The jury was not given any information about parole. Under Texas law at the time of Mr. Buck's offense, if sentenced to life imprisonment, Mr. Buck would not have been eligible for parole for at least 40 years, at age 74. *See* Tr. 124-26, *Buck,* No. 4:04-cv-03965 (S.D. Tex. June 24, 2005), ECF No. 5-114, pp.17-19.

10 Texas has not contested state habeas counsel's ineffectiveness. Although, as detailed above, state habeas counsel's failure is apparent, to the extent factual questions as to this (or any other issue) remain, they can and should be resolved at an evidentiary hearing.

11 *Ex parte Buck,* 418 S.W.3d at 98.

1 In *Charles v. Stephens,* the Fifth Circuit held that it had jurisdiction over petitioner's motion, although the district court denied his request for a COA, because a denial of a motion under 18 U.S.C. § 3599(f) is an appealable order and not subject to the COA requirement. 612 F.App'x 214, 217 (5th Cir. 2015). Therefore, even though the district court "denied" petitioner's COA, we have not listed this case in the chart or counted it in the tally of cases.

2 The district court granted Mr. Evans habeas relief from his death sentence. The State appealed this ruling and the district court granted Mr. Evans a COA on two of his claims. The Court of Appeals expanded Mr. Evan's COA. Because petitioner's sentencing



Appellate Case: 15-3160 Page: 59 Date Filed: 01/11/2017 Entry ID: 4489112

relief was not final when his COA was granted, we counted Mr. Evans as being under a death sentence and thus meeting the criteria for inclusion.

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

EXHIBIT B

*Nelson v. United States of America*, No 15-3160
Unopposed Motion to Hold Appeal in Abeyance

**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

No: 16-1467

David Barnett

Appellee

v.

Don Roper

Appellant

---

Appeal from U.S. District Court for the Eastern District of Missouri - St. Louis
(4:03-cv-00614-ERW)

---

**ORDER**

On the court's own motion, this case is removed from the court's oral argument calendar for Thursday, January 12, 2017. It is further ordered that the appeal will be held in abeyance pending the Supreme Court of the United States' decision in Buck v. Davis, No. 15-8049 (2016).

December 22, 2016

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

/s/ Michael E. Gans