**No. 15-3160**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

---

Keith D. Nelson,

Appellant,

vs.

United States of America,

Appellees.

---

On Appeal from the United States District Court
for the Western District of Missouri
Case No. 4:04-8005-cv-W (FJG)

---

# APPELLANT'S PETITION FOR REHEARING

---


*/s/Paula K. Harms*
Jon M. Sands
Federal Public Defender
Paula K. Harms
Assistant Federal Public Defender
Capital Habeas Unit
850 W. Adams Suite 201
Phoenix, Arizona 85007
602-382-2816 telephone
602-889-3960 facsimile
Paula_Harms@fd.org

*/s/ David A. Ruhnke*
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
973-744-1000 telephone
973-746-1490 facsimile
dr@ruhnkeandbarrett.com

**TABLE OF CONTENTS**

Table of Contents ........................................................................................i

Table of Authorities ..................................................................................... ii

I. Basis for the rehearing request ....................................................................1

II. Relevant procedural background..................................................................3

III. Panel decision conflict with *Jae Lee v. United States*....................................7

IV. Need for a COA in light of *Lee v. United States*........................................11

Conclusion....................................................................................................13

Certificate of Compliance ...........................................................................15

Certificate of Service ...................................................................................16

**TABLE OF AUTHORITIES**

## Federal Cases

*Barefoot v. Estelle*, 463 U.S. 880 (1983) .............................................................. 13

*Gomez v. Quarterman*, 529 F.3d 322 (5th Cir. 2008) ............................................13

*Johnson v. United States*, 860 F. Supp. 663 (N.D. Iowa 2012).................................6

*Lee v. United States*, 582 U.S. ___ (2017) ..................................................... 6, 7, 11

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ............................................................11

*Nelson v. United States*, 97 F. Supp. 3d 1131 (W.D. Mo. 2015) ................... *passim*

*Nelson v. United States*, 297 F. App'x 563 (8th Cir. 2008) ............................... 4, 12

*Nelson v. United States*, No. 4:04-CV-8005-FJG, 2007 WL 1115208 (W.D. Mo. Apr. 13, 2007) ............................................................................................... 12

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................................ 7, 12

## Federal Statutes

18 U.S.C. § 17 (2012) ............................................................................................1

18 U.S.C. § 2241(c) (2012) ..................................................................................... 3

18 U.S.C. § 2245 (2012) ......................................................................................... 3

18 U.S.C. § 2255 ........................................................................................... *passim*

18 U.S.C. § 3559(d) (2012) ..................................................................................... 3



Appellate Case: 15-3160 Page: 3 Date Filed: 06/28/2017 Entry ID: 4552055

## I. Basis for the rehearing request

Keith Nelson was sentenced to death in the Western District of Missouri for interstate kidnapping resulting in death. Prior to trial, Mr. Nelson's attorney, Patrick Berrigan, advised him that there was no viable defense to the charges against him. He therefore counseled Mr. Nelson to enter a guilty plea, proceed to trial only on the sentencing phase of his capital trial, and argue that his plea established an acceptance of responsibility for purposes of punishment. Because Mr. Nelson would be pleading guilty to a capital offense, that conviction would necessarily expose him to one of two mandatory sentences: death, or life imprisonment without possibility of release. Accepting his lawyer's representation that he had no defense to the charges, Mr. Nelson followed his advice and pled guilty, thereby waiving his right to a jury determination on the charges he faced.

The advice on which this plea was based was erroneous. Mr. Nelson did in fact have a defense to the capital charges, had his trial counsel done the necessary investigation: He could have presented an affirmative defense of insanity under 18 U.S.C. § 17. Evidence that Mr. Nelson was suffering from a severe mental disease or defect at the time of the offense has now been established through expert testimony provided at a subsequent post-conviction proceeding. Indeed, based on that and other evidence, the district court found that trial counsel's paltry investigation into his client's mental health constituted deficient performance on

several grounds.[1] *See Nelson v. United States*, 97 F. Supp. 3d 1131, 1149 (W.D. Mo. 2015) (post-hearing order finding "Berrigan's performance regarding investigation and presentation of the mental health testimony to be deficient").

Lawyer Berrigan's advice to plead guilty was thus not an informed strategic decision; it was made in a vacuum, without the benefit of an investigation into Mr. Nelson's mental health. Consequently, Mr. Berrigan incorrectly advised Mr. Nelson that he had no defense to the charges against him. As a result of his lawyer's erroneous advice, Mr. Nelson forfeited his right to a jury trial. Had he been properly advised of the availability of a defense, Mr. Nelson would not have entered a plea at all but would have availed himself of the applicable defense and gone to trial, taking a chance that he might never reach the penalty phase that his guilty plea ensured.

