IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| Keith Nelson,<br>Appellant,<br><br>v.<br><br>United States of America,<br>Appellees. | No. 15-3160<br>Civil No. 4:04-8005-cv-W (FJG)<br><br>**Death-Penalty Case** |

# MOTION TO MODIFY THE CERTIFICATE OF APPEALABILITY

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure and Local Rule 25A(b), Keith Nelson, by and through counsel, respectfully submits this Motion to Modify the Certificate of Appealability ("COA") granted on July 19, 2017. This motion concerns Mr. Nelson's claim that his trial counsel was ineffective in advising him to plead guilty to a capital count. Mr. Nelson seeks to modify the COA based on an intervening circumstance: the Supreme Court's recent decision in *Jae Lee v. United States*, 582 U.S. ___ (2017), which (as explained in more detail below) is directly relevant to Mr. Nelson's aforementioned claim.

On June 28, 2017, prior to the Court's July 19th order granting a COA, Mr. Nelson filed a pleading, styled as an out-of-time petition for rehearing, that requested the same relief as the present motion: a COA on his claim that his guilty

plea was the result of trial counsel's ineffectiveness.[1] The docket entry for the July 19th order reflects that Mr. Lee's out-of-time petition was granted as part of that order, but that appears to be a clerical error. In fact, the July 19th order did not address Mr. Nelson's request, so that petition remains pending. Mr. Nelson renews his request by way of this pleading, which is styled as Motion to Modify the Certificate of Appealability in order to account for the changed procedural posture in his case since he first made his request.[2]

## I. Procedural history and relevant background

### *A. The trial and initial § 2255 proceedings*

Mr. Nelson was sentenced to death in the Western District of Missouri for interstate kidnapping resulting in death. Prior to trial, Mr. Nelson's attorney,

---

[1] *See* Case No. 15-3160, Docket Entry ID: 4552050 (filed 6/28/17).

[2] At the time that Mr. Nelson filed his June 2017 request for rehearing, his case was still closed, so an out-of-time petition for rehearing was the only vehicle available for the Court to revisit its previous denial of a COA on his IAC claim concerning the guilty plea. As good cause for filing his petition out of time, Mr. Nelson cited the intervening circumstance of the Supreme Court's *Lee* decision. (Mr. Nelson diligently filed his rehearing petition within five days of the *Lee* opinion.) His case has since been reopened, thereby mooting the need for leave to file out of time. Additionally, because a COA has now been granted, the relief that Mr. Nelson seeks is more appropriately treated as a request to expand the COA to include the *Lee*-related claim, rather than a petition for rehearing. *See, e.g.*, *Galbraith v. Davis*, No. 15-40596, 2017 WL 2842771 (5th Cir. 6/30/17) (after reopening case, treating out of time rehearing petition as supplemental request for COA). If the Court concludes, however, that the previously-filed petition for rehearing is the correct vehicle through which to resolve this issue, Mr. Nelson respectfully requests that it be considered in the alternative.

Patrick Berrigan, advised him that there was no viable defense to the charges against him. He therefore counseled Mr. Nelson to enter a guilty plea, proceed to trial only on the sentencing phase of his capital trial, and argue that his plea established an acceptance of responsibility for purposes of punishment. Because Mr. Nelson would be pleading guilty to a capital offense, that conviction would necessarily expose him to one of two mandatory sentences: death, or life imprisonment without possibility of release. Accepting his lawyer's representation that he had no defense to the charges, Mr. Nelson followed his advice and pled guilty, thereby waiving his right to a jury determination on the charges he faced.[3]

After his sentence was affirmed on direct appeal, Mr. Nelson filed a motion pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence. Among the various claims raised in that motion, Mr. Nelson alleged that, in accepting a plea, he received ineffective assistance of counsel in violation of the Sixth Amendment.[4] In its response to the § 2255 motion, the Government contested the merits of this claim but noted the necessity of taking evidence on the question of how Mr.

---

[3] As part of the plea agreement, the Government dropped the charge that Mr. Nelson had traveled across state lines with the intent to engage in a sex act with a female under the age of twelve which resulted in the death of the victim in violation of 18 U.S.C. §§ 2241(c), 2245, and 3559(d). Given that evidence in support of that charge came in anyway, and that no juror found that Nelson's plea and admission of guilt was at all mitigating, he did not get much in the bargain.

