No. 15-3160
IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

Keith D. Nelson,
Appellant,

vs.

United States of America,
Appellee.

---

On Appeal from the United States District Court
for the Western District of Missouri
Case No. 4:04-8005-cv-W (FJG)

---

# REPLY BRIEF OF APPELLANT

---


Jon M. Sands
Federal Public Defender
Paula K. Harms
Assistant Federal Public Defender
Capital Habeas Unit
850 W. Adams Suite 201
Phoenix, Arizona 85007
602-382-2816 telephone
602-889-3960 facsimile
Paula_Harms@fd.org

David A. Ruhnke
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
973-744-1000 telephone
dr@ruhnkeandbarrett.com

Counsel for Appellant Keith D. Nelson

TABLE OF CONTENTS


Introduction ........................................................................ 1

I. The District Court's *Strickland* Analysis was Flawed. .................. 7

A. Labeling a decision "strategic" does not automatically render it reasonable. ........................................................ 9

B. Counsel's omissions were not reasonable. ................................ 13

C. There is a reasonable probability that at least one juror would have struck a different balance if the §2255 mitigation evidence had been presented at trial. ...................... 17

1. The *Tennard* error. ........................................................ 19

2. The *Porter* error. ........................................................... 21

3. Conclusion. ..................................................................... 24

II. Nelson's Claim That He Was Improperly Advised To Plead Guilty Is Compelling, Particularly In Light of *Lee v. United States*. Because It Has No Viable Argument On The Merits, The Government Now Raises Purported Procedural Defenses That Cannot Withstand Scrutiny. ............................................... 27

A. The Government previously acknowledged in writing that it understood that Nelson's claim encompassed counsel's failure to advise him of a potential defense. ............................ 30

B. The Government's jurisdictional arguments lack merit. .......... 32

1. Relevant procedural history. .............................................. 33

2. The order modifying the COA properly conferred jurisdiction on this Court. ......................................................... 36

3. This is not an unauthorized successor. .................................. 38

C. The Government's newly-raised "statute-of-limitations" defense is meritless, but any doubt about that would necessitate a remand to allow Nelson to develop a full record on this issue. ............................................................. 39

1. This is not a new claim. ..................................................... 40

2. The claim "relates back" to the original motion. ...................... 41

3. This affirmative defense is newly raised on appeal, and Nelson should be allowed to develop a full record on this issue....43

D. A limited remand is required so that Nelson can establish that he prevails on his IAC claim under the standard announced in *Lee*....44

Conclusion....48

Certificate of Compliance....49

Certificate of Service....50



Appellate Case: 15-3160 Page: 3 Date Filed: 03/12/2018 Entry ID: 4638550

## Table of Authorities

**Federal Cases**


*Anderson v. Sirmons*,
476 F.3d 1131 (10th Cir. 2007) .......... 26

*Brown v. Russell,* No. 16-4211,
No. 17-1592, 2017 WL 5514561 (8th Cir. Apr. 12, 2017) .......... 45

*Burger v. Kemp*,
482 U.S. 776 (1987) .......... 5

*Christianson v. Colt Industries Operating Corp.*,
486 U.S. 800 (1988) .......... 36

*Daniel v. Comm'r, Alabama Dept. of Corrections*,
822 F.3d 1248 (11th Cir. 2016) .......... 14

*Day v. McDonough*,
547 U.S. 198 (2006) .......... 38-39

*Ferrell v. Hall*,
640 F.3d 1199 (11th Cir. 2011) .......... 17

*Ford v. Wainwright*,
477 U.S. 399 (1986) .......... 8

*Galbraith v. Davis,* No. 15-40596,
2017 WL 2842771 (5th Cir. June 30, 2017) .......... 37

*Gallagher v. Magner*,
619 F.3d 823 (8th Cir. 2010) .......... 41

*Gardner v. Florida*,
430 U.S. 349 (1977) .......... 5

*Gardner v. Johnson*,
247 F.3d 551 (5th Cir. 2001) .......... 5

*Guzman v. Denney*,
692 Fed. Appx. 323 (8th Cir. 2017) .......... 45

*Holland v. Florida*,
560 U.S. 631 (2010) .......................................................................... 43

*Hooks v. Workman*,
689 F.3d 1148 (10th Cir. 2012) ........................................................ 19

*Horton v. Zant*,
941 F.2d 1449 (11th Cir. 1991) ........................................................ 10

*Jefferson v. Sellers*,
250 F. Supp. 3d 1340 (N.D. Ga. 2017) ............................................. 18

*Johnson v. United States*,
860 F. Supp. 2d 663 (2012) ................................................................ 9

*Kenley v. Armontrout*,
937 F.2d 1298 (8th Cir. 1991) .......................................................... 16

*Kimmelman v. Morrison*,
477 U.S. 365 (1986) .......................................................................... 11

*King v. United States*,
595 F.3d 844 (8th Cir. 2010) ............................................................ 44

*Lee v. United States*,
137 S. Ct. 1958 (2017) ......................... 27, 28, 29, 32, 34, 35, 38, 44-46

*Martin v. Fayram*,
849 F.3d 691 (8th Cir. 2017) ............................................................ 44

*McCurry v. Allen*,
668 F.2d 581 (8th Cir. 1982) ............................................................ 42

*Moore v. United States*,
173 F.3d 1131 (8th Cir. 1999) .......................................................... 39

*Nelson v. United States*,
97 F. Supp. 3d 1131 (W.D. Mo. 2015) ..... 2, 8-10, 14, 18, 20, 23, 28, 34

*Porter v. McCollum*,
558 U.S. 30 (2009) ............................................................... 21, 23, 24

*Roe v. Flores-Ortega*,
528 U.S. 470 (2000) .......................................................................... 10



Appellate Case: 15-3160 Page: 5 Date Filed: 03/12/2018 Entry ID: 4638550

*Schrader v. Royal Caribbean Cruise Line, Inc.,*
952 F.2d 1008 (8th Cir. 1991) ........................................................ 42

*Sierra Club v. Penfold*,
857 F.2d 1307 (9th Cir. 1988) ........................................................ 42

*Simmons v. Luebbers*,
299 F.3d 929 (8th Cir. 2002) ................................................... 3, 17

*Smith v. Texas*,
543 U.S. 37 (2004) (per curiam) .................................................... 20

*Strickland v. Washington*,
466 U.S. 668 (1984) ....... 7-10, 14, 15, 17, 23, 28, 29, 40, 41, 33, 34, 45

*Tennard v. Dretke*,
542 U.S. 274 (2004) ........................................................ 19, 20, 21

*Thomas v. Lockhart*,
738 F.2d 304 (8th Cir. 1984) ........................................................ 28

*Tzen v. United States,* No. 16-0734-DRH,
2017 WL 4233077 at *3-*4 (S.D. Ill. Sept. 22, 2017) ....................... 29

*United States v. Bartlett*,
856 F.2d 1071 (8th Cir. 1988) ........................................................ 29

*United States v. Daily*,
703 F.3d 451 (8th Cir. 2013) ........................................................ 44

*United States v. Day*,
969 F.2d 39 (3d Cir. 1992) ........................................................... 12

*United States v. Granados*,
168 F.3d 343 (8th Cir. 1999) (per curiam) ....................................... 44

*United States v. Martin*,
408 F.3d 1089 (8th Cir. 2005) ........................................................ 43

*United States v. Wall*,
456 F.3d 316 (3d Cir. 2006) .......................................................... 37

*Wiggins v. Smith*,
539 U.S. 510 (2003) ........................................................ 15, 16, 27

*Williams v. Allen*,
542 F.3d 1326 (11th Cir. 2008) ........................................................ 24

*Williams v. Taylor*,
529 U.S. 362 (2000) ........................................................................ 1, 14

*Young v. Harper*,
520 U.S. 143 (1997) ............................................................................ 37

**Federal Statutes**

18 U.S.C. § 4241 ........................................................................................29

18 U.S.C. § 17 ...................................................................................... 40, 45

28 U.S.C. § 2255 ................1, 4, 7, 8, 13, 14, 17, 24, 27, 30, 31, 33, 37-41, 43, 44, 48

**Rules**

Fed. R. App. P. 27 ............................................................................ 35

Fed. R. App. P. 32 ............................................................................ 49

Fed. R. App. P. 40 ..........................................................................36-37

Fed. R. Crim. P. 52 .......................................................................... 43

**Other**

Giacoma Bologna, *Jury foreman describes how jurors deadlocked over death penalty for Craig Wood*, SPRINGFIELD NEWS-LEADER, Nov. 7, 2017, http://sgfnow.co/2AhlEq8................................................................... 4

Harrison Keegan, *Attorneys say Craig Wood did not get fair trial after errors by judge*, Springfield News-Leader, Dec. 27, 2017, http://sgfnow.co/2BMXsgA ................................................................ 4

## INTRODUCTION

Keith Nelson was constitutionally entitled to effective representation at the penalty phase of his capital trial, but he did not receive it. His counsel failed to investigate substantial mitigating evidence concerning Nelson's horrific childhood, brain damage, and mental illness, and thus could not possibly have made a strategic decision as to a mitigation defense. Failure to investigate and present mitigating evidence presents serious constitutional concerns. Counsel has a duty to conduct a thorough investigation, and that duty is not discharged merely by presenting some limited evidence; rather, a penalty phase ineffectiveness claim depends on the magnitude of the discrepancy between what counsel did investigate and present and what counsel could have investigated and presented. *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000).

