No. 15-3160

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

Keith D. Nelson,

Appellant,

vs.

United States of America,

Appellees.

On Appeal from the United States District Court
for the Western District of Missouri
Case No. 4:04-8005-cv-W (FJG)

# APPELLANT'S PETITION FOR REHEARING/REHEARING *EN BANC*

**TABLE OF CONTENTS**

Table of Contents ........................................ i
Table of Authorities ........................................ ii
I. The panel's decision contravenes Supreme Court precedent on the Strickland prejudice inquiry ........................................ 2
II. The guilty-plea claim warrants rehearing ........................................ 7
A. The relation-back analysis was erroneous ........................................ 10
B. The jurisdictional ruling was erroneous ........................................ 13
C. Nelson is entitled to a remand to establish equitable tolling ........................................ 14
Conclusion ........................................ 17
Certificate of Compliance ........................................ 18
Certificate of Service ........................................ 19

## TABLE OF AUTHORITIES

**Federal Cases**


*Ching v. U.S.*, 298 F.3d 174 (2d Cir. 2002) .......... 4
*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988) .......... 11
*Coons v. Mineta*, 410 F.3d 1036 (8th Cir. 2005) .......... 17
*Curtiss v. Mount Pleasant Corr. Facility*, 338 F.3d 851 (8th Cir. 2003) .......... 18
*Day v. McDonough*, 547 U.S. 198 (2006) .......... 16
*Fahy v. Horn*, 240 F.3d 239 (3d Cir. 2001) .......... 19
*Hill v. Lockhart*, 474 U.S. 52 (1985) .......... 10, 13
*Lee v. U.S.*, 137 S.Ct. 1958 (2017) .......... 10
*Mandacina v. U.S.*, 328 F.3d 995 (8th Cir. 2003) .......... 4, 14, 15
*Martin v. Fayram*, 849 F.3d 691 (8th Cir. 2017) .......... 17
*Mayle v. Felix*, 545 U.S. 644 (2005) .......... 4, 14, 15
*Moore v. U.S.*, 173 F.3d 1131 (8th Cir. 1999) .......... 16
*Nelson v. U.S.*, 297 F. App'x 536 (8th Cir. 2008) .......... 5
*Nelson v. U.S.*, 909 F.3d 9645 (8th Cir. 2018) .......... *passim*
*Pliler v. Ford*, 542 U.S. 225 (2004) .......... 18
*Porter v. McCollum*, 558 U.S. 30 (2009) .......... 4, 7, 8
*Rompilla v. Beard*, 545 U.S. 374 (2005) .......... 4, 7
*Sears v. Upton*, 561 U.S. 945 .......... *passim*
*Shelton v. Purkett*, 563 F.3d 404 (8th Cir. 2009) .......... 18
*Sierra Club v. Penfold*, 857 F.2d 1307 (9th Cir. 1988) .......... 13
*Tiller v. Atlantic Coast Line R. Co.*, 323 U.S. 574 (1945) .......... 14
*U.S. v. Craycraft*, 167 F.3d 451 (8th Cir. 1999) .......... 4, 13, 14
*U.S. v. Sellner*, 773 F.3d 927 (8th Cir. 2014) .......... 4, 12, 16
*U.S. v. Thomas*, 221 F.3d 430 (3d Cir. 2000) .......... 14
*Walker v. Norris*, 436 F.3d 1026 (8th Cir. 2006) .......... 17
*Whab v. U.S.*, 408 F.3d 116 (2d Cir. 2005) .......... 4, 16





Appellate Case: 15-3160 Page: 3 Date Filed: 02/13/2019 Entry ID: 4756226

*Wiggins v. Smith*, 539 U.S. 510 (2003) .................................................................. 4, 7
*Williams v. Taylor*, 529 U.S. 362 (2000) ............................................................... 4, 7
*Woodward v. Williams*, 263 F.3d 1135 (10th Cir. 2001) ........................................ 14

**Other**

Fed.R.Civ.P. 15 ............................................................................................... 4

**STATEMENT PURSUANT TO FRAP 35(B)(1)**

The panel's opinion conflicts with multiple Supreme Court decisions on the proper way to assess prejudice resulting from the deficient performance of capital counsel. *See Sears v. Upton*, 561 U.S. 945 (per curiam); *Porter v. McCollum*, 558 U.S. 30 (2009) *(*per curiam); *Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000). Nelson's significant mitigating evidence–including evidence of severe brain damage and childhood sexual abuse–created a reasonable probability that at least one juror would have struck a different balance.