It has now become clear that counsel's failure to properly advise Mr. Nelson on his mental health defense was prejudicial. Last week the Supreme Court issued an opinion explaining that where a defendant relies on erroneous advice in deciding to forgo trial and accept a plea, the prejudice prong of the ineffectiveness

[1]Although this ruling is directly relevant to the ineffective assistance claim regarding the plea, that claim was not before the district court at the hearing. As is explained below, that court initially denied Mr. Nelson's § 2255 motion, but this Court remanded his case for an evidentiary hearing on a limited number of claims, including a claim that trial counsel failed to conduct a competent mental health investigation for purposes of the penalty phase proceedings.

claim does not depend on a probability that the outcome of the trial would have been different – i.e., that he would not have been convicted. Rather, the issue is whether a properly advised defendant would have exercised his right to trial by jury. Given that ruling, and the facts already established in this case, this Court should grant a Certificate of Appealability and allow Mr. Nelson to proceed on his claim that his lawyer's erroneous advice led him to plead guilty and that he otherwise would have taken his chances at trial.

## II. Relevant procedural background

When he filed his post-conviction motion pursuant to 28 U.S.C. § 2255, Mr. Nelson sought to vacate his conviction on the ground (among other grounds) that, in accepting a plea,[2] he received ineffective assistance of counsel in violation of the Sixth Amendment. In its response to the § 2255, while contending that the record plea colloquy was constitutionally sufficient, the Government noted the necessity

[2]Mr. Nelson did not have to plead to a charge the Government dropped as part of the agreement – that he had traveled across state lines with the intent to engage in a sex act with a female under the age of twelve which resulted in the death of the victim in violation of 18 U.S.C. §§ 2241(c), 2245, and 3559(d). Given that evidence in support of that charge came in anyway, and that no juror found that Nelson's plea and admission of guilt was at all mitigating, he did not get much in the bargain. But as the *Lee* case makes clear, the issue before a reviewing court is not the strength of any purported exchange, but what drove the defendant's decision to plead. *See infra*. Here that was the erroneous, unfounded conclusion of Mr. Nelson's trial counsel that he had no defense to make at the guilt phase of trial.

of taking evidence on the question of how Mr. Nelson reached the decision to plead and waive his trial jury rights. *Government's Suggestions in Opposition to § 2255 Motion*, Doc. at 46-47. The district court, however, initially denied Mr. Nelson's § 2255 motion in its entirety without an evidentiary hearing. The order did not specifically address Mr. Nelson's IAC claim regarding his guilty plea, though it did indicate generally that the court was rejecting the Government's suggestion that evidence be taken on questions relevant to Mr. Nelson's mental health, simply holding instead that the defendant had been properly advised and that any decisions were strategic. The district court then merely summarily denied the entire § 2255 motion in a two-page order. *Order*, Doc. 61, Nov. 21, 2006.

Mr. Nelson subsequently sought a Certificate of Appealability ("COA") on all of the claims raised in his § 2255 motion. A panel of this Court granted the request for a COA, in part, and remanded his case to the district court for an evidentiary hearing on six ineffective assistance of counsel ("IAC") claims principally concerning trial counsel's failure to adequately investigate and present mitigating evidence.[3] This Court, however, denied a COA on the IAC claim concerning the guilty plea.

After taking evidence, the district court reversed itself on the question of mental health, finding that trial counsel had in fact rendered deficient

---

[3]*Nelson v. United States*, 297 Fed. Appx. 563 (8th Cir. 2008).

performance.[4] Although the remand order in the case did not encompass Mr. Nelson's claim that trial counsel was ineffective for advising him to plead guilty—and therefore the district court did not revisit its previous denial of that claim—evidence relevant to that claim was developed during the course of the § 2255 hearing. Specifically, Dr. Xavier Amador, a forensic and clinical psychologist retained for the § 2255 proceedings, conducted an extensive evaluation of Mr. Nelson and testified that at the time of the offense, Mr. Nelson suffered from a severe mental disease or defect and was unable to appreciate the nature and quality or the wrongfulness of his acts. Exh. 5 at 443-45. (All "Exh." citations are to exhibits included in the Appendix to Nelson's Application for COA, Docket Entry ID: 4372433, filed on 2/29/16.) Dr. Amador also prepared an expert report, submitted into evidence at the hearing, setting out his expert opinion on this matter. See Exh. 39. Based on this and other evidence presented,[5] the district court

---

[4]*Nelson v. United States*, 97 F. Supp. 3d 1131 (W.D. Mo. 2015).