[4] *See* Doc. 25 ("Motion, Brought Pursuant to 28 U.S.C. § 2255, to Vacate the Conviction and Sentence Imposed") at 11-12.

Nelson reached the decision to plead guilty and waive his trial jury rights.[5]

The district court denied Mr. Nelson's § 2255 motion without an evidentiary hearing.[6] The court rejected the Government's suggestion that evidence be taken on questions relevant to trial counsel's performance;[7] instead it summarily denied the § 2255 motion in its entirety in a two-page order. The district court thereafter also denied a Certificate of Appealability as to all claims.[8]

*B. The remand and subsequent evidentiary hearing*

Mr. Nelson then filed an application for a COA with this Court. Without ordering any merits briefing, this Court granted the application as to six ineffective assistance of counsel ("IAC") claims and remanded the case to the district court for an evidentiary hearing on those claims.[9] Among the claims remanded to the district court was whether trial counsel was ineffective for failing to adequately investigate and present evidence of Mr. Nelson's impaired mental health at the penalty phase proceedings.[10] A COA was not granted, however, on Mr. Nelson's claim that trial

---

[5] *See* Doc. 39 ("Government's Suggestions in Opposition to Petitioner's Motion Under 28 U.S.C. § 2255) at 46-47.

[6] Doc. 61 ("Order") at 2.

[7] *Id*. at 1 ("While the government has requested that movant's trial and appellate counsel submit affidavits or to a hearing to further explain their reasons for this strategy, this Court finds no further record is necessary.")

[8] Doc. 86 ("Order") at 1.

[9] *Nelson v. United States*, 297 Fed. Appx. 563 (8th Cir. 2008).

[10] The other remanded claims concerned trial counsel's failure to investigate and present mitigation information, and trial and appellate counsel's failure to object to improper remarks made by the Government in closing arguments.

counsel was ineffective for advising him to plead guilty.

After taking evidence, the district court reversed itself on the question of mental health, finding that trial counsel had in fact rendered deficient performance.[11] Although the remand order in the case did not encompass Mr. Nelson's claim that trial counsel was ineffective for advising him to plead guilty—and therefore the district court did not have jurisdiction to revisit its previous denial of that claim—evidence relevant to that claim was developed during the course of the § 2255 hearing. Specifically, Dr. Xavier Amador, a forensic and clinical psychologist retained for the § 2255 proceedings, conducted an extensive evaluation of Mr. Nelson and testified that at the time of the offense, Mr. Nelson suffered from a severe mental disease or defect and was unable to appreciate the nature and quality or the wrongfulness of his acts, thus establishing an affirmative defense to the charged crimes.[12] Dr. Amador also prepared an expert report, submitted into evidence at the hearing, setting out his expert opinion on this matter.[13] Based on this and other evidence presented,[14] the district court concluded

---

[11] *Nelson v. United States*, 97 F. Supp. 3d 1131, 1149 (W.D. Mo. 2015) (finding trial counsel's "performance regarding investigation and presentation of the mental health testimony to be deficient").

[12] Exh. 5 at 443-45. (All "Exh." citations are to exhibits included in the Appendix to Mr. Nelson's Application for COA, Docket Entry ID: 4372433, filed on 2/29/16.)

[13] *See* Exh. 39.

[14] For example, predecessor counsel had left Mr. Berrigan a detailed memorandum regarding "red flags" of areas to investigate, including that Mr. Nelson might

that Mr. Berrigan had not met constitutional standards when he failed to investigate his client's mental health problems. Despite this, the district court again denied relief on the claims this Court had required that the district court consider.[15]

*C. The rehearing petition and the Supreme Court's intervening* Lee *decision*

Mr. Nelson submitted an application to this Court for a COA on the six remanded claims that the district court denied. This Court initially denied the application in its entirety.[16] Mr. Nelson thereafter filed a petition for rehearing and rehearing *en banc*[17] ("December 2016 petition").