It is difficult to imagine a more significant discrepancy than that between the portrait painted at Nelson's trial of a man whose childhood was "unfortunate" but largely unmarred, and that presented at the §2255 hearing of a child brain damaged from birth, suffering from mental illness and cognitive deficits so severe that even the

Government's expert agreed his executive functioning places him in the bottom 1% of the population, and whose emotional, psychological, sexual, and neurobiological development during his formative adolescent years was profoundly altered from being shuffled in and out of chaotic juvenile prisons, where he made multiple suicide attempts in a desperate effort to stop being preyed upon by the older, bigger, and stronger residents there who beat and raped him. Although this classic mitigating evidence was available to counsel at the time of trial, it was never presented to the jury that sentenced Nelson to death.

When faced with a terrible crime, it is tempting to argue that there are some cases that are simply too aggravated for counsel's efforts to matter and that "any jury would find that a death sentence was warranted." Government's Brief ("GB") at 51. This, in fact, underpins the district court's legal ruling below: that "no amount" of mitigating evidence could have avoided a death sentence. *Nelson v. United States*, 97 F. Supp. 3d 1131, 1157 (W.D. Mo. 2015). This was error not only on the facts of this case but as a matter of law. The bedrock of the Sixth Amendment in the capital context is that there is no set of aggravating facts that makes counsel's responsibility to investigate and present

mitigating evidence futile. Rather, counsel's duty is heightened: in the face of an "overwhelming amount of aggravating evidence," it is only by the thorough investigation and presentation of mitigation that counsel can "influence[] the jury's assessment of [a defendant's] moral culpability" and persuade individual jurors to "vote[] against the imposition of the death penalty." *Simmons v. Luebbers*, 299 F.3d 929, 938-39 (8th Cir. 2002).

This is not some empty bromide divorced from the practical realities of capital litigation. Nelson cited *nineteen* different cases where, despite highly aggravated facts, one or more jurors voted against the death penalty after hearing the totality of the evidence at the penalty phase. Appellant's Brief ("AB") at 58-62. And while this case has been pending, a Missouri capital jury deadlocked and did not return a death verdict in a case similar to Nelson's;[1] two jurors were compelled

---

[1] Craig Wood was tried in Missouri for the kidnapping, rape, and murder of 10-year-old Hailey Owens. Wood snatched Hailey off the street in broad daylight in front of horrified witnesses and took her to his home, where he raped her and sodomized her. He then shot her in the head while her arms were bound, sprayed her body with water that contained dog feces, and wrapped her in garbage bags and put her in a plastic bin in his basement. In addition to being shown pictures of the victim's lifeless body stuffed in the bin, the jury was given handwritten

by the mitigation presentation, which included mental health evidence, to vote for life. These cases illustrate a point that is easily obscured when one's legal analysis is driven primarily by the facts of the offense: that even for the most brutal crime, a thorough investigation and competent presentation of readily available mitigation evidence can persuade a juror to recognize a defendant's humanity, weigh the case differently, and vote against imposing a death sentence.

Appellant's Brief examined the mitigating information presented at the §2255 hearing in detail and provided a reasoned analysis concerning the difference it would have made had counsel presented the compelling evidence concerning Nelson's background and brain damage to the jury. AB66-122. But the Government has not genuinely engaged those arguments. Its brief primarily focuses on mining the trial record for details about the case the jury heard, rather than responding to the

---

stories found in Wood's home recounting his fantasies about raping little girls. As the foreperson later told the press, the jury found all the alleged aggravating factors—including that the murder was "wantonly vile"—"fairly rapidly." *See* Giacoma Bologna, *Jury foreman describes how jurors deadlocked over death penalty for Craig Wood*, SPRINGFIELD NEWS-LEADER, Nov. 7, 2017, http://sgfnow.co/2AhlEq8; Harrison Keegan, *Attorneys say Craig Wood did not get fair trial after errors by judge*, Springfield News-Leader, Dec. 27, 2017, http://sgfnow.co/2BMXsgA.



Appellate Case: 15-3160 Page: 11 Date Filed: 03/12/2018 Entry ID: 4638550

case that the jurors did not *but should have heard*, but for trial counsel's unconstitutional performance.

Although Nelson anticipated the Government's "brutality trumps" approach to his IAC claims and briefed the issue accordingly, AB53-62, he is mindful the Government's detailed recitation of the facts in this case would understandably evoke shock in the reader. This is an aggravated case. Nelson does not argue otherwise. But "[i]t is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion,"[2] and thus the Court's "duty to search for constitutional error with painstaking care … in a capital case"[3] cannot be contingent on the severity of the crime. As one court has noted:

> Almost without exception, the cases we see in which conviction of a capital crime has produced a death sentence arise from extremely egregious, heinous, and shocking facts. But, if that were all that is required to offset prejudicial legal error and convert it to harmless error, habeas relief based on evidentiary error in the punishment phase would virtually never be available, so testing for it would amount to a hollow judicial act.

*Gardner v. Johnson*, 247 F.3d 551, 563 (5th Cir. 2001).

---

[2] *Gardner v. Florida*, 430 U.S. 349, 358 (1977).

[3] *Burger v. Kemp*, 482 U.S. 776, 785 (1987).



Appellate Case: 15-3160 Page: 12 Date Filed: 03/12/2018 Entry ID: 4638550

Because of his crime, the law demands that Nelson suffer one of two severe punishments: life imprisonment without possibility of release or death. But the law also demands that he have a fair chance to persuade a jury that the less severe punishment is enough, and that requires effective assistance of counsel. Due to counsel's failure to adequately investigate and present mitigation, the jury did not hear powerful evidence concerning his background, such as his childhood sexual abuse, and there was a total absence of evidence regarding Nelson's brain damage and mental illness. Depriving the jury of all that compelling mitigating evidence does not just undermine confidence in the death sentence but *substantially* undermines it, and Nelson is entitled to relief.



Appellate Case: 15-3160 Page: 13 Date Filed: 03/12/2018 Entry ID: 4638550

## I. The District Court's *Strickland* Analysis was Flawed.

The briefs in this case unfortunately read like two ships passing in the night. In his opening brief, Nelson raised six different errors in the district court's application of *Strickland*:

1. The determination that counsel's investigation and presentation of mitigating evidence was "not deficient" was invalidated by the court's simultaneous holding that counsel *was deficient* for failing to investigate and present mitigating mental health evidence.

2. The §2255 evidence of childhood sexual abuse, brain damage, mental illness, and paternal social history was not cumulative to the trial presentation because such evidence was never presented to the jury in any form.

3. The court's focus on whether the trial presentation was "sufficient" ignored the relevant legal inquiry: whether it was reasonable for counsel to omit the aforementioned §2255 evidence.

4. The fact that a crime is highly aggravated cannot, as a matter of law, preclude a showing of *Strickland* prejudice.

5. It is impermissible to discount mental health mitigation based on its nexus to the offense.

6. The court improperly failed to consider or unreasonably discounted expert evidence presented at the §2255 hearing.

AB42-96.