With respect to counsel's unreasonable advice to plead guilty, the panel's opinion conflicts with decisions of the Supreme Court and this Court on the proper way to assess "relation-back" under Fed.R.Civ.P. 15. *See Mayle v. Felix*, 545 U.S. 644 (2005); *Mandacina v. U.S.*, 328 F.3d 995 (8th Cir. 2003); *U.S. v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999). It also conflicts with another opinion of this Court, and another circuit, on whether a claim raised before adjudication of an initial § 2255 motion is complete is "second or successive" under 28 U.S.C. §2255(h). *See U.S. v. Sellner*, 773 F.3d 927 (8th Cir. 2014); *Ching v. U.S.*, 298 F.3d 174 (2d Cir. 2002); *Whab v. U.S.*, 408 F.3d 116 (2d Cir. 2005). Consideration is necessary to secure uniformity of the Court's decisions and address a question of exceptional importance



Appellate Case: 15-3160 Page: 5 Date Filed: 02/13/2019 Entry ID: 4756226

on which this decision conflicts with decisions of another U.S. Court of Appeals.

## I. THE PANEL'S DECISION CONTRAVENES SUPREME COURT PRECEDENT ON THE *STRICKLAND* PREJUDICE INQUIRY

This case was remanded for a §2255 hearing on the adequacy of counsel's mitigation investigation. *Nelson v. U.S.*, 297 F. App'x 536 (8th Cir. 2008). The hearing established that Nelson's jury never learned about critical mitigating facts, including Nelson's significant brain damage and repeated childhood sexual assaults. Despite its lengthy recitation of this evidence, this Court gave it short shrift in its prejudice analysis, failing to acknowledge the large body of Supreme Court precedent which compels a finding of prejudice for this uniquely persuasive mitigating evidence. *See* attached Appendix A (panel opinion).[1]

The evidence of Nelson's mental impairments was robust. In addition to organic brain damage, he suffers from psychosis and his upbringing is marked by a "relentless barrage of trauma" and "onslaught of horrifying life experiences" that impacted every aspect of his emotional, cognitive, and biological development. *Nelson v. U.S.*, 909 F.3d 9645, 975 (8th Cir. 2018). Even the lone prosecution expert who disagreed whether these factors played a role in the offense conceded that Nelson's impairments were not just genuine, but severe: his own testing

[1]Citations to the record are as follows: trial transcript ("TT"); §2255 hearing ("HT"); defense §2255 exhibits ("P#"); Opening Brief Appendix ("AOB").



Appellate Case: 15-3160 Page: 6 Date Filed: 02/13/2019 Entry ID: 4756226

demonstrated that Nelson's frontal lobe dysfunction places him near the bottom 1% of the population. *Id.* at 972, 980, AOB392, P88. Nelson's impairments were corroborated by neuroimaging, a documented history of head injuries, and an extensive family history of mental illness.

Nelson's history of childhood sexual abuse was also proven. When he was seven or eight he was raped by an older man and sexually molested by his mother's boyfriend. *Nelson*, 909 F.3d at 976. As an adolesent, he was repeatedly physically and sexually assaulted while in the care of juvenile authorities, requesting to be placed in isolation to protect himself and attempting suicide multiple times. *Id.* at 976. This evidence was not contested.

Despite counsel's failure to present such evidence, this Court concluded there could be no prejudice because Nelson's jury heard *some other* mitigating evidence at trial. *Id.* at 980. The Supreme Court has rejected such reasoning as a fundamental misapplication of *Strickland*: "We have never limited the prejudice inquiry . . . to cases in which there was only 'little or no mitigation evidence' presented." *Sears*, 561 U.S. at 954 (citation omitted). Contrary to the panel's reliance on *Porter* and *Wiggins*, *see* 909 F.3d at 980, those decisions do not hold that prejudice can only be demonstrated in cases where the trial presentation was thin; they simply recognize that prejudice is especially evident in such cases.