[5]For example, predecessor counsel had left Mr. Berrigan a detailed memorandum regarding "red flags" of areas to investigate, including that Mr. Nelson might suffer from organic brain damage and mental illness, Exh. 21, but these were not pursued. The evidence also showed that counsel was otherwise engaged during the time he could and should have spent preparing for Mr. Nelson's death penalty case. Between his appointment and the trial, he spent six weeks trying a capital case in Kansas; actively traveled the country in preparation of a complex medical malpractice case that only settled on the eve of Mr. Nelson's trial; handled the Supreme Court litigation in two separate capital cases where his clients were under warrant and facing execution dates; underwent quintuple coronary artery bypass surgery weeks before Mr. Nelson's trial; and was lead counsel in another federal

concluded that Mr. Berrigan had not met constitutional standards when he failed to investigate his client's mental health problems. Despite this, the court denied relief once again on the claims this Court had required that it consider.[6]

Mr. Nelson thereafter sought a COA on the remanded claims in this Court, which was denied.[7] A petition for rehearing and rehearing *en banc* is currently pending before this Court with respect to the denial of COA on those remanded claims.[8]

This past Friday, June 23, 2017, the United States Supreme Court issued a decision in *Jae Lee v. United States*, 582 U.S. ___ (2017) highly relevant to Mr. Nelson's ineffective assistance of counsel claim regarding his plea. The *Lee* opinion directly addresses the question of how to assess prejudice stemming from trial counsel's deficient performance in advising a defendant to plead guilty. Because the evidence and judicial findings from the evidentiary hearing would now establish that trial counsel erroneously advised Mr. Nelson that he had "no defense" to the charges and therefore to plead, and because Mr. Nelson can meet

---

capital case that resulted in a death sentence – that was later set aside on a § 2255 challenge when it was determined that Mr. Berrigan had rendered ineffective assistance in that case in part because he devoted too little time to trial preparation. *Id.* at 181, 183-87, 207, 233; *see also Johnson v. United States*, 860 F. Supp. 663, 884 (N.D. Iowa 2012).

[6]*Nelson v. United States*, 97 F. Supp. 3d 1131 (W.D. Mo. 2015).

[7]*Nelson v. United States*, Case No. 15-3160, Docket Entry ID: 4448453 (filed 9/15/16).

[8]Case No. 15-3160, Docket Entry ID: 4480086 (filed 12/15/16).



Appellate Case: 15-3160 Page: 9 Date Filed: 06/28/2017 Entry ID: 4552055

the prejudice standard as set out in the *Lee* decision, it has become apparent that this Court erroneously denied a COA on Mr. Nelson's IAC claim concerning his guilty plea. It is thus respectfully submitted that this Court should grant Mr. Nelson's request for panel rehearing.

**III. Panel decision conflict with *Jae Lee v. United States*.**

In *Lee*, the Supreme Court addressed the proper standard for determining whether a petitioner was prejudiced by trial counsel's advice to accept a guilty plea. In that case, the defendant pled guilty to possession of ecstasy with the intent to distribute and was sentenced to a year and a day in prison. It was only after he pled guilty that Mr. Lee – who was a lawful permanent resident of the United States – learned that deportation was mandatory for crimes like his. The defendant subsequently filed a § 2255 motion and argued that when his attorney advised him to take the guilty plea and assured him that he would not be deported, he was deprived of his constitutional right to have the assistance of a competent lawyer. The Government agreed that trial counsel's performance was deficient, but it argued that the conviction should still stand because Mr. Lee could not satisfy the prejudice standard under *Strickland v. Washington.*[9] The Government contended that the defendant could not make that showing because the case against him was overwhelming and he would have been convicted had he exercised his right to go

[9]466 U. S. 668 (1984).

to trial (and served more time then as well). The Sixth Circuit Court of Appeals agreed, holding that no rational defendant charged with a deportable offense and facing overwhelming evidence of guilt would proceed to trial rather than take a plea deal with a shorter prison sentence.[10]