While that petition was pending, the Supreme Court issued a decision on June 23, 2017, that squarely implicated Mr. Nelson's IAC claim about his guilty

---

suffer from organic brain damage and mental illness, Exh. 21, but these were not pursued. The evidence also showed that counsel was otherwise engaged during the time he could and should have spent preparing for Mr. Nelson's death penalty case. Between his appointment and the trial, he spent six weeks trying a capital case in Kansas; actively traveled the country in preparation of a complex medical malpractice case that only settled on the eve of Mr. Nelson's trial; handled the Supreme Court litigation in two separate capital cases where his clients were under warrant and facing execution dates; underwent quintuple coronary artery bypass surgery weeks before Mr. Nelson's trial; and was lead counsel in another federal capital case that resulted in a death sentence – one that was later set aside on a § 2255 challenge when it was determined that Mr. Berrigan had rendered ineffective assistance in that case in part because he devoted too little time to trial preparation. Exh. 4 at 181, 183-87, 207, 233; *see also Johnson v. United States*, 860 F. Supp. 2d 663, 884 (N.D. Iowa 2012).

[15] *Nelson*, 97 F. Supp. 3d at 1162.

[16] *Nelson v. United States*, Case No. 15-3160, Docket Entry ID: 4448453 (filed 9/15/16).

[17] Case No. 15-3160, Docket Entry ID: 4480086 (filed 12/15/16).



Appellate Case: 15-3160 Page: 6 Date Filed: 08/21/2017 Entry ID: 4570816

plea. In *Jae Lee v. United States*, 582 U.S. ___ (2017), the Supreme Court articulated the standard for assessing prejudice stemming from trial counsel's deficient performance in advising a defendant to plead guilty. The Court noted that even in cases where evidence of guilt is overwhelming, the relevant consideration is not whether the defendant would have fared any better had he gone to trial; rather, the issue is whether there is a reasonable probability that the defendant would not have pleaded guilty if counsel had properly advised the client about the potential outcomes of a plea versus a trial.[18] When the question is "what an individual defendant would have done, the possibility of even a highly improbable result" – an acquittal – "may be pertinent to the extent it would have affected his decisionmaking."[19]

The *Lee* case is highly relevant to Mr. Nelson's case. Given the evidence adduced at his evidentiary hearing, it was clear that Mr. Nelson could now make a colorable claim under *Lee* that he was prejudiced by trial counsel's advice to plead guilty. Specifically, trial counsel had advised Mr. Nelson that whether he pleaded guilty or went to trial, the only two outcomes were a sentence of death or life imprisonment without possibility of release. But that was incorrect; Mr. Nelson had an affirmative defense of insanity available, so if he went to trial, there was a third outcome that was possible: a verdict of not guilty by reason of insanity

---

[18] *Lee v. United States*, slip op. at 8-9.
[19] *Id*. at 9-10 (footnote omitted).



Appellate Case: 15-3160 Page: 7 Date Filed: 08/21/2017 Entry ID: 4570816

("NGRI"). The fact that a NGRI verdict might be, in the language of *Lee,* a "highly improbable result" is not germane to the prejudice determination; the only relevant question is whether there is a reasonable probability that proper advice on this issue would have affected Mr. Nelson's decisionmaking about pleading guilty.

Within five days of the *Jae Lee* decision, Mr. Nelson diligently filed a petition for rehearing on this issue.[20] ("June 2017 petition"). His petition argued that based on the intervening circumstance of the *Jae Lee* opinion, Mr. Nelson's IAC claim concerning his guilty plea should be revisited. Specifically, he requested that this Court grant rehearing and grant relief on the issue of whether his trial counsel provided ineffective assistance in advising him to plead guilty and forfeit his trial on the merits of his guilt phase case, or, in the alternative, that his case be remanded on this issue for further factual development and an evidentiary hearing. Because Mr. Nelson's case was technically closed following the Court's previous denial of a COA after the remand, Mr. Nelson also filed a motion for leave to file his petition for rehearing out of time.[21]

On July 19, 2017, this Court granted Mr. Nelson's December 2016 petition. Specifically, this Court granted his request for panel rehearing and dismissed the request for *en banc* rehearing as moot.[22] Upon rehearing, the Court reversed in