Appellate Case: 15-3160 Page: 14 Date Filed: 03/12/2018 Entry ID: 4638550

The Government's Brief hardly engages these issues.[4] It is also silent as to Nelson's detailed analysis of the evidence developed at the §2255 hearing. AB66-122. Instead, it commits the same legal errors identified above, and mischaracterizes or ignores compelling evidence contrary to its assertions. Nelson primarily relies on his Opening Brief as the overall statement of his factual and legal contentions, but respectfully submits this Reply to respond to several broad errors in the Government's defense of the district court's *Strickland* analysis.[5]

---

[4] The Government's brief appears to recycle a prior pleading; it repeats the same factual errors first made in its post-hearing brief (Doc. 268), which the district court adopted nearly verbatim in its subsequent opinion. For example, its post-hearing brief erroneously claimed that Francis prepared a binder of mitigation information that was presented to the jury (Doc. 268 at 31), and that Dr. Gur's testimony provided "no useful information" because he testified there is no "baseline comparative value" for behavioral imaging (*id.* at 32). *Compare* with *Nelson*, 97 F. Supp. 3d at 1137 & 1146. *See also* AB77, n.23. The district court's adoption of these errors demonstrates it did not "reliably [find] the relevant facts." *Ford v. Wainwright*, 477 U.S. 399, 411 (1986) (citation omitted).

[5] Nelson's opening brief preemptively responded to most of the arguments advanced by the Government; for the convenience of the Court, Nelson cites to the relevant pages of that pleading ("AB") throughout this Reply, rather than repeat those responses here.



Appellate Case: 15-3160 Page: 15 Date Filed: 03/12/2018 Entry ID: 4638550

A. Labeling a decision "strategic" does not automatically render it reasonable.

The Government devotes much of its brief to the claim that counsel's failure to investigate and present mental health evidence was a "calculated strategy" to create a habeas issue. GB52-57, 63-67. This argument is immaterial given that the district court correctly found that even if counsel's omissions were intentional,[6] they were not reasonable under *Strickland.*

Indeed, the Government concedes that "the district court found that counsel's performance was deficient[.]" GB52. The court held that counsel's deficiencies included:

(1) "cancelling the neuropsychological examination of Nelson and in failing to reschedule such examination";

---

[6] Nelson does not concede this point. Berrigan testified under oath this was not his strategy and that his omissions were due to a lack of attention and time. AB33. Contemporaneous evidence corroborates his testimony: he entered the case only months before trial, his billing records reflect he was primarily occupied with other matters during that time (including several other capital cases), and he underwent quintuple coronary artery bypass surgery just weeks before Nelson's trial. AB14-20, 27-36.

The court's assertion that Berrigan "successfully employed" this "strategy" in *Johnson v. United States*, 860 F. Supp. 2d 663 (2012), *see Nelson* at 1148, is unfounded. The court there made no such finding that Berrigan's decision to forego investigation and presentation of mental health evidence was a calculated strategy to create a habeas issue.

(2) “failing to have any other assessments conducted to assess whether Nelson suffered any brain damage, dysfunction or other cognitive impairments”; and

(3) “advising Nelson not to submit to an examination by government experts, which effectively prevented him from presenting any mental health evidence in the mitigation phase.”

*Nelson* at 1151.

Given that the Government does not argue that the court erred in its prong one analysis, it is unclear what purpose it serves to argue that counsel’s unreasonable choices were a “calculated strategy.” Ultimately, the “relevant question is not whether counsel’s choices were strategic, but whether they were reasonable.” *Roe v. Flores-Ortega,* 528 U.S. 470, 481 (2000) (citation omitted).[7] Here, the district court specifically held that counsel’s choices were unreasonable.

The court rejected the Government’s contention that counsel’s advice to Nelson to refuse a Government examination “so as to not give the Government additional damaging evidence” was sound. GB57. It

---

[7] A finding that a decision was strategic does not automatically render it reasonable under *Strickland* because these are distinct legal concepts. Whether a decision was “strategic” is a question of fact; whether the strategy was “reasonable” is a question of law. *See Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991).

ruled this decision was "unreasonable" because "any defense mental-health evidence could be withdrawn if that evaluation were deemed harmful and the Government's experts would not be permitted to testify since their sole purpose was to rebut any defense case." *Id.* Thus, "without knowing what the results of the [Government] examination would be, there [was] no reasonable basis for directing Nelson to refuse the examination." *Id.*

Similarly, the court rejected the Government's contention that counsel's pre-trial litigation over the parameters of any Government examination of Nelson rendered counsel's advice to refuse an examination reasonable. As it noted, "that litigation took place in a vacuum since the defense had not investigated Mr. Nelson's mental health and had no mental health case to present or protect." *Id.*

The Supreme Court has specifically rejected the notion that deliberately rendering deficient performance in order to invite habeas review constitutes reasonable trial strategy. *See Kimmelman v. Morrison*, 477 U.S. 365, 382 n.7 (1986) ("[N]o reasonable lawyer would forego competent litigation of meritorious, possibly decisive claims on the remote chance that his deliberate dereliction might ultimately

result in" collateral attack; "it is virtually inconceivable that an attorney would deliberately invite the judgment that his performance was constitutionally deficient in order to win federal collateral review for his client"; "counsel's client has little, if anything, to gain and everything to lose through such a strategy"; "By defaulting, counsel shifts the burden to the defendant to prove that there exists a reasonable probability that, absent his attorney's incompetence, he would not have been convicted.").[8] Indeed, such a purported "sandbagging" strategy would have been especially unreasonable here considering that counsel never undertook a pre-trial mental health investigation, and thus was in no position to gamble with his client's life that relevant mitigating mental health evidence to sustain an IAC claim would be uncovered in post-conviction.

---

[8] *See also United States v. Day*, 969 F.2d 39, 46 n.9 (3d Cir. 1992) ("Most defense lawyers, like most lawyers in other branches of the profession, serve their clients and the judicial system with integrity. Deliberate ineffective assistance of counsel is not only unethical, but usually bad strategy as well. For these reasons and because incompetent lawyers risk disciplinary action, malpractice suits, and consequent loss of business, we refuse to presume that ineffective assistance of counsel is deliberate.")



Appellate Case: 15-3160 Page: 19 Date Filed: 03/12/2018 Entry ID: 4638550

B. <u>Counsel's omissions were not reasonable</u>.

Had counsel not abandoned the investigative tasks flagged by the FPD, they could have presented compelling mitigating evidence of Nelson's brain damage, mental illness, childhood sexual abuse, and paternal family history to the jury.[9] The Government does not dispute this. Instead, it argues that the district court "correctly" found that such evidence "had actually been presented to the jury." GB30. That finding was clearly erroneous: the record reflects that the relevant evidence presented at the §2255 hearing was *completely omitted* from the trial presentation.[10] AB46-47; 66-122. Indeed, the district court held *in the*

---

[9] The Government erroneously asserts this evidence was discovered only because habeas counsel had "more time" to find it. GB39. These *same issues* were flagged in Ninemire's September 12, 2000 "to-do" list to trial counsel. AB20-21, 25-26. Although the §2255 proceeding was conducted at a different pace given the remand, there is no evidence in the record that it would have taken trial counsel "years" to complete the same tasks— conduct a neuropsychological examination, request records, interview witnesses—to obtain the same evidence presented in post-conviction. Regardless, failure to request a continuance to complete these tasks is itself attributable to counsel's ineffectiveness.

[10] The Government's assertion that Dr. Cunningham presented expert mental health evidence at trial is a red herring. GB62. Cunningham never clinically evaluated Nelson and provided no testimony regarding Nelson's brain damage, neuropsychological deficits, or mental illness. Moreover, Cunningham *incorrectly* advised the jury



Appellate Case: 15-3160 Page: 20 Date Filed: 03/12/2018 Entry ID: 4638550

*very same opinion* that counsel was deficient for failing to present "any mental health evidence." *Nelson* at 1151.[11]

Given these undisputed omissions, the relevant legal test is whether counsel's omissions were reasonable. But rather than inquire

---

that Nelson had no mental health issues that impaired his behavior, cognition, and ability to tell right from wrong. AB38-39.

Similarly, its contention that "the type of information" to which Dr. Lebowitz testified at the §2255 hearing "was generally submitted to the jury [at trial]" is not true. GB39. Dr. Lebowitz opined about matters that were *never presented to the jury*, e.g., the sexual and physical abuse Nelson endured in juvenile detention facilities, and the manner in which chronic exposure to childhood trauma impaired Nelson's brain development and psychological, sexual and emotional development, as well as his behavior and cognition as an adult. AB83-85. Such expert evidence is not "fungible" with the general trial testimony about Nelson's impoverished upbringing.