None of the trial evidence cited by this Court bore any resemblance to the §2255 mitigation; the jury *never* learned that Nelson was the victim of sexual assault throughout his childhood or that he suffered from a variety of mental health impairments. The Supreme Court has long recognized that brain damage and mental health evidence are uniquely compelling in capital cases, and not fungible with other types of mitigation. *See Sears*, 561 U.S. at 950, 956 (remanding for new prejudice inquiry where new mitigation included substantial cognitive impairments); *Porter*, 558 U.S. at 36, 42–43 (finding prejudice where new mitigation included brain damage that could manifest in impulsive violent behavior); *Rompilla*, 545 U.S. at 391 (finding prejudice where new mitigation included cognitive deficiencies and signs of schizophrenia); *Wiggins*, 539 U.S. at 535–37 (finding prejudice where new mitigation included diminished mental capacity); *Williams*, 529 U.S. at 370, 396 (finding prejudice where new mitigation included repeated head injuries and indication that mental impairments were organic).[2]

The Supreme Court also recognizes that childhood sexual abuse is uniquely

[2]As in *Porter*, Nelson's brain damage would have been particularly mitigating because the damage directly impacted Nelson's ability to control his behavior at the time of the crime. *See Porter*, 558 U.S. at 36 (neuropsychologist testified brain damage substantially impaired Porter's ability to confirm his conduct to the law); *Nelson*, 909 F.3d at 971 (neuropsychologist testified Nelson's behavior during offense "was consistent with frontal lobe dysfunction and showed abnormal disinhibition and impulsivity instead of planning").



Appellate Case: 15-3160 Page: 8 Date Filed: 02/13/2019 Entry ID: 4756226

persuasive mitigation that can influence a capital jury's decision, and it is especially powerful in this case given the nature of the crime. *See Wiggins*, 539 U.S. at 512–13 (finding prejudice where counsel failed to present evidence that Petitioner was sexually molested and raped in foster care); *Sears*, 561 U.S. at 948 (remanding for new prejudice determination where new mitigation included childhood sexual abuse); *Porter*, 558 U.S. at 43 (it was unreasonable for the state court to discount evidence of Petitioner's abusive childhood, especially when it could help explain his behavior in relationship to the victim); A204 (explaining how childhood sexual abuse can inappropriately shape a child's sexual development, including making the victim more likely to later perpetrate sex crimes).

Although acknowledging that Nelson's §2255 evidence was credible and well-established, this Court failed to allow for the possibility that the jury might credit that evidence. Although the Government's expert questioned whether Nelson's impairments affected his conduct, the Supreme Court has held that entirely discounting mental health evidence on that basis does not comport with *Strickland*. *Porter*, at 43 ("While the State's experts identified perceived problems with the tests [showing brain damage and cognitive defects] and the conclusions [the defense expert] drew from them, it was not reasonable to discount entirely the effect that [the defense expert's] testimony might have had on the jury").



Appellate Case: 15-3160 Page: 9 Date Filed: 02/13/2019 Entry ID: 4756226

This Court also failed to analyze how this mitigation would have altered the jury's assessment of the Government's case. For example, one of the Government's most effective penalty-phase arguments was that Nelson's mitigation should be disregarded because two of his testifying brothers, including Nelson's twin, grew up in the same environment yet went on to lead productive lives; thus, Nelson's background was not truly mitigating, he was just a "rotten human being" who was "evil at his core". TT 1124, 1155-56, 1158, 1161. *See also Nelson,* at 972-73. The §2255 evidence, however, would have been powerful rebuttal. It demonstrated that Nelson's life trajectory was different from his brothers' since *birth*: He "suffered a brain bleed, stopped breathing, and suffered from severe oxygen deprivation." *Nelson*, 909 F.3d at 970. The situation was so grave he was baptized en route to the hospital for fear he might not survive. HT 517, P#38 at 13. The resulting brain damage had "lasting effects on his frontal lobe—the part of the brain key to regulating behavior and impulse control." *Nelson*, at 970. The Government's comparison of Nelson's life trajectory to his brothers' was inaccurate and unfair; but for counsel's omissions, there is a reasonable probability that at least one juror would have rejected the Government's invitation to discount Nelson's mitigation evidence on that basis and simply regard him as evil and undeserving of mercy.