The Supreme Court reversed. Although noting that in most cases a defendant will not be able to show that he was prejudiced by taking a guilty plea when the evidence against him is overwhelming, the Court declined to enshrine that generalization in a categorical rule.[11] As the Court acknowledged, both common sense and the Court's own case law established "that there is more to consider than simply the likelihood of success at trial." *Id.* at 9. Instead, a defendant who is deciding whether to take a guilty plea will also consider the consequences of his conviction – after both a trial and a guilty plea. *Id.* And the fact that a defendant's odds of prevailing at trial may be very low does not control the inquiry: When the question is "what an individual defendant would have done, the possibility of even a highly improbable result" – an acquittal – "may be pertinent to the extent it would have affected his decisionmaking."[12]

On the facts of the case before it, despite a likelihood of conviction, the Court concluded that the defendant "adequately demonstrated a reasonable

---

[10]*Lee*, slip op. at 3-4.
[11]*Lee*, slip op. at 8.
[12]*Id*. at 9-10 (footnote omitted).

probability that he would have rejected the plea had he known that it would lead to mandatory deportation."[13] When the defendant was deciding whether to accept the plea deal, the Court pointed out, his most important consideration was whether he would be deported. If trial counsel had provided accurate advice, the defendant "would have known that accepting the plea agreement would certainly lead to deportation. Going to trial? *Almost* certainly."[14] In the defendant's case, the Court concluded, "that 'almost' could make all the difference."[15] Thus, the defendant adequately demonstrated that but for counsel's error, there was a reasonable probability that he would have rejected the plea deal.

In Mr. Nelson's case, the decision to plead guilty was informed by trial counsel's ineffective representation. As the evidence developed after this Court's remand established, Mr. Nelson's claim would have, as in *Lee*, turned solely on the issue of prejudice. First, the district court found that trial counsel did not conduct an adequate mental health investigation, and that his failure to do so constituted deficient performance.[16] Second, there is no plausible basis to claim that trial counsel's plea advice was strategic given this failure: Mr. Berrigan admitted that he conducted no investigation of any affirmative mental health defense for the guilt

---

[13] *Id*. at 10.
[14] *Id*. at 12 (emphasis in original).
[15] *Id*.
[16] *Nelson*, 97 F. Supp. 3d at 1149.

phase of trial.[17] Third, Berrigan testified that Mr. Nelson's decision to plead guilty was based solely on his legal advice,[18] not on any independent desire to avoid going to trial. Thus, the only question is whether there is a reasonable probability that Mr. Nelson would have rejected the plea had he been correctly counseled about the consequences of pleading guilty – including, that he would be waiving the opportunity to present an available affirmative defense.

Like the petitioner in *Lee*, Mr. Nelson had "more to consider than simply the likelihood of success at trial"[19] – he also had to consider the consequences of his conviction after a trial versus a guilty plea. A guilty plea to a capital count necessarily guaranteed one of two possible sentencing outcomes: life imprisonment without possibility of release, or a death sentence. Even if he "almost certainly" would have faced the very same outcome had he not pled guilty (though that has

---

[17]Exh. 13 at 105-06.

[18]Exh. 4 at 235-36. One of the issues considered during the evidentiary hearing was whether trial counsel was ineffective for advising Mr. Nelson to refuse to participate in pre-trial mental health examinations with the Government's experts. Although the Government contended that Mr. Nelson was solely responsible for that decision, the district court instead credited trial counsel's testimony that Mr. Nelson's decision was attributable to trial counsel's advice. *See Nelson*, 97 F. Supp. 3d at 1151 ("The Court also finds that Berrigan was strategically deficient in advising Nelson not to submit to an examination by government experts, which effectively prevented him from presenting any mental health evidence in the mitigation phase.") That same testimony, already deemed credible by the district court, is significant to Mr. Nelson's decision to plead guilty which was also attributable to trial counsel's advice.

[19]*Id.* at 9.



Appellate Case: 15-3160 Page: 13 Date Filed: 06/28/2017 Entry ID: 4552055

not been established here), going to trial would have given Mr. Nelson the opportunity to present an affirmative defense of insanity, and thereby at least allowed the *possibility* of a different outcome: a verdict of not guilty by reason of insanity ("NGRI"). The "possibility of even a highly improbable result" – an NGRI verdict – "may be pertinent to the extent it would have affected [Mr. Nelson's] decisionmaking."[20] As the dissent in *Lee* clarified, "[t]his standard does not appear to be particularly demanding, as even a defendant who has only the 'smallest chance of success at trial'"—may be able to meet it.[21]

But for trial counsel's error, Mr. Nelson would have gone to trial rather than accept a conviction by guilty plea that guaranteed that he would either spend the rest of his life in prison, or be executed.