---

[20] Case No. 15-3160, Docket Entry ID: 4552055 (filed 6/28/17).
[21] Case No. 15-3160, Docket Entry ID: 4552050 (filed 6/28/17).
[22] Case No. 15-3160, Docket Entry ID: 4559060 (filed 7/19/17).

part; it granted COA on four of the claims concerning trial counsel's ineffectiveness in failing to investigate and present mitigation and mental health information and denied a COA on the two claims concerning trial and appellate counsel's ineffectiveness in failing to object to the Government's improper remarks in closing arguments. This Court thereafter issued a briefing schedule for merits briefing on the four claims on which a COA was granted and calendared the case for oral argument.[23]

The text entry in the docket for the Court's July 19th order states that the Court granted the June 2017 petition (addressing the *Lee* issue) and dismissed as moot the December 2016 petition (addressing the six remanded claims). This appears to be a clerical error. The July 19th written order unambiguously states that it granted the December 2016 petition and granted rehearing by the panel. *See* 7/19/17 Order at 1 ("Keith Nelson's petition for panel rehearing filed December 15, 2016, has been considered by the panel and is granted."). The order is also clearly addressed to the six remanded claims that are the subject of the December 2016 petition. The written order makes no mention of the June 2017 petition. Indeed, it does not appear that this Court took up the June 2017 petition, so that request is still pending.

---

[23] Case No. 15-3160, Docket Entry ID: 4559142 (filed 7/20/17).

## III. In light of *Jae Lee v. United States*, this Court should modify the Certificate of Appealability that was previously issued

In *Lee*, the Supreme Court addressed the proper standard for determining whether a petitioner was prejudiced by trial counsel's advice to accept a guilty plea. Mr. Lee had pled guilty to possession of ecstasy with the intent to distribute and was sentenced to a year and a day in prison. It was only after he pled guilty that Mr. Lee – who was a lawful permanent resident of the United States – learned that deportation was mandatory for crimes like his. The defendant subsequently filed a § 2255 motion alleging that when his attorney advised him to take the guilty plea and assured him that he would not be deported, he was deprived of his constitutional right to have the assistance of a competent lawyer. The Government agreed that trial counsel's performance was deficient, but it argued that the conviction should still stand because Mr. Lee could not satisfy the prejudice standard under *Strickland v. Washington.*[24] The Government contended that the defendant could not make that showing because the case against him was overwhelming and he would have been convicted had he exercised his right to go to trial (and served more time then as well). The Sixth Circuit Court of Appeals agreed, holding that no rational defendant charged with a deportable offense and facing overwhelming evidence of guilt would proceed to trial rather than take a

[24] 466 U.S. 668 (1984).

plea deal with a shorter prison sentence.[25]

The Supreme Court reversed. Although noting that in most cases a defendant will not be able to show that he was prejudiced by taking a guilty plea when the evidence against him is overwhelming, the Court declined to enshrine that generalization in a categorical rule.[26] As the Court acknowledged, both common sense and the Court's own case law established "that there is more to consider than simply the likelihood of success at trial."[27] Instead, a defendant who is deciding whether to take a guilty plea will also consider the consequences of his conviction – after both a trial and a guilty plea.[28] And the fact that a defendant's odds of prevailing at trial may be very low does not control the inquiry: When the question is "what an individual defendant would have done, the possibility of even a highly improbable result" – an acquittal – "may be pertinent to the extent it would have affected his decisionmaking."[29]

On the facts of the case before it, despite a likelihood of conviction, the Court concluded that the defendant "adequately demonstrated a reasonable probability that he would have rejected the plea had he known that it would lead to

---

[25] *Lee*, slip op. at 3-4.
[26] *Lee*, slip op. at 8.
[27] *Id*. at 9.
[28] *Id.*
[29] *Id*. at 9-10 (footnote omitted).

mandatory deportation."[30] When the defendant was deciding whether to accept the plea deal, the Court pointed out, his most important consideration was whether he would be deported. If trial counsel had provided accurate advice, the defendant "would have known that accepting the plea agreement would certainly lead to deportation. Going to trial? *Almost* certainly."[31] In the defendant's case, the Court concluded, "that 'almost' could make all the difference."[32] Thus, the defendant adequately demonstrated that but for counsel's error, there was a reasonable probability that he would have rejected the plea deal.