[11] The Government attempts to resolve this contradiction by noting the court discussed the mental health evidence in a "separate" part of its order. GB48. Regardless of the "structure" of the opinion, *id.*, the legal error with its prong one *Strickland* analysis remains: its holding that counsel's mitigation investigation and presentation was not deficient is invalidated by its simultaneous holding that the investigation and presentation of mitigating mental health evidence *was* deficient. AB44-45. Similarly, there is no legal basis for evaluating categories of mitigation separately: in conducting a *Strickland* analysis, courts must "evaluate the *totality* of the available mitigation evidence." *Williams*, 529 U.S. at 397 (emphasis added). *See also Daniel v. Comm'r, Alabama Dept. of Corrections*, 822 F.3d 1248, 1278 (11th Cir. 2016) (state court "unreasonably failed to consider" aggregate impact of trial counsel's deficiencies, and instead "broke up [petitioner's] penalty phase ineffective assistance of counsel claim into different subparts, then analyzed them separately"; state court "never considered what would be



Appellate Case: 15-3160 Page: 21 Date Filed: 03/12/2018 Entry ID: 4638550

whether it was reasonable for counsel to forego the investigation and presentation of the omitted evidence, the Government commits the same legal error as the district court: deciding that the trial presentation in a vacuum appears "sufficient," and then reasoning backwards that this excuses counsel's omissions. That backwards-looking approach is a fundamental misapplication of *Strickland*. AB49-50.

The Government's reliance on *Wiggins v. Smith*, 539 U.S. 510 (2003), for the proposition that *Strickland* "does not require defense counsel to investigate every conceivable piece of mitigation evidence," GB51, is both a mischaracterization of *Wiggins* and inapplicable to the facts of this case. A preliminary investigation into Nelson's childhood sexual assault and mental frailties had already been instigated by predecessor counsel, as detailed in the FPD's "to-do" list to trial counsel, and a neuropsychological examination had already been scheduled. Contrary to the Government's gloss, the pertinent issue here is not

---

the combined effect of all mitigating evidence in producing a different outcome at sentencing. But it is the reweighing of the totality of mitigating evidence that is important for reweighing under *Strickland*").

whether it was incumbent on counsel to investigate any "conceivable" mitigation, but whether it was reasonable for it to *abandon* the investigation into previously-identified mitigation areas that was already underway. *Wiggins*, 539 U.S. at 527-28 ("counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentencing strategy impossible").[12] Here, the district court erroneously failed to conduct that inquiry.

Similarly, the court's reliance on the total hours billed by counsel and the mitigation investigators in its prong one analysis is inapposite. GB37-38. The billing records and defense work product do not demonstrate the defense team investigated Nelson's childhood sexual assault, brain damage and dysfunction, and mental illness.[13] This confirms that counsel's decision not to present this information at trial was due to ignorance of the relevant facts, not strategic considerations.

---

[12] *See also Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir. 1991) ("The Supreme Court requires that counsel make a reasonable investigation in the preparation of a case or make a reasonable decision not to conduct a particular investigation.") (citation omitted).

[13] Regardless, the flaw in this argument is that even *if* the defense team had investigated and known about this evidence, there was still no reasonable basis for counsel to forego *presenting* it to the jury.



Appellate Case: 15-3160 Page: 23 Date Filed: 03/12/2018 Entry ID: 4638550

Moreover, reliance on the quantity of hours billed by the defense team is not a substitute for a proper *Strickland* analysis. Ultimately, it was incumbent on the district court to inquire whether it was reasonable for counsel to abandon investigation into these matters, and/or forego presentation of this information to the jury. The court did neither, and its failure to do so was erroneous. AB47-53.[14]

C. <u>There is a reasonable probability that at least one juror would have struck a different balance if the §2255 mitigation evidence had been presented at trial</u>.

The Government makes no attempt to respond to the compelling §2255 evidence concerning Nelson's traumatic juvenile incarcerations, childhood rape, or detailed social history concerning the paternal side of his family; nor does it contest the numerous cases holding that counsel's failure to present this type of "classic" mitigation evidence is prejudicial.

---

[14] Neither the district court nor the Government provided any "justifiable reason to prevent the jury from learning about" this mitigating evidence. *Simmons*, 299 F.3d at 938. Given that trial counsel's sentencing strategy was to argue for mercy despite guilt, evidence of Nelson's brain damage, mental illness, and childhood sexual abuse would have been wholly consistent with and supported that strategy. *Ferrell v. Hall*, 640 F.3d 1199, 1235 (11th Cir. 2011) ("[B]ecause defense counsel … mostly focus[ed] on mercy, mitigating evidence of [Petitioner's] mental health and childhood would have easily and directly supported the approach counsel offered at sentencing.").



Appellate Case: 15-3160 Page: 24 Date Filed: 03/12/2018 Entry ID: 4638550

AB107-118. Such evidence about Nelson's background would have undoubtedly provided the jury with a more complete understanding and sympathetic portrait of his life circumstances and "substantially impacted any 'mercy-based' juror decision-making." *Jefferson v. Sellers*, 250 F. Supp. 3d 1340, 1381 (N.D. Ga. 2017).

Instead, the Government restricts its prejudice analysis to the mental health evidence. But its Brief neither contends with the full record developed below, nor justifies the legal errors committed by the district court. Notwithstanding the district court's erroneous conclusion[15] that "no amount of mitigating mental health evidence or testimony relating to brain damage and a difficult upbringing" could have overcome the facts of the crime, *Nelson* at 1157, federal courts have consistently rejected the argument that a capital defendant is not prejudiced by the *complete omission* of readily available mitigating mental health evidence. AB56-58. Given the extensive and compelling evidence of brain damage, frontal lobe dysfunction, trauma, and mental illness that could have been presented to the jury but for counsel's deficient performance, the district court erred in its denial of relief.

[15] *See* AB53-62.



Appellate Case: 15-3160 Page: 25 Date Filed: 03/12/2018 Entry ID: 4638550

1. The *Tennard* error.

Evidence of mental impairments can be uniquely compelling because it can help explain (but not justify) how someone could have committed an otherwise inexplicable act: people who cannot regulate their cognition and behavior due to brain injury or dysfunction have a physical problem with their nervous system, not a moral flaw. *See Hooks v. Workman*, 689 F.3d 1148, 1205 (10th Cir. 2012) ("the involuntary physical alteration of brain structures, with its attendant effects on behavior, tends to diminish moral culpability, altering the causal relationship between impulse and action.").

However, this does not mean that mental health evidence unrelated to the offense is irrelevant. The Supreme Court has clearly held it is *constitutional error* to discount mitigating mental health evidence that does not have a nexus to the crime. *Tennard v. Dretke*, 542 U.S. 274, 287 (2004); AB63-66. This is because such evidence has inherent mitigating value under the Eighth Amendment—even absent a nexus to the crime, evidence of mental frailties can present the defendant in a more sympathetic light and independently form the basis of a "reasoned moral response" that a person with such



Appellate Case: 15-3160 Page: 26 Date Filed: 03/12/2018 Entry ID: 4638550

characteristics is not deserving of a death sentence. *Tennard*, 542 U.S. at 288; *Smith v. Texas*, 543 U.S. 37, 44 (2004) (*per curiam*).

Here, the evidence of Nelson's brain impairments was undisputed. As even Government expert Dr. Martell conceded, this was a case of "convergent validity": all of the neuropsychological testing, brain imaging, medical records, and social history evidence independently came to the same conclusion, that Nelson has significant frontal lobe damage and dysfunction. AB86. The district court never considered the inherent mitigating value of this evidence; its prejudice analysis with respect to the mental health evidence focused solely on whether it "explained why [Appellant] acted as he did" or "played a role in him committing the crime." *Nelson* at 1146-47. The Government's brief does not address this error; rather, it repeats it. *See* GB60 (discounting brain damage evidence because it did not "play[] a significant role in him committing this crime"); *id.* (brain impairment evidence "did not account for uncontrollable impulsivity"). The district court's failure to consider the reasonable probability that one or more jurors would have weighed the case differently based on this undisputed evidence, even

absent a nexus to the crime, is clear *Tennard* error and warrants reversal.

2. <u>The *Porter* error</u>.