The many deficits and traumas that occurred in Nelson's life do not excuse

this crime. However, they do help explain his inability to function normally. These cognitive impairments, including disinhibition and impulsivity, are not of his own choosing; he was born with these deficits. The unpresented mitigation about his impairments, as well as the sexual abuse and trauma that shaped his development, would have humanized him and provided context for his otherwise seemingly inexplicable actions. *See Sears*, 561 U.S. at 950-51 (evidence that Sears' diminished judgment due to cognitive deficiencies resulted in criminal behavior "may not have made Sears any more likable to the jury, but it might well have helped the jury understand Sears, and his horrendous acts."). To hold that Nelson's severe brain damage and repeated childhood sexual assaults would not have mattered to a single juror flies in the face of a well-established body of Supreme Court precedent.

## II. THE GUILTY-PLEA CLAIM WARRANTS REHEARING

Trial counsel advised Nelson to plead guilty to a capital count and proceed to trial only on punishment. This advice was not based on an investigation that had considered and ruled out potential defenses; as the district court found, counsel *failed* to conduct an adequate investigation into Nelson's mental health. Had counsel undertaken that investigation, they would have uncovered an affirmative defense of insanity. And had Nelson been advised of this, it is reasonably probable he would have gone to trial on guilt.



Appellate Case: 15-3160 Page: 11 Date Filed: 02/13/2019 Entry ID: 4756226

Demonstrating prejudice does not depend on the likelihood the defense would have succeeded, only on whether Nelson would have chosen a trial rather than plead. *Lee v. U.S.*, 137 S.Ct. 1958, 1967 (2017). In lowering that standard,[3] the Supreme Court observed the "possibility of even *a highly improbable result* may be pertinent to the extent it would have affected [a defendant's] decisionmaking." *Id.* at 1967 (emphasis added).

Nelson can establish counsel's advice was deficient and prejudicial, but he has never received a fair opportunity to do so. During the initial §2255 proceedings; the district court rejected his requests for expert and investigative resources to develop this claim, and then summarily denied the §2255 motion, without a hearing, in a two-page order deeming all of counsel's decisions strategic.

Although this claim was not included in the ensuing remand, the court's subsequent finding that counsel's mental health investigation *was* deficient, combined with the intervening *Lee* decision lowering the relevant prejudice

---

[3]*Compare Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985) ("the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial") *with* Lee, 137 S.Ct. at 196 (prejudice established by showing only that "he would not have pleaded guilty and would have insisted on going to trial," without showing that "the result of that trial would have been different than the result of the plea bargain"). *See also id.* at 1972-73 (Thomas, J., dissenting) (majority's prejudice analysis was "directly contrary to *Hill*").



Appellate Case: 15-3160 Page: 12 Date Filed: 02/13/2019 Entry ID: 4756226

standard, called into question the district court's previous denial of this claim. This Court agreed—it granted Nelson's motion to expand the COA, thereby conferring jurisdiction and certifying this claim for appeal.[4]

Notably, the Government did not contemporaneously oppose Nelson's COA motion. It was only after Nelson filed his merits brief that it objected to his motion as an improper successor. This Court adopted the Government's belated argument: It deemed the claim untimely because it did not relate back to the original §2255 motion; it was therefore a "new claim" and the COA motion was construed as a successive §2255 motion barred under 28 U.S.C. §2255(h). *Nelson*, 909 F.3d at 981-82.