## IV. Need for a COA in light of *Lee v. United States*

The Supreme Court's intervening decision in *Lee*, viewed in concert with the district court's revised factfindings about trial counsel's effectiveness, establishes that "jurists of reason could disagree with the district court's resolution" of his claim, or that "the issues presented are adequate to deserve encouragement to proceed further."[22] Given the low threshold necessary to merit a COA, it is

---

[20]*Id*. at 9-10.
[21]*Id*. at 17.
[22]*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

respectfully submitted that Mr. Nelson's COA request should be reheard. Moreover, because the district court's previous denial of this claim rested on a conclusion which it has since rejected (i.e., that trial counsel provided effective assistance in investigating Mr. Nelson's mental health),[23] this issue should not be denied absent further factual development. As the Government itself pointed out to the district court:

> Any discussions between Nelson and trial counsel on his decision to enter a plea of guilty to Count One are discussions of which government counsel has no information. Again, it will be necessary to have testimony at a hearing or an affidavit in order to learn all of the circumstances surrounding this decision.

*Government's Suggestions in Opposition to § 2255 Motion*, Doc. 39 at 46-47.

Indeed, under these circumstances, the same rationale that justified this Court's prior remand for a hearing applies with equal force to the instant claim. *See Nelson v. United States*, 297 Fed. Appx. 563, 565 (2008) ("Our cases teach that issues regarding the ineffectiveness of counsel often require a hearing to consider evidence not disclosed on the face of the trial record. Our examination of the

---

[23]Compare the post-hearing findings in *Nelson v. United States*, 97 F. Supp. 3d 1131, 1149 (W.D. Mo. 2015) ("[T]he Court also finds that Berrigan's performance regarding investigation and presentation of the mental health testimony to be deficient.") with the earlier conclusion made without the benefit of any evidence in *Nelson v. United States*, 2007 WL 1115208 at *3 (W.D. Mo. Apr. 13, 2007) ("The Court finds that petitioner's counsels' conduct did not fall below an objective standard of reasonableness. He was represented by two very experienced counsel who had specific experience in capital cases. Therefore, the Court does not find that petitioner has met the requirements of *Strickland*").

claims asserted in this case convinces us that a fair and just determination of some of them required an evidentiary hearing to be held. We note that the Government's response to the original § 2255 motion informed the district court that such a hearing was necessary.").

In determining whether to issue a COA, the Supreme Court has explicitly stated that "in a capital case, the nature of the penalty is a proper consideration" in deciding to issue a COA. *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). *See also Gomez v. Quarterman*, 529 F.3d 322, 326 (5th Cir. 2008) ("In death penalty cases, any doubts as to whether the COA should issue are resolved in favor of the petitioner.").

**CONCLUSION**

Mr. Nelson respectfully requests that this Court grant rehearing and grant relief on the issue of whether his trial counsel provided ineffective assistance in advising him to plead guilty and forfeit his trial on the merits of his guilt phase case. In the alternative, Mr. Nelson respectfully requests that his case be remanded on this issue for further factual development and an evidentiary hearing.



Appellate Case: 15-3160 Page: 16 Date Filed: 06/28/2017 Entry ID: 4552055

Respectfully submitted this 28th day of June, 2017.

*/s/ Paula K. Harms*
Jon M. Sands
Federal Public Defender
Paula K. Harms
Assistant Federal Public Defender
Capital Habeas Unit
850 W. Adams Suite 201
Phoenix, Arizona 85007
602-382-2816 telephone
602-889-3960 facsimile
Paula_Harms@fd.org

*/s/ David A. Ruhnke*
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
973-744-1000 telephone
973-746-1490 facsimile
dr@ruhnkeandbarrett.com

**Certificate of Compliance with Type-Volume Limit,**
**Typeface Requirements, and Type-Style Requirements**

1. This document complies with the word limit of Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,390 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 (version 14.0.7173.5000) in 14-point font size and Times New Roman type style.

*/s/ Paula K. Harms*
Attorney for Keith Nelson
Dated: June 28, 2017

**Certificate of Service**

I hereby certify that on June 28, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Robin Stoltze*
Assistant Paralegal
Capital Habeas Unit



Appellate Case: 15-3160 Page: 19 Date Filed: 06/28/2017 Entry ID: 4552055