In Mr. Nelson's case, the decision to plead guilty was informed by trial counsel's ineffective representation. As the evidence developed after this Court's remand established, Mr. Nelson's claim would have, as in *Lee*, turned solely on the issue of prejudice. First, the district court found that trial counsel did not conduct an adequate mental health investigation, and that his failure to do so constituted deficient performance.[33] Second, there is no plausible basis to claim that trial counsel's plea advice was strategic given this failure: Mr. Berrigan admitted that he conducted no investigation of any affirmative mental health defense for the guilt phase of trial.[34] Third, Berrigan testified that Mr. Nelson's decision to plead guilty

---

[30] *Id*. at 10.
[31] *Id*. at 12 (emphasis in original).
[32] *Id*.
[33] *Nelson*, 97 F. Supp. 3d at 1149.
[34] Exh. 13 at 105-106.

was based solely on his legal advice,[35] not on any independent desire to avoid going to trial. Thus, the only question is whether there is a reasonable probability that Mr. Nelson would have rejected the plea had he been correctly counseled about the consequences of pleading guilty – including, that he would be waiving the opportunity to present an available affirmative defense.

Like the petitioner in *Lee*, Mr. Nelson had "more to consider than simply the likelihood of success at trial"[36] – he also had to consider the consequences of his conviction after a trial versus a guilty plea. A guilty plea to a capital count necessarily guaranteed one of two possible sentencing outcomes: life imprisonment without possibility of release, or a death sentence. Even if he "almost certainly" would have faced the very same outcome had he not pled guilty (though that has not been established here), going to trial would have given Mr. Nelson the opportunity to present an affirmative defense of insanity, and thereby at least

---

[35] Exh. 4 at 235-36. One of the issues considered during the evidentiary hearing was whether trial counsel was ineffective for advising Mr. Nelson to refuse to participate in pre-trial mental health examinations with the Government's experts. Although the Government contended that Mr. Nelson was solely responsible for that decision, the district court instead credited trial counsel's testimony that Mr. Nelson's decision was attributable to trial counsel's advice. *See Nelson*, 97 F. Supp. 3d at 1151 ("The Court also finds that Berrigan was strategically deficient in advising Nelson not to submit to an examination by government experts, which effectively prevented him from presenting any mental health evidence in the mitigation phase.") That same testimony, already deemed credible by the district court, is significant to Mr. Nelson's decision to plead guilty which was also attributable to trial counsel's advice.

[36] *Id.* at 9.

allowed the *possibility* of a different outcome: a verdict of not guilty by reason of insanity ("NGRI"). The "possibility of even a highly improbable result" – an NGRI verdict – "may be pertinent to the extent it would have affected [Mr. Nelson's] decisionmaking."[37] As the dissent in *Lee* clarified, "[t]his standard does not appear to be particularly demanding, as even a defendant who has only 'the smallest chance of success at trial'… may be able to satisfy it."[38]

Given the evidence of brain damage and mental impairments now credited by the district court, there is every reason to believe that this case would satisfy the *Lee* standard, and that Mr. Nelson would not have relinquished his only chance to put on a defense. But for trial counsel's error, there is a reasonable probability Mr. Nelson would have gone to trial rather than accept a conviction by guilty plea that guaranteed that he would either spend the rest of his life in prison, or be executed.[39]

## IV. Mr. Nelson has made the requisite showing for obtaining a COA

The district court initially summarily rejected Mr. Nelson's claims that trial counsel was ineffective, including the claim concerning his guilty plea. Upon remand, however, the district court has subsequently found trial counsel's "performance regarding investigation and presentation of the mental health

---

[37] *Id*. at 9-10.
[38] *Id*. at 17.
[39] In the alternative, Mr. Nelson respectfully requests that his case be remanded on this issue for further factual development and an evidentiary hearing.