The *Tennard* error notwithstanding, Nelson does not concede that Dr. Martell's rebuttal evidence would have unanimously persuaded the jury that Nelson's impairments played no role in the crime. Indeed, the district court committed the very error that *Porter v. McCollum*, 558 U.S. 30, 43 (2009) prohibits: it discounted entirely the impact that the testimony of Nelson's experts might have had on the jurors simply based on the fact that Dr. Martell disagreed with some of their conclusions. AB66-96. The Government doubles down on this error. GB61 ("Nothing in the evaluations from the other [defense] experts … would have changed Dr. Martell's evaluation or opinions."; "The district court correctly determined that even if defense counsel had employed these additional mental health experts to testify during the penalty phase, Dr. Martell's testimony would have strongly countered their testimony[.]")

The overwhelming evidence established that Nelson has significant damage to the areas of the brain responsible for regulating



Appellate Case: 15-3160 Page: 28 Date Filed: 03/12/2018 Entry ID: 4638550

behavior, cognition, and emotion. AB68-96. The social history records—documenting brain injuries beginning at birth on account of severe oxygen deprivation, and multiple head injuries sustained in childhood and adolescence from repeated abuse—were corroborated by MRI and PET neuroimaging data showing damage in both the structures and functioning of Nelson's brain. This was further corroborated by neuropsychological testing—including the Government's—demonstrating profound executive dysfunction, which includes incapacity for planning and forethought, anticipating consequences and outcomes, organizing, sustaining attention, and inhibition of impulse. Dr. Martell conceded that Nelson's scores placed him in the bottom 1% of the population in terms of his executive functioning.

While Dr. Martell was certainly an outlier in opining that none of this evidence, including his own testing, convinced him that Nelson's brain damage and dysfunction impaired his behavior,[16] that fact alone

[16] Appellant's Brief extensively documented Dr. Martell's consistent bias in this case. AB86-96. In addition to failing to report objective findings that undermine his opinion, Dr. Martell opined in two other federal capital cases that neuropsychological testing results established that the defendants' impairments played a role in their crimes, despite the fact that the testing results in those cases showed



Appellate Case: 15-3160 Page: 29 Date Filed: 03/12/2018 Entry ID: 4638550

is not dispositive for purposes of a proper *Strickland* analysis. *Porter* requires a court to consider the impact that the totality of the evidence would have had on the jurors. Contrary to the district court's ruling, the presentation of rebuttal mental health evidence does not compel a conclusion that Nelson did not suffer prejudice as a result of the jury not having heard any mitigating mental health evidence whatsoever. While the opinions of Nelson's experts regarding the impact that his neuropsychological deficits and brain damage had on his behavior are not due to be accepted without careful consideration,[17] the jury should

---

*less* brain dysfunction than in Nelson's case. AB94-95. A proper *Strickland* analysis under *Porter* requires consideration of how the jurors might have been impacted by this substantial impeachment of Dr. Martell's testimony.

[17] The district court did not find that any of Nelson's experts were not credible. This included Dr. Gelbort, who specifically rebutted Dr. Martell's opinion that the facts of the crime demonstrated planning rather than impaired behavior due to frontal lobe dysfunction. AB78-81. To the extent that the court criticized Dr. Gur's testimony, its discounting of his testimony was unsupported by the record. AB76-78. Similarly, the court's observation that Dr. Crawford could not have testified in 2001 about the "lingering effects of prenatal and neonatal insults" to the brain, *Nelson* at 1146, is immaterial; the relevant part of her testimony concerned "summariz[ing] the myriad problems which were documented in Nelson's birth records, including compromised neurological development." *Id.* As Dr. Martell noted, Dr. Amador concluded that these birth complications "very likely resulted in damage to [Nelson's] brain," which Dr. Martell did not dispute. Appellant's Appendix at A363.



Appellate Case: 15-3160 Page: 30 Date Filed: 03/12/2018 Entry ID: 4638550

have had an opportunity to hear and consider those opinions. The district court's failure to consider the impact the defense expert evidence would have had on the jurors—whether or not it established a nexus to the crime—violated the dictates of *Porter*.

3. Conclusion.

Trial counsel's mitigation presentation informed the jury that Nelson was raised in poverty by a neglectful mother. But as the Government repeatedly pointed out, any hardships he suffered did not mitigate against the death penalty—especially considering that his twin brother, who grew up in the same environment, managed to overcome those same hardships and lead a productive life. The jury "heard almost nothing that would humanize [Nelson] or allow them to accurately gauge his moral culpability." *Porter*, 558 U.S. at 41. In the absence of any other readily available mitigation evidence, the jury was left with no understanding of Nelson or explanation for the crime other than the Government's assertion that he was "evil."

The §2255 mitigation evidence "paints a vastly different picture" than the one painted at trial. *Williams v. Allen*, 542 F.3d 1326, 1342 (11th Cir. 2008). The jury never heard significant details about Nelson's



Appellate Case: 15-3160 Page: 31 Date Filed: 03/12/2018 Entry ID: 4638550

background that explain the different trajectory of his life path from that of his twin—which began at birth, when he suffered breathing difficulties and a lack of oxygen to the brain that was so severe that his infant body turned blue and he was baptized during the ambulance ride to the children's hospital for fear that he would likely die just hours after being born. The resulting brain damage he suffered, and his small stature for much of his childhood and adolescence, had cascading effects that made him a target for abuse and ridicule in a way that his twin was not. The jury also never heard about the years Nelson spent in notorious juvenile corrections facilities where sexual and physical abuse was common. As a 14 year old, standing at 5'3" and weighing 155 pounds, he never had a chance: older residents raped and beat him. Nelson attempted suicide multiple times—slashing his wrists with the aluminum from a Coke can, teeth from a comb, and even his own fingernails.

The jury heard no expert evidence about what effect this kind of repeated exposure to trauma has on a child's psychological, emotional, sexual, and neurobiological development. Nor did it hear any expert evidence about the nature of Nelson's mental frailties—the fact that he

was genetically predisposed to mental illness by the multigenerational presence of schizophrenia, psychosis, paranoia, and depression on both sides of his family; that he, in fact, was severely mentally ill, suffered from psychosis and was in a dissociative state at the time of the offense; and that he had organic brain damage and dysfunction that impaired his ability to engage in rational decision-making, and diminished his ability to inhibit his behavior and impulsivity. Indeed, trial counsel affirmatively *misled* the jury into believing that Nelson had no mental health problems at all.

In addition to providing the jury with a complete picture of Nelson's background and characteristics, such evidence would have also rebutted key aggravators alleged by the Government. AB105-106.

Although the crime "in this case [was] horrific, courts have not hesitated to grant relief in similar circumstances where the absence of available mitigation evidence left the jury with a 'pitifully incomplete' picture of the defendant." *Anderson v. Sirmons*, 476 F.3d 1131, 1148 (10th Cir. 2007). Had the jury been presented a complete picture of Nelson's background, history, and mental frailties, there is a reasonable probability "at least one juror would have struck a different balance."



Appellate Case: 15-3160 Page: 33 Date Filed: 03/12/2018 Entry ID: 4638550

*Wiggins*, 539 U.S. at 537.[18] Accordingly, Nelson has carried his burden of demonstrating he received ineffective assistance of counsel during the sentencing phase of his trial and is entitled to relief.

## II. Nelson's Claim That He Was Improperly Advised To Plead Guilty Is Compelling, Particularly In Light of *Lee v. United States*. Because It Has No Viable Argument On The Merits, The Government Now Raises Purported Procedural Defenses That Cannot Withstand Scrutiny.

Trial counsel unreasonably failed to conduct an adequate investigation into Nelson's mental health prior to advising him to plead guilty. But for counsel's ineffectiveness, Nelson would have been advised he had an affirmative defense of insanity. There is at the very least a reasonable probability that if Nelson had known this, he would have gone to trial rather than plead guilty. AB123-33.

---

[18] The district court's assertion that the verdict form proves the aggravating factors were "simply too overwhelming" is illogical. GB71. The jury never heard the §2255 mitigation evidence, so its findings are not probative of the strength of that evidence. Indeed, the fact that one juror found that Nelson's upbringing had a lasting detrimental impact on his "psyche and personality" undermines the court's analysis: it demonstrates there was at least one juror who–*even in the absence of any mental health evidence*–was receptive to such mitigation. Moreover, the jurors were asked during voir dire whether they would automatically vote for death in a case involving the murder of a child, and each affirmed they would not. Contrary to the Government's assertion, GB71, the jurors did not believe this was the type of crime where a death sentence was inevitable.