The Court's relation-back analysis was flawed. The claim arose out of the same conduct alleged in the original motion: counsel's unreasonable advice to plead guilty. But even assuming the Court's analysis was correct, its adoption of the Government's jurisdictional argument was erroneous. The import of the relation-back ruling was procedural, not jurisdictional; "untimeliness" is an affirmative defense, not a jurisdictional bar. Moreover, even construed as a procedural ruling—

[4]Federal courts have the power to revisit prior decisions "in any circumstance." *Christianson v. Colt Industries Operating Corp.* 486 U.S. 800 817 (1988). The Court's grant of Nelson's COA motion was a proper exercise of its power to reconsider its affirmation of the pre-remand denial of this claim. The fact that this claim was not included in the remand is immaterial.



Appellate Case: 15-3160 Page: 13 Date Filed: 02/13/2019 Entry ID: 4756226

that the claim is time-barred—that does not end the inquiry because the Court has not assessed Nelson's equitable tolling claim. That issue cannot be properly determined on the present record and a remand is appropriate.

### A. THE RELATION-BACK ANALYSIS WAS ERRONEOUS

Under *U.S. v. Sellner*, 773 F.3d 927, 931-32 (8th Cir. 2014), the Court was required to construe Nelson's COA motion as a motion to amend and analyze the claim to determine whether it related back. Although it conducted the mandated inquiry, its analysis was flawed.

Nelson's §2255 motion alleged counsel was ineffective for "advis[ing] and convinc[ing] Movant to plead guilty to count one of the indictment in exchange for the Government dismissing count two of the indictment and letting the defense argue that Movant had accepted responsibility for his actions, a contention that was unanimously rejected by the jury." Doc. 25 at 11-12. The Court ruled the *Lee* claim did not relate back because "Nelson *did not specifically raise* whether defense counsel provided ineffective assistance of counsel in advising him to plead guilty on the basis that he did not have a defense to the capital charges." *Nelson*, 909 F.3d at 982 (emphasis added). However in answer to the §2255 motion, the Government restated Nelson's claim *in precisely those words*: "If the claimed error is counsel's failure to notify the petitioner of a potential defense, the inquiry 'will largely depend



Appellate Case: 15-3160 Page: 14 Date Filed: 02/13/2019 Entry ID: 4756226

on whether the affirmative defense likely would have succeeded at trial.' [*Hill*, 474 U.S. 52]." Doc. 39 at 21-22.[5]

Notice is the critical element when determining whether a claim relates back. *U.S. v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999); *Sierra Club v. Penfold*, 857 F.2d 1307, 1315 (9th Cir. 1988) ("The *raison d'etre* for relation back is that the opposing party is already on notice of the action and hence no prejudice results."). Considering the Government's admissions below, there was no lack of notice, and no basis to conclude Nelson's claim did not relate back.

The deficiencies of counsel's representation alleged in the § 2255 motion were not distinctly separate from the deficiency alleged in the COA motion. *Craycraft*, 167 F.3d at 457. Failing to properly advise a defendant concerning a plea is not a separate occurrence in time and type from failing to inform a defendant of a potential defense before that plea is entered. The latter may be more detailed, but where the amended claim merely adds specificity, the claim relates back. *Mandacina v. U.S.*, 328 F.3d 995, 1000-01 (8th Cir. 2003); *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001) (amendment that simply "clarifies or amplifies a claim or theory in the original" relates back); *U.S. v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000)

[5]The Government argued it was "necessary" to conduct a hearing concerning "[a]ny discussions between Nelson and trial counsel on his decision to enter a plea of guilty[.]" Doc. 39 at 46-47.



Appellate Case: 15-3160 Page: 15 Date Filed: 02/13/2019 Entry ID: 4756226

(relation back permissible if movant is "merely seeking to add meat to the bare bones" of original claim).

The Court's application of relation back principles contravened *Mayle v. Felix*, 545 U.S. 644 (2005). *Mayle* cited *Tiller v. Atlantic Coast Line R. Co.*, 323 U.S. 574 (1945), to demonstrate how to conduct the analysis. *Tiller* concerned a railroad worker fatally struck by a train. His widow filed a wrongful death suit under the Federal Employers' Liability Act, alleging various negligent acts. Later, she added a claim under the Federal Boiler Inspection Act for failure to provide the locomotive with a rear light. The Court held the amendment related back even though it invoked a new legal theory and relied on facts not originally asserted. There was only one "episode-in-suit in *Tiller*, a worker's death attributed from the start to the railroad's failure to provide its employee with a reasonably safe place to work." *Mayle*, 545 U.S. at 660. There was but one "single 'occurrence,' an accident resulting in her husband's death." *Id*.