Appellate Case: 15-3160 Page: 14 Date Filed: 08/21/2017 Entry ID: 4570816

testimony to be deficient,"[40] as well as received expert evidence that Mr. Nelson had a potential affirmative defense of insanity of which he was never informed by trial counsel. The Supreme Court's intervening decision in *Lee,* viewed in concert with the district court's revised factfindings about trial counsel's effectiveness, establishes that "jurists of reason could disagree with the district court's resolution" of his IAC claim concerning his guilty plea, or that "the issues presented are adequate to deserve encouragement to proceed further."[41] Given the low threshold necessary to merit a COA, it is respectfully submitted that Mr. Nelson's COA should be modified to include his IAC claim regarding his guilty plea. Moreover, because the district court's previous denial of this claim rested on a conclusion which it has since rejected (*i.e.*, that trial counsel provided effective assistance in investigating Mr. Nelson's mental health),[42] this issue should not be denied absent further factual development. As the Government itself pointed out to the district court:

---

[40] *Nelson*, 97 F. Supp. 3d 1149.

[41] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

[42] Compare the post-hearing findings in *Nelson*, 97 F. Supp. 3d at 1149 ("[T]he Court also finds that Berrigan's performance regarding investigation and presentation of the mental health testimony to be deficient.") with the earlier conclusion made without the benefit of any evidence in *Nelson v. United States*, No. 4:04-CV-8005-FJG, 2007 WL 1115208 at *3 (W.D. Mo. Apr. 13, 2007) ("The Court finds that petitioner's counsels' conduct did not fall below an objective standard of reasonableness. He was represented by two very experienced counsel who had specific experience in capital cases. Therefore, the Court does not find that petitioner has met the requirements of *Strickland*").



Appellate Case: 15-3160 Page: 15 Date Filed: 08/21/2017 Entry ID: 4570816

> Any discussions between Nelson and trial counsel on his decision to enter a plea of guilty to Count One are discussions of which government counsel has no information. Again, it will be necessary to have testimony at a hearing or an affidavit in order to learn all of the circumstances surrounding this decision.

Doc. 39 ("Government's Suggestions in Opposition to 2255 Motion") at 46-47.

Indeed, under these circumstances, the same rationale that justified this Court's prior remand for a hearing applies with equal force to the instant claim. *See Nelson*, 297 Fed. Appx. at 565 ("Our cases teach that issues regarding the ineffectiveness of counsel often require a hearing to consider evidence not disclosed on the face of the trial record. Our examination of the claims asserted in this case convinces us that a fair and just determination of some of them required an evidentiary hearing to be held. We note that the Government's response to the original § 2255 motion informed the district court that such a hearing was necessary.").

In determining whether to issue a COA, the Supreme Court has explicitly stated that "in a capital case, the nature of the penalty is a proper consideration" in deciding to issue a COA. *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). *See also Gomez v. Quarterman*, 529 F.3d 322, 326 (5th Cir. 2008) ("In death penalty cases, any doubts as to whether the COA should issue are resolved in favor of the petitioner.").

## Conclusion

This Court should modify the COA to include Mr. Nelson's claim that trial counsel was ineffective for advising him to plead guilty.

Respectfully submitted this 21st day of August, 2017.

*/s/Paula K. Harms*
Jon M. Sands
Federal Public Defender
Paula K. Harms
Assistant Federal Public Defender
Capital Habeas Unit
850 W. Adams Suite 201
Phoenix, Arizona 85007
602-382-2816 telephone
602-889-3960 facsimile
Paula_Harms@fd.org

*/s/ David A. Ruhnke*
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
973-744-1000 telephone
973-746-1490 facsimile
dr@ruhnkeandbarrett.com

**Certificate of Compliance with Type-Volume Limit,**
**Typeface Requirements, and Type-Style Requirements**

1. This document complies with the word limit of Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,202 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 (version 14.0.7173.5000) in 14-point font size and Times New Roman type style.

/s/ Paula K. Harms
Attorney for Keith Nelson
Dated: August 21, 2017



Appellate Case: 15-3160 Page: 18 Date Filed: 08/21/2017 Entry ID: 4570816

**Certificate of Service**

I hereby certify that on August 21, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/Robin Stoltze
Assistant Paralegal
Capital Habeas Unit



Appellate Case: 15-3160 Page: 19 Date Filed: 08/21/2017 Entry ID: 4570816