Appellate Case: 15-3160 Page: 34 Date Filed: 03/12/2018 Entry ID: 4638550

Nelson's claim is strong. The first prong of *Strickland* has already been met: the district court found that counsel's failure to conduct an adequate pre-trial mental health investigation was unreasonable. *Nelson* at 1149. Thus, it is beyond dispute counsel "fell short in the performance of his duty by failing to investigate the seriousness of the mental problems from which [Nelson] suffered" prior to advising him to plead guilty. *Thomas v. Lockhart*, 738 F.2d 304, 308 (8th Cir. 1984). *See also* AB127-29.

The only remaining question is prejudice. Under the intervening decision in *Lee v. United States*, 137 S. Ct. 1958 (2017), Nelson need not prove a likelihood of success at trial; he merely must demonstrate that if he had been properly advised of the defense, there is a reasonable probability that he would have chosen to go to trial. Evidence in the record demonstrates that Nelson would have elected a trial, including statements that he was only interested in the culpability, not the sentencing, phase. *See* Section II.D, *infra.*

However, Nelson recognizes that this issue was not the subject of the previous remand and additional fact-finding is, therefore, necessary



Appellate Case: 15-3160 Page: 35 Date Filed: 03/12/2018 Entry ID: 4638550

to allow both parties a fair opportunity to develop a complete record before this claim can be properly adjudicated.

The Government did not respond to Nelson's substantive claim other than comment in a footnote that it "does not concede" it.[19] Instead it raises two purportedly jurisdictional arguments to preclude review: (1) the claim is not properly before this Court because it was not one of

---

[19] The Government states that it "does not concede that Nelson has or had a valid defense of insanity," supporting its position with the fact that at trial Nelson was found "competent." GB72 n.18. This single comment on the facts is both revealing and unavailing. First, a finding of competency does not negate the affirmative defense of insanity. *See* 18 U.S.C. §4241(f) ("A finding by the court that the defendant is mentally competent to stand trial shall not prejudice the defendant in raising the issue of his insanity as a defense to the offense charged[.]"). Competency and sanity are distinct concepts "governed by different medical and legal standards." *United States v. Bartlett*, 856 F.2d 1071, 1077 n.5 (8th Cir. 1988).

Second, the Government's assertion that it could rebut the defense with its own expert evidence misunderstands the nature of the claim: under *Lee*, Nelson need not prove that his insanity defense had a "likelihood of success at trial" to establish *Strickland* prejudice, but rather simply that there is a "reasonable probability" that "it would have affected his decisionmaking" about pleading guilty if he had been properly advised by counsel. *Lee*, 137 S. Ct. at 1967. "This standard does not appear to be particularly demanding, as even a defendant who has only the 'smallest chance of success at trial'—relying on nothing more than a 'Hail Mary'— may be able to satisfy it." *Id.* at 1974 (Thomas, J., dissenting). *See also Tzen v. United States*, No. 16-0734-DRH, 2017 WL 4233077 at *3-*4 (S.D. Ill. Sept. 22, 2017) (granting *Lee* claim in §2255 case where counsel misadvised movant that her defense was foreclosed).



Appellate Case: 15-3160 Page: 36 Date Filed: 03/12/2018 Entry ID: 4638550

the issues remanded for an evidentiary hearing, and (2) the claim does not "relate back" to issues raised in the original §2255 motion, and is therefore an unauthorized successive motion.

In the following sections of the brief, Nelson explains why the Government's arguments are mistaken and why this Court must, in fact, remand this issue to the district court. Rather than implicate this Court's jurisdiction, the Government has, at best, raised an affirmative "statute-of-limitations" defense. And although that particular defense lacks merit in this case, even if one gave it credence, it could not be resolved properly by this Court in the first instance; a remand would be required to allow Nelson to properly litigate the response to this procedural defense. *See* Section II.C.3, *infra*.

Before turning to these procedural arguments, however, Nelson must first advise the Court of a critical omission in the Government's Brief that conclusively rebuts the underlying premise of its positions.

## A. The Government previously acknowledged in writing that it understood that Nelson's claim encompassed counsel's failure to advise him of a potential defense.

Central to the Government procedural arguments is its assertion that it did not previously know that Nelson's IAC claim involved "the

specific claim that defense counsel provided ineffective assistance of counsel based on Nelson having a 'defense to the capital charges' as he now contends." GB77.[20] This is false. In its original answer to the §2255 motion,[21] the Government explicitly acknowledged it was on notice that the claim encompassed counsel's failure to notify Nelson of a potential affirmative defense:

> To prevail on a claim of ineffective assistance of counsel where there has been a guilty plea, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52 (1985). *If the claimed error is counsel's failure to notify the petitioner of a potential defense, the inquiry "will largely depend on whether the affirmative defense likely would have succeeded at trial." Id.* at 52. Nelson "faces a heavy burden" to establish ineffective assistance of counsel pursuant to §2255. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

Doc. 39 at 21-22 (emphasis added).

The Government also specifically argued that it was "necessary" to conduct a hearing on this claim:

---

[20] *See also* GB78 (claiming Government was not on notice the claim involved allegations that Berrigan advised Nelson there was no viable defense to the charges).

[21] The Government omitted its answer from its Appendix. It is available on the district court's docket as Doc. 39 (filed 2/24/06).

> Nelson also contends his trial counsel were ineffective when they advised and convinced him to plead guilty to Count One of the indictment in exchange for the Government dismissing Count Two[.] … Any discussions between Nelson and trial counsel on his decision to enter a plea of guilty to Count One are discussions of which government counsel has no information. *Again, it will be necessary to have testimony at a hearing or an affidavit in order to learn all of the circumstances surrounding this decision.*

Doc. 39 at 46-47 (emphasis added).

The Government was thus clearly "on notice" that: (1) the claim involved counsel's failure to advise Nelson of a potential defense, and (2) the evidence in support of this claim would involve all of the circumstances involved in the decision making about the plea. The Government's sudden professed surprise about the scope of the claim cannot be credited.

B. <u>The Government's jurisdictional arguments lack merit</u>.

The Government's suggestion that this Court lacks jurisdiction to consider Nelson's claim is belied by the procedural history, which the Government obscures. Nelson diligently moved to certify this claim for appeal once the intervening decision in *Lee* was issued, and this Court properly granted his request, *without any objection by the Government*.

Its belated attempt to preclude review of this issue with meritless procedural arguments should be rejected.

1. Relevant procedural history.

In the initial §2255 proceeding, the district court made no specific findings as to Nelson's claim that counsel were ineffective for advising him to plead guilty. Instead, it issued a blanket two-page order summarily denying relief on the basis that every IAC claim failed the first prong of *Strickland* because counsel's actions "[fell] within the broad perimeters of trial strategy." Appellant's Appendix at A21.

On appeal, this Court reversed and remanded for a hearing on several claims concerning counsel's failure to adequately investigate and present mitigation. However, it denied a COA on the IAC-guilty plea claim, and it was therefore not part of the remand.

After the mandated hearing, the district court reversed its previous ruling on prong one of *Strickland* and held that counsel's failure to conduct an adequate pre-trial mental health investigation was deficient. Nevertheless, it again denied relief on the claims before it. This Court rejected Nelson's application for a COA on those remanded

penalty-phase claims, and Nelson filed a petition for rehearing (hereafter "December 2016 rehearing petition").

While that rehearing petition was pending, the Supreme Court decided *Lee*, which clarified the low threshold for establishing *Strickland* prejudice on claims concerning counsel's unreasonable advice to plead guilty. This was a significant and material decision here as it instructed lower courts on how to resolve these claims. In *Nelson,* the district court's post-remand reversal of its prong one analysis of counsel's mental health investigation, combined with the intervening decision in *Lee*, now rendered the district court's previous merits denial of his IAC-guilty plea claim debatable by jurists of reason. (Notably, this Court agreed.)

On June 28, 2017—within five days of the issuance of *Lee*—Nelson filed a motion for leave to file an out-of-time petition for rehearing on the pre-remand COA denial of the IAC-guilty plea claim. That motion cited ample authority establishing the Court's power to grant a petition for rehearing out of time and demonstrated that there was "good cause" for the request given the intervening *Lee* decision.

Under Fed. R. App. P. 27(a)(3)(A), the Government had 10 days to respond to Nelson's motion, but filed nothing.