*Mayle*'s discussion of *Mandacina v. U.S.*, 328 F.3d 995 (8th Cir. 2003), provides further guidance. There, the §2255 motion alleged the government failed to disclose that the victim implicated persons other than the defendant prior to his death. The amended motion alleged the government failed to disclose that a different witness also implicated others in the murder. This Court ruled that the amended



Appellate Case: 15-3160 Page: 16 Date Filed: 02/13/2019 Entry ID: 4756226

claim related back because both pleadings "related to evidence obtained at the same time by the same police department." *Mayle*, 545 U.S. at 664 n.7.

In both *Tiller* and *Mandacina*, the original claims did not specify the same facts or legal theories as the amended claims; yet they related back because they arose out of the same set of facts. Nelson's claims are no different; they arose out of the same set of facts, counsel's unreasonable advice to plead guilty.

### B. THE JURISDICTIONAL RULING WAS ERRONEOUS

Even assuming the Court's relation-back analysis was correct, its denial of the claim on jurisdictional grounds was not. That is the very premise of *Sellner*: if another claim is raised "before adjudication of an initial §2255 motion is complete," that claim "is not barred by AEDPA," and instead "should be construed as a motion to amend." *Sellner*, 773 F.3d at 931-32 (favorably quoting *Ching v. U.S.*, 298 F.3d 174, 177 (2d Cir. 2002)).[6]

If a claim does not "relate back," that gives rise to an affirmative defense: the claim is untimely. But such a "statute of limitations defense … is not jurisdictional." *Day v. McDonough*, 547 U.S. 198, 205 (2006); *Moore v. U.S.*, 173 F.3d 1131, 1134 (8th Cir. 1999) (one-year limit for filing §2255 motion "is not a jurisdictional bar").

---

[6] *See also Ching*, 293 F.3d at 178 (adjudication of initial §2255 motion not complete until appellate review concludes); *Whab v. U.S.*, 408 F.3d 116, 118 (2d Cir. 2005).



Appellate Case: 15-3160 Page: 17 Date Filed: 02/13/2019 Entry ID: 4756226

Thus, this Court's adoption of the Government's argument—that if the claim did not relate back, it was a "new claim" barred by § 2255(h)—was erroneous.

### C. NELSON IS ENTITLED TO A REMAND TO ESTABLISH EQUITABLE TOLLING

The actual import of this Court's relation back analysis was *procedural*, not jurisdictional. But even assuming it correctly determined that Nelson's claim was time-barred, that did not end the inquiry. Nelson was entitled to a fair opportunity to show why the limitations period should be equitably tolled. *See Day*, 547 U.S. at 210 (adopting notice requirement to give petitioners "a fair opportunity to show why the limitation period should not yield dismissal of the petition").

Nelson requested that opportunity after the Government asserted its statute-of-limitations defense.[7] Yet because this Court decided the claim on jurisdictional grounds, it did not consider this request. Since that ruling was erroneous, it should grant rehearing and remand for that purpose now. *See Martin v. Fayram*, 849 F.3d 691, 698 (8th Cir. 2017) ("Whether equitable tolling is appropriate" is a "fact intensive inquiry," and the facts must be determined by the district court in the first instance).

Generally, the test for equitable tolling requires a showing "(1) that [movant]

---

[7]Because AEDPA's limitations period is an affirmative defense, Nelson was not required to allege in his COA motion facts that could refute the defense.

has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Walker v. Norris*, 436 F.3d 1026, 1032 (8th Cir. 2006). Remand is appropriate where the movant alleges facts which make out a threshold claim that cannot be decided "without a more developed record." *Coons v. Mineta*, 410 F.3d 1036, 1040-42 (8th Cir. 2005).