On July 19, 2017, this Court granted the December 2016 rehearing petition and granted a COA on the remanded penalty phase claims. Although the relevant docket entry initially stated that the Court had *also* granted the *Lee*-based COA application, that was a clerical mistake; the Court had not actually ruled upon that second application.[22] Undersigned counsel contacted the clerk's office once they realized the administrative error and re-submitted the request for a COA on the IAC-guilty plea claim. Since the judgment had now been re-opened, Nelson re-filed it as a *Motion to Modify the COA* to account for the changed procedural posture of his case. Again the Government did not object.

This Court granted the motion to modify the COA and certified the IAC-guilty plea claim for inclusion in this appeal.

---

[22] The clerical error is explained in more detail in the Motion to Modify the COA (8/21/17) at 8-9.



Appellate Case: 15-3160 Page: 42 Date Filed: 03/12/2018 Entry ID: 4638550

2. The order modifying the COA properly conferred jurisdiction on this Court.

Despite the propriety of the litigation described above, the Government now argues that the IAC-guilty plea claim is not properly before this Court because it was not "related to the district court's ruling on the issues that were remanded for consideration and an evidentiary hearing by this Court." GB75. This argument is meritless.

Federal courts have the power to revisit prior decisions "in any circumstance." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988).[23] Here, Nelson asked this Court to review its pre-remand denial of COA on the IAC-guilty plea claim in light of intervening circumstances, and the Court agreed. Nelson used two different procedural vehicles expressly permitted by the Federal Rules

---

[23] *See also Christianson* at 817 ("the law-of-the-case doctrine merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power") (internal quotation marks and citation omitted).

and case law: a motion for leave to file an out-of-time petition for rehearing[24] and a motion to modify the COA.[25]

The Government did not object to either motion when filed and does not now argue that either was improper. Nor does it contend that the Court lacked authority to grant the relief requested by either motion. Once this Court reopened the judgment and granted the request to expand the COA to include the IAC-guilty plea claim, that claim was properly certified for this appeal. That should end any discussion of whether the claim can be considered now.

The Government next complains that the district court was unable to rule on the IAC-guilty plea claim as part of the remand. GB75.[26] That

---

[24] *See* Fed. R. App. P. 40(a); *Young v. Harper*, 520 U.S. 143, n.1 (1997) (noting Tenth Circuit "had authority" to grant leave to file out-of-time petition for rehearing under Fed. R. App. P. 40); *United States v. Wall*, 456 F.3d 316, 319 (3d Cir. 2006) (granting leave to file out-of-time petition for rehearing under Fed. R. App. P 40).

[25] *See* Local Rule 25A(b); *Galbraith v. Davis*, No. 15-40596, 2017 WL 2842771 (5th Cir. June 30, 2017) (after reopening case, treating out-of-time rehearing petition as supplemental request for COA).

[26] The Government's extended excerpt of the §2255 hearing transcript, GB79-80, is a diversion. As the district court correctly noted, it could not consider Dr. Amador's report or testimony for purposes of the guilt-phase claim because its jurisdiction upon remand was limited to the penalty-phase claims. The limited scope of the remand, however,



Appellate Case: 15-3160 Page: 44 Date Filed: 03/12/2018 Entry ID: 4638550

point is irrelevant to this Court's jurisdiction.[27] The fact that this claim was not included as part of the remand does not negate this Court's authority to revisit the district court's pre-remand merits denial of the claim. This Court properly conferred jurisdiction on itself to do so when it granted the motion to modify the COA. Given the *Lee* decision, the COA grant was prudent and appropriate.

3. <u>This is not an unauthorized successor</u>.

The Government then asserts that this IAC claim "does not relate back to [Appellant's] original claim, and therefore constitutes . . . a second or successive §2255 motion." GB80. According to the Government, a claim that does not "relate back" to the timely-filed original §2255 motion is outside of AEDPA's one-year statute of limitations period and, therefore, must be considered as a successive application. GB75. This assertion is not only incorrect on the facts, it also improperly attempts to convert an affirmative defense into a jurisdictional bar.

---

does not constrain the scope of *this Court's* review.

[27] As discussed below, a limited remand for further fact development is necessary. The district court can rule on this claim in the first instance at that time.



Appellate Case: 15-3160 Page: 45 Date Filed: 03/12/2018 Entry ID: 4638550

Filing an untimely claim (which Nelson did not do) while the §2255 case is still open would not trigger the §2255(h) bar on successive motions. Rather, it would merely give rise to an affirmative defense of untimeliness. As the Supreme Court has definitively ruled, such a "statute-of-limitations defense . . . is *not* jurisdictional." *Day v. McDonough*, 547 U.S. 198, 205 (2006). The Government's assertion that an untimely claim should be construed as a successive claim is wrong as a matter of law. *Moore v. United States*, 173 F.3d 1131, 1134 (8th Cir. 1999) ("[T]he one-year time limit for filing §2255 motions is a statute of limitation and not a jurisdictional bar.").

C. The Government's newly-raised "statute-of-limitations" defense is meritless, but any doubt about that would necessitate a remand to allow Nelson to develop a full record on this issue.

Having demonstrated that there is no jurisdictional bar to the IAC-guilty plea claim, the next question is whether the Government has asserted a valid "statute-of-limitations" defense that would otherwise bar merits review. The Government's procedural defense should be rejected because the IAC claim is not "new," much less untimely.

1. <u>This is not a new claim</u>.

Nelson's original §2255 motion alleged counsel was ineffective for advising him to plead guilty. The Government does not dispute this. Rather, it asserts that it was not previously on notice that the claim encompassed counsel's failure to advise Nelson about a potential defense. This is stunning, considering the Government restated the claim *in precisely those words* in its answer to the §2255 motion. And rather than argue (as it does now) that the claim did not comply with the pleading requirements of Habeas Rule 2(b), the Government previously told the district court that the claim was sufficiently well-understood to warrant an evidentiary hearing to develop additional facts concerning counsel's advice to Nelson to plead guilty rather than go to trial.[28] This is a critical concession; it indicates that the

---

[28] To the extent the Government's complaint is construed as a failure to proffer facts in support of the claim, rather than a pleading deficiency, that, too, ignores the relevant procedural history. Not only did the district court summarily deny Nelson's §2255 motion without a hearing, it denied him the tools necessary to conduct fact development in support of his claims. His expert funding requests (Docs. 24, 29, 31), including for Dr. Amador, were denied:

> Appellate counsel, with the benefit of hindsight, is attempting to vilify trial counsel's judgment on trial strategy. In reality, trial counsel's conduct and strategy far exceed those standards of

Government agreed that the claim survived the pleading stage of the proceedings, and that the claim was ripe for fact development concerning the very issues that the Government now claims are "new": counsel's failure to advise Nelson of an affirmative defense and the circumstances surrounding Nelson's decision to plead guilty.

2. The claim "relates back" to the original motion.

Even if this claim were construed as a modification of what was initially pleaded,[29] the IAC-guilty plea claim clearly relates back to the

---

> *Strickland v. Washington*, 466 U.S. 668 (1984). Further, the resources requested by counsel in these motions are not likely to lead to a different result. Mr. Nelson received a fair trial.

Doc. 42. Only after this Court reversed and instructed the district court to readdress funding requests on remand, *see* Appellant's Appendix at A26, was Nelson provided the resources to utilize Dr. Amador, who evaluated him and subsequently produced facts supporting his claim: a written report opining that he met the criteria for insanity under 18 U.S.C. § 17. Had the district court not stymied Nelson's initial attempts to obtain expert services, the court could have resolved this issue during the initial proceedings and the Government could not now complain about a lack of factual support. Indeed, after this Court remanded for additional fact development, not only did the district court's original two-page order denying §2255 relief as to all claims blossom into a 53-page discussion of six penalty phase IAC issues, but the lower court actually reversed itself and held that counsel's pre-trial mental health investigation was inadequate under *Strickland*.

[29] Amendment is permissible, even after a remand. *Gallagher v. Magner*, 619 F.3d 823, 843 (8th Cir. 2010) ("An amendment can be proper after remand to the district court even if the claim was



Appellate Case: 15-3160 Page: 48 Date Filed: 03/12/2018 Entry ID: 4638550

original §2255 motion. The motion alleged trial counsel ineffectively advised Nelson to plead guilty to Count One, and that the plea agreement contained an "unenforceable provision" designed to "avoid[] post-conviction review of the reasonableness of that advice as it pertained to Movant's decision to enter a guilty plea." Government's Appendix at A11. The allegations of ineffectiveness arise out of the same conduct, transaction, or occurrence: counsel's advice to Nelson to plead guilty.