Nelson diligently pursued his claim both before, and after, the remand. His initial ability to pursue this claim was stymied by the district court's refusal to provide him with the resources necessary to conduct fact development. His expert funding requests (Docs. 24, 29, 31), including for Dr. Amador, were denied. *See* Doc. 42. Only after this Court reversed and instructed the district court to readdress funding requests on remand was Nelson provided the resources to utilize Dr. Amador, who evaluated him and subsequently opined that he met the criteria for insanity. Had the court not stymied Nelson's initial attempts to obtain expert services, Nelson could have timely developed and presented these facts. (Indeed, after this Court remanded for additional fact development, not only did the district court's original two-page order denying §2255 relief as to all claims blossom into a 53-page discussion of six IAC issues, but the lower court reversed itself and held that counsel's mental health investigation was inadequate under *Strickland*.) Given that the Government's answer acknowledged the original claim encompassed



Appellate Case: 15-3160 Page: 19 Date Filed: 02/13/2019 Entry ID: 4756226

counsel's failure to notify Nelson of a potential affirmative defense, he had no reason to believe that claim was lacking—the Government's conduct "lulled [Nelson] into inaction through reliance on that conduct." *Curtiss v. Mount Pleasant Corr. Facility*, 338 F.3d 851, 855 (8th Cir. 2003) (circumstances warranting equitable tolling include state conduct that "lulled the petitioner into inaction"); *Pliler v. Ford*, 542 U.S. 225, 235 (2004) (O'Connor, J., concurring) ("if the petitioner is affirmatively misled … by the State, equitable tolling might well be appropriate").

After the remand, Nelson again diligently pursued this claim via his motion to expand the COA. Two conditions gave rise to that motion: (1) the district court's reversal of its earlier ruling that counsel's pre-trial mental health investigation was adequate; and (2) the intervening *Lee* decision lowering the prejudice standard. The combination of these developments constituted an intervening change in law, which constitutes an extraordinary circumstance. *Shelton v. Purkett*, 563 F.3d 404, 407 (8th Cir. 2009). After these developments, Nelson once again diligently pursued his rights—he filed his COA motion within *five days* of *Lee*'s issuance.

Taking all of the allegations as true and drawing all reasonable inferences, Nelson has made a threshold claim for equitable tolling. His *Lee* claim should not have been dismissed without further record development. This is especially so given that this is a capital case. *Fahy v. Horn*, 240 F.3d 239, 244–45 (3d Cir. 2001) ("As



Appellate Case: 15-3160 Page: 20 Date Filed: 02/13/2019 Entry ID: 4756226

the Supreme Court has repeatedly stated … 'death is different.' In a capital case … the consequences of error are terminal, and we therefore … must allow less than 'extraordinary' circumstances to trigger equitable tolling of the AEDPA's statute of limitations. . . when a petitioner has been diligent in asserting his or her claims and rigid application of the statute would be unfair.") (internal citation omitted).

**CONCLUSION**

This case should be reheard *en banc* on the question of whether the panel properly determined *Strickland* prejudice, as well as on the jurisdictional and procedural issues that precluded merits review of counsel's unreasonable advice to plead guilty.

Respectfully submitted this 13th day of February, 2019.


*/s/Paula K. Harms*
Jon M. Sands
Federal Public Defender
Paula K. Harms
Assistant Federal Public Defender
Capital Habeas Unit
850 W. Adams Suite 201
Phoenix, Arizona 85007
602-382-2816 telephone
602-889-3960 facsimile

*/s/ David A. Ruhnke*
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
973-744-1000 telephone
973-746-1490 facsimile
dr@ruhnkeandbarrett.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1. This document complies with the word limit of Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,886 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 (version 14.0.7173.5000) in 14-point font size and Times New Roman type style.

Dated: February 13, 2019

By */s/Paula K. Harms*
Attorney for Keith Nelson



Appellate Case: 15-3160 Page: 22 Date Filed: 02/13/2019 Entry ID: 4756226

## CERTIFICATE OF SERVICE

I hereby certify that on, February 13, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

By Jessica Ward
Legal Assistant
Capital Habeas Unit



Appellate Case: 15-3160 Page: 23 Date Filed: 02/13/2019 Entry ID: 4756226