Ultimately, notice is the critical element when determining whether a claim relates back. *Schrader v. Royal Caribbean Cruise Line, Inc.,* 952 F.2d 1008, 1011–12 (8th Cir. 1991). "The *raison d'etre* for relation back is that the opposing party is already on notice of the action and hence no prejudice results." *Sierra Club v. Penfold*, 857 F.2d 1307, 1315 (9th Cir. 1988). Considering the Government's admissions in the proceedings below, it cannot demonstrate prejudice: it stated in its

---

presented for the first time on appeal or had not been presented to the district court in a timely fashion.") (quoting *City of Columbia, Mo. v. Paul N. Howard Co.*, 707 F.2d 338, 341 (8th Cir.1983). In fact, remand would be the appropriate action because "[t]he requirements of Rule 15(c) raise factual issues not susceptible to determination at the appellate level." *McCurry v. Allen*, 688 F.2d 581, 584 (8th Cir. 1982).



Appellate Case: 15-3160 Page: 49 Date Filed: 03/12/2018 Entry ID: 4638550

own words it was on notice the IAC-guilty plea claim encompassed counsel's failure to advise Nelson of a potential defense.

3. This affirmative defense is newly raised on appeal, and Nelson should be allowed to develop a full record on this issue.

Even if a "statute-of-limitations" defense could be validly asserted,[30] Nelson would still need to be afforded an opportunity to litigate why that procedural bar should not be imposed. That litigation could not properly be conducted in this Court in the first instance. For example, Nelson might be able to assert that equitable tolling is appropriate. *United States v. Martin*, 408 F.3d 1089, 1092 (8th Cir. 2005). As the Supreme Court noted in *Holland v. Florida,* 560 U.S. 631, 650 (2010), there are no prescribed circumstances that warrant equitable tolling; it is a "flexible" remedy, and "specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Id.* Thus, "[w]hether equitable tolling is appropriate" is a "fact intensive inquiry," and the relevant facts must be determined

[30] Given the Government's prior admissions acknowledging it understood the scope of the claim to include counsel's failure to advise Nelson of a potential affirmative defense, it is not improbable that the Government might choose to abandon its "statute-of-limitations" defense were this issue to be fully litigated.



Appellate Case: 15-3160 Page: 50 Date Filed: 03/12/2018 Entry ID: 4638550

by the district court in the first instance. *Martin v. Fayram*, 849 F.3d 691, 698 (8th Cir. 2017).

Nelson might also be able to invoke Fed. R. Crim. P. 52(b) to overcome the Government's untimeliness defense. *See United States v. Daily*, 703 F.3d 451, 453-54 (8th Cir. 2013) (under Rule 52, district court may grant §2255 relief claims that are untimely and/or not raised in the original §2255 motion); *United States v. Granados*, 168 F.3d 343, 345-46 (8th Cir. 1999) (*per curiam*) (granting §2255 relief *sua sponte* on IAC claim under Rule 52); *King v. United States*, 595 F.3d 844, 854 (8th Cir. 2010). This, too, would require the development of additional facts.

In sum, even if this Court were inclined to believe that the Government's "statute-of-limitations" defense had potential merit, this procedural issue could not be fully resolved absent additional factual development, so a remand would be necessary.

D. A limited remand is required so that Nelson can establish that he prevails on his IAC claim under the standard announced in *Lee*.

Because this claim was outside the scope of the remand, neither party developed the record on this issue. Nelson submits that a limited remand for a hearing is necessary so that he may have a fair



Appellate Case: 15-3160 Page: 51 Date Filed: 03/12/2018 Entry ID: 4638550

opportunity to fully develop the facts. *See Brown v. Russell*, No. 16-4211, No. 17-1592, 2017 WL 5514561 (8th Cir. Apr. 12, 2017) (remanding to district court to decide in first instance if petitioner likely would have proceeded to trial if properly advised of "sudden passion" defense); *Guzman v. Denney*, 692 Fed. Appx. 323 (8th Cir. 2017) (remanding to determine whether petitioner was prejudiced by counsel's erroneous plea advice). Nelson respectfully submits that if afforded a hearing, he has a reasonable likelihood of success on this claim.

As previously noted, prong one has essentially been established by the district court's finding that trial counsel's pre-trial mental health investigation was inadequate. Nelson has also established that but for counsel's omission, he would have learned he had an affirmative defense of insanity under 18 U.S.C. § 17.[31] The only remaining question is whether there is a reasonable probability that Nelson would have proceeded to trial if he had been properly advised of this potential defense.

[31] *See* Hearing Transcript ("HT") Vol. 2 at 440, 443-45 (testimony from Dr. Xavier Amador that Nelson suffered from a severe mental disease or defect at the time of the offense and was unable to appreciate the nature and quality or wrongfulness of his acts).



Appellate Case: 15-3160 Page: 52 Date Filed: 03/12/2018 Entry ID: 4638550

Under *Lee,* this standard is "not particularly demanding." *Lee* at 1974 (Thomas, J., dissenting). *See also* AB130-33. Nelson need not demonstrate that an insanity defense had a "likelihood of success at trial" to establish *Strickland* prejudice. *Id.* at 1966. He merely has to show that if counsel had properly advised him that such a defense was available, there is a "reasonable probability" that "it would have affected his decisionmaking" about pleading guilty. *Id.* at 1967.

Although the extant record is silent as to Nelson's express choice if he had been properly advised, upon information and belief the undersigned submit that Nelson would provide direct evidence that, in fact, there is a reasonable probability he would have chosen to proceed to trial. Furthermore, such evidence would be credible. As the *Lee* court noted, courts should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee* at 1968. Here, as even the Government's recounting of the record demonstrates, the contemporaneous evidence shows that avoiding a death sentence was not the determinative issue in Nelson's decision whether to plead



Appellate Case: 15-3160 Page: 53 Date Filed: 03/12/2018 Entry ID: 4638550

guilty.[32] Thus, there is a reasonable probability that if he had been properly advised of a potential insanity defense, the "possibility of even a highly improbable result"— a verdict of not guilty by reason of insanity—would have "affected his decisionmaking," *id.* at 1967, and Nelson would have chosen to go to trial rather than accept a conviction by guilty plea that guaranteed he would either spend the rest of his life in prison or be executed.

[32] See GB21 (Nelson stating at sentencing hearing: "I don't care about life or death. Either which way."); GB64 (noting Nelson petitioned district court to be allowed not to come to court when hearings and status conferences were held).

## CONCLUSION

For the reasons stated in Argument I, Nelson respectfully requests this Court reverse the denial of relief pursuant to 28 U.S.C. §2255 and order a new capital sentencing hearing.

For the reasons stated in Argument II, Nelson requests this Court reverse the denial of §2255 relief and remand this matter to the district court for an evidentiary hearing and further proceedings.

Respectfully submitted this 12th day of March, 2018.

*/s/Paula K. Harms*
Jon M. Sands
Federal Public Defender
Paula K. Harms
Assistant Federal Public Defender
Capital Habeas Unit
850 W. Adams Suite 201
Phoenix, Arizona 85007
602-382-2816 telephone
602-889-3960 facsimile
Paula_Harms@fd.org

*/s/ David A. Ruhnke*
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
973-744-1000 telephone
973-746-1490 facsimile
dr@ruhnkeandbarrett.com



Appellate Case: 15-3160 Page: 55 Date Filed: 03/12/2018 Entry ID: 4638550

## Certificate of Compliance

1. Exclusive of the portions exempted by Fed. R. App. P. 32(f), this document contains 9,980 words, according to the word count function of the Microsoft Office Word word processing software.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 (version 14.0.7173.5000) in 14-point font size and Century type style.

3. Pursuant to Local Rule 28A(h)(2), the undersigned certifies that this brief has been scanned for viruses and is virus-free.

/s/ Paula K. Harms
Attorney for Keith Nelson
Dated: March 12, 2018



Appellate Case: 15-3160 Page: 56 Date Filed: 03/12/2018 Entry ID: 4638550

## Certificate of Service

I hereby certify that on March 12, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/Catherine Jacobs
Assistant Paralegal
Capital Habeas